**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| PIERRE BRAZEAU, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, ERIC J. SCHOEN, JAMES W. KUPIEC, NADAV FRIEDMAN, AND MICHAEL MARSMAN,<br><br>　　　　　　　Defendants. | Case No. 1:21-cv-00751-RP<br><br><u>CLASS ACTION</u> |

**RESPONSE IN SUPPORT OF DR. JOHN BARSA'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. The PSLRA Lead Plaintiff Selection Framework ............................................................. 3

    B. Bozorgi is Subject to Unique Defenses as an In-and-Out Trader ...................................... 5

    C. Rao is Atypical Because He Profited from his Class-Period Stock and Options Transactions; His Losses Stem Only from Shares Bought After the Class Period as a Result of His Options Trading ........................................................................................... 8

    D. Dr. Barsa—Who is Typical and Adequate—is the Presumptive Most Adequate Plaintiff, and No Evidence Rebuts that Presumption........................................................................ 12

    E. No Other Movant Can Show They Have Losses Greater than Dr. Barsa, and No Movant Can Rebut the Presumption of Dr. Barsa's Adequacy...................................................... 12

III. CONCLUSION................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                           Page(s)

*Erica P. John Fund, Inc. v. Halliburton Co.*,

   563 U.S. 804 (2011) .................................................................................................... 7

*Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-,

   2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017) ................................................ 4

*In re Bausch & Lomb Inc. Sec. Litig.*,

   244 F.R.D. 169 (W.D.N.Y. 2007) ............................................................................... 11

*In re BP, PLC Sec. Litig.*,

   758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................. 1, 3, 5

*In re Cavanaugh*,

   306 F.3d 726 (9th Cir. 2002) ............................................................................. 1, 3, 4, 5

*In re Rent-Way Sec. Litig.*,

   218 F.R.D. 101 (W.D. Pa. 2003) ............................................................................ 10, 13

*In re Waste Mgmt., Inc. Sec. Litig.*,

   128 F. Supp. 2d 401 (S.D. Tex. 2000) ........................................................................ 9

*Lax v. First Merchants Acceptance Corp.*, No. 97 C,

   2716, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..................................................... 4

*Netsky v. Capstead Mortg. Corp.*,

   3:98-CV-1716, 2000 WL 964935 n.9 (N.D. Tex. July 12, 2000) ....................... 10, 13

*Patel v. Reata Pharms., Inc.*,

   No. 4:20-CV-796-SDJ, 2021 WL 2983249 (E.D. Tex. July 15, 2021) .......... 3, 4, 5, 12

*Plymouth Cty. Ret. Sys. v. Apache Corp.*,

   No. 4:21-CV-575, 2021 WL 4726510 (S.D. Tex. Oct. 6, 2021) ........................................ passim

*Shaffer v. Digital Generation, Inc.*,

   No. 3:13-CV-1684-N, 2013 WL 12430537 (N.D. Tex. Sept. 19, 2013) ............................. 4, 5, 7

*Tsirekidze v. Syntax-Brillian Corp.*,

   No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................... 7

**Statutes**

15 U.S.C. § 78u-4(a)(3) ...................................................................................................... passim

**Rules**

Rule 23 ............................................................................................................................... passim

Lead Plaintiff movant Dr. John Barsa respectfully submits this response memorandum of law in further support of his motion (ECF No. 14) for appointment as Lead Plaintiff in this securities class action. Dr. Barsa should be appointed lead plaintiff because he is the movant with the greatest financial interest who is otherwise adequate and typical, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)[1].

## I.     INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") is a unique statute solely applicable to federal securities class actions. It directs district courts to first consolidate actions where more than one "assert[s] substantially the same claim or claims," 15 U.S.C. § 78u-4(a)(3)(B)(ii), before then identifying the investor "most capable of adequately representing the interests of class members" to be appointed lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The "most adequate plaintiff," *id.*, "is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) ("In choosing the lead plaintiff, 'the court shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that 1) has filed the complaint or moved to be lead plaintiff;' 2) has 'the largest financial interest in the relief sought by the class,' **and** 3) 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'") (emphasis added).

Ten investors and investor groups filed motions seeking appointment as lead plaintiff in this action: Mohammad Bozorgi (ECF No. 25); Qing Yang, Ronald L. Selman, Thi Huyen Vu,

---

[1] Dr. Barsa agrees that the *Newell*, 1:12-cv-760-RP, *Rein*, 1:21-cv-856-RP, and *Rao*, 1:21-cv-00971, actions should be consolidated into one action, *see* ECF No. 12.

and Vinod K. Thukral (ECF No. 21); Manohar K. Rao (ECF No. 17); Dr. John Barsa (ECF No. 14); Thibault Magnin (ECF No. 24); Shamsher Ahluwalia (ECF No. 15); Ken Van Ho, Kevin Otto, and Warren Choi (self-titled the "Cassava Securities Group") (ECF No. 20); Reza Blourchian (ECF No. 18); Steve Burmeister (ECF No. 33); and Stephen Branch (ECF No. 31). The Yang-Selman-Vu-Thukral Group, Magnin, the Cassava Securities Group, Burmeister, Blourchian, and Branch have filed non-oppositions to the competing motions. ECF No. 45; ECF No. 46; ECF No. 48; ECF No. 43; ECF No. 40. This leaves four remaining movants: Bozorgi ($1,539,508.17); Rao ($602,392.89); Dr. Barsa ($524,391.26); and Ahluwalia ($456,376.00).

The PSLRA, however, presumes that "the most adequate plaintiff" is the person who "has the largest financial interest in the relief sought by the class" **and** "*otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.*" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). While Messrs. Bozorgi and Rao claim larger financial losses than Dr. Barsa, neither are typical nor adequate and neither should be appointed as Lead Plaintiff.

As we discuss more fully below, Bozorgi purchased and sold significant amounts of Cassava common stock on the same day, or within days of his purchases, and courts routinely find that "repeated in-and-out transactions raise serious concerns about [a potential lead plaintiff's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions." *Plymouth Cty. Ret. Sys. v. Apache Corp.*, No. 4:21-CV-575, 2021 WL 4726510, at *4 (S.D. Tex. Oct. 6, 2021) (internal quotation marks omitted). Bozorgi is therefore atypical and should not be appointed as Lead Plaintiff.

Rao does not have the losses he claims and most of his recoverable losses come from trading in Cassava stock options, which renders him atypical. All of Rao's claimed common stock losses come from common stock purchases *after* the close of the class period and *after* the alleged

2

fraud was fully revealed, so Rao cannot recover on those losses, and they do not count towards his purported financial interest in this case. Eliminating these after-the-fact losses demonstrates he actually made money on his trading in Cassava common stock. "[T]he fact that [Rao's] losses during the Class Period were based solely on options contracts renders [Rao] atypical of the putative class." *Patel v. Reata Pharms., Inc.*, No. 4:20-CV-796-SDJ, 2021 WL 2983249 (E.D. Tex. July 15, 2021),

In stark contrast to both Bozorgi and Rao, Dr. Barsa is typical and adequate. He bought all of his shares on August 12 and 13, 2021 and sold all of his shares on August 27, 2021, after the August 24, 2021 disclosure that the FDA had received a Citizen Petition to halt ongoing trials of Cassava's lead drug candidate, Simufilam, and after the August 27, 2021 premarket statement from Quanterix.[2] ECF No. 16-3, at 2. "There is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage if [Borzorgi or Rao] were appointed lead plaintiff. This is especially true given that there is a non-conflicted candidate for lead plaintiff available and willing to assume such responsibilities." *Apache*, 2021 WL 4726510, at *5.

## II.     ARGUMENT

### A.     The PSLRA Lead Plaintiff Selection Framework

There is a "simple three-step process for identifying the lead plaintiff …." *Cavanaugh*, 306 F.3d at 729. In step one, the first plaintiff to file an action posts notice publicizing the action, the claims made, and the purported class period. 15 U.S.C. § 78u-4(a)(3)(A). At that point, "any member of the purported class may move the court to serve as lead plaintiff." *Id.* § 78u-

---

[2] In considering losses, Courts generally look to the longest-alleged class period. *BP*, 758 F. Supp. 2d at 436. Here, three of the four complaints on file allege a class period between September 14, 2020 and August 27, 2021. *See Newell v. Cassava Scis., Inc.*, 1:21-cv-760 (W.D. Tex.) (ECF No. 1, at 2); *Rein v. Cassava Scis., Inc.*, 1:21-cv-856 (W.D. Tex.) (ECF No. 1, at 2); *Rao v. Cassava Scis., Inc.*, 1;21-cv-971 (W.D. Tex.) (ECF No. 1, at 2).

3

4(a)(3)(A)(i)(II). Ten investors timely did so here (though only six continue to pursue lead plaintiff appointment).

In the second step, the district court first "determine[s] the financial interest of each lead plaintiff movant." *Patel*, 2021 WL 2983249, at *3. Courts in the Fifth Circuit do so by applying the *Lax*[3] factors, which include "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Id.* "Courts consistently consider the fourth factor—the approximate loss suffered—as [the] most determinative factor" in this financial-interest analysis. *Giovagnoli v. GlobalSCAPE, Inc.*, No. SA-17-CV-753, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017) (collecting cases).

Once the district court identifies the plaintiff with the largest financial stake, the court "must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"[4]  *Cavanaugh*, 306 F.3d at 730. "Thus, to satisfy the Rule 23 requirements under the PSLRA, a lead plaintiff must have claims or defenses that are 'typical of the claims or defenses of the class,' and the lead plaintiff must 'fairly and adequately protect the interests of the class.'" *Patel*, 2021 WL 2983249, at *4 (quoting Fed. R. Civ. P. 23(a)). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Cavanaugh*,

---

[3] *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2716, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

[4] "There are four requirements for class representatives under Rule 23, but only typicality and adequacy of representation are relevant to designate the lead plaintiff under the PSLRA." *Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, 2013 WL 12430537, at *1 (N.D. Tex. Sept. 19, 2013).

306 F.3d at 730; *see also BP*, 758 F. Supp. 2d at 437 ("In addition to having the largest financial interest, New York & Ohio must also make a 'preliminary showing' of typicality and adequacy under Federal Rule of Civil Procedure 23(a) in order to be entitled to a presumption that they are the most adequate lead plaintiffs.").

"The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *see also Patel*, 2021 WL 2983249, at *4 ("[T]his presumption may be rebutted upon proof that the presumptive lead plaintiff is subject to unique defenses or would not adequately and fairly represent the class's interests."). So whereas step two requires only a prima facie showing, step three introduces an adversarial process by which "other plaintiffs may present evidence that disputes the [presumptive] lead plaintiff's prima facie showing of typicality and adequacy." *Cavanaugh*, 306 F.3d at 730-31. The adequacy and typicality standards, however, are the same at both steps. *Id.* at 731 n.6; *Shaffer*, 2013 WL 12430537, at *2 & n.1.

If the movant with the largest financial interest cannot satisfy the Rule 23 requirements of adequacy and typicality, or if the presumption is rebutted at step three by other movants, the Court proceeds to the movant with the next largest financial interest and conducts the same Rule 23 assessment. *Shaffer*, 2013 WL 12430537, at *2; *see Apache*, 2021 WL 4726510, at *5 ("Having concluded that Ellis is subject to unique defenses that render him unfit to be appointed lead plaintiff, the Pension Funds are the next presumptively most adequate lead plaintiff.").

      **B.**      **Bozorgi is Subject to Unique Defenses as an In-and-Out Trader**

Bozorgi's reported losses ($1,539,508.17) are larger than any other movant. But he is not entitled to presumptive lead-plaintiff status because he cannot show that his claims and the defenses against him are typical of the class. Ten times (which account for the vast majority of his

5

trading activity), he bought thousands of shares Cassava common stock and then sold the same number of shares as soon as the same day. His in-and-out trading renders him subject to the unique "defense that he was trading in response to information other than the alleged misstatements and omissions of the Defendants." *Apache*, 2021 WL 4726510, at *4 (citation and internal quotation marks omitted).

On May 28, 2021, Bozorgi acquired 25,000 shares of stock. Between June 2 and June 3, 2021, he sold 25,000 shares. On June 7, 2021, he purchased 25,000 shares; he sold 25,000 shares the same day. On June 11, 2021, he purchased 25,000 shares; he again sold 25,000 shares the same day. On June 14, 2021, he again purchased 25,000 shares. He sold 10,000 shares on June 16, 2021 and 15,000 shares on June 21, 2021. On June 22, 2021, he purchased 20,000 shares. On July 1, 2021, he sold 19,400 shares. On July 23, 2021, he purchased 10,000 shares and sold 10,000 shares. On July 26, 2021, he acquired 2,000 shares. He sold 2,000 shares on July 27, 2021. On August 17, 2021, he purchased 5,000 shares; he sold 5,000 shares the next day. On August 19, 2021, he purchased and sold 5,000 shares. And on August 20, 2021, he again purchased and sold 5,000 shares. *Cf. id.* (movant who "repeatedly bought and sold large portions of Apache stock … on the same day or within a matter of days" could not satisfy Rules 23's typicality requirement because he was susceptible to the defense that he was trading in response to information other than Apache's alleged misstatements and omissions). In fact, Bozorgi profited on all but the last of the above paired transactions, selling his shares at a higher price than he had purchased them.[5]

---

[5] Bozorgi made several other trades where it appears that he held on to the shares purchased in the hope that he could later sell them for a profit, but the stock price never climbed above his purchase price, and he sold them at a loss after the August 24, 2021 disclosure of the FDA's receipt of a Citizen Petition to halt ongoing trials of Simufilam.

Bozorgi's trading activity shows that his decisions to purchase and sell Cassava stock during the class period had nothing to do with the misstatements and omissions identified in the complaint. In this action, the class will invoke the fraud-on-the-market theory to establish the reliance element of their fraud claim. Under this theory, it is presumed that a company's stock price reflects all publicly available information about that stock. *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 813 (2011). A defendant can rebut that presumption if they can establish, among other things, that a plaintiff purchased the stock for reasons other than relying on the integrity of the market price. *See id.* at 812. ("[W]hen considering whether a plaintiff has relied on a misrepresentation, we have typically focused on facts surrounding the investor's decision to engage in the transaction.")

Here, defendants will undoubtedly cast Bozorgi as a day trader who frequently purchased and sold Cassava stock in the hope of turning a quick profit and whose trading decisions had nothing to do with whether the information Cassava disclosed to the market was truthful and accurate. This will take center stage both at the class certification stage and at trial. It will create negative issues for the class solely because of Bozorgi's unique trading patterns. As a result, he cannot make a prima facie showing of typicality because he is susceptible to unique defenses. *See Shaffer*, 2013 WL 12430537, at *3 ("Alavi's high volume trading activity, including buying and selling Digital Generation stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses."); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("[F]rantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.").

As discussed in more detail below, and in stark contrast to Bozorgi, Dr. Barsa is a practicing Psychiatrist who treats Alzheimer's patients. Cassava's lead drug candidate, Simufilam, is

7

supposed to treat Alzheimer's, and Dr. Barsa closely followed its progress, investing a significant portion of his retirement savings because he believed the alleged misrepresentations about the promise of Simufilam. As such, "[t]here is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage if [Bozorgi] were appointed lead plaintiff. This is especially true given that there is a non-conflicted candidate for lead plaintiff[, Dr. Barsa,] available and willing to assume such responsibilities." *Apache*, 2021 WL 4726510, at *5.

The Court should therefore deny Bozorgi's motion and turn next to Mr. Rao, who claims the second largest financial interest.

### C. Rao is Atypical Because He Profited from his Class-Period Stock and Options Transactions; His Losses Stem Only from Shares Bought After the Class Period as a Result of His Options Trading

There are a number of issues that disqualify Rao from being appointed Lead Plaintiff: 1) he made money on his class period Cassava common stock purchases and only suffered losses on his options trading, rendering him atypical and inadequate; and 2) he purports to represent other investors without adequately demonstrating that he has the legal authority to assert claims and recover on their behalf.

As an initial matter, Rao purports to represent the financial interest of two other persons—Jyothi Rao and Shyamala Rambhotla—without providing any documentation demonstrating his legal authority to assert claims on their behalf (*i.e.*, an actual assignment of rights). This means Rao has essentially moved as part of a three-member group and seeks to aggregate each members' losses (but without saying so).[6]

---

[6] "Courts within [the Fifth] Circuit … tend to adopt a 'strict' view of aggregation …. To ensure the type of proactive representation by plaintiffs envisioned by the PSLRA, a strict definition of appropriate 'group' plaintiffs should be adopted, 'requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on

8

More significantly, however, Rao—whether individually or in the aggregate—did not lose any money trading in shares of Cassava through August 27, 2021.

As clearly reflected in Rao's own filings, Rao's "Account 1" (which is the only account Rao used to purchase stock during the alleged class period), Rao made a profit of $291,813.74 on his trading in Cassava common stock *during* the alleged class period.[7] Thus, in viewing only his class period common stock transactions, Rao profited on his Cassava stock trades. As of August 27, 2021, Rao held *no shares* of Cassava common stock. After the truth emerged on August 27, 2021, *Rao* Complaint ¶37, he then purportedly purchased 20,100 shares on *August 30, 2021* and sold those shares on September 7, 2021 to claim a loss in his common stock trades, as reflected in Rao's own loss calculation:

---

more than their losing investment.'" *In re Dell, Inc. Sec. Litig.*, 1:06-cv-726-SS (W.D. Tex. Apr. 9, 2007) (ECF No. 152, at 6) (quoting *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000)). It is the purported group's burden to show cohesiveness by providing "significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest…." *Waste Mgmt.*, 128 F. Supp. 2d at 413. Rao offers no information about the identity of Jyothi Rao or Shyamala Rambhotla other than their relationship to him.

[7] Rao himself filed a complaint, *Rao v. Cassava Sciences, Inc.*, 21-cv-00971-RP (ECF No. 1) ("*Rao* Complaint"), in which Rao himself alleges the action is on behalf of those who purchases Cassava common stock and options "between September 14, 2020 and August 27, 2021", ¶ 1, so securities purchased after August 27, 2021 are not included in the case.

Shares "purchased outside the Class Period … will not be considered in determining [Rao's] financial interest." *Netsky v. Capstead Mortg. Corp.*, No. CIV. A. 3:98-CV-1716, 2000 WL 964935, at *4 n.9 (N.D. Tex. July 12, 2000); *see also In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 114 (W.D. Pa. 2003) (holding that stock purchases post-dating the class period "are irrelevant to the instant litigation"). In sum, only considering class period common stock transactions, Rao himself has gains of $291,813.74, Jyothi Rao has a loss of $7,185.90, and Shyamala Rambhotla has a gain of $217.41. *See* ECF No. 17-4. In total, the Group actually appears to have **gained** $284,845.25 trading Cassava common stock during the class period.

Rao, and his group, are thus "net gainers"[8]: "a party who profited from the purchase and sale of a defendant's stock during the class period." *Apache*, 2021 WL 4726510, at *3. "'Courts have consistently rejected applications for lead plaintiff status made by … "net gainers,"

---

[8] Other than this potentially unexplained assignment, each of the three members of the Rao group self-reported *profits* on their class period Cassava options trading.

10

recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.'" *Id.* (quoting *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007)). Moreover, "they may have difficulty proving damages at trial and are subject to unique defenses that do not befall other class members." *Id.* Rao is an inadequate representative of the putative class, and the unique defenses that will be raised against his particular claims render his claims atypical of the putative class.

Plus, Rao's August 30, 2021 common stock transactions do not appear in his signed certification (ECF No. 17-3); they are only in the "Financial Interest Analysis" prepared by his lawyers. *See* ECF No. 17-4, at 3. Even more curious is that Cassava stock did not trade anywhere near the $95 per share price Rao claims to have purchased the stock at on August 30, 2021.[9] One possible explanation is that Rao was required to make these purchases because of his options trading in Cassava (though he says nothing about the discrepancy). Even so, this would be further evidence of his unsuitability as a lead plaintiff.

In *Patel v. Reata Pharmaceuticals, Inc.*, the court found a lead plaintiff movant inadequate for precisely this reason:

> [T]hat [movant's] losses during the Class Period were based solely on options contracts renders [movant] atypical of the putative class. And while [movant] did trade in both common stock and options during the Class Period, his losses arose exclusively from his options; in fact, [movant] profited from his common-stock investments. [] This material gain in common stocks makes [movant's] trading practices during the Class Period functionally the same as an investor who traded only in options and materially different from the putative class consisting largely of common stockholders.

---

[9] As reported by the *Wall Street Journal*, Cassava's common stock opened at $52.93 per share, traded at a high of $56.95 per share, a low of $50.63 per share and closed at $53.26 per share on August 30, 2021. *See* Exhibit 1.

11

2021 WL 2983249, at * 5. The Court should find similarly as to Rao. That leaves Dr. Barsa next in line for the Court's consideration.

### D. Dr. Barsa—Who is Typical and Adequate—is the Presumptive Most Adequate Plaintiff, and No Evidence Rebuts that Presumption

To be designated the presumptively most adequate plaintiff, Dr. Barsa must "satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(cc). He readily does so. Dr. Barsa is typical of the putative class because he purchased or acquired Cassava securities during the Class Period at artificially inflated prices, was damaged thereby, and his claims arise from the same course of events and are similar (if not identical) to those of the class. *See* ECF No. 15, at 10. Dr. Barsa is an adequate class representative because his interests are aligned with those of the class, and he has selected highly qualified counsel to represent him and the class. *Id.* at 11. Moreover, Dr. Barsa has provided the Court with a Declaration setting forth his ability and willingness to serve as Lead Plaintiff, detailing his education and work history, investing experience, his understanding of lead plaintiff duties, and his diligence in selecting counsel. *See* ECF No. 16-5. Uniquely, Dr. Barsa is a practicing Psychiatrist, and many of his patients suffer from Alzheimer's disease—the very condition Cassava's lead drug candidate, Simufilam, is supposed to treat. He followed the development of Simufilam with interest and ultimately invested a significant portion of his retirement savings in shares of Cassava based on Simufilam's apparent promise. Dr. Barsa is the judicious, diligent lead plaintiff envisioned by the PSLRA and its drafters. He is therefore entitled to the statutory presumption.

### E. No Other Movant Can Show They Have Losses Greater than Dr. Barsa, and No Movant Can Rebut the Presumption of Dr. Barsa's Adequacy

Ahluwalia—the only other movant yet to notice their non-opposition to the competing lead plaintiff motions—claims $456,376.00 in losses from class period transactions in Cassava

securities. He does not—and cannot—claim a greater financial interest than Dr. Barsa.[10] Moreover, no movant can point to any evidence that rebuts the statutory presumption that Dr. Barsa is the most adequate plaintiff. He should therefore be appointed lead plaintiff.

### III.     CONCLUSION

Dr. Barsa is the most adequate movant seeking to be designated lead plaintiff. Mr. Bozorgi and Mr. Rao are clearly inadequate to represent the class because they are both subject to unique defenses, and every other movant has either noticed their non-opposition to competing motions or reports a smaller financial interest than Dr. Barsa. Because Dr. Barsa's financial interest is facially larger than that of any other potentially adequate movant, and Dr. Barsa is otherwise adequate and typical, he respectfully submits that he should be appointed lead plaintiff.

Dated: November 9, 2021                    Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (TX Bar No. 00794935)
**FEDERMAN & SHERWOOD**
212 W. Spring Valley Road
Richardson, Texas 75081
Telephone: 405) 235-1560
Fax: (405) 239-2112
Email: wbf@federmanlaw.com

*Liaison Counsel for Movant Dr. John Barsa*

---

[10] It is also worth noting that Ahluwalia includes losses stemming from having purchased 38,200 shares on August 27, 2021—after the pre-market statement issued by Quanterix. These losses, like Rao's post-class period losses, are irrelevant to PSLRA lead plaintiff analysis. *Netsky*, 2000 WL 964935, at *4 n.9; *Rent-Way*, 218 F.R.D. at 114.

**BLOCK & LEVITON LLP**

Jeffrey C. Block, Esq. (*pro hac vice*)
Jacob Walker, Esq. (*pro hac vice forthcoming*)
260 Franklin St., Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Fax: (617) 507-6020
Email: jeff@blockleviton.com
Email: jake@blockleviton.com

*Counsel for Movant Dr. Barsa and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 9th day of November 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ William B. Federman
William B. Federman