# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| PIERRE BRAZEAU, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, ERIC J. SCHOEN, JAMES W. KUPIEC, NADAV FRIEDMAN, AND MICHAEL MARSMAN,<br><br>Defendants. | Case No. 1:21-cv-00751-RP<br><br><u>CLASS ACTION</u> |

**REPLY IN SUPPORT OF DR. JOHN BARSA'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**

Lead Plaintiff movant Dr. John Barsa respectfully submits this reply memorandum of law in further support of his motion (ECF No. 14) for appointment as Lead Plaintiff in this securities class action. Dr. Barsa should be appointed lead plaintiff because he is the only adequate and typical movant who has not withdrawn as a lead plaintiff applicant.

## I.      INTRODUCTION

Competing movant Bozorgi spills a surprising amount of ink emphasizing every way in which he has the greatest financial interest—a point not in dispute—yet his Response treats his ability to satisfy the Rule 23 requirements of typicality and adequacy as a *fait accompli*. This Court should have serious concerns about Mr. Bozorgi's suitability to represent the Class given his susceptibility to unique reliance defenses arising from his in-and-out trading activity. Dr. Barsa suffers from no such limitation.

It is also curious that several other movants (Manohar Rao, the self-titled "Cassava Securities Group," and Steve Burmeister) take the unusual step of backing Bozorgi's lead plaintiff motion in their notice of non-opposition to the competing motions, even going so far as to claim Bozorgi satisfies Rule 23's typicality and adequacy requirements. Bozorgi enthusiastically points to these endorsements in asking the Court to find him the presumptive lead plaintiff. *See* ECF No. 53, at 8. But the PSLRA's lead plaintiff process is not a popularity contest. These endorsements (which suggest some unarticulated arrangement between Bozorgi's counsel and counsel for the endorsing movants) are meaningless under the PSLRA. Plus, even though competing movants suggest they are ready to step in if Bozorgi is not appointed, capitulating at the first sign of adversity does not speak well of their tenacity to be a strong and forceful advocate for the class they would like to represent.

1

In-and-out traders, like Bozorgi, have been found to not satisfy Rule 23 because they are susceptible to the unique defense that they did not rely on the defendant's alleged misrepresentations in making their decisions to buy and sell securities.[1] *Plymouth Cty. Ret. Sys. v. Apache Corp.*, No. 4:21-CV-575, 2021 WL 4726510, at *4-5 (S.D. Tex. Oct. 6, 2021); *Shaffer v. Digital Generation, Inc.*, No. 3:13-CV-1684-N, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013); *see also Applestein v. Medivation Inc.*, No. C-998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) ("Day-traders [(*i.e.*, in-and-out traders)] typically focus on technical price movements rather than price, and therefore are subject to a defense th[at] they would have purchased the stock at issue regardless of the misstatement/omission.") (internal quotation marks and alteration omitted). "There is no reason to subject the putative class to the unique defenses that would undoubtedly take center stage if [Bozorgi] were appointed lead plaintiff. This is especially true given that [Dr. Barsa] is a non-conflicted candidate for lead plaintiff [who is] available and willing to assume such responsibilities." *Apache*, 2021 WL 4726510, at *5.

---

[1] Some other circuits see a split of authority of whether in-and-out traders are typical of the class, but courts in the Fifth Circuit uniformly agree that in-and-out traders are subject to the unique defense that they did not rely on defendants' misrepresentations and omissions, and that the putative class should not be saddled with such an encumbered representative (at least where another adequate and typical lead plaintiff movant exists). *See Apache*, 2021 WL 4726510, at *4 ("These repeated in-and-out stock transactions 'raise serious concerns about [a potential lead plaintiff's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions' of the defendants.") (alteration in original); *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 837 (S.D. Tex. 2015) ("The question remains whether [the day trader] relied on any of the FCPA-related omissions and would vigorously litigate a claim based on them."); *Shaffer*, 2013 WL 12430537, at *3 ("It is enough that Alavi's high volume trading activity, including buying and selling Digital Generation stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses.").

## II.     ARGUMENT

### A.     Bozorgi is Not Typical of the Putative Class Because His In-and-Out Trading Subjects Him to a Unique Defense

The PSLRA creates a presumption that the lead plaintiff movant with "the largest financial interest in the relief sought by the class" who **also** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure" is the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 433 (S.D. Tex. 2010). As Bozorgi rightly notes, this presumption can only be rebutted by "proof" that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." ECF No. 53, at 13 (quoting *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *9 (S.D. Tex. Mar. 23, 2017)). Here, the proof of Bozorgi's inability to satisfy Rule 23 is his stock trading; all the proof necessary to rebut the presumption.

"[B]ecause the PSLRA requires proof that the movant is merely 'subject to' unique defenses, 'many courts have rejected appointments of lead plaintiffs based on *potential* risks.'" *Rodriguez v. DraftKings, Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (emphasis in original) (citation omitted). Thus, "the Court need not conclude that the defense is likely to or will succeed" but, "[r]ather, it must find only 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.'" *Id.* (citation omitted). "This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions.'" *Id.* at 9 (citation omitted).

Regardless of whether the Court considers Bozorgi's PSLRA Certification (ECF No. 26-3) and the accompanying loss chart (ECF No. 26-4) prepared by his lawyers at step two or step three of the lead plaintiff analysis, the same conclusion follows: Bozorgi is not an adequate and typical representative of the putative class. Either he cannot make a prima facie Rule 23 showing at step two because his in-and-out trading renders him atypical of the putative class, *see Apache*, 2021 WL 4726510, at *3-5 (holding that movant's in-and-out trading activity prevented him from making a prima facie showing under Rule 23), or his certification and loss chart are the proof that rebuts the presumption by showing that he is subject to a unique defense, *see Shaffer*, 2013 WL 12430537, at *2-3 (holding that movant's "high volume trading activity, including buying and selling Digital Generation stock on the same day … rebuts the presumption that [he] is the most adequate plaintiff").

*Apache*, which is one of two Fifth Circuit opinions to address the suitability of in-and-out traders to be lead plaintiffs, points to the same conclusion. 2021 WL 4726510, at *4-5. There, the plaintiff with the largest financial interest "repeatedly bought and sold large portions of Apache stock (usually in the range of 55,000+ shares) on the same day or within a matter of days." *Id.* at *4. On twelve occasions over the course of three months he acquired and sold tens of thousands of shares of Apache stock. *Id.* The Court held that "[t]hese repeated in-and-out stock transactions 'raise serious concerns about [a potential lead plaintiff's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions' of the Defendants." *Id.* (quoting *Applestein*, 2010 WL 3749406, at *3). Like the plaintiff found atypical in *Apache*, Bozorgi bought and sold thousands of shares of Cassava stock eleven times on the same day or within a matter of days; his trading activity was essentially identical to that in *Apache*. See ECF No. 26-3; ECF No. 26-4. The Court should similarly find that

4

Bozorgi's "repeated in-and-out stock transactions" raise serious concerns about his typicality and susceptibility to the defense that he was trading in response to information other than Defendants' misstatements and omissions. *Id.*; *see also DraftKings*, 2021 WL 5282006, at *10 ("[T]he specter of [attacks that an in-and-out trader did not rely on the market price in trading DraftKings] would loom large were he to be a proxy for the class. And courts have declined to appoint movants subject to them.").

Bozorgi is likely to highlight that he held *some* shares throughout the whole class period in an attempt to distance himself from the problematic movant in *Apache* who repeatedly liquidated his entire holdings each time he bought and sold shares. But this is a distinction without difference.[2]

The issue with in-and-out traders is that the basis of their decisions to purchase or sell stock during the class period will inevitably become a critical issue in the case. Invoking class-wide reliance here requires demonstrating that the proposed class representative relied on the integrity of the market price for Cassava. The Supreme Court has made clear, however, that a purchaser of fraudulently inflated stock who sells his shares "quickly before the relevant truth begins to leak out" is not harmed by the misrepresentation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "Instead, any loss or gain from such a sale would be traceable to ordinary market forces." *Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020). This is the type of challenge that can "sever[] the link between the alleged

---

[2] Certainly, if Bozorgi had repeatedly liquidated his Cassava holdings, there would be an even stronger basis for coming to the same conclusion that he is atypical of the putative class, but the fact that he held some shares throughout the class period does not eliminate his underlying susceptibility to the unique defense that he traded in response to information other than Defendants' misstatements and omissions.

5

misrepresentation and [Bozorgi's] decision to trade at a fair market price," and preempt class certification. *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988).

Bozorgi sold 148,625 of the 176,400 Cassava shares he purchased *before* the August 24, 2021 disclosure that the FDA had received a Citizen Petition to halt ongoing trials of Simufilam. This means he sold 85% of his Cassava acquisitions before any piece of the truth entered the market. ECF No. 26-3; ECF No. 26-4. Put another way, he sold the vast majority of his shares at an alleged artificially inflated price: he actually profited from those transactions. These facts—which are shown in Bozorgi's own Certification—should give the Court "serious concerns about [his] vulnerability to a defense that [he] was trading in response to information other than the alleged misstatements and omissions made." *Id.* Indeed, in *Enphase*, the court relied on *Dura* to hold that the PSLRA presumption has been rebutted where the movants with the largest financial interest "sold the lion's share of their class period Enphase stock acquisitions prior to June 17, 2020" because that fact gave the Court "serious concerns about their vulnerability to a defense that they were trading in response to information other than the alleged misstatements and omissions made." *Id.*

Bozorgi's trading activity is no different. It suggests that, if selected as lead plaintiff, a critical issue in the case and focus of discovery will become whether his decisions to purchase and sell Cassava stock during the class period had anything to do with the misstatements and omissions identified in the complaint, *i.e.*, whether Bozorgi can rely on the integrity of the market price for Cassava and thus invoke classwide reliance. Should he be appointed lead plaintiff, the putative class will be saddled with the unique defenses to his reliance that Defendants will inevitably raise in opposition to class certification. "The question is whether the appointment of a particular lead plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would

6

unnecessarily complicate and/or stall the litigation." *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017). "There is simply no reasons to subject the putative class to the unique defenses that would undoubtedly take center stage if [Bozorgi] were appointed lead plaintiff." *Apache*, 2021 WL 4726510, at *5. The Court should deny Bozorgi's motion.

### B. Dr. Barsa is a Typical and Adequate Class Representative and There is No Proof to Rebut the Statutory Presumption

Dr. Barsa readily satisfies Rule 23's adequacy and typicality requirements. As is clear from Dr. Barsa's Certification, he purchased or acquired Cassava securities during the Class Period (on August 12 and 13, 2021) at artificially inflated prices, did not sell those shares until after both alleged corrective disclosures, and was damaged thereby. ECF No. 15, at 10; ECF No. 16-3, at 2. His claims also arise from the same course of events and are similar (if not identical) to those of the class. Dr. Barsa is an adequate class representative because his interests are aligned with those of the class, and he has selected highly qualified counsel to represent him and the class. ECF No. 15, at 11. Moreover, Dr. Barsa is a practicing Psychiatrist, and many of his patients suffer from Alzheimer's disease—the very condition Cassava's lead drug candidate, Simufilam, is supposed to treat. He followed the development of Simufilam with interest and ultimately invested a significant portion of his retirement savings in shares of Cassava based on Simufilam's apparent promise. Dr. Barsa is the judicious, diligent lead plaintiff envisioned by the PSLRA and its drafters. He is therefore entitled to the statutory presumption.

Competing movants have not and cannot point to any evidence that shows Dr. Barsa's inadequacy or atypicality. Accordingly, he should be appointed lead plaintiff, Block & Leviton should be appointed lead counsel, and Federman & Sherwood should be appointed local counsel.

**III.     CONCLUSION**

Dr. Barsa is the most adequate movant seeking to be designated lead plaintiff. Mr. Bozorgi is inadequate to represent the class because he is subject to unique defenses surrounding his reliance on Defendants' alleged misrepresentations and omissions. Every other movant has either noticed their non-opposition to competing motions or reports a smaller financial interest than Dr. Barsa.[3] Because Dr. Barsa's financial interest is facially larger than that of any other potentially adequate movant, and Dr. Barsa is otherwise adequate and typical, he respectfully submits that he should be appointed lead plaintiff.

Dated: November 16, 2021                          Respectfully submitted,

/s/ William B. Federman
William B. Federman (TX Bar No. 00794935)
**FEDERMAN & SHERWOOD**
212 W. Spring Valley Road
Richardson, Texas 75081
Telephone: 405) 235-1560
Fax: (405) 239-2112
Email: wbf@federmanlaw.com

*Liaison Counsel for Movant Dr. John Barsa*

**BLOCK & LEVITON LLP**
Jeffrey C. Block, Esq. (*pro hac vice*)
Jacob Walker, Esq. (*pro hac vice forthcoming*)
260 Franklin St., Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Fax: (617) 507-6020
Email: jeff@blockleviton.com
Email: jake@blockleviton.com

---

[3] To the extent that Rao claims to have only indicated his non-opposition to Bozorgi's motion, Dr. Barsa has already shown that Rao is clearly inadequate and atypical. *See* ECF No. 51, at 8-12.

*Counsel for Movant Dr. Barsa and*
*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 16th day of November 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ William B. Federman
William B. Federman
