UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| PIERRE BRAZEAU, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CASSAVA SCIENCES, INC., et al. <br><br> Defendants. | § § § § § § § § § § § | Civil Action No. 1:21-cv-00751-RP <br><br> <u>CLASS ACTION</u> |
| WANDA NEWELL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CASSAVA SCIENCES, INC., et al. <br><br> Defendants. | § § § § § § § § § § § § § | Civil Action No. 1:21-cv-00760-RP <br><br> <u>CLASS ACTION</u> |
| KATLYN K. REIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CASSAVA SCIENCES, INC., et al. <br><br> Defendants. | § § § § § § § § § § § § § | Civil Action No. 1:21-cv-00856-RP <br><br> <u>CLASS ACTION</u> |

[Caption continued on following page.]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOHAMMAD BOZORGI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

4863-6028-0579.v1

| | | |
|---|---|---|
| MANOHAR K. RAO, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>CASSAVA SCIENCES, INC., et al.,<br><br>        Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:21-cv-00971-RP |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................2

    A. Because Mr. Bozorgi Held Shares Throughout the Class Period, He Simply Cannot Be (and Is Not) an "In-and-Out" Trader..........................................4

    B. Because Mr. Bozorgi Never Liquidated His Entire Cassava Stock Holdings in Rapid-Fire Daily Transactions, He Is Not A Day Trader ....................7

III. CONCLUSION...................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Applestein v. Medivation Inc.*,
 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ................................................8, 9, 10

*Buettgen v. Hartless*,
 263 F.R.D. 378 (N.D. Tex. 2009) ...............................................................................3

*Dura Pharm., Inc. v. Broudo*,
 544 U.S. 336 (2005) ....................................................................................................5

*Eichenholtz v. Verifone Holdings, Inc.*,
 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .........................................................8

*Erickson v. Snap, Inc.*,
 2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) .......................................................7

*Giovagnoli v. GlobalSCAPE, Inc.*,
 2017 WL 11220692 (W.D. Tex. Nov. 6, 2017) .......................................................3

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009) ........................................................................................6

*In re SemGroup Energy Partners, L.P. Sec. Litig.*,
 2008 WL 4826318 (N.D. Okla. Oct. 27, 2008) .......................................................4

*Lopez v. Ageagle Aerial Sys., Inc*,
 2021 WL 2377343 (C.D. Cal. June 7, 2021) ..........................................................10

*Lundy v. Ideanomics, Inc.*,
 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ..........................................................6

*Moshell v. Sasol Ltd.*,
 2020 WL 2115410 (S.D.N.Y. May 4, 2020) ............................................................5

*Mullins v. AZZ, Inc.*,
 2018 WL 7504312 (N.D. Tex. Aug. 9, 2018) ......................................................3, 4

*Murphy v. JBS S.A.*,
 2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017) .............................................................3

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
 63 F. Supp. 3d 394 (D. Del. 2014) ............................................................................9

*Parker v. Hyperdynamics Corp.*,
 126 F. Supp. 3d 830 (S.D. Tex. 2015) ...............................................................5, 6, 9

**Page**

*Plymouth Cty. Ret. Sys. v. Apache Corp.*,
   2021 WL 4726510 (S.D. Tex. Oct. 6, 2021) ................................................................. 5, 8, 9

*Prefontaine v. Research in Motion Ltd.*,
   2012 WL 104770 (S.D.N.Y. Jan. 5, 2012) ............................................................................ 9

*Shaffer v. Digital Generation, Inc.*,
   2013 WL 12430537 (N.D. Tex. Sept. 19, 2013) ................................................................... 8

*Sklar v. Amarin Corp. PLC*,
   2014 WL 3748248 (D.N.J. July 29, 2014) .................................................................... 1, 4, 5

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................................................................. 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4 ..................................................................................................................................... 1
   §78u-4(a)(3)(B)(iii)(I) ........................................................................................................ 2, 3
   §78u-4(a)(3)(B)(iii)(II) ....................................................................................................... 2, 3

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................................ 1, 2, 3

**SECONDARY AUTHORITIES**

Manual For Complex Litigation (4th ed.)
   §31.31 ..................................................................................................................................... 3

**I.      INTRODUCTION**

After two rounds of briefing, two class members remain seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. §78u-4.  Unable to dispute that Mohammad Bozorgi has the largest financial interest in this action, Dr. John Barsa attempts to manufacture trading pattern defects that he claims preclude Mr. Bozorgi from meeting the typicality and adequacy requirements of Rule 23.  Even assuming Barsa's position was legally sound (and it is not, as articulated below), the supposed issues flagged by Barsa: that Bozorgi is an in-and-out trader and a day trader, simply do not exist and are refuted by Bozorgi's trading records (ECF No. 26-3, ECF No. 26-4) and his Supplemental Declaration filed herewith, which conclusively establish that:

- Bozorgi bought "in" to Cassava Sciences, Inc. stock on February 3, 2021 and subsequently never liquidated his position (*i.e.*, went "out").  *See Sklar v. Amarin Corp. PLC*, 2014 WL 3748248, at *9 n.8 (D.N.J. July 29, 2014) ("In-and-out traders are those who both purchase and sell **all** of their shares prior to a corrective disclosure . . . .");[1]

- Bozorgi is not a "frequent[]" day trader, as he made a total of 27 transactions in Cassava stock during the entire Class Period, and never more than two transactions on any day;[2]

- The notion Bozorgi could objectively qualify as an "in-an-out trader" or a "day trader" is undermined by the fact that he continuously held a long position of thousands of Cassava common shares for over six months and through all three corrective disclosures alleged in the case (unlike Barsa who purchased 100% of his shares after the first corrective disclosure and only held them for two weeks of the nearly year-long Class Period); and

- At all times during the Class Period, Bozorgi relied on both the integrity of the market price of Cassava's stock and the accuracy of Cassava's representations to investors.

---

[1]     Unless otherwise noted herein, all emphasis is added and citations are omitted.

[2]     "Class Period" refers to the September 13, 2020–August 27, 2021 class period alleged in the *Newell*, *Rein*, and *Rao* Actions.

- 1 -

Consequently, Dr. Barsa's false speculation and innuendo fall far short of the exacting "proof" the PSLRA requires to rebut the presumption that Mr. Bozorgi is the most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Mr. Bozorgi has evidenced his substantial financial interest and ability to represent the most inclusive class of Casasva investors. He is not subject to any conflicts of interest or unique defenses. As such, Bozorgi should be appointed as Lead Plaintiff in this action.

## II. ARGUMENT

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Dr. Barsa concedes that Mr. Bozorgi has the largest financial interest out of the movants. *See* ECF No. 51.








Mr. Bozorgi has also made a *prima facie* showing that he satisfies Rule 23's adequacy and typicality requirements. *See* ECF No. 25 at 5-8; ECF No. 53 at 6-9.[3] Like all other members of the class, Bozorgi: (1) purchased Cassava stock during the Class Period; (2) was adversely affected by defendants' false and misleading statements and omissions; and (3) suffered damages thereby. Therefore, Bozorgi is the presumptive lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Pursuant to the PSLRA, Mr. Bozorgi's presumptive status can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). "'***[E]xacting proof' is needed to rebut the presumption***.'" *Mullins v. AZZ, Inc.*, 2018 WL 7504312, at *2 (N.D. Tex. Aug. 9, 2018) (citing *Murphy v. JBS S.A.*, 2017 WL 4480751,

---

[3] The "inquiry at this stage is not as searching as would follow a motion for class certification, yet the plaintiff or group of plaintiffs must make some showing that its claims are typical of the putative class and that it has the capacity to adequately represent the class." *Buettgen v. Hartless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009); *see also Giovagnoli v. GlobalSCAPE, Inc.*, 2017 WL 11220692, at *3 (W.D. Tex. Nov. 6, 2017) (a lead plaintiff movant needs to only make "a preliminary showing" that he satisfies Rule 23's typicality and adequacy requirements); Manual For Complex Litigation §31.31 (4th ed.) ("The showing under Rule 23 is considered a preliminary inquiry into whether the plaintiff has made a prima facie showing that the adequacy and typicality requirements have been met.").

at *5 (E.D.N.Y. Oct. 6, 2017)).  Indeed, "'speculative assertions'" and "'[m]ere innuendo and inferences will not suffice to support allegations of atypicality, conflict of interest or unique defenses.'"  *Id.* (citing *In re SemGroup Energy Partners, L.P. Sec. Litig.*, 2008 WL 4826318, at *2 (N.D. Okla. Oct. 27, 2008)).

Multiple other class members – including those with larger financial interests than Dr. Barsa – presumably assessed Mr. Bozorgi's lead plaintiff application and trading records, and explicitly conceded that Bozorgi is typical and adequate of the putative class.[4]  As the sole opponent to Bozorgi's motion, Barsa essentially contends that each of these movants missed something obvious, *i.e.*, that Bozorgi is "***clearly*** inadequate," and that Bozorgi's flaws would "'***undoubtedly*** take center stage'" in any litigation led by Bozorgi.  ECF No. 51 at 3, 13.  Barsa contends this is so because Bozorgi is supposedly "conflicted" and characterized as an "in-and-out" trader and a "day trader."  *Id.* at 3, 8 (citing three cases in which a court declined to appoint a "day trader" or a movant with a problematic "in-and-out" trading pattern as a lead plaintiff).  Barsa's argument does not withstand basic scrutiny because Bozorgi's ***Certification*** confirms he is neither an "in-and-out trader" nor a day trader.

### A.     Because Bozorgi Held Shares Throughout the Class Period, He Simply Cannot Be (and Is Not) an "In-and-Out" Trader

An in-and-out trader is one who opens a stock position and then completely liquidates that position before a corrective disclosure.  *Sklar,* 2014 WL 3748248, at *9 n.8 ("In-and-out traders are those who both purchase and sell ***all*** of their shares prior to a corrective disclosure . . . .").  Mr.

---

[4]     *See* ECF No. 52 (non-opposition to Mr. Bozorgi's motion by Manohar K. Rao, the movant who would otherwise possess the largest individual financial interest stating that he "does not oppose the lead plaintiff motion of Mohammad Bozorgis"); ECF No. 43 (Movant Steve Burmeister observing that "Mohammad Bozorgi possesses the 'largest financial interest in the relief sought by the class' pursuant to the PSLRA. . . .  Mr. Bozorgi also appears to satisfy Rule 23's adequacy and typicality requirements."); ECF No. 48 at 3 (The Choi Group recognizing that "Mohammad Bozorgi, claiming losses of in excess of $1.5 million, has 'the largest financial interest in the relief sought by the Class' and should be appointed Lead Plaintiff.  Movant thus does not oppose Mr. Bozorgi's motion for appointment as Lead Plaintiff . . . .").

- 4 -

Bozorgi plainly is not an "in-and-out" trader because he never liquidated his entire position in Cassava stock but rather continuously held roughly the same amount of shares (between 25,000 and 27,775) through all three corrective disclosures alleged in this case. *See Sklar*, 2014 WL 3748248, at *9 n.8 (finding assertion that presumptive movant was an in-and-out trader "is not supported by the record" because he did not "both purchase and sell *all* of their shares prior to a corrective disclosure" but rather "had 685,000 ADRs at the end of the class period, at the time of Amarin's corrective disclosures"); *Moshell v. Sasol Ltd.*, 2020 WL 2115410, at *2 n.2 (S.D.N.Y. May 4, 2020) ("While some courts have discounted a potential lead plaintiff's losses where that plaintiff 'purchased and sold *all of its shares* prior to any' corrective disclosure and thus could not 'prove a causal connection between the alleged fraudulent conduct and its losses,' Cohn is not such an 'in-and-out' trader. . . . ***Cohn purchased shares before, and retained them after, two alleged corrective disclosures***."); *cf. Plymouth Cty. Ret. Sys. v. Apache Corp.*, 2021 WL 4726510, at *4 (S.D. Tex. Oct. 6, 2021) (movant found to be an in-and-out trader because he "purchased and ***completely liquidated*** his Apache stock holdings a dozen times").

Dr. Barsa's argument is not only inapt from a definitional perspective, but it also fails to account for the underlying rationale behind courts' analyses of "in-and-out" traders following the Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-43 (2005), which established that when a purchaser of fraudulently inflated stock sells his "shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* It is to ***that*** end that courts have excluded losses from sales made before any corrective disclosure from a movant's "largest financial interest" analysis (*see, e.g.*, *Moshell,* 2020 WL 2115410, at *2) or have found such investors atypical of the class when ***all*** of their market losses were incurred before any corrective disclosure – *i.e.*, because such movants have no compensable loss. *See, e.g.*, *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 837 (S.D. Tex. 2015) (discussing in-and-out trading of

plaintiff who "purchased additional stock after the first [corrective] disclosure but sold *it all* prior to the second [corrective] disclosure" and observing that the Supreme Court held that "a plaintiff did not have standing to show loss causation where he *completely sold out* of a security by the time the operative corrective disclosure was made"); *In re Flag Telecom Holdings Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009) ("in-and-out traders" were unable to "prove loss causation as a matter of law" where disclosure occurred after date traders closed their positions).

Here, Mr. Bozorgi made his first Class Period purchase of Cassava stock on February 3, 2021.  *See* ECF No. 26-3.  Since that first purchase, Bozorgi has maintained a continuously net long position of thousands of shares of Cassava stock until the end of the Class Period.  *Id.*  In other words, at no point after Bozorgi's initial purchase on February 3, 2021 did he "completely s[ell] out" or "close[] [his] position." *Parker*, 126 F. Supp. 3d at 837.  Moreover, Bozorgi held at least tens of thousands of Cassava shares through each of the three alleged corrective disclosures: (a) he held 25,000 shares through the July 29, 2021 corrective disclosure; (b) he held 27,775 shares through the August 24, 2021 corrective disclosure; and (c) he held 27,775 shares through the August 27, 2021 corrective disclosure. Bozorgi's continuous net long position of thousands of Cassava shares for over six months is multiple times longer than any other nine lead plaintiff movants (and over ten times longer than Dr. Barsa himself who only held Cassava shares for only two weeks from August 12 to August 27 of the nearly year-long Class Period).[5]

---

[5]   The sincerity of Dr. Barsa's stated concern that the putative class members should not have a lead plaintiff who is "conflicted" is further undermined by the fact that ***100%*** of his shares were purchased ***after*** the July 29, 2021 partial corrective disclosure (and he therefore could not have been damaged by that revelation), a fact that, according to Barsa's own logic, would make him in direct conflict with those class members like Mr. Bozorgi who were damaged by that disclosure.  In other words, while Bozorgi's trading pattern incentivizes him to vindicate the rights of (and equitably allocate eventual settlement proceeds to) class members injured by the July 29, 2021 disclosure, Dr. Barsa's trading incentivizes him to only protect class members injured during the two week period he held his shares.  *See, e.g.*, *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) ("Sons may be subject to a unique defense because he purchased ***all*** his class period shares



Accordingly, Mr. Bozorgi is simply not an "in-and-out" trader, nor does his trading or the timing thereof implicate any concerns expressed by courts when evaluating in-and-out trading patterns.

**B.     Because Bozorgi Never Liquidated His Entire Cassava Stock Holdings in Rapid-Fire Daily Transactions, He Is Not A Day Trader**

The U.S. Securities and Exchange Commission defines day-traders as those who "rapidly buy, sell and short-sell stocks throughout the day in the hope that the stocks continue climbing or falling in value for the seconds or minutes they hold the shares, allowing them to lock in quick profits."[6] Mr. Bozorgi does not fit that definition. Bozorgi made a total of only 14 purchases and 13 sales during the 347-day Class Period, averaging approximately one transaction every two weeks. On Bozorgi's highest-frequency trading days, he made no more than *two* transactions in Cassava stock in any single trading session (as compared to Dr. Barsa, for example, who made up to eight

---

after the June 25, 2020 partial corrective disclosures . . . .") (emphasis in original). Ironically, Barsa's 100% post-disclosure purchase pattern also subjects him to the very same unique defense that he incorrectly accuses Bozorgi of being subject to. *See Erickson v. Snap, Inc.*, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (movant who purchased ***60%*** of his shares ***after*** the first of three corrective disclosures might be exposed "to unique defenses regarding whether [he] actually relied on any alleged misrepresentations by [defendants]").

[6]     *See* https://www.investor.gov/introduction-investing/investing-basics/glossary/day-trading.

transactions in a single day). Bozorgi also did not hold his shares for mere "seconds" or "minutes," but was a continuous holder of Cassava shares for over six months – significantly longer than that of any other movant.

The cases relied on by Dr. Barsa illustrate just how inapposite the "day trader" label is to Mr. Bozorgi. The movant in *Shaffer v. Digital Generation, Inc.*, 2013 WL 12430537 (N.D. Tex. Sept. 19, 2013), was disqualified because Judge Godbey observed that his "transaction history indicate[ed] that he engaged in over ***800 trades*** of Digital Generation stock during a 266-day window within the Class Period, making ***as many as 55 transactions in a single day***." *Id.* at *3. In so holding, Judge Godbey relied on two Northern District of California cases which noted that the day-trader movants in those cases had "***over 5,000 trades***, with an average of 19 trades a day, during a nine-month period" and "***407 trades over a 644-day period, with as many as 44 trades in a single day***." *Id.* (citing *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008), and *Applestein v. Medivation Inc.*, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)). The only other case cited by Barsa is *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008), in which the disqualified movant – unlike Bozorgi – was "unusually active, making as many as 80 separate transactions of Syntax–Brillian stock in a single day." What's more, that court made clear that "a day trader is not ipso facto disqualified from the lead plaintiff role," and, like in *Apache*, rejected the movant in favor of a preferred institutional investor because of the movant's "unique trading pattern ***combined*** with questions about adequacy." *Id.*[7] Barsa fails to cite a single case (and Bozorgi is not aware of any) where a trader with 27 trades over the course of a year was found to be

---

[7]   Dr. Barsa's reliance on *Apache* is likewise misplaced because the disqualified movant was explicitly determined to have "purchased and ***completely liquidated*** his Apache stock holdings a dozen times." 2021 WL 4726510, at *4. In addition, the movant was a "net seller" and "net gainer" because the movant's gains on his sales of stock during the class period exceeded the funds expended purchasing those shares, making the movant susceptible to a unique defense that he profited from defendants' fraud. *Id.*  There is no such net seller/net gainer allegation against Mr. Bozorgi here.

- 8 -

a "day trader."

Moreover, even if Bozorgi were a "day trader" – which he is not – this would not be a sufficient basis on which to deny his motion. Indeed, courts have appointed "day traders" as lead plaintiffs because day traders "'have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.'" *Prefontaine v. Research in Motion Ltd.*, 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012); *see also OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 410 (D. Del. 2014) ("Absent actual evidence that plaintiff did not rely on market price, the characterization of the presumptive lead plaintiff as a 'day trader' does not prove that the presumptive lead plaintiff 'is subject to a unique defense to rebut the presumption.'") (collecting cases). In *Parker*, for example, Judge Harmon observed that competing movants "present conflicting authority from other districts on whether Cuneo may be subject to unique defenses as a 'high-volume,' 'high-frequency,' or 'day' trader," but ultimately concluded that "Cuneo's 325 trades over three years do not appear to raise unique defenses merely on the basis of frequency." 126 F. Supp. 3d at 837.

Mischaracterizations aside, Dr. Barsa is unable to articulate what about Mr. Bozorgi's two dozen transactions makes him "conflicted," or how that supposed conflict would manifest such that Bozorgi might be subjected to an unspecified unique defense. The closest Barsa comes to doing so is by quoting language from the *Apache* case (which itself is a quote from *Applestein*) suggesting that frenzied trading can subject a movant to a unique defense that "'he was trading in response to information other than the alleged misstatements and omissions of the Defendants.'" ECF No. 51 at 6.[8] It is unclear how Bozorgi's 27 trades over the 347-day Class Period could possibly qualify as

---

[8]   As recently explained by another court in dismissing a "day trading" challenge, that language from *Apache/Applestein* is limited to situations when the candidate is essentially engaged in high-frequency trading that facially evinces a disregard for the market price. *See Lopez v. Ageagle Aerial Sys., Inc*, 2021 WL 2377343, at *5 (C.D. Cal. June 7, 2021) ("[B]ecause the sum total of Bradley's

"frantic" or high frequency day trading, let alone render him a "conflicted candidate" that was subjected to a unique reliance defense.  Nonetheless, to eliminate any possible doubt, Bozorgi has declared under penalty of perjury that he relied on both the market price of Cassava's stock and the accuracy of Cassava's representations to investors when investing in Cassava stock during the Class Period.  *See* Affidavit of Joe Kendall in Support of Reply Memorandum of Law in Further Support of Mohammad Bozorgi's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel Selection of Counsel, Ex. 1, Appendix Tab 1.

Ultimately, Dr. Barsa has not credibly demonstrated that Mr. Bozorgi's trading pattern is at all atypical or would subject Bozorgi to unique defenses.  As such, there is no "proof" to rebut the presumption in Bozorgi's favor and his motion should be granted.

## III. CONCLUSION

The PSLRA requires proof to rebut the presumption that the most adequate plaintiff – here, the Mr. Bozorgi – should be appointed Lead Plaintiff.  Instead of proof, Dr. Barsa proffers a string of suppositions built upon an inaccurate factual foundation, undermined by inapposite legal authority.  Consequently, the Court should find that Barsa has not met his heavy burden to rebut the presumption in favor of Bozorgi's appointment as lead plaintiff.  Bozorgi's motion for appointment as lead plaintiff (ECF No. 25) should be granted.

DATED:  November 16, 2021                     Respectfully submitted,

*s/ Joe Kendall*
JOE KENDALL

---

twelve AgEagle trades occurred over only a five-day period, the Court finds Bradley's trading history dissimilar to the type of sustained, 'high-volume' trading that has been found disqualifying, including by the cases upon which Young relies. . . .  For example, the facts at issue here are not like those at issue in *Applestein* . . . where the court found that the presumptive lead plaintiff could be 'susceptibl[e] to the defense that he was trading in response to information other than the alleged misstatements and omissions' based on evidence indicating that he 'engaged in 407 trades of [defendant's] stock over a 644 day period within the class period.'") (quoting *Applestein*, 2010 WL 3749406, at *3).

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for [Proposed] Lead Plaintiff

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
JENNIFER N. CARINGAL
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
jcaringal@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiffs

- 11 -

- 12 -

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document and attached exhibits through the Court's CM/ECF system on November 16, 2021, which will serve all counsel of record.

*/s/ Joe Kendall*
JOE KENDALL
