# EXHIBIT A

EFiled:  Aug 24 2022 04:05PM EDT
Transaction ID 67968685
Case No. 2022-0737-MTZ

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| JEANNE M. CALAMORE and DWAYNE BRAZIL, derivatively on behalf of Nominal Defendant CASSAVA SCIENCES, INC., | |
| Plaintiffs, | C.A. No. 2022- 0737-MTZ |
| v. | **PUBLIC VERSION** **FILED ON AUGUST 24, 2022** |
| REMI BARBIER, NADAV FRIEDMANN, ROBERT GUSSIN, MICHAEL O'DONNELL, SANFORD ROBERTSON, and PATRICK SCANNON, | |
| Defendants, | |
| -and- | |
| CASSAVA SCIENCES, INC., | |
| Nominal Defendant. | |

### <u>VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT</u>

Plaintiffs Jeanne M. Calamore and Dwayne Brazil ("**Plaintiffs**"),

derivatively on behalf of Nominal Defendant Cassava Sciences, Inc. ("**Cassava**" or

the "**Company**"), submit this Verified Stockholder Derivative Complaint against

the defendants named herein for breach of fiduciary duty and unjust enrichment.

The allegations in this Complaint are based upon Plaintiffs' personal

knowledge as to themselves, and upon information and belief, including the

investigation of counsel, the review of publicly available information, and the review of books and records produced by the Company as of the date of this Complaint in response to Plaintiffs' books and records demands under 8 *Del. C.* § 220 ("**Section 220**") as to all other matters, all of which books and records are expressly incorporated into this Complaint. For the avoidance of doubt, this incorporation by reference does not change the pleading standard applicable to any motion to dismiss that may be filed in this case.

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this action to challenge a bonus plan that ███████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

2.      After the Company's stockholders rejected an amendment to the Company's equity compensation plan that would have allowed additional stock awards to directors, defendants hatched a plan to overcompensate themselves through the back door without the need for stockholder approval.

3.      ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

2

███████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

█████████

4.    ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████ The

receipt of cash did not require stockholder approval as opposed to the issuance of

additional shares under the existing equity compensation plan – which

stockholders had already rejected.

5.    The Board predictably approved the CEO's plan. But the story does

not end there. ██████████████████████████████████

████████████████████████████████████

███████████████████████████████████

██████████████████████████ The Company's stock price

predictably spiked when the MNPI was publicly released a few days later.

6.    The rising stock price quickly triggered the first valuation threshold,

automatically entitling the CEO and non-employee directors to lucrative cash

bonuses. They automatically accrued even greater bonuses as the Company's stock

price continued to appreciate in the following months after the disclosure of

additional favorable developments concerning the Company's flagship drug. In 2021 alone, the plan operated to automatically award the Company's CEO $74.9 million and each of the four non-employee directors $4.5 million in cash bonuses.

7.     This compensation is orders of magnitude greater than that awarded by the Company's competitors and industry norms. The process resulting in the adoption of the bonus plan made no pretense of being fair to the Company and its public stockholders. Defendants' compensation is grossly excessive on its face. Defendants breached their fiduciary duties of loyalty by putting their interests ahead of those of the Company and were unjustly enriched.

## THE PARTIES

*Plaintiffs*

8.     Plaintiff Jeanne M. Calamore is a stockholder of Cassava common stock, and has held her stock at all relevant times.

9.     Plaintiff Dwayne Brazil is a stockholder of Cassava common stock, and has held his stock continuously since September 14, 2020.

*Nominal Defendant*

10.     Nominal Defendant Cassava is a Delaware corporation that trades on the Nasdaq under the ticker symbol "SAVA." It is a clinical-stage biotechnology company principally focused on developing a drug called Simufilam (also known as PTI-125) to treat Alzheimer's disease. Prior to May 2019, the Company was

known as Pain Therapeutics, Inc. In 2021, the Company had zero revenue and lost $32.4 million.

***Individual Defendants***

11.     Defendant Remi Barbier ("**Barbier**") is the Company's founder and has served as its President, CEO, and Chairman of the Board since the Company's inception in 1998.

12.     Defendant Nadav Friedmann ("**Friedmann**") has served as a Company director since 1998, and has been employed as the Company's Chief Medical Officer since 2001.

13.     Defendant Robert Gussin ("**Gussin**") has served as a Company director since 2003 and is one of the two members of the Board's compensation committee (the "**Compensation Committee**"). He is not an employee of the Company.

14.     Defendant Michael O'Donnell ("**O'Donnell**") has served as a Company director since 1998.  He is not an employee of the Company.

15.     Defendant Sanford Robertson ("**Robertson**") has served as a Company director since 1998. He is one of the two members of the Compensation Committee. He is not an employee of the Company.

16.     Defendant Patrick Scannon ("**Scannon**") has served as a Company director since 2007. He is not an employee of the Company.

5

17.     Defendants Gussin, O'Donnell, Robertson and Scannon are referred to
as the "**Non-Employee Director Defendants**" and together with defendants
Barbier and Friedmann, as the "**Individual Defendants**."

**BACKGROUND**

████████████████████████████████████

18.     At the annual meeting held on May 7, 2020, the Company's
stockholders rejected the Board's proposal to increase the number of shares
available to grant pursuant to the Company's 2018 Omnibus Incentive Plan (the
"**2018 Plan**") from 1 million shares to a proposed 3 million shares ("**Proposal 2**").
As a result, directors were unable to receive stock compensation because there
were insufficient shares available under the 2018 Plan.

19.     ████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████

20.     ████████████████████████████

████████████████████████████████████

21.

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

22.    █████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

23.    ███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████

24.    On May 15, 2020, the Company issued a press release (link)

disclosing that a Phase 2b study of PTI-125 in Alzheimer's disease did not meet its

primary endpoint. The press release cautioned that "[t]he drug effects of PTI-125,

if any, may have been masked in this study by high variability in levels of

biomarkers of disease." Defendant Barbier was quoted in the press release as

committing the Company "to thoroughly analyze these top-line data, and to re-

analyze CSF [cerebrospinal fluid] biomarkers from study participants, to better

8

understand the outcome of this study."





27.    On August 12, 2020, the Company issued a press release (link) announcing that the "final clinical results" of the Simufilam Phase 2b study were expected in September.  The press release quoted defendant Barbier as stating that the Company's "Phase 2b study was well-conducted, but we believe the analysis of results is a re-do…. This effort is on-going. I believe the outcome of our Phase 2b study will be better understood after final clinical results are announced in September 2020."

28.

29.

30.

31. ███████████████████████

32. ███████████████████████



33.





34. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

35.     Each member of the Board knew that the foregoing favorable MNPI

concerning the successful final Phase 2b results would likely have a positive effect

on the Company's stock price once it was publicly released. In addition to being a

logical and common-sense conclusion, each member of the Board had already

observed a similar appreciation in the Company's stock price upon the release of

14

positive news in the past.

36.     For example, the Company's announcement of positive Phase 2a clinical data for the same drug after the market close on December 5, 2019 was followed by the stock price jumping from $1.80 to $2.17 before the market opened the following day, a 20% overnight increase. The rally continued for a month, with the stock closing at $9.65 per share on January 3, 2020 – an increase of over 344% in just one month.

37.     Similarly, the Company's stock price rose from $4.45 per share on January 8, 2018 to $9.22 per share on January 10, 2018 after the Company announced positive results from a study assessing its drug candidate Remoxy ER (an oxycodone abuse deterrent), a two-day increase of 107%.

38.     Each of the Individual Defendants was a member of the Board at these times. As such, they could reasonably foresee that the Company's stock price would react positively in response to public disclosure of the favorable Phase 2b results.

39.     █████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

40.

41.

42.

16



The Company's September 1, 2020 Form 8-K disclosing the adoption and

attaching a copy of the Cash Bonus Plan (link) lists only the Cash Bonus Amounts

for the $200 million and $5 billion market valuation milestones ($10 million and

$50 million, respectively).

43. 

44. 

45.

46.

████████████████████████████████████

47.    Notwithstanding the foregoing, Section 4.6 of Cash Incentive Plan (attached to the September 1, 2020 Form 8-K) provides that "[e]arned but unpaid [b]onus [p]ayments shall be a contractual financial obligation of the Company. Doctrines of frustration and force majeure shall not apply to the Company's obligation to pay [p]articipants the [b]onus payments" and further provides that a participant "who, having otherwise satisfied all requisite conditions for payment of a [cash bonus], is owed an unpaid [b]onus [p]ayment need not be an employee or in the service of the Company to receive future payment of such owed and unpaid [b]onus [p]ayment."[2]

48.    ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

## THE COMPANY'S STOCK PRICE SPIKES
## UPON THE PUBLIC RELEASE OF THE FINAL PHASE 2B RESULTS

49.    On August 25, 2020, the Company's stock closed at $3.17 per share, corresponding to a market capitalization of approximately $79 million. The Company's stock price was flat through Friday, September 11, 2020, closing

---

[2] Section 4.6 of the Cash Incentive Plan also clarifies that the Company "shall make" partial pro rata bonus payments if its Remaining Sufficient Cash is not enough to pay all of the owed bonus payments in full.

between $3.02 and $3.32 per share.

    50.    Before the market opened on September 14, 2020, the Company

issued a press release (link) announcing the final Phase 2b results ████████

████████████████████, stating among other things that:

> In a clinical study funded by the National Institutes of Health
> (NIH),  sumifilam [sic] significantly improved an entire panel
> of validated biomarkers of disease in patients with Alzheimer's
> disease. The ability to improve multiple biomarkers from
> distinct biological pathways with one drug has never been
> shown before in patients with Alzheimer's disease….
>
>  "The clinical data suggest sumifilam [sic] may be slowing
> disease progression in Alzheimer's patients," said [defendant]
> Friedmann, PhD/MD, Chief Medical Officer, Cassava Sciences.
> "This exciting possibility will need to be evaluated in future
> collaborations with patients, physicians, advisors and others."
>
> "Other than a few drugs to help ease the decline, there's really
> nothing out there to treat people with Alzheimer's," said
> [defendant] Barbier, Chairman, President & CEO, Cassava
> Sciences. "The improvement on multiple biomarkers in this
> clinical study is a first and offers hope that sumifilam [sic] has
> potential to become a transformative treatment for people with
> Alzheimer's disease."

    51.    On this news, the Company's stock price spiked by over 133%,

closing on September 14, 2020 at $7.75 per share. By October 15, 2020, the stock

had traded at over $9.71 per share for 20 consecutive trading days, satisfying the

$200 million valuation milestone and thus releasing a $10 million Cash Bonus

Amount. Pursuant to the Cash Incentive Plan, defendant Barbier automatically

became entitled to $3.33 million and defendants Gussin, O'Donnell, Robertson and Scannon to $200,000 each upon the Company reaching this valuation milestone.

52.     This marked appreciation following public disclosure of the positive final Phase 2b results was no surprise to the Board. As a development-stage biotech company, Cassava's stock price has greatly appreciated in response to disclosure of positive news throughout its history as noted above.

53.     The Company continued releasing positive news regarding the development of Simufilam throughout 2021. For example, on February 2, 2021, Cassava announced that Simufilam improved cognition in Alzheimer's patients in an interim analysis from an open label study (link), which defendant Barbier described as "an exciting development" which "[w]e could not be more pleased with[.]" On this news, the Company's stock price jumped from a close of $22.99 per share on the day before the announcement to close at $87.95 per share on February 3, 2021 – a 282% increase. Press releases touting positive developments about Simufilam were also issued on February 8, February 21, March 9, May 10, June 21, and July 26.

54.     By July 28, 2021, the Company's stock price closed at an all-time high of $135.30 per share – a 4,168% increase from the closing price of $3.17 on August 25, 2020 – briefly exceeding a $5 billion market capitalization.

55.     The Company also conducted multiple stock offerings following the

21

adoption of the Cash Incentive Plan, selling 9,375,000 shares of common stock for net proceeds of $70.3 million ($8.00 per share) on November 13, 2020 and another 4,081,633 shares of common stock for net proceeds of $189.7 million ($49 per share) on February 10, 2021. The stock issued in these offerings amounted to one third of the current shares outstanding and reflect the tremendous increase in the Company's stock following the positive news concerning Simufilam.

56.    As a result of these lucrative offerings, the Company had $223.4 million in cash on hand at the end of 2021 compared with $23 million at the beginning of 2020. The Company was thus well on its way to having Remaining Sufficient Cash on hand to require it to begin paying out bonuses earned under the Cash Incentive Plan.

57.    As noted in the Company's latest proxy statement filed March 24, 2022 (the "**2022 Proxy**") (link), the first valuation milestone (a $200 million market capitalization for 20 consecutive trading days) was achieved in 2020, entitling defendant Barbier to a $3.33 million cash bonus. The 2022 Proxy further acknowledges that "the Company's market capitalization increased substantially" during 2021, which "triggered the achievement of 11 additional [v]aluation [m]ilestones" which in turn entitled participants in the Cash Incentive Plan to bonuses "ranging from a minimum of $93.7 million up to a hypothetical maximum of $225.0 million, with exact amounts to be determined by the Compensation

22

Committee[.]"

58.    ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████    The 2022 Proxy

thus acknowledges that under the Cash Incentive Plan, "Mr. Barbier [is] entitled to

$74.9 million" as the Company's CEO and defendants Gussin, O'Donnell,

Robertson and Scannon are entitled to $4.5 million each as non-employee

directors. And because these are contractual entitlements, they are not disturbed by

subsequent revelations that the final Phase 2b results for Simufilam may have been

falsified. This is the subject of a pending investigation by the U.S. Department of

Justice and the subject of a securities fraud class action lawsuit and other litigation

pending in the United States District Court for the Western District of Texas.[3] Nor

is defendant Barbier and the Non-Employee Director Defendants' entitlement to

these multi-million-dollar cash bonuses disturbed by any subsequent downward

movement in the Company's stock price.

---

[3] Whether any of the defendants made false or misleading statements or omissions
in connection with the Simufilam clinical results or breached any fiduciary duty in
connection with any such statements or omissions is not at issue in this litigation.
As of the date of this Complaint, Plaintiffs are not aware of any pending
stockholder derivative actions asserting fiduciary claims in connection with the
Cash Incentive Plan.

23

## THE CASH INCENTIVE PLAN IS NOT ENTIRELY FAIR TO CASSAVA

59.    Transactions in which directors decide their own compensation are subject to entire fairness review.  The Cash Incentive Plan and the compensation awarded thereunder are therefore subject to entire fairness review.

### *The Cash Incentive Plan Was Adopted Through an Unfair Process*

60.    The process approving the Cash Incentive Plan was unfair to the Company and its public stockholders for a number of reasons. ████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████ Nor was the Cash Incentive Plan put to a vote of the disinterested public stockholders – let alone a vote that was fully informed and uncoerced. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

24

[REDACTED]

61.    The process approving the Cash Incentive Plan was further unfair to the Company and its public stockholders because [REDACTED]

[REDACTED]

[REDACTED]

**The Cash Incentive Plan is Financially Unfair to the Company**

62.    The Cash Incentive Plan is financially unfair to the Company because it results in defendant Barbier and the Non-Employee Director Defendants receiving grossly excessive compensation.

**Defendant Barbier's 2021 Compensation is Excessive**

63.    For 2021, defendant Barbier's total compensation was over $76.6 million including $74.9 million under the Cash Incentive Plan.

64.    The 2021 edition of *CEO and Executive Compensation Practices in the Russell 3000 and S&P 500* issued by Semler Brossy Consulting and The Conference Board, Inc. analyzes trends and developments in senior management compensation at 2,527 SEC-registered companies that, among other things, were included in the S&P 500 or Russell 3000 Indices as of January 2021. According to data provided by The Conference Board, the median total compensation of CEOs in the healthcare sector was $4,192,000 and the 90th percentile was $14,108,000.

25

Barbier's total compensation, including the cash bonus, was 18 times the median total CEO compensation and 443% more than the 90th percentile. Among companies with annual revenue under $100 million, the median total compensation was only $2,251,000, and the 90th percentile was $7,749,000. Despite the fact that the Company had zero revenue in 2021, Barbier's compensation was 34 times the median and almost 10 times the 90th percentile.

65.    Although the Company's 2022 Proxy failed to disclose the Company's peers, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, the Company's Form 10-K filed on March 29, 2019 (link) discloses which companies Cassava considers to be its competitors. The following table compares Barbier's 2021 compensation with publicly-available CEO compensation for the small to mid-size companies that Cassava considers to be its competitors:

| Company | 2021 CEO Compensation |
|---|---|
| Alector, Inc. | $9,612,580 |
| AC Immune SA | $4,281,900 |
| vTv Therapeutics Inc. | $3,292,465 |
| Axsome Therapeutics, Inc. | $8,054,631 |
| Anavex Life Sciences Corp. | $9,417,057 |
| Synaptogenix, Inc. | $1,067,899 |
| Cognition Therapeutics, Inc. | $11,342,127 |

| | |
|---|---|
| Chiesi USA, Inc. | $2,123,652 |
| Athira Pharma, Inc. | $2,974,729 |
| Yumanity Therapeutics, Inc. | $4,494,240 |
| **Cassava Sciences, Inc.** | **$76,641,120** |
| **Mean Peer Compensation:** | **$5,666,128** |
| **Median Peer Compensation:** | **$4,388,070** |
| **Cassava Percentile Rank:** | **100%** |

66.     As set forth above, defendant Barbier's 2021 compensation – of

which $74.9 million is attributed to the Cash Incentive Plan – is facially excessive,

lacks justification, is not grounded in industry standards, and is unfair to the

Company.

### *Defendants Gussin, O'Donnell, Robertson, and Scannon's 2021 Compensation is Excessive*

67.     For 2021, defendants Gussin, O'Donnell, Robertson and Scannon

each became entitled to $4.5 million in compensation under the Cash Incentive

Plan as the Company's non-employee directors. This vastly exceeded average

compensation to non-employee directors at similar public companies, particularly

considering that the Company had no revenue that year.

68.     According to the 2021 Director Compensation Report by Frederick

W. Cook & Co., Inc., the median total compensation for non-employee directors at

companies with market capitalization below $2 billion was only $186,000 and the

75th percentile was \$218,000.[4] The 2021 compensation payable to defendants Gussin, O'Donnell, Robertson and Scannon under the Cash Incentive Plan was almost 24 times the median compensation and over 20 times the 75th percentile.

69.     *The Bedford Report 2021: Board and Executive Compensation in the Biotech Industry*, issued by The Bedford Group / TRANSEARCH, analyzed compensation composition and earnings for named executive officers and board members of 225 micro and small cap biotechnology companies across the U.S. According to that report, the median director total compensation for biotech companies with market capitalization between \$1 billion and \$2 billion was \$265,666 and the 75th percentile was \$326,609. The 2021 compensation payable to defendants Gussin, O'Donnell, Robertson and Scannon under the Cash Incentive Plan was 16 times the median and almost 13 times the 75th percentile.

70.     The following table compares the Company's 2021 non-employee director compensation to publicly-available average director compensation for the small to mid-size companies that Cassava considers to be its competitors:

| Company | 2021 Average Director Compensation |
|---|---|
| Alector, Inc. | \$404,283 |
| AC Immune SA | \$134,190 |
| vTv Therapeutics Inc. | \$80,727 |

[4] The Company's market capitalization was \$238 million at the start of 2021 and \$1.75 billion at the end of the year.

28

| | |
|---|---:|
| Axsome Therapeutics, Inc. | $401,371 |
| Anavex Life Sciences Corp. | $459,242 |
| Synaptogenix, Inc. | $826,586 |
| Cognition Therapeutics, Inc. | $29,698 |
| Chiesi USA, Inc. | $435,125 |
| Athira Pharma, Inc. | $217,108 |
| Yumanity Therapeutics, Inc. | $214,029 |
| **Cassava Sciences, Inc.** | **$4,500,000** |
| **Mean Peer Compensation:** | **$320,236** |
| **Median Peer Compensation:** | **$309,240** |
| **Cassava Percentile Rank:** | **100%** |

71.     As set forth above, defendants Gussin, O'Donnell, Robertson and Scannon's 2021 compensation under the Cash Incentive Plan is facially excessive, lacks justification, is not grounded in industry standards, and is unfair to the Company.

## DEMAND FUTILITY

72.     Plaintiffs repeat and re-allege each and every allegation above as though fully set forth herein.

73.     Plaintiffs bring this action derivatively and in the right and for the benefit of Cassava to redress the Individual Defendants' breaches of fiduciary duties and other misconduct.

74.     Plaintiffs are stockholders of Cassava, were stockholders of Cassava at the time of the wrongdoing alleged herein, and have been stockholders of

29

Cassava continuously since that time.

75.     Plaintiffs will adequately and fairly represent the interests of Cassava in enforcing and prosecuting its rights.

76.     As a result of the facts set forth herein, Plaintiffs have not made any demand on the Board to institute this action as doing so would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

77.     At the time that Plaintiffs commenced this derivative action, the Board consisted of seven directors: defendants *(i)* Barbier, *(ii)* Friedmann, *(iii)* Gussin, *(iv)* O'Donnell, *(v)* Robertson, *(vi)* Scannon, and non-party *(vii)* Richard J. Barry.

***Six of the Seven Directors Received a Material Personal Benefit From the Cash Incentive Plan***

78.     For 2021 alone, defendant Barbier is entitled to $74.9 million and defendants Gussin, O'Donnell, Robertson and Scannon are each entitled to $4.5 million in compensation as a result of the Cash Incentive Plan.  Similarly, defendant Friedmann became entitled to a $1.5 million bonus under the Cash Incentive Plan for 2020. These are facially material benefits.

79.     As such, Plaintiffs are excused from making demand upon defendants Barbier, Friedmann, Gussin, O'Donnell, Robertson, and Scannon, who collectively

constitute a majority of the Board.

*Six of the Seven Directors Face a Substantial Likelihood of Liability for*
*Adopting the Cash Incentive Plan in Breach of their Fiduciary Duties*

80.     As directors, the six Individual Defendants owe the Company an
undivided duty of loyalty. The six Individual Defendants face a substantial
likelihood of liability for approving the Cash Incentive Plan because they acted
with scienter in doing so.

81.     As set forth above,



As a result of such appreciation, the
Company's market capitalization quickly met the first valuation threshold under
the Cash Incentive Plan which resulted in defendant Barbier and the Non-
Employee Director Defendants becoming entitled to bonuses

Although Friedmann's bonus was not
fixed under the Cash Incentive Plan because he is employed by the Company as its
Chief Medical Officer, it was foreseeable that he too would receive a sizeable
bonus. Indeed, he became entitled to a $1.5 million bonus in 2020 as a result of the
Cash Incentive Plan.

82.     Moreover, the Cash Incentive Plan was entered into in bad faith

31

because it was intended specifically to circumvent the stockholder's rejection of the Board's proposal to amend the 2018 Plan to increase the number of shares available for issuance thereunder (Proposal 2) at the 2020 annual meeting. Although the stockholders eventually approved a similar amendment to the 2018 Plan at the 2022 annual meeting (after again rejecting it at the 2021 meeting), the Board has not cancelled the Cash Incentive Plan ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

83.     The foregoing actions were taken in bad faith and expose the six Individual Defendants to a substantial likelihood of personal liability As such, Plaintiffs are excused from a making demand upon the six Individual Defendants, who collectively constitute a majority of the Board.

***Four of the Seven Directors Lack Sufficient Independence to Give Disinterested Consideration to Bringing the Claims Herein***

84.     Defendants Gussin, O'Donnell, Robertson, and Scannon are each entitled to $4.5 million in director compensation under the Cash Incentive Plan for 2021 alone. As shown above, this director compensation is facially excessive as confirmed by several different metrics. As a result of their excessive director

compensation under the Cash Incentive Plan, there is reason to doubt that defendants Gussin, O'Donnell, Robertson and Scannon, who collectively constitute a majority of the Board, can bring to bear their impartial business judgment in respecting a litigation demand concerning the plan.

85.     Accordingly, there is reason to doubt that at least half the Board can give disinterested consideration to a demand to pursue this action.

## COUNT I

**Breach of Fiduciary Duty**
**(Against all Individual Defendants)**

86.     Plaintiffs repeat and re-allege each and every allegation above as though fully set forth herein.

87.     As directors and officers of the Company, the Individual Defendants owe Cassava the highest duties of loyalty, candor and good faith, and in furtherance of those duties, were required at all times to act in the best interests of the Company without regard to their own personal interests.

88.     The Individual Defendants breached their fiduciary duty of loyalty by ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ , and by granting and accepting multi-million-dollar, excessive, and/or unfair compensation thereunder.

33

89.     The Individual Defendants further breached their fiduciary duties of loyalty and candor by failing to disclose the full, unvarnished truth about their compensation under the Cash Incentive Plan – ████████████████████████

████████████████████████████████████████████████

██████████████████████████████

90.     Cassava has sustained and will continue to sustain significant damages as a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, who are therefore liable to the Company.

91.     Plaintiffs, on behalf of Cassava, have no adequate remedy at law.

## COUNT II

### Unjust Enrichment
### (Against all Individual Defendants)

92.     Plaintiffs repeat and re-allege each and every allegation above as though fully set forth herein.

93.     The Individual Defendants are entitled to receive and have a contractual right to multi-million-dollar, excessive, and/or unfair compensation under the Cash Incentive Plan, which they accepted, thus damaging the Company.

94.     It would be unconscionable and against the principles of justice, equity, and good conscience for the Individual Defendants to retain their right to receive these cash bonuses under the circumstances.

34

95.     Plaintiffs, on behalf of Cassava, have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of Cassava, demand judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties and unjust enrichment;

B.     Rescinding, cancelling and/or if applicable, ordering disgorgement of defendants' excessive and unfair compensation under the Cash Incentive Plan;

C.     Awarding Cassava the amount of damages it sustained as a result of defendants' breaches of fiduciary duties and unjust enrichment;

D.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, expert and accountants' fees, costs, and expenses;

E.     Awarding pre- and post-judgment interest on the foregoing amounts; and

F.     Granting such other and further relief as the Court deems just and proper.

35

 

                                              **ASHBY & GEDDES, P.A.**

Of Counsel:                                 */s/ Stephen E. Jenkins*
                                                  Stephen E. Jenkins (#2152)

**LEVI & KORSINSKY, LLP**             Marie M. Degnan (#5602)
Gregory M. Nespole                     500 Delaware Avenue, 8th Floor
Daniel Tepper                                Wilmington, DE 19801
Ryan Messina                              (302) 654-1888
55 Broadway, 10th Floor
New York, NY 10006
(212) 363-7500                                *Counsel to Plaintiffs*

Dated:  August 19, 2022