# EXHIBIT 10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ──────────────────────────────── ) | |
| CASSAVA SCIENCES, INC., ) | |
| ) | |
| Plaintiff, ) | Case 1:22-cv-09409-GHW-OTW |
| ) | |
| v. ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| DAVID BREDT, GEOFFREY PITT, ) | |
| QUINTESSENTIAL CAPITAL MANAGEMENT ) | |
| LLC, ADRIAN HEILBUT, JESSE BRODKIN, ) | |
| ENEA MILIORIS and PATRICK MARKEY, ) | |
| ) | |
| Defendants. ) | |
| ──────────────────────────────── ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
<u>**DAVID BREDT'S AND GEOFFREY PITT'S MOTION TO DISMISS**</u>
<u>**THE FIRST AMENDED COMPLAINT**</u>

Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:    (212) 813-8800
Fax:    (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

*Attorneys for Defendants David Bredt and*
*Geoffrey Pitt*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 2

    A.    CASSAVA AND SIMUFILAM ................................................................ 2

    B.    DRS. BREDT AND PITT AND THE CITIZEN PETITION ............................ 3

    C.    SUPPLEMENTAL SUBMISSIONS TO THE FDA ........................................ 6

    D.    CASSAVA'S RESPONSE ....................................................................... 7

ARGUMENT ....................................................................................................... 9

I.    PLAINTIFF FAILS TO PLEAD A TIMELY CLAIM FOR DEFAMATION. ............... 9

    A.    THE CLAIMS ARE BARRED BY THE ONE-YEAR STATUTE OF
          LIMITATIONS. .................................................................................... 9

    B.    CASSAVA DOES NOT MEET THE STRINGENT STANDARD FOR
          PLEADING DEFAMATION. .................................................................. 10

          1.    THE DEFAMATION CLAIM FAILS BECAUSE THE
                 FACTUAL ASSERTIONS IN THE CITIZEN PETITION ARE
                 SUBSTANTIALLY TRUE. .......................................................... 11

          2.    THE CP DEFENDANTS' QUALIFIED INFERENCES OF
                 POSSIBLE DATA MANIPULATION ARE NONACTIONABLE
                 OPINION. .............................................................................. 14

    C.    CASSAVA DOES NOT ALLEGE ACTUAL MALICE. .................................. 18

    D.    THE CHALLENGED STATEMENTS ARE INCAPABLE OF
          DEFAMATORY MEANING AND CASSAVA HAS NOT PLED FACTS
          TO SUGGEST THAT THE CP DEFENDANTS CAUSED ANY
          INJURIES OR SPECIAL DAMAGES. ....................................................... 20

II.    THE CONSPIRACY CLAIM (COUNT II) MUST BE DISMISSED BECAUSE
     NO SUCH INDEPENDENT TORT EXISTS AND IT MERELY DUPLICATES
     THE DEFAMATION CLAIM. ......................................................................... 23

III.    THE FAC VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 8. ..................... 24

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander & Alexander of New York, Inc. v. Fritzen*,
    68 N.Y.2d 968 (1986) ...................................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................11

*Aviation Fin. Co. v. Chaput*,
    2015 WL 13203653 (S.D.N.Y. Mar. 12, 2015) ......................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................11

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)........................................................................................18

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................................16

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)...............................................................11, 18

*Brian v. Richardson*,
    87 N.Y.2d 46 (1995) ...................................................................................................17

*BYD Co. Ltd. v. VICE Media LLC*,
    531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973
    (2d Cir. Mar. 1, 2022) ................................................................................................20

*Carbon Investment Partners, LLC. V. Bressler*,
    2021 WL 3913526 (S.D.N.Y. Sept. 1, 2021)............................................................24

*Carto v. Buckley*,
    649 F. Supp. 502 (S.D.N.Y. 1986) ............................................................................17

*Cerasani v. Sony Corp.*,
    991 F. Supp. 343 (S.D.N.Y. 1998) ............................................................................23

*Chaiken v. VV Publ'g Corp.*,
    907 F. Supp. 689 (S.D.N.Y. 1995) ............................................................................11

*Chau v. Lewis*,
    935 F. Supp. 2d 644 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) .....................16, 20

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) ...........................................................18, 20

*Collins v. Travers Fine Jewels Inc.*,
2017 WL 1184305 (S.D.N.Y. Mar. 29, 2017) ................................................15, 22

*Cummings v. City of N.Y.*,
2022 WL 2166585 (2d Cir. June 16, 2022) ....................................................11, 15

*Cummins v. SunTrust Cap. Mkts., Inc.*,
416 F. App'x 101 (2d Cir. 2011) ..........................................................................17

*Eros Int'l, PLC v. Mangrove Partners*,
140 N.Y.S.3d 518 (1st Dep't 2021) .......................................................................16

*Etheredge-Brown v. Am. Media, Inc.*,
13 F. Supp. 3d 303 (S.D.N.Y. 2014) .......................................................................9

*Farber v. Jefferys*,
2011 WL 5248207 (N.Y. Sup. Ct. Nov. 2, 2011), *aff'd*, 959 N.Y.S.2d 486
(1st Dep't 2013) ....................................................................................................19

*Farber v. Jefferys*,
959 N.Y.S.2d 486 (1st Dep't 2013) .......................................................................20

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) ....................................................................................23

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ....................................................................................7

*Gibson v. SCE Grp., Inc.*,
391 F. Supp. 3d 228 (S.D.N.Y. 2019) ...................................................................20

*Global Auto, Inc. v. Hitrinov*,
2021 WL 7367078 (E.D.N.Y. Aug. 20, 2021) .......................................................22

*Guccione v. Hustler Magazine, Inc.*,
800 F.2d 298 (2d Cir. 1986) ..................................................................................12

*Hayashi v. Ozawa*,
2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) .......................................................15

*Henry v. City of New York*,
2008 WL 906743 (E.D.N.Y. Apr. 1, 2008) ...........................................................10

*Hodges v. Lutwin*,
595 F. Supp. 3d 12 (S.D.N.Y. 2022) .....................................................................19

*Indep. Theaters, Inc. v. Am. Broad.-Paramount Theaters, Inc.*,
179 F. Supp. 489 (S.D.N.Y. 1959) ...................................................................25

*Jacob v. Lorenz*,
2022 WL 4096701 (S.D.N.Y. Sept. 7, 2022) ....................................................21

*Jacobus v. Trump*,
156 A.D.3d 452 (1st Dep't 2017) ......................................................................21

*Karedes v. Ackerley Grp., Inc.*,
423 F.3d 107 (2d Cir. 2005)...............................................................................20

*Kesner v. Dow Jones & Co.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021)................................................................23

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021)..................................................................................9

*Kraft v. Rector, Churchwardens and Vestry of Grace Church in New York*,
2004 WL 540327 (S.D.N.Y. Mar. 17, 2004) .....................................................24

*Kuan Sing Enters., Inc. v. T. W. Wang, Inc.*,
446 N.Y.S.2d 76 (1st Dep't 1982) .....................................................................15

*Levin v McPhee*,
119 F.3d 189 (2d Cir. 1997)...............................................................................16

*Lindell v. Mail Media Inc.*,
575 F. Supp. 3d 479 (S.D.N.Y. 2021)................................................................21

*Loughlin v. Goord*,
558 F. Supp. 3d 126 (S.D.N.Y. 2021)................................................................19

*Margolies v. Rudolph*,
2022 WL 2062460 (E.D.N.Y. June 6, 2022) .....................................................20

*Marom v. Pierot*,
2020 WL 6572509 (S.D.N.Y. Aug. 30, 2020)....................................................22

*McKenzie v. Dow Jones & Co., Inc.*,
2009 WL 4640668 (2d Cir. Dec. 9, 2009) ...........................................................9

*Moritz v. Town of Warick*,
2017 WL 4785462 (S.D.N.Y. Oct. 19, 2017)....................................................22

*Moscowitz v. Brown*,
850 F. Supp. 1185 (S.D.N.Y. 1994), *abrogated on other grounds by*
*Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258 (2d Cir. 2000) ....................25

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964) ..............................................................................................11

*NOVAGOLD Res., Inc. v. J Capital Rsch. USA LLC,*
  2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ........................................................17

*ONY, Inc. v. Cornerstone Therapeutics, Inc.,*
  720 F.3d 490 (2d. Cir. 2013) ...........................................................................17, 20

*Pisani v. Staten Island Univ. Hosp.,*
  2008 WL 1771922 (E.D.N.Y. Apr. 15, 2008) ......................................................23

*Politico v. Promus Hotels, Inc.,*
  184 F.R.D. 232 (E.D.N.Y. 1999) .........................................................................25

*Schlotthauer v. Sander*s,
  545 N.Y.S.2d 197 (2d Dep't 1989) .......................................................................24

*Schubert v. City of Rye,*
  775 F. Supp. 2d 689 (S.D.N.Y. 2011) ....................................................................9

*Shaw v. Empire Stock Transfer Inc.,*
  381 F. Supp. 3d 286 (S.D.N.Y. 2019) ..................................................................23

*Solomon v. Amazon.com, Inc.,*
  2019 WL 2601794 (E.D.N.Y. June 24, 2019) ......................................................10

*Sorvillo v. St. Francis Preparatory Sch.,*
  607 F. App'x 22 (2d Cir. 2015) ............................................................................15

*Swayze v. LaFontant,*
  2022 WL 2209148 (S.D.N.Y. June 21, 2022) ......................................................10

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
  864 F.3d 236 (2d Cir. 2017) .................................................................................12

*Thai v. Cayre Grp., Ltd.,*
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ..................................................................22

*Valley Elecs. AG v. Polis,*
  2022 WL 893674 (2d Cir. Mar. 28, 2022) ......................................................11, 17

*Van Buskirk v. N.Y. Times Co.,*
  325 F.3d 87 (2d Cir. 2003) .....................................................................................9

*Weiner v. Doubleday & Co.,*
  535 N.Y.S.2d 597 (1st Dep't 1988), *aff'd*, 74 N.Y.2d 586 (1989) ..................17, 20

*Weinstein v. Friedman*,
   1996 WL 137313 (S.D.N.Y. Mar. 26, 1996), *aff'd*, 112 F.3d 507
   (2d Cir. 1996).........................................................................................................21

*Zuber v. Bordier*,
   522 N.Y.S.2d 610 (2d Dep't 1987)...........................................................................17

**Statutes, Rules, and Regulations**

21 CFR § 10.30(b)(3)...................................................................................................6

Fed. R. Civ. P. 8(a)(2)................................................................................................24

Fed. R. Civ. P. 8(d)(1)................................................................................................24

N.Y. C.P.L.R. § 215(3)..................................................................................................9

N.Y. Civ. Rights Law § 76-a(1)(a)(1).........................................................................18

N.Y. Civ. Rights Law § 76-a(2)...................................................................................18

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1217
   (4th ed. 2022).........................................................................................................24

## PRELIMINARY STATEMENT

This lawsuit is a pharmaceutical company's attempt to wield claims of defamation to silence those who raise important questions about data underlying drug development. Defendants David Bredt and Geoffrey Pitt (the so-called "Citizen Petition" or "CP" Defendants) are accomplished scientists who observed telltale signs of what appears to be falsified data published in scientific journals that Plaintiff Cassava Sciences, Inc. ("Cassava") later submitted to the U.S. Food and Drug Administration ("FDA") as support for clinical trials for its drug simufilam. Drs. Bredt and Pitt availed themselves of the "Citizen Petition" ("CP") mechanism set up for alerting the FDA to public concerns about drug-related matters, and they laid out their concerns in exacting factual detail, requesting further investigation by the FDA. Cassava, hoping to squelch scrutiny of its anomalous data, asserts two claims against the CP Defendants, neither of which has any merit.

The CP Defendants did not defame Cassava (Count I), as the CP laid out detailed factual bases showing that certain scientific papers and clinical trial disclosures from Cassava contained anomalous data. While Cassava takes issue with the *inferences* drawn in the CP, Cassava cannot dispute that the underlying *facts* in the CP are substantially true. In fact, Cassava admits that "independent scientists" found "problems," "obvious errors," and "tweaks" in the data. First Am. Compl. ("FAC") ¶¶ 362-63. The CP laid out admittedly accurate facts, and Cassava's challenge to *opinions* derived from those true facts states no claim.

Even if the CP had been inaccurate (it was not), Cassava shows no "malice." No allegation suggests that the CP Defendants believed the CP to be wrong. Cassava's competing interpretation of admitted anomalies in the data underscores that the issues here are ones of scientific debate, not defamation. Cassava's effort to impugn the CP Defendants by arguing they "shorted" Cassava's stock confuses alleged motive for malice. No plausible allegation shows that the CP Defendants must have known that they were speaking falsely in drawing inferences from uncontroverted facts.

The defamation claim also fails because it is time-barred under the one-year statute of limitations. The CP was filed with the FDA on August 18, 2021; Cassava waited until November 2, 2022, to file suit. Cassava's delay not only belies its claim of injury, but bars the suit.

Cassava's claim of conspiracy (Count II) fails because there is no independent tort of conspiracy under New York law, and the claim merely duplicates the defamation claim.

At issue in this case are not merely defective claims but fundamental First Amendment freedoms that affect important public health issues. It is essential that the scientific community be free to discuss concerns about pharmaceutical products; public safety hinges on such freedom of thought and expression. Self-interested efforts by companies like Cassava to punish that discussion through defamation claims are not only legally improper but scientifically and morally deplorable. Cassava's overwrought First Amended Complaint, spanning 495 numbered paragraphs (and dozens of subparagraphs) plus 106 Exhibits, is an effort to bulk up empty claims to create the illusion of substance, and an improper attempt to bury critics in a punishing avalanche of verbiage and argument. The Court should reject this improper ploy and dismiss all claims with prejudice.

## BACKGROUND

### A.    Cassava and Simufilam

Cassava is a Texas-based "clinical-stage biotechnology company focused on neuroscience." FAC ¶ 11. Cassava claims that its drug development candidate, simufilam, targets a brain protein called filamin A and can restore its function in Alzheimer's patients. *Id.*

Cassava bases its claims about simufilam mainly on a series of six papers co-authored by Dr. Hoau-Yan Wang of the City University of New York ("CUNY") and Dr. Lindsay Burns of Cassava (also the wife of Cassava's CEO), as well as clinical trial press releases, symposia posters,

and presentations publicly disclosed between 2005 and 2021. FAC, Ex. 3 at 10-29.[1] Among other things, Cassava cited papers from Drs. Wang and Burns to obtain National Institutes of Health grants and FDA approval for clinical trials in human subjects. *Id.* at 10.

Cassava conducted a "Phase 2b" clinical trial in human test subjects in March 2020. FAC ¶ 71. It immediately ran into difficulties. In May 2020, "an outside lab, with whom [Cassava] had no prior work experience" conducted an analysis of samples from the Phase 2b study. *Id.* ¶ 73. This independent review found that "simufilam was *ineffective in improving the primary biomarker end point*." FAC, Ex. 3 at 10-11 (emphasis added).

Cassava immediately set out to achieve a different result. Cassava purported to retest the Phase 2b data in September 2020 and came to the opposite conclusion of the outside lab. FAC ¶ 74. Despite admitted "limitations around study size," the retest of cognitive results nonetheless "exclude[d] three patients who . . . showed no detectable level of simufilam in plasma" and "outlier subjects," among others. *Id.* ¶ 84. Cassava has since admitted that Dr. Wang, who authored the papers at issue, was also responsible for the September 2020 retest. FAC, Ex. 3 at 27-28. Based on the claimed success of the retesting, Cassava announced in August 2021 that it reached agreement with the FDA to pursue Phase 3 clinical studies. FAC ¶ 90.

### B. Drs. Bredt and Pitt and the Citizen Petition

The remarkable and sudden turn of events from the failed May 2020 study to the apparently wildly successful September 2020 retest garnered attention in the scientific community. This included David Bredt and Geoffrey Pitt, two decorated doctors and scientists working at top levels in their respective fields. Dr. Pitt is a neuroscientist and cardiologist at Weill Cornell Medicine. *Id.* ¶ 13. Dr. Bredt is a neuroscientist who has headed neuroscience at major pharmaceutical

---

[1] Citations to the FAC's Exhibits use PDF pagination for clarity.

companies, including Eli Lilly and Johnson & Johnson. *Id.* ¶ 14.

Shortly after Cassava announced its approval for Phase 3 clinical trials, Drs. Bredt and Pitt, through their attorney, filed a Citizen Petition with the FDA on August 18, 2021, raising three groups of major concerns (and several minor ones) about the data on which Cassava had relied in its FDA filings. *See* FAC, Ex. 3. *First*, the CP described how underlying papers by Drs. Wang and Burns employed "Western blot" analyses containing "anomalies that are suggestive of systematic data manipulation"; *second*, the CP noted that claims about the effect of simufilam based on its purported effect in long dead and frozen brain tissue "defies logic" and contains "hallmarks of manipulation"; and *third*, the CP raised "questions" about the validity of Cassava's biomarker data, presented in both the September 2020 retest of the unsuccessful May 2020 analysis and a poster describing blood tests presented in July 2021 at the Alzheimer's Association International Conference ("AAIC"). *Id.* at 4-5. The CP concluded that the data of Drs. Wang and Burns produced results "that are most unexpected" and reflect a "pattern of clear errors and anomalies that are consistent with data manipulation and misrepresentation." *Id.* at 13.

The CP included a 39-page "Statement of Concern" with Appendix, laying out in detail the bases for the concerns raised in the CP. As to the first concern, the CP copied "Western blots" directly from the Drs. Wang/Burns papers and highlighted specific anomalies. In a Western blot, tissue sample proteins are made to migrate through a gel in "lanes" and are transferred to a paper-like membrane. *Id.* at 15-16. Antibodies then detect proteins on the membrane and leave distinctive bands, each with a slightly different shape as a result of this process. *Id.* In the Drs. Wang/Burns' data, however, certain bands were *identical*, which the CP opined could not have occurred by chance. *Id.* at 18. Some of these identical bands appeared in different studies that supposedly analyzed different data sets. *Id.* at 19. Moreover, the bands showed strong evidence of a "copy and

paste" job: *e.g.*, "[t]he cropped borders of an adjacent protein band are present indicating the bands were taken from another blot." *Id.* at 17. Several of the identical bands had a white "halo" around them, consistent with use of image editing software. *Id.* at 20. The CP included the specific images used in the papers themselves and highlighted the particular portions that showed suspicious features.

As to Cassava's retesting of the failed May 2020 Phase 2b data, the CP noted that the September 2020 retest showed a "remarkable benefit" from simufilam—a benefit totally undetected in the May 2020 analysis by an outside lab. *Id.* at 15. The CP also noted apparent inconsistencies in a subsequent biomarker blood test (P-Tau181) of patient samples from the Phase 2b study that Cassava presented in a poster at the 2021 AAIC. *Id.* at 14-15. In particular, the publicly-available poster presented data from each patient before and after treatment with simufilam and a separate graph purporting to provide summary analysis of the apparent treatment-related effects among all patients. *Id.* at 14. The CP noted that while one subject showed a large increase (*i.e.*, worsening) of P-Tau181 while on simufilam, this patient's data point was apparently omitted in the summary analysis, suggesting that the reported figures in the graphs from the Phase 2b retest "cannot be from the same data set." *Id.*

Third, the CP noted the "implausibility" of certain reported results involving long-dead, frozen human brain tissue. *Id.* at 23. The papers relied on by Cassava implied that certain supposedly successful experiments were performed on dead tissue "nearly 10 years in frozen archival without any advanced cryopreservative techniques" when "[i]n reality, neurons in the human brain do not survive extended post-mortem intervals and long-term freezing." *Id.* at 24. Further, the Western blots on those tissues showed "anomalies." *Id.* at 25. For example, blots supposedly derived from the same gel were irregularly spaced, which implies that the blots were

likely "pasted together from different sources," contrary to what was reported. *Id.* at 26. The CP urged that "the primary data for this paper should be audited." *Id.*

In sum, the CP identified specific scientific concerns with the papers and presentations at issue, quoted or reproduced the authors' own reported results, and laid out detailed factual bases for why the data appeared anomalous. Based on the information provided, any reader of the CP could see exactly what issues were raised and why they were concerning. The CP does not definitively conclude that misconduct occurred, but notes that misconduct is a likely explanation for the many red flags, and urges the FDA to audit the data to address the reported issues.[2]

## C. Supplemental Submissions to the FDA

After Cassava responded to the CP on August 25, 2021 (FAC, Ex. 63), counsel for the CP Defendants issued an August 26 press release disclosing, among other things, that the CP was submitted on behalf of individuals with expertise in "neuroscience, drug discovery, biochemistry, and finance" and that they held short positions in Cassava stock. FAC, Ex. 13 & ¶ 123. The CP Defendants followed up the CP with four supplemental submissions (on August 30, September 9, November 17, and December 8, 2021). FAC, Exs. 4, 5, 9 & 11. These submissions reiterated the concerns raised in the CP and noted that other scientists also "expressed major concerns with the integrity of these phase 2a data and advised the inspection of the original images is needed to assess the authenticity of the clinical study results." FAC, Ex. 4 at 8.

The November 17, 2021, supplement identified Drs. Bredt and Pitt by name, and noted that "the scientific community began a comprehensive review of Dr. Wang's research and 29 papers have already been red flagged on Pubpeer.com," nine of which were co-authored by Dr. Burns.

---

[2] The CP, per regulation, certified that the "petition includes all information and views on which the petition relies, and that it includes representative data and information known to the petitioner which are unfavorable to the petition." FAC, Ex. 3 at 5; 21 CFR § 10.30(b)(3). The CP also confirms that "[a]ll the information detailed herein was obtained from public, non-proprietary sources." FAC, Ex. 3 at 12.

FAC, Ex. 9 at 9. As the supplements indicated, a host of scientific voices had joined the CP

Defendants in demanding that suspect data of Drs. Burns and Wang be investigated.[3] Another

paper by Drs. Wang and Burns was retracted by editors in light of concerns around Western blots.[4]

While the FDA ultimately elected not to act on the CP, it "acknowledge[d] the importance

of the issues" and noted that the CP's request for an investigation into the Drs. Burns/Wang data

was "being denied solely on the grounds that [the CP Defendants'] requests are not the appropriate

subject of a citizen petition" because "investigations necessarily require fact finding beyond what

is presented in the current administrative record." FAC, Ex. 15 at 3-4. The FDA concluded by

stating that its "response does not represent a decision by the Agency to take or refrain from taking

any action relating to the subject matter of your Petitions." *Id.* at 4.

### D.    Cassava's Response

Cassava sets forth conclusory allegations that the "Defendants' disinformation campaign"

caused its stock price to plummet from $100 per share to under $50 per share in August 2021. FAC

¶ 433. Publicly-available trading data, however, supports a more nuanced narrative. On August

18, 2021—the day the CP was submitted—Cassava's stock price closed at $106.17.[5] The

following day, it closed at $101.23 (around a 4.5% decline). Three trading days later, however, the

price rebounded to $117.23—a more than 10% *increase* from prior to the submission of the CP.[6]

---

[3] *See, e.g.*, FAC, Ex. 9 at 9 (citing Pubpeer.com link to Dr. Elisabeth Bik August 2021 comment to Hoau-Yan Wang, Lindsay Burns, et al., *PTI-125 Reduces Biomarkers of Alzheimer's Disease in Patients*, 7(4) J. of Prev. of Alzheimer's Disease 256, DOI: 10.14283/jpad.2020.6 (2020), https://pubmed.ncbi.nlm.nih.gov/32920628/, which flagged "concern[ing]" western blot figures and asked authors to publish unedited originals).

[4] *See id.* (citing retracted article by Drs. Hoau-Yan Wang and Lindsay Burns, "Naloxone's pentapeptide binding site on filamin A blocks Mu opioid receptor-Gs coupling and CREB activation of acute morphine," 4(1) PLoS One e4282, DOI: 10.1371/journal.pone.0004282 (2009), https://pubmed.ncbi.nlm.nih.gov/19172190/).

[5] *See Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pUAd (last visited Jan. 3, 2023). Courts regularly take judicial notice of the publicly-available price of stocks at the motion to dismiss stage. *See, e.g.*, *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000) ("[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

[6] *Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pUAd.

Cassava then tellingly ignores how its own conduct contributed to the mix of information available at the time. On August 25, 2021, for example, Cassava issued a press release stating that the company "stands behind its science" and decrying many of the later admitted anomalies as "fiction." FAC, Ex. 63 at 1. Cassava also stated that certain pertinent data "was generated by Quanterix Corp." *Id.* But Quanterix denied that two days later, and Cassava was forced to clarify that "Quanterix' sole responsibility . . . was to perform sample testing" and that it was *Cassava* that "analy[zed]" and "presented these data." FAC, Ex. 64. On August 30, 2021, three trading days after Cassava's press release, its stock price closed at $53.26—a decline of nearly *55%* from the price the week after the CP was issued.[7] The FAC fails to allege how the CP Defendants—as opposed to other market participants or Cassava itself—are responsible for this decline.

In the following weeks, Cassava steadfastly refused to acknowledge concerns about the data, and its stock price continued to erode.[8] On September 3, 2021, for example, Cassava's CEO Remi Barber acknowledged "two errors" identified in the CP concerning inconsistent graphs on the AAIC poster, but argued that the errors were not "material" and were mere "visual errors" that "w[ere] not caught in proofing." *Public Statement Regarding Recent Allegations Against Cassava Sciences, Inc.*, Cassava Sciences (Sept. 3, 2021), https://www.cassavasciences.com/static-files/d4083c4d-b4ad-4e27-a93d-edaeff13b608 (cited by FAC, Ex. 65).

Meanwhile, the scientific journals that had published the papers by Drs. Burns and Wang re-examined the data at issue and also noted errors and concerns. The *Journal of Neuroscience* issued an "Expression of Concern" regarding a Dr. Wang paper, and noted a pending independent investigation. FAC, Ex. 17 at 2. That journal had confirmed certain duplicated data and requested

---

[7] *Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yahoo.it/3Q9pUAd.

[8] *See id.*

a correction. FAC, Ex. 16 at 2. The *Neurobiology of Aging* similarly issued an "Expression of Concern" about one of the Drs. Wang/Burns papers, cited numerous errors in it, and referenced an investigation by CUNY into Dr. Wang. *See Expression of Concern: Wang et al., (2017) PTI-125 binds and reverses an altered conformation of filamin A to reduce Alzheimer's disease pathogenesis. Neurobiol. Aging, 55:99-114*, 113 Neurobiology of Aging 152 (2022), https://www.sciencedirect.com/science/article/pii/S0197458022000562.[9]

Notably, although Cassava admits it knew the identities of Drs. Bredt and Pitt since at least November 17, 2021, it never asked them to withdraw or amend the CP. Instead, 351 days later— and 442 days after the CP was originally submitted to the FDA—Cassava filed this lawsuit.

## ARGUMENT

## I.   PLAINTIFF FAILS TO PLEAD A TIMELY CLAIM FOR DEFAMATION.

### A.   The Claims Are Barred by the One-Year Statute of Limitations.

Cassava's tactical lawsuit to silence the authors of the CP is barred by the one-year statute of limitations applicable under New York law.[10] A claim of defamation accrues at the time of first publication.[11] The August 18, 2021, filing of the CP triggered a limitations deadline of August 18,

---

[9] The journal *PLoS One* retracted five Dr. Wang articles and issued an expression of concern regarding a sixth. *See* Adam Marcus, *Five studies linked to Cassava Sciences retracted*, Retraction Watch (Mar. 30, 2022), https://retractionwatch.com/2022/03/30/five-studies-linked-to-cassava-biosciences-retracted/#more-124589.
Scientific commenters continued to press Cassava for answers to the questions posed by the CP, which Cassava declined to provide. *See, e.g.*, Apoorva Mandavilli, *Scientists Question Data Behind an Experimental Alzheimer's Drug*, The New York Times (Apr. 18, 2022), https://nyti.ms/3vEFVED (quoting Nobel laureate Dr. Thomas Südhof: "The overall conclusions with regard to Alzheimer's disease make no sense to me whatsoever."). Courts may take judicial notice at the motion to dismiss stage of publications offered "for a limited purpose"—*e.g.*, that the Expressions of Concern were in fact issued—and "not for the truth of the articles' content." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 711 n.20 (S.D.N.Y. 2011) (citation omitted).

[10] N.Y. C.P.L.R. § 215(3); *McKenzie v. Dow Jones & Co., Inc.*, 2009 WL 4640668, at *2 (2d Cir. Dec. 9, 2009). New York law applies because New York is the forum state, has the greatest factual nexus to the litigation, and has policy interests in this matter. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176-78 (2d Cir. 2021); *see also* FAC ¶¶ 25-26.

[11] *See Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 305 (S.D.N.Y. 2014) ("[T]he statute of limitations ordinarily begins to run at the time of the 'first publication'—that is, 'the earliest date on which the work was placed on sale or became generally available to the public.'") (quoting *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003)).

2022, but the Complaint was not filed until November 2, 2022—nearly three months too late.

Cassava claims that it did not know the identities of the CP Defendants at the time of the CP (FAC ¶ 146), but that is immaterial. Cassava concedes it learned of the CP Defendants' identities a few months later, from a news article Cassava suggests was prompted by the November 17, 2021, supplement. *Id.* ¶¶ 145-46. The supplement did not restart the limitations clock from the first publication, nor did it absolve Cassava of its obligation to exercise diligence in bringing its claim within the prescribed period. Cassava offers no explanation why it could not have sued the CP Defendants sooner than 351 days after learning their identities. Even where a defendant's identity remains unknown for the entire limitations period, the law is clear that "a plaintiff who believes that there exist individual defendants who are potentially liable for his injuries, but who does not know their exact identities and who waits until after the expiration of the limitations period to remedy this lack of knowledge (by naming a specific individual as a defendant), will find his claim to be time-barred." *Solomon v. Amazon.com, Inc.*, 2019 WL 2601794, at *2 (E.D.N.Y. June 24, 2019) (cleaned up).[12] Cassava plainly could have sued the CP Defendants within the requisite timeframe, and its failure to do so bars its claims.[13]

### B.    Cassava Does Not Meet the Stringent Standard for Pleading Defamation.

Under New York law, a defamation claim requires: "(1) a written defamatory statement of

---

[12] *See also Swayze v. LaFontant*, 2022 WL 2209148, at *5 (S.D.N.Y. June 21, 2022) ("Swayze suggests that it was only when he received [the identities of defendants from a FOIL request] in late 2021 that he could have amended the motion. Defendants counter convincingly that no explanation is provided as to why the FOIL request was not made until November of 2021, over one year after the initial complaint was filed and more than five months after the expiration of the statute of limitations."); *Henry v. City of New York*, 2008 WL 906743, at *4 (E.D.N.Y. Apr. 1, 2008) ("Had she filed her complaint in the instant action well before the expiration of the statute of limitations she would have had the opportunity to learn the names of the unknown defendants through discovery. Therefore, plaintiff has failed to demonstrate that she showed due diligence in pursuing the necessary information and her claims will not be equitably tolled.").

[13] That the third and fourth supplements to the CP were published within one year of the filing of the Complaint is also immaterial. Cassava admits that the November 17, 2021, supplement (FAC, Ex. 9) simply "parroted" the points of the CP. FAC ¶ 143. The December 8, 2022, supplement (FAC, Ex. 11) "continued" the message of the CP by "once again" stating its underlying messages. *Id.* ¶ 153.

and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *See Cummings v. City of N.Y.*, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022) (internal quotation marks omitted). A plaintiff's claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Mere legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because of the First Amendment rights at stake, robust application of the *Iqbal/Twombly* standard "has a particular value in this context, as forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) (internal quotation marks omitted). "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id.*[14] Because the "threat of being put to [the] defense of a lawsuit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself," *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 695 (S.D.N.Y. 1995) (cleaned up), courts routinely dismiss defamation cases. *See e.g.*, *Valley Elecs. AG v. Polis*, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (affirming dismissal).

In this case, as discussed below, Plaintiff has "not nudged [its] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, nor can its defects be remedied. The statements attributed to the CP Defendants are not defamatory, do not demonstrate "actual malice,"

---

[14] *See also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (noting the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks . . .").

and did not cause Cassava's claimed injuries. The FAC should be dismissed with prejudice.

          **1.**      **The Defamation Claim Fails Because the Factual Assertions in the Citizen Petition Are Substantially True.**

The essence of the claims here is that the CP asserts that the data on which Cassava relied show indicia of manipulation. *See, e.g.*, FAC ¶ 120; *id.* ¶ 179 (citing CP's reference to anomalies in Western blot analysis that suggest data manipulation); *id.* ¶ 189 (citing CP's doubts about reliability of brain tissue testing); *id.* ¶ 210 (citing CP's concerns about Phase 2b reanalysis). But it is not controverted that those indicia in fact existed—Cassava's own FAC confirms that the papers at issue contained errors and anomalies, albeit ones that Cassava argues can be innocently explained. *See, e.g.*, *id.* ¶ 187 (stating that issues with Western blot analysis may result from errors in the publishing process but also conceding that they may indicate manipulated data); *id.* ¶ 188 (taking issue with how CP defendants "weighed" the "issues" and "inconsistencies" with respect to Western blot analysis but not denying the existence of such issues and inconsistencies); *id.* ¶ 195 (relying on research community's lack of standards to explain away choice to use decade-old brain tissue but not denying that the age of brain tissue was concerning); *id.* ¶¶ 207-09 (explaining its purportedly acceptable reasons for Phase 2b retesting but not denying other possible reasons for retesting or that Cassava's presentation of retested data contained indicia of anomalies). Cassava states no claim for defamation because its allegations concede the truth of the facts underlying the issues raised in the CP, and statements that are "substantially true" cannot be defamatory, *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (noting that plaintiff bears the burden of proving falsity). "Substantial truth" does not mean forensic accuracy. *See id.* at 302. Rather, the First Amendment and New York law protect a speaker from liability so long as the contested statements carry the same "gist" or sting as the pleaded truth. *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) ("A statement is substantially

true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." (citation and alteration omitted)).

There is no doubt that the gist of the CP was substantially true. For example, as to the CP's observation that the P-Tau181 blood test data presented at the July 2021 AAIC appeared to use different data sets, Cassava concedes the existence of "errors in displaying figures in any published reports on the Phase 2b study," but attempts to explain them away as "typographical only" and argues that they had no impact on the analysis. FAC ¶ 221. Cassava's convenient excuse notwithstanding, having admitted errors, Cassava cannot contend that the CP spoke falsely in noting them. While Cassava urges innocent explanations for the admitted errors, it is not defamation for the CP Defendant to have *accurately* addressed issues that Cassava itself agrees existed. The CP Defendants' *opinion* that those errors could indicate manipulation requiring further investigation is immune from defamation as noted in Section I(B)(2), *infra*.

Similarly, Cassava concedes that Western blots like those depicted in the relevant papers are "prone to visual abnormalities." FAC ¶ 319. Cassava admits that the blots in the cited papers had "problems," including "the use of low-dpi images"; "compression artifacts created by the re-sizing of blot data for use in publications"; "a cropping error"; "tweaks to exposure levels before publication"; and "errors in marking figures." *Id.* ¶ 363. Cassava even cites "independent scientists" as indicating that the blots in question contain "obvious errors that likely occurred during generating figures for publication." *Id.* ¶ 362. Cassava does not (and cannot) contend that the CP depicted anything other than the *actual* blot diagrams used by the papers themselves and derived its analysis and conclusions directly from those images. Cassava therefore has conceded that the factual underpinning of the CP is accurate. Its view that the numerous admitted red flags should be interpreted benignly confirms that its beef is not with the factual assertions in the CP,

which is all that defamation law addresses, as discussed below.[15]

Among the 106 exhibits accompanying the FAC are many that further confirm the truth of the factual assertions in the CP. For example, a Cassava press release quotes the *Journal of Neuroscience* as confirming that a 2012 Cassava paper contained duplicated data and the journal requested a Corrigendum (*i.e.*, a correction). *See* FAC, Ex. 16 at 2. A month later, that same journal issued an "Expression of Concern" regarding that 2012 Cassava paper as well as a 2009 paper from Dr. Wang; both are currently being investigated by CUNY, Dr. Wang's own institution. FAC, Ex. 17; Adam Marcus, *Two expressions of concern arrive for papers linked to beleaguered biotech Cassava*, Retraction Watch (Dec. 20, 2021), https://retractionwatch.com/2021/12/20/two-expressions-of-concern-arrive-for-papers-linked-to-beleaguered-biotech-cassava/. Cassava's own Form 10-K for 2021 acknowledges "human errors" in one paper and "a duplicated panel" in another. FAC, Ex. 20 at 34. Following the CP, editors have retracted seven papers, expressed concern about four others, and corrected two papers from Dr. Wang; four of these were funded by Cassava and co-authored by Dr. Burns. *See* n.9, *supra.* There is simply no dispute that the CP was correct in noting errors and anomalies in the papers underlying Cassava's FDA filings.

Actual falsity is a gating issue for any defamation claim. On the face of the First Amended Complaint, Cassava fails to clear that hurdle. The CP Defendants truthfully identified admitted problems in data in the cited studies, and therefore they cannot be liable for defamation.

### 2. The CP Defendants' Qualified Inferences of Possible Data Manipulation Are Nonactionable Opinion.

---

[15] Cassava similarly concedes the accuracy of facts concerning the CP's points regarding the use of long-dead frozen tissue. Cassava does not dispute that the tissue in question was frozen for as long as a decade, and it concedes that the tissue was "stored at -80° C." FAC ¶ 194. While it argues this was "acceptable" procedure, *id.*, its 2021 Form 10-K acknowledges "human errors" in a key figure depicting results using frozen brain tissue, FAC, Ex. 20 at 34. But this scientific quibble is beside the point. There can be no claim of defamation where the CP accurately identified a series of facts concerning the use of dead tissue, and offered inference or opinions from those disclosed facts.

As the *facts* underlying the CP are plainly true, Cassava is relegated to taking issue with the CP Defendants' *opinion* that these anomalies suggest possible data manipulation. But it is a fundamental principle under the First Amendment that a defamation claim must be directed to false statements of fact, not expressions of opinion.[16] The CP Defendants' *opinion* as to the cause or explanation of the admitted anomalies and aberrations is not actionable here.

Whether something is a "fact [or] opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean and is appropriately raised at the motion to dismiss stage." *Hayashi v. Ozawa*, 2019 WL 1409389, at *3 (S.D.N.Y. Mar. 28, 2019) (cleaned up). Furthermore, when evaluating challenged statements, courts apply a "holistic approach" that involves "looking to the tone of the communication, its apparent purpose, and the setting in which it was made," *id.*, including whether a "reasonable reader would have believed that the challenged statements were conveying facts" about the plaintiff, *Aviation Fin. Co. v. Chaput*, 2015 WL 13203653, at *17 (S.D.N.Y. Mar. 12, 2015) (internal quotation marks omitted). Here, the CP does not declare there to have been falsified data, but asks the FDA—the government agency responsible for drug testing—to investigate the numerous "signs," "anomalies," and "patterns" strongly suggestive of falsification. Read as a whole, it is clear that the CP Defendants are offering the *opinion* that data manipulation is the likely explanation for the red flags, and that the FDA should verify.

At most, the CP can be characterized as containing mixed statements of fact and opinion, but such statements can be defamatory only if (1) they "impl[y] that [they are] based upon facts which justify the opinion but are unknown to those reading or hearing it," *Sorvillo v. St. Francis*

---

[16] "Expressions of opinion . . . are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Cummings*, 2022 WL 2166585, at *3 (citation omitted); *see also Collins v. Travers Fine Jewels Inc.*, 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017) ("opinions are absolutely protected"); *accord Kuan Sing Enters., Inc. v. T. W. Wang, Inc.*, 446 N.Y.S.2d 76, 77 (1st Dep't 1982).

*Preparatory Sch.*, 607 F. App'x 22, 24 (2d Cir. 2015) (internal quotation marks omitted), or (2) if the plaintiff challenges the veracity of not only the opinions, but also the underlying facts, *Chau v. Lewis*, 935 F. Supp. 2d 644, 659 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). Neither condition is satisfied here. The CP confirms that "[a]ll the information detailed herein was obtained from public, non-proprietary sources." FAC, Ex. 3 at 12. The CP cites the papers themselves and offers detailed factual bases—admitted by Cassava and confirmed by others—for why the data raises concerns. The CP's opinions based on the facts constitute nonactionable opinion.[17]

Moreover, the CP must be evaluated in light of its extensive use of qualifying language. The CP does *not* make a definitive pronouncement of misconduct or manipulation; rather, it plainly and repeatedly states that the pattern of errors is "suggestive" of or contains "hallmarks" of data manipulation, or "raises questions" about data validity. FAC, Ex. 3 at 4. The examples of cautionary language in the CP are too numerous to list, but include the following:

- "apparent misrepresentation of clinical data," *id.* at 15;

- "examples which raise red flags," *id.* at 16;

- "initial analysis suggests a pattern of clear errors and anomalies that are consistent with data manipulation and misrepresentation," *id.* at 13;

- "appears to contain a collection of questionable western blots," *id.* at 20;

- "pattern that strongly calls into question the integrity of this publication," *id.* at 22;

- "evidence that the bands likely derive from different sources," *id.* at 26;

- "blot that appears to have been manually constructed," *id.* at 27;

---

[17] *See, e.g., Biro v. Conde Nast*, 883 F. Supp. 2d 441, 468 (S.D.N.Y. 2012) ("Courts have consistently held that when an author fully sets forth the factual basis for a particular view (and that factual basis is not challenged as false), then the author's conclusion constitutes nonactionable opinion."); *Eros Int'l, PLC v. Mangrove Partners*, 140 N.Y.S.3d 518, 519 (1st Dep't 2021) ("[S]tatements . . . accompanied by a recitation of facts on which they were based [are] nonactionable opinion."); *Levin v McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (statement is not actionable if it discloses facts on which it is based).

- "evidence of apparent intentional scientific misrepresentation," *id.*;

- "congruence of these oddly shaped bands are unlikely to have occurred by chance and raises the possibility of band duplication and data manipulation," *id.* at 39;

- "could be due to merging multiple images in a photo editing software," *id.* at 41; and

- "apparently manipulated and cropped Western blots," *id.* at 43.

Such qualifying language negates the prospect that the statements can be defamatory and confirms they are nonactionable opinion.[18] That the CP asks the FDA to investigate the data (FAC, Ex. 3 at 12) underscores that the CP Defendants were not making conclusive pronouncements but were offering commentary and opinion on admitted problems in the cited papers (subsequently admitted by Cassava or noted by the journal editors) and how they should be resolved. Statements urging readers to investigate and draw their own conclusions are non-defamatory opinions.[19] This is particularly true in the realm of scientific debate, where the Second Circuit has made clear that "as a matter of law, statements of scientific conclusions about unsettled matters of scientific debate cannot give rise to liability for damages sounding in defamation." *ONY, Inc. v. Cornerstone*

---

[18] *See, e.g.*, *Cummins v. SunTrust Cap. Mkts., Inc.*, 416 F. App'x 101, 103-04 (2d Cir. 2011) (characterizations of option grants as "self-interested, abusive, unethical, unjustifiable, a manipulation of securities regulations, and akin to backdating" were nonactionable because "defendants included several disclaimers that *they could not say whether the options were actually backdated or otherwise illegal*" (emphasis added)); *Weiner v. Doubleday & Co.*, 535 N.Y.S.2d 597, 602 (1st Dep't 1988) ("Cautionary passages . . . sprinkled throughout the book" indicate that the challenged statements "were presented simply as nothing more than opinion, since when the reasonable reader encounters cautionary language, he or she tends to discount that which follows." (cleaned up)), *aff'd*, 74 N.Y.2d 586 (1989); *Valley Elecs. AG*, 2022 WL 893674, at *2 (statement that "'it does not appear' that Valley is interested in providing its consumers accurate information" constitutes nonactionable opinion (alteration omitted)); *NOVAGOLD Res., Inc. v. J Capital Rsch. USA LLC*, 2022 WL 900604, at *5 (E.D.N.Y. Mar. 28, 2022) (noting that phrases such as "we believe" and "it seems to us" are "pregnant with signals to the reader that the statements made therein were opinion"); *Carto v. Buckley*, 649 F. Supp. 502, 511 (S.D.N.Y. 1986) ("The phrase 'presumably,' similar to the phrases 'I suspect' and 'it is probable,' expresses Buckley's constitutionally protected belief or opinion.").

[19] *See, e.g.*, *Zuber v. Bordier*, 522 N.Y.S.2d 610, 611 (2d Dep't 1987) (statement about plaintiff's teaching ability was nonactionable opinion where "the facts supporting the defendant's opinion were set forth, so as to ensure that the reader and the listeners had an opportunity to assess the basis upon which the opinion was reached and reach their own conclusions"); *Brian v. Richardson*, 87 N.Y.2d 46, 53-54 (1995) (statement is nonactionable opinion where defendant "offered his own view" and "set out the basis for that personal opinion," ultimately "leaving it to the readers to evaluate it for themselves").

*Therapeutics, Inc.*, 720 F.3d 490, 492 (2d. Cir. 2013).

It is a fundamental tenet of American society that each is entitled to her own opinion. Even more so for the CP Defendants here, whose opinions added scientific insight to an important public health issue, related to clear aberrations in critical data underlying testing in human beings, and were addressed to the government agency responsible for drug product safety and testing. If Cassava's gambit of silencing scientific opinion through defamation claims were to succeed, a new tool will have been created to silence crucial skepticism, and lives will literally be lost.

### C.    Cassava Does Not Allege Actual Malice.

Of course, falsity is necessary but not sufficient for a defamation claim. Even if the CP Defendants had been wrong in their facts—and they were not—there would still be no claim of defamation absent allegations showing "actual malice." And allegations suggesting that the CP Defendants acted with malice or awareness that their statements were false are absent here.

The actual malice standard applies as this is a case "involving public petition and participation," defined to include a claim based upon "any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(1), 76-a(2). Moreover, Cassava is a public company that made public filings in pursuit of a drug it hopes to test on and sell to the public.[20] Thus, Cassava had to allege with factual detail, *see Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), that each challenged statement "was made with knowledge of its falsity or with reckless disregard of whether it was false," N.Y. Civ. Rights Law § 76-a(2). That is, Plaintiff had to allege facts to show the CP Defendants' "subjective doubts about the truth of the publication," *Biro*, 807 F.3d at 546 (internal quotation marks omitted),

---

[20] Plaintiff is a limited purpose public figure, as Cassava "has thrust [itself] to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Coleman v. Grand*, 523 F. Supp. 3d 244, 256 (E.D.N.Y. 2021) (cleaned up); *see Biro*, 963 F. Supp. 2d at 274.

as "even spite, hostility or deliberate intention to harm is insufficient to show malice," *Farber v. Jefferys*, 2011 WL 5248207, at *11 (N.Y. Sup. Ct. Nov. 2, 2011) (internal quotation marks omitted), *aff'd*, 959 N.Y.S.2d 486 (1st Dep't 2013). Given the truth of the underlying facts in the CP, Cassava comes nowhere near meeting this exacting standard.

Cassava attempts to overcome this hurdle in two ways. First, Cassava impugns the CP Defendants by suggesting that they were motivated by profit and "shorted" Cassava's stock. FAC ¶ 15. But the courts consistently hold that alleged motive is not malice. Indeed, even outright *animus* towards a plaintiff is insufficient to allege actual malice. *See e.g.*, *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 18, 21 (S.D.N.Y. 2022) (no actual malice despite allegations that defendants were "competitors" who "acted with malice and sought to destroy the Plaintiffs' reputations" (internal quotation marks omitted)).[21] Even if the CP Defendants stood to benefit from the CP (in fact, they acted to protect patients), this provides no plausible or logical basis to believe they spoke falsely when commenting on aberrational data in a CP certified and filed with a government authority.

Second, Cassava contends that the CP Defendants must have known the CP was false because the admitted anomalies purportedly have innocent explanations (some of which appear to be based on "facts" that post-date the CP). *See* Section I(B)(1), *supra*. But alternative interpretations do not render underlying facts false, nor is it defamation to draw an inference or hold an opinion when others may exist. If people are carrying wet umbrellas, it is not malicious or bad faith to suggest that it is raining, even if rain is not the only possible explanation. Cassava's claim that it can posit its own explanations for data incongruities simply underscores that the issues here are ones of scientific debate, not defamation law. The First Amendment would mean little if

---

[21] *See also Loughlin v. Goord*, 558 F. Supp. 3d 126, 154 (S.D.N.Y. 2021) (no actual malice even where plaintiffs alleged facts to show "motive to defame" because plaintiff "had taken a position adverse to [defendant's] friend and colleague" when he "made a whistleblower complaint against [him]").

the scientific community cannot engage in debates; Cassava's request that the Court umpire those debates using the blunt instrument of defamation law is sheer folly. *See ONY,* 720 F.3d at 497 ("Needless to say, courts are ill-equipped to undertake to referee such controversies.").

Cassava cannot contest that data manipulation is a possible—indeed highly plausible— explanation for the uncontroverted anomalies here. There is no factual showing that the CP Defendants *knew* the information in the CP was wrong, or that there were *obvious reasons* to doubt its accuracy. *See BYD Co. Ltd. v. VICE MEDIA LLC*, 531 F. Supp. 3d 810, 822 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 254-55 (S.D.N.Y. 2019).[22]  The defamation claim should be dismissed.

### D. The Challenged Statements Are Incapable of Defamatory Meaning and Cassava Has Not Pled Facts to Suggest that the CP Defendants Caused Any Injuries or Special Damages.

The CP is not defamatory for the additional reason that, as a whole, it does not carry a defamatory meaning. To defame, a statement "must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." *Chau*, 771 F.3d at 127.[23]  Hence, whether a statement is capable of defamatory meaning is a question of

---

[22] Even if the actual malice standard did not apply, the FAC fails to plead that the CP Defendants acted with the "gross irresponsibility" required for statements about "matters of public concern." *Coleman*, 523 F. Supp. 3d at 254. Plaintiff fails to plead facts showing that the CP Defendants acted in a grossly irresponsible manner: the CP Defendants summarized their detailed findings in a series of detailed reports, carefully described the analysis and data they relied upon, identified their publicly available sources and included links to them for the reader to access and verify if so desired, and made clear that their conclusion was that further investigation and inquiry were warranted. This is precisely the type of conduct that courts have found *not* to be grossly irresponsible. *See e.g.*, *Farber v. Jefferys*, 959 N.Y.S.2d 486, 487 (1st Dep't 2013) (no gross irresponsibility where defendant "explained that his statement . . . was based on his expertise and research" and on other external sources, and "provided documentation to support why he believed what he wrote about the plaintiff was true"); *Weiner*, 535 N.Y.S.2d at 602 (no triable issue as to whether defendants acted in a grossly irresponsible manner where author "sprinkled" "[c]autionary passages" throughout the publication).

[23] *See also Margolies v. Rudolph*, 2022 WL 2062460, at *4 (E.D.N.Y. June 6, 2022) ("A defamatory statement is one that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d

law to be resolved by the Court, when considering "the publication as a whole" and "against the background of its issuance with respect to the circumstances of the publication." *Weinstein v. Friedman*, 1996 WL 137313, at *11 (S.D.N.Y. Mar. 26, 1996) (internal quotation marks omitted), *aff'd*, 112 F.3d 507 (2d Cir. 1996). This determination is appropriately made at the pleading stage. *See, e.g.*, *Jacob v. Lorenz*, 2022 WL 4096701, at *10-11 (S.D.N.Y. Sept. 7, 2022); *Jacobus v. Trump*, 156 A.D.3d 452, 453 (1st Dep't 2017).

Read as a whole, the CP's core message is that the six papers by Drs. Wang and Burns contain issues that warrant further investigation. Noting those anomalies did not expose Cassava to "public hatred, shame, . . . ridicule," or any similar feeling. *Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 486 (S.D.N.Y. 2021) (internal quotation marks omitted). Instead, the CP Defendants' statements could reflect poorly on Cassava only to the extent that Cassava chose to disregard or mishandle the many identified red flags in the Drs. Wang/Burns papers. If, as Cassava claims, the aberrations in the data could be innocently explained, Cassava should have offered those explanations, and if those explanations were scientifically valid, that should have resolved the matter. Instead, Cassava chose to wave off serious scientific questions as mere "fiction," FAC, Ex. 3 at 2, and made false statements about who analyzed the data, *see* FAC, Ex. 64.

Stated another way, the statements at issue by the CP Defendants were not a proximate cause of any defamatory injury to Cassava, and Plaintiff has failed to adequately plead otherwise. The CP simply identified serious concerns with data and findings in a series of scientific papers and corporate disclosures from Cassava. And while the CP contributed to the mix of publicly-available information about Cassava, the company's own reaction affected the reaction of the scientific community, as is evidenced by the movements in Cassava's stock price. Cassava's stock

107, 113 (2d Cir. 2005)) (alterations omitted)).

price declined slightly from $106.17 to $101.23 the day after the CP was submitted (August 18, 2021), then rose more than 10% to $117.23 the following week.[24] Then, by August 30, 2021—following Cassava's August 25 press release, which decried the criticism of the data as "fiction" and contained false claims about independent lab verification of its data—its stock price closed at $53.26 (a 55% decline).[25] The FAC fails to adequately allege facts to show how the CP itself, as opposed to the numerous other events and market factors cited in the FAC or Cassava's own response, caused the injury Cassava claims.

Relatedly, Cassava alleges no special damages stemming from the CP. The claims against the CP Defendants do not involve defamation *per se* because they are not so "egregious" that they are "presumed to cause serious harm." *Moritz v. Town of Warick*, 2017 WL 4785462, at *5 n.3 (S.D.N.Y. Oct. 19, 2017) (internal quotation marks omitted). Nor does the CP "impute[] incompetence, incapacity or unfitness in the performance of [Cassava's] profession." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 336 (S.D.N.Y. 2010) (citation omitted). It noted only that papers and presentations relied on by Cassava contain red flags that signal apparent manipulation.

Because the *per se* "exception" is unavailable, Cassava had to allege "with sufficient particularity to identify actual losses" a deprivation of "economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Collins*, 2017 WL 1184305, at *3 (cleaned up). This "particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai*, 726 F. Supp. 2d at 330.[26] Cassava has not alleged what, if any, damages it claims flowed

---

[24] *See Cassava Sciences, Inc. (SAVA)*, Yahoo! Finance, https://yhoo.it/3Q9pUAd.

[25] *Id.*

[26] *See also Global Auto, Inc. v. Hitrinov*, 2021 WL 7367078, at *10 (E.D.N.Y. Aug. 20, 2021) (no special damages where party "d[id] not identify any actual losses with particularity or name customers that ceased to do business with [it] as a result of the . . . defamatory comments"); *Marom v. Pierot*, 2020 WL 6572509, at *8 n.6 (S.D.N.Y. Aug. 30,

from the CP, as opposed to the literally hundreds of other instances of alleged defamation by others catalogued in the FAC and its 106 exhibits. Cassava's discussion of damages (FAC ¶¶ 423-38) lumps "the Defendants" together indiscriminately, with no effort to describe, much less particularize, any injury stemming from the CP itself.

Of course, that is not inadvertent. The extreme length and repetition of the FAC reflect an intentional effort to create a blurry target and implicate the CP Defendants in events unrelated to them. But as the CP Defendants are not alleged to have had any involvement in or responsibility for the alleged conduct of other Defendants, the CP Defendants cannot be held liable for that alleged conduct.[27]

The CP raised fair questions about obvious and admitted problems in data that Cassava had cited in its filings with the FDA. Cassava's reaction to the questions was inexplicable and created self-inflicted wounds. The FAC must be dismissed as the CP, as a whole, contains no defamatory meaning, and the FAC does not contain plausible allegations that the CP proximately caused special damages.

## II. THE CONSPIRACY CLAIM (COUNT II) MUST BE DISMISSED BECAUSE NO SUCH INDEPENDENT TORT EXISTS AND IT MERELY DUPLICATES THE DEFAMATION CLAIM.

Cassava's claim of conspiracy (Count II), fails for the simple reason that "it is textbook law that New York does not recognize an independent tort of conspiracy." *Shaw v. Empire Stock*

---

2020) (no special damages where plaintiff does not "set forth an itemized account of her losses" (internal quotation marks omitted)).

[27] *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) ("[A] plaintiff may not recover damages from the original author for either product disparagement or slander arising from the republication of defamatory statements by a third party absent a showing that the original author was responsible for or ratified the republication."); *see also Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 178 n.7 (S.D.N.Y. 2021) (same); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998) (observing that "author of purportedly non-fiction paperback book not liable for republication, over which he had no control, of same material in reissued paperback form, regardless of 'foreseeability'" (citation omitted)); *see also Pisani v. Staten Island Univ. Hosp.*, 2008 WL 1771922, at *9 (E.D.N.Y. Apr. 15, 2008) (disagreeing with the position that "defendants are responsible for any reasonably foreseeable republication of their allegedly defamatory statement").

*Transfer Inc.*, 381 F. Supp. 3d 286, 292 (S.D.N.Y. 2019) (cleaned up).[28] Moreover, the conspiracy

claim adds nothing not already alleged in the defamation claim, which is asserted against both Drs.

Bredt and Pitt; thus, the "conspiracy claim is entirely duplicative" and should be "dismissed with

prejudice." *Carbon Investment Partners, LLC. V. Bressler*, 2021 WL 3913526, at *9 (S.D.N.Y.

Sept. 1, 2021).[29]

## III.    THE FAC VIOLATES FEDERAL RULE OF CIVIL PROCEDURE 8.

In an effort to mask a lack of legal merit with impenetrable quantity, Cassava has filed a

bloated mess of a First Amended Complaint, spilling out over 195 pages and 495 numbered

paragraphs (plus many dozens of subparagraphs) and incorporating by reference 106 Exhibits.

Despite extreme volume and repetition, the FAC repeatedly clusters the "Defendants" together, *en

masse*, and leaves questions about exactly what portions of the CP are at issue in the case.

Rule 8(a)(2) of the Federal Rules of Civil Procedure required Cassava to provide "a short

and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d) further

mandates that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Taken together," these provisions "underscore the emphasis placed on clarity and brevity by the

federal pleading rules." Charles Alan Wright & Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1217

(4th ed. 2022). As this Court has held, a complaint's averments "should be *short* because

unnecessary prolixity in a pleading places an unjustified burden on the court and the party who

must respond to it because they are forced to select the relevant material from a mass of verbiage."

---

[28] *See also Kraft v. Rector, Churchwardens and Vestry of Grace Church in New York*, 2004 WL 540327, at *3 n.5 (S.D.N.Y. Mar. 17, 2004) ("Because New York law does not recognize an independent tort for conspiracy, the Court *sua sponte* dismisses plaintiff's civil conspiracy claim . . . ." (internal citation omitted)); *accord Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 970 (1986) ("[A]s we long ago held, a mere conspiracy to commit a tort is never of itself a cause of action.") (cleaned up).

[29] Even if a conspiracy claim could exist, it would be "time-barred when the substantive tort underlying it is time-barred." *Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1989). Cassava's conspiracy claim is no more timely than its time-barred defamation claim, as discussed above.

*Moscowitz v. Brown*, 850 F. Supp. 1185, 1189 (S.D.N.Y. 1994) (cleaned up and emphasis added), *abrogated on other grounds by Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258 (2d Cir. 2000).

The courts do not hesitate to dismiss or strike overly prolix complaints, and there is ample reason to do so here.[30] Drs. Bredt and Pitt are individual Defendants, and Cassava has brandished an excessive complaint precisely to punish them for their scientific criticisms. The FAC should be dismissed for this independent reason, or, alternatively, if a responsive pleading is ever required, the CP Defendants should be permitted to respond only to the portions of the FAC discussing them specifically, or they should be permitted to offer a general denial.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated:  January 6, 2023

Respectfully submitted,
DAVID BREDT and GEOFFREY PITT

By their attorneys,

*/s/ Jeffrey A. Simes*

Jeffrey A. Simes
Meghan K. Spillane
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.:   (212) 813-8800
Fax:    (212) 355-3333
jsimes@goodwinlaw.com
mspillane@goodwinlaw.com

---

[30] *See Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 234 (E.D.N.Y. 1999) (dismissing complaint because "[i]t is simply not fair to the court or to the defendant to require a pleading in response to the amended complaint which plaintiff has submitted"); *cf. Indep. Theaters, Inc. v. Am. Broad.-Paramount Theaters, Inc.*, 179 F. Supp. 489, 490 (S.D.N.Y. 1959) (striking portions of a complaint under Federal Rule of Civil Procedure 12(f) because "[t]he complaint is interlarded with numerous other allegations of an evidential nature . . . . [that] serve no useful purpose as far as the plaintiff's claim is concerned").

## CERTIFICATE OF SERVICE

 I, Jeffrey A. Simes, hereby certify that a copy of the foregoing Memorandum of Law in Support of the CP Defendants' Motion to Dismiss the First Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 6, 2023.

Dated: January 6, 2023          */s/ Jeffrey A. Simes*