UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § § | Master File No. 1:21-cv-00751-DAE CLASS ACTION |
| This Document Relates To:  ALL ACTIONS | § § § § § § | |

**PLAINTIFFS' OPPOSED MOTION TO SUPPLEMENT THE CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL ALLEGATIONS ................................................................................4

III.    PROCEDURAL HISTORY...................................................................................7

IV.     LEGAL STANDARD............................................................................................9

V.      THE RELEVANT FACTORS COUNSEL IN FAVOR OF PERMITTING
        PLAINTIFFS LEAVE TO SUPPLEMENT THE COMPLAINT ....................11

        A.      Undisputed:  Timeliness ..........................................................................11

        B.      Undisputed:  No Bad Faith or Dilatory Motive ....................................12

        C.      Undisputed:  No Repeated Failures .......................................................13

        D.      Undisputed:  No Prejudice to Defendants.............................................13

        E.      The Proposed Supplement Is Not Futile ................................................14

VI.     CONCLUSION....................................................................................................20

4854-3195-8435.v6

# TABLE OF AUTHORITIES

Page

## CASES

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004), *as amended*
(Sept. 3, 2004) .................................................................................................17, 18

*Chemetron Corp. v. Bus. Funds*,
682 F.2d 1149 (5th Cir. 1982), *vacated on other grounds*,
460 U.S. 1007 (1983) ...............................................................................................10

*DT Apartment Grp., LP v. CWCapital, LLC*,
2012 WL 4740488 (N.D. Tex. Oct. 3, 2012) ..........................................9, 10, 12, 14

*Dueling v. Devon Energy Corp.*,
623 F. App'x 127 (5th Cir. 2015) .............................................................................13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..................................................................................................14

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ....................................................................................12

*Entergy Miss., Inc. v. Marquette Transp. Co., L.L.C.*,
742 F. App'x 800 (5th Cir. 2018) .............................................................................11

*Foman v. Davis*,
371 U.S. 178 (1962) .............................................................................................10, 11

*Franchi v. SmileDirectClub, Inc.*,
633 F. Supp. 3d 1046 (M.D. Tenn. 2022) .................................................................17

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ......................................................................................19

*Garcia v. Zale Corp.*,
2006 WL 298156 (N.D. Tex. Feb. 1, 2006) ..............................................................14

*Hegwood v. Ross Stores, Inc.*,
2006 WL 8437334 (N.D. Tex. June 26, 2006) .....................................................11, 12

*Holzwasser v. Staktek Holdings, Inc.*,
2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ...........................................................20

*Hudson v. L&W Supply Corp., Inc.*,
2009 WL 10693829 (S.D. Tex. June 18, 2009) .........................................................12

- ii -

**Page**

*Hyde v. Hoffman-La Roche Inc.*,
   2008 WL 2923818 (N.D. Tex. July 30, 2008) .......................................................................10

*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal. 2008) ................................................................................17

*In re Apollo Grp., Inc. Sec. Litig.*,
   2010 WL 5927988 (9th Cir. June 23, 2010) ........................................................................18

*In re BP p.l.c. Sec. Litig.*,
   922 F. Supp. 2d 600 (S.D. Tex. 2013) ..................................................................................18

*In re Motorola Sec. Litig.*,
   2004 WL 2032769 (N.D. Ill. Sept. 9, 2004) ........................................................................17

*In re Res. Am. Sec. Litig.*,
   2000 WL 1053861 (E.D. Pa. July 26, 2000) ........................................................................18

*Jebaco Inc. v. Harrah's Operating Co., Inc.*,
   587 F.3d 314 (5th Cir. 2009) ................................................................................................11

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) ..............................................................................14, 15, 17

*Lowrey v. Tex. A & M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ................................................................................................10

*Matter of Southmark Corp.*,
   88 F.3d 311 (5th Cir. 1996) ..................................................................................................11

*Mayeaux v. La. Health Serv. & Indem. Co.*,
   376 F.3d 420 (5th Cir. 2004) ................................................................................................10

*Pub. Emps. Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ...................................................................................... *passim*

*SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*,
   839 F.3d 422 (5th Cir. 2016) ..............................................................................10, 11, 13

*Smith v. EMC Corp.*,
   393 F.3d 590 (5th Cir. 2004) ................................................................................................13

*Spitzberg v. Hous. Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ................................................................................................14

**Page**

*Stripling v. Jordan Prod. Co.*,
   234 F.3d 863 (5th Cir. 2000) ...............................................14

*Travis v. City of Grand Prairie*,
   2015 WL 13002069 (N.D. Tex. Aug. 6, 2015), *aff'd*,
   654 F. App'x 161 (5th Cir. 2016) ...........................................12

*Wieland v. Stone Energy Corp.*,
   2007 WL 2903178 (W.D. La. Aug. 17, 2007), *report & rec. adopted*,
   2007 WL 4403548 (W.D. La. Oct. 1, 2007) ...............................16, 19

*Zwick Partners, LP v. Quorum Health Corp.*,
   2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ...............................17

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 8(a)(2) ...........................................................14
   Rule 12(b)(6) ......................................................14, 17
   Rule 15(a) .........................................................10, 11
   Rule 15(a)(2) .........................................................10
   Rule 15(d) .......................................................1, 9, 10
   Rule 56 ...............................................................14

## SECONDARY AUTHORITIES

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*
   §1504 (3d ed. 2004) ....................................................9

https://ori.hhs.gov/about-ori (last visited on Feb. 1, 2024) ...................1

4854-3195-8435.v6

Lead Plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar K. Rao (collectively, "Plaintiffs") respectfully move for leave to supplement their August 18, 2022 Consolidated Complaint for Violations of the Federal Securities Laws (ECF 68) ("Complaint")[1] against defendants Cassava Sciences, Inc., Remi Barbier, Eric Schoen, and Lindsay Burns (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) or (d).

## I.     INTRODUCTION

On May 11, 2023, this Court denied Defendants' motion to dismiss and upheld all the claims in the Complaint, except as to a defendant who passed away.  *See* ECF 104.  On October 12, 2023, the journal *Science* published an article revealing that investigators at the City University of New York ("CUNY") had submitted a "final" 50+ page report ("CUNY Report") to the Office for Research Integrity ("ORI"),[2] finding egregious scientific misconduct involving research papers used to support pre-clinical and clinical trials of Cassava's simufilam drug candidate ("2023 *Science* Article").  The 2023 *Science* Article revealed extensive data manipulation, research misconduct, destruction of original source data, and conclusion that defendant Burns was at fault for at least some of the misconduct.  This corrective disclosure was quickly reflected in Cassava's stock price, resulting in a decline of ***over 30%*** and causing additional damage to putative Class members.

Rule 15(d) contemplates precisely this scenario, allowing parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court.  Fed. R. Civ. P. 15(d).  Plaintiffs seek to supplement the Complaint now in order to clarify the scope of the putative Class and claims for

---

[1]     Unless otherwise noted, all "¶__" or "¶¶__" references are to the Complaint.

[2]     The ORI is the public research oversight arm for the Secretary of the U.S. Department of Health and Human Services.  *See* https://ori.hhs.gov/about-ori (last visited on Feb. 1, 2024).

trial.  Accordingly, through this motion, Plaintiffs seek a modest supplement to the Complaint to plead the October 12, 2023 *Science* Article and subsequent stock drop as set forth in Exhibit A,[3] thereby extending the putative Class Period through October 12, 2023, inclusive.[4]

Plaintiffs sought to avoid burdening the Court with this motion by seeking Defendants' non-opposition to their ability to seek damages at trial resulting from the 2023 corrective disclosure.  Defendants, however, objected because the drop was not pled in the Complaint, even though it had not yet happened at the time of the Complaint's filing on August 18, 2022.  To address Defendants' objection, Plaintiffs then sought consent to supplement the Complaint accordingly.  Defendants rejected that proposal, too, claiming it was futile on loss-causation grounds.  Loss causation allegations, however, need only meet Rule 8's liberal pleading standards – a standard readily met here.

As this Court held in denying Defendants' motion to dismiss, "[f]or a complaint to adequately plead loss causation, 'it need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."'"  ECF 104 at 29-30 (quoting *Pub. Emps. Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014)).  "Where the Complaint sets forth specific allegations of a series of partial corrective disclosures, joined with the subsequent fall in [the company's] stock value, and in the absence of any other contravening negative event, the plaintiffs have complied with [the Supreme Court's] analysis of loss causation."

---

[3]   Unless otherwise indicated, all "Exhibit" or "Ex." references are to the Affidavit of Kevin Lavelle in Support of Plaintiffs' Opposed Motion to Supplement the Consolidated Complaint for Violations of the Federal Securities Laws.

[4]   The putative Class Period as currently pled in the Complaint is September 14, 2020 through July 26, 2022, inclusive.  ¶46.  Based on the proposed supplement, Plaintiffs will move to certify a class of purchasers or acquirers of Cassava securities spanning the entire period between September 14, 2020 and October 12, 2023, inclusive.  According to the deadlines set by the Court, Plaintiffs' motion for class certification is due on March 13, 2024.  ECF 117.

4854-3195-8435.v6

*Amedisys*, 769 F.3d at 326.  Here, too, Plaintiffs' proposed supplement alleges a partial corrective disclosure, subsequent fall in the stock price, and no contravening negative event.  *See id.*; ECF 104 at 29-31.  The supplement is, therefore, not futile.

Defendants, in fact, ***do not dispute*** that the 2023 *Science* Article relates to the alleged fraud or that Cassava's stock price declined following its publication.  Instead, Defendants contend that the 2023 *Science* Article cannot be a corrective disclosure because it is purportedly "unreliable" and because the "issues" in the article "have been the subject of repeated news coverage" and been addressed "by Plaintiffs' own amended complaint."  Ex. B at 1.  But Defendants already made those arguments at the motion-to-dismiss stage and lost.  *Compare* ECF 81 at 31, 34 (arguing alleged corrective disclosures were "unvetted," post-dated the initial complaint and contained no "new" facts), *with* ECF 104 at 30-31 (sustaining Plaintiffs' loss causation allegations).

Defendants' recycled arguments therefore fail for the same reasons they did at the motion-to-dismiss stage.  *See* ECF 86 at 34-35 (responding to Defendants' loss causation arguments).  As this Court found in rejecting Defendants' motion to dismiss, such fact-bound arguments about what the market "knew" and what evidence is "reliable" are premature at the pleading stage, when the Court must "'accept "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff."'"  ECF 104 at 12.

Moreover, Defendants' assertion that the 2023 *Science* Article contained no "new" facts is incorrect.  The article revealed for the first time that CUNY investigators found, contrary to Defendants' public statements, that neither defendant Burns nor Cassava's scientific collaborator, Hoau-Yan Wang, were able to provide ***any*** "original raw data" or "'even a single datum or notebook in response to any allegation.'"  Ex. A, Supp. ¶2.  The article also revealed that investigators found "***improperly manipulated***" scientific images and "***deliberate scientific misconduct***."  *Id.*, Supp. ¶¶1-2.  None of these facts was previously known, as demonstrated by

the stock drop of 30% on abnormally high trading volume that followed, despite Defendants'
denials of wrongdoing.  Defendants have no plausible explanation for why, if this information was
already known to the market, Cassava's stock price fell so dramatically on the news.

Defendants' improper fact-based claim about the reliability of the 2023 *Science* Article
likewise fails.  *See* ECF 104 at 21 ("[T]he reliability of short-seller reports – here, the Citizen
Petitions – is a question of fact that the Court cannot resolve at this time.").  Further, that any final
action by CUNY was reportedly stayed pending an inquiry into the leak of the CUNY Report does
not render it, or the 2023 *Science* Article, unreliable.  The CUNY report was indeed deemed "final"
by the independent CUNY investigating committee and submitted to ORI, a federal oversight
agency.  *See* Ex. A, Supp. ¶¶1-2.  Certainly, the market found it credible enough to downgrade the
valuation of the Company as reflected by the lower stock price.

As explained below, each relevant factor weighs in favor of granting leave to supplement
the Complaint, and four of the five factors are undisputed.  Accordingly, Plaintiffs respectfully
request that the Court grant leave to supplement the Complaint.

## II.   FACTUAL ALLEGATIONS

The Complaint alleges, *inter alia*, that Cassava's pre-clinical and clinical research
supporting the commercial development of simufilam for treatment of Alzheimer's disease
contained extensive data manipulations concealed by Defendants even as they touted their
scientific results.  ¶¶105-109, 143-251.  On August 24, 2021, reports emerged that the FDA had
received a Citizen Petition raising "grave concerns about the quality and integrity of the laboratory-
based studies surrounding" simufilam, including evidence that defendant Burns and Wang
manipulated foundational pre-clinical and clinical studies.  ¶¶12-13.

The next day, on August 25, 2021, Defendants publicly denied the Citizen Petition's
allegations, stating "Cassava Sciences believes the claims in this post regarding scientific integrity

- 4 -

are false and misleading" and that the Company "stands behind its science, its scientists and its scientific collaborators."  ¶316.  Defendants went on to label various statements from the Citizen Petition as "fiction" before setting out the purported "facts."  ¶¶14, 317.  Despite Defendants' strenuous denials, the Company's stock price collapsed, plummeting 39.9% between August 25 and 26, 2021, on heavy trading volume.  ¶¶15, 497.

As a result of the Citizen Petition, CUNY began a research misconduct inquiry into Wang and the research at issue.  ¶¶28, 367-368.

On September 3, 2021, the Company issued another press release calling the Citizen Petition "false" and "misleading."  ¶¶331-332.  Defendant Barbier issued a full-throated defense of Wang to investors, stating: "Based on our long-term scientific relationship with Prof. Wang, we support his scientific integrity and ethics in the strongest possible terms."  ¶333.

Cassava then issued more press releases on November 4 and December 21, 2021, falsely stating that two scientific journals separately investigating alleged misconduct had received "original" images and "raw" data from Burns and Wang, supposedly exonerating Defendants. ¶¶338-356, 386-407.  Cassava's November 4 press release trumpeted that the "Review by *Journal of Neuroscience* Shows No Evidence of Data Manipulation," falsely representing that the journal had "requested raw data for the article, including images of original, uncropped Western blots" and, "[h]aving received that data and completed its review," found no evidence of manipulation. ¶¶339-342.

Similarly, Cassava's December 21 press release quoted Barbier as stating: "Another science journal [*Neuroscience*] has cleared us of allegations" and "[t]his reinforces my conviction that false and misleading allegations of scientific misconduct being made against us are simply designed to enrich those making them."  ¶386.  Like the November 4 press release, Defendants' December 21 statement also falsely represented that the journal, "asked the authors for images of

the original, uncropped Western blots from this study," and, "[a]fter careful examination of these original material, *Neuroscience* found no evidence of manipulation." ¶387.

As the Complaint alleges, however, the articles' authors, defendant Burns and Wang, never provided the "raw data" or "original" images to the journals, but rather submitted doctored data in an attempt to exonerate themselves. ¶¶343, 346-347, 355, 389-393, 402-403. The purported exculpatory statements from the journal were obtained under false pretenses and then cited by Cassava in press releases to drive up Cassava's flagging stock price. *Id.*

When allegations surfaced in November 2021 that the original data may not have been provided, the *Journal of Neuroscience* changed its statement to an Expression of Concern and stated that "JNeurosci will await the outcome of that [CUNY] investigation before taking further action." ¶¶33, 344-357. Similarly, *Neuroscience* noted that "[i]f any subsequent information arises from an institutional investigation, this will be considered once available." ¶388. Other journals followed suit, with *Neurobiology of Aging* issuing an expression of concern and stating that it "will make a final decision as to appropriate corrective action once that [CUNY] inquiry has been concluded." ¶¶414-417.

Cassava continued to deny the allegations and claimed vindication in February 2022 after the FDA denied the Citizen Petition solely on technical grounds: "'We said from the outset that the allegations are false.'" ¶412.[5] In an April 18, 2022 *New York Times* exposé on Cassava, Barbier leaned further into Defendants' claims that Cassava's critics were "'bad actors' with financial conflicts of interest," that "the allegations of data manipulation were false," and that "'[w]e stand by Professor Wang 100 percent.'" ¶427.

---

[5] The FDA's response emphasized that the Citizen Petition was "being denied **solely** on the grounds that your requests are not the appropriate subject of a citizen petition," and that "[t]his response does not represent a decision by the Agency to take or refrain from taking any action relating to the subject matter of your [Citizen Petition]." ¶411.

- 6 -

It was not until October 12, 2023, that the results of the CUNY investigation finally came to light in the article published by *Science* that is the subject of this motion and Plaintiffs' proposed supplement.   As revealed for the first time by *Science*, the CUNY Report detailed extensive evidence of data manipulation in Cassava's research and found Burns responsible for certain misconduct.  Ex. A, Supp. ¶¶1-7.  The article also revealed that Burns and Wang could not provide *any* "original" or "raw" data to the investigators, contradicting Defendants' claims that the original data had been provided to the scientific journals investigating the Citizen Petition's allegations of wrongdoing, and undercutting Defendants' repeated denials of wrongdoing.  *See id*.

Despite Defendants' continued denials of wrongdoing in an October 13, 2023 press release, the stock dropped 31.5% between October 12 and October 16, two trading days after the 2023 *Science* Article was published, on heavy trading volume.  *Id*., Supp. ¶5.

## III.    PROCEDURAL HISTORY

Plaintiffs filed the Complaint on August 18, 2022.  *See* ECF 68.  On May 11, 2023, the Court denied Defendants' motion to dismiss.  *See* ECF 104.[6] Rejecting Defendants' loss-causation arguments, the Court upheld Plaintiffs' allegations of a series of partial corrective disclosures, including articles, revealing data manipulation and subsequent stock drops.  *Id*. at 30-31.

Following denial of Defendants' motion to dismiss, discovery began, and the pre-trial schedule was later extended to preserve resources pending a November 2023 mediation.  *See* ECFs 114, 117.  The November 2023 mediation proved unsuccessful, and the parties resumed active litigation of the case.

On December 8, 2023, Plaintiffs informed Defendants of their intention to seek damages at trial for the stock drop following the 2023 *Science* Article's publication.  Ex. B at 4-5.  On

---

[6]    Former Cassava executive Nadav Friedmann was dismissed as a defendant due to his death, but the Court otherwise upheld Plaintiffs' allegations in full.

December 12, 2023, Defendants objected to Plaintiffs' ability to recover damages for events not alleged in the Complaint.  *Id.*  On December 13, 2023, Plaintiffs sought to address Defendants' objection by requesting their consent to supplementation of the Complaint to add the 2023 *Science* Article as a corrective disclosure and subsequent stock drop.  *Id.* at 4.  Plaintiffs provided a draft supplement to Defendants, and on January 3, 2024, Defendants responded that they intended, at that time, to oppose the supplement **solely** on the ground of futility.  *See id.* at 1-3.

As reflected in Exhibit A, Plaintiffs' proposed supplement adds the following allegations to the Complaint "LOSS CAUSATION AND ECONOMIC LOSS" section, to be inserted after ¶506:

> Supp. ¶1.    On October 12, 2023, minutes before the market closed, the journal *Science* published an article publicly revealing for the first time that CUNY investigators had found scientific misconduct involving 20 research papers about simufilam, according to a "Final" 50-page report obtained by the journal.  Among other things, the CUNY investigators "found numerous signs that images were **improperly manipulated**, for example in a 2012 paper in The Journal of Neuroscience that suggested simufilam can blunt the pathological effects of beta amyloid, a protein widely thought to drive Alzheimer's disease."  Notably, the investigators "concluded that Lindsay Burns, Cassava's senior vice president for neuroscience and a co-author on several of the papers, **bears primary or partial responsibility** for some of the possible misconduct or scientific errors."

> Supp. ¶2.    The *Science* article also quoted the CUNY report as saying that Wang did "**did not produce the original raw data**" and "failed to turn over to the panel 'even a single datum or notebook in response to any allegation,'" revealing that neither Wang nor Burns could have provided original data to the scientific journals investigating the alleged data manipulation in Cassava's pre-clinical and clinical research.  The CUNY report, which had previously been sent by CUNY to ORI, stated that the committee "found evidence highly suggestive of **deliberate scientific misconduct** by Dr. Wang for 14 of the 31 allegations."[7]

> Supp. ¶3.    In response to questions from *Science*, a senior adviser to City College of New York president Vincent Boudreau said the president could not comment, but "action on the report is imminent."  CUNY biochemist Kevin Gardner, who helped prepare a preliminary assessment of Wang's work but was

---

[7]   Because no primary data was provided, the CUNY investigators did not exonerate Wang or Cassava for the remaining 17 allegations.  Rather, according to CUNY investigators, the integrity of the work remains "highly questionable."

not involved in the final review, called what the committee found "***embarrassing beyond words***" and described Wang's record of research as "abhorrent." That this work supported clinical trials, Gardner added, "makes it doubly sickening."

Supp. ¶4.    Barbier, in an October 13, 2023 press release issued in response to the *Science* article, stated that Cassava "remain[ed] confident in the underlying science for simufilam" and CUNY had "no legitimate basis on which to make accusations against the Company or its employees" even calling into question the authenticity of the CUNY Report.

Supp. ¶5.    Despite Defendants' denials, between October 12 and October 16, two trading days after the *Science* article was published, Cassava's stock price fell from an opening price of $18.46 to $12.64, a statistically significant ***31.5%*** price drop, on heavy trading due to the disclosures and leakage described in paragraphs Supp. ¶¶1-4, above.

Supp. ¶6.    Comparatively, between October 12 and 16, 2023, the Nasdaq was down 0.76% and the Nasdaq Biotechnology Index was down just 0.5%.

Supp. ¶7.    On October 27, 2023, CUNY issued a statement in response to the *Science* article, stating that due to the apparent leak of the CUNY report, final action would be stayed pending an "investigation of the process."

Ex. A, Supp. ¶¶1-7.  Based on this supplement, Plaintiffs will move to certify a class of purchasers or acquirers of Cassava securities spanning the entire period between September 14, 2020 and October 12, 2023, inclusive.  Exhibit C is a copy of the proposed supplemented Complaint, which includes the supplemental paragraphs in Exhibit A and updates the putative Class Period and the Plaintiffs' transactions and alleged losses during the updated Class Period.  *See* Ex. C, ¶¶46, 52-54.

## IV.    LEGAL STANDARD

Under Rule 15(d), the Court may "'permit a party to [file] a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading [sought] to be supplemented.'"  *DT Apartment Grp., LP v. CWCapital, LLC*, 2012 WL 4740488, at *2 (N.D. Tex. Oct. 3, 2012) (quoting Fed. R. Civ. P. 15(d)).  "The purpose of the Rule 'is to promote as complete an adjudication of the dispute between the parties as is possible.'"  *Id.* (quoting 6A

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1504 at 245 (3d ed. 2004)).

Additionally, Rule 15(a)(2) instructs courts to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that "this mandate is to be heeded" to allow a plaintiff the "opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit holds that the language of Rule 15(a) "'evinces a bias in favor of granting leave to amend'" and that district courts "must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

When exercising its discretion to grant a motion to supplement under Rule 15(d), "the court considers the same factors as when deciding a Rule 15(a) motion to amend pleadings." *DT Apartment Grp.*, 2012 WL 4740488, at *2 (citing *Chemetron Corp. v. Bus. Funds*, 682 F.2d 1149, 1193-94 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983)); *Hyde v. Hoffman-La Roche Inc.*, 2008 WL 2923818, at *3 (N.D. Tex. July 30, 2008) ("Judicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a).").

The Fifth Circuit has identified "'five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment.'" *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016). Further, given the "bias in favor of granting leave to amend" in this Circuit, "a district court must possess a substantial reason to deny [such] a request." *Id.* (cleaned up); *see also Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) (noting "[t]he

Supreme Court has explicitly disapproved of denying leave to amend without adequate justification") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, four of the Fifth Circuit's five factors are unopposed, and the fifth factor of futility also weighs in favor of permitting leave to supplement for the reasons explained below. Accordingly, the motion should be granted.

## V.   THE RELEVANT FACTORS COUNSEL IN FAVOR OF PERMITTING PLAINTIFFS LEAVE TO SUPPLEMENT THE COMPLAINT

As set forth above, courts consider five factors in determining whether to grant a party leave to supplement a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *See SGIC Strategic*, 839 F.3d at 428.

Here, ***none*** of the relevant factors provides a """"substantial reason" to deny'" Plaintiffs' request. *Id*. In fact, Defendants do not claim that the motion is untimely, made in bad faith, or that it will unduly prejudice Defendants. Nor do Defendants claim that Plaintiffs have repeatedly failed to address deficiencies in their pleading. Thus, four of the five factors are undisputed, and all of them weigh in favor of granting leave to file the supplement under Rule 15. Accordingly, leave to supplement the Complaint "should be granted." *Entergy Miss., Inc. v. Marquette Transp. Co., L.L.C.*, 742 F. App'x 800, 803 (5th Cir. 2018) (analyzing amendment under Rule 15(a)) (quoting *Jebaco Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 322 (5th Cir. 2009)).

### A.   Undisputed: Timeliness

First, it is undisputed that the motion is timely. Indeed, "'the facts underlying the amended [or supplemented] complaint'" did not begin to occur until October 12, 2023. *See Hegwood v. Ross Stores, Inc.*, 2006 WL 8437334, at *2 (N.D. Tex. June 26, 2006) (citing *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996)). Courts find that amendments are timely where, as here, Plaintiffs did not have "the information which forms the basis for the proposed amendment [or

- 11 -

supplement] . . . at the time they filed their complaint." *See Hegwood*, 2006 WL 8437334, at *3; *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (The "mere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment.").  Instead, delay becomes "undue" only when it places an "unwarranted burdens on the court." *Hudson v. L&W Supply Corp., Inc.*, 2009 WL 10693829, at *5 (S.D. Tex. June 18, 2009).

Here, the 2023 *Science* Article was published long after the Complaint was filed and only shortly before the November 2023 mediation in this case.  ECF 114 at 2.  When the mediation proved unsuccessful, the parties resumed active litigation and Plaintiffs advised Defendants in late 2023 of Plaintiffs' intention to rely on the October 12, 2023 corrective disclosure at trial.  Plaintiffs brought this motion only when Defendants refused Plaintiffs' request that they stipulate to use of the October 12, 2023 corrective disclosure.  Further, there is not yet a deadline for amending the pleadings in the schedule.  *See* ECF 102 at 4 (setting out parties' differing opinions on a deadline for leave to amend or supplement).  For all these reasons, the motion is timely.

## B.  Undisputed:  No Bad Faith or Dilatory Motive

Second, it is undisputed that this motion is not brought in bad faith or for dilatory motive. Rather, the need to supplement the Complaint arises from subsequent, post-Complaint events. Supplementation is necessary to preserve Class members' ability to recover damages from the stock drop following the 2023 *Science* Article.  There is no bad faith or dilatory motive here.  *DT Apartment Grp.*, 2012 WL 4740488, at *3 ("Examples of behavior that qualifies as bad faith include supplementing a pleading in order to destroy federal jurisdiction or intentionally delaying filing a supplement despite knowing all the relevant facts."); *Travis v. City of Grand Prairie*, 2015 WL 13002069, at *7 (N.D. Tex. Aug. 6, 2015) (artfully drafted complaint to omit facts, as opposed to alleging new facts, is bad faith), *aff'd*, 654 F. App'x 161 (5th Cir. 2016).

- 12 -

### C.    Undisputed:  No Repeated Failures

Third, it is undisputed that Plaintiffs have not repeatedly failed to amend or supplement their pleading.  Plaintiffs filed their Complaint on August 18, 2022, and Defendants moved to dismiss the Complaint on October 25, 2022.  The Court then denied Defendants' motion on May 11, 2023.  ECF 104.  Thus, Plaintiffs have not "'repeated[ly] fail[ed] to cure deficiencies by previous amendments.'"  *SGIC Strategic*, 839 F.3d at 428.  Like the first two factors, this factor also counsels in favor of granting the motion.

### D.    Undisputed:  No Prejudice to Defendants

Fourth, it is undisputed that no undue prejudice will visit Defendants from Plaintiffs' supplementation.  The Fifth Circuit holds that a defendant may be prejudiced when it must "reopen discovery and prepare additional theories of the case."  *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) ("Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial.").

Here, there is no need to reopen discovery, as it is ongoing and, in fact, still in its early stages.  Discovery commenced only after the Court denied Defendants' motion to dismiss, and fact discovery is not currently set to close until September 2024.  *See* ECF 117.  The supplement, which relates primarily to the loss-causation section of the Complaint, adds a new, highly significant corrective disclosure, but it does ***not*** change or add legal theories.  Rather, the supplement is based on the very ***same facts*** as previously alleged – the same allegations that this Court previously upheld at the motion-to-dismiss stage.  Because there is no need to reopen discovery or any hindrance to Defendants' ability to prepare for trial, there is no undue prejudice to Defendants.

### E.     The Proposed Supplement Is Not Futile

Last, the proposed supplement is not futile.  The question for the Court regarding futility

"'is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf,

the complaint states any valid claim for relief.'"  *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873

(5th Cir. 2000).  In other words, the Court must assess futility under a Rule 12(b)(6) standard.  *Id*.

For this reason, some Texas district courts address futility "'in the context of a Rule 12(b)(6) or

Rule 56 motion . . . where the procedural safeguards are surer.'"  *DT Apartment Grp.*, 2012 WL

4740488, at *2 (quoting *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006)).

Whether the Court addresses futility in this motion or in a motion to dismiss, Plaintiffs'

supplemental allegations are not futile.  The standard is straightforward.  First, in analyzing a

motion to dismiss for failure to state a claim, the Court "accept[s] 'all well pleaded facts as true,

viewing them in the light most favorable to the plaintiff.'"  ECF 104 at 12.  Second, loss-causation

allegations are subject to Rule 8's liberal pleading standards and thus "need only set forth a short

and plain statement of the claim showing that the pleader is entitled to relief and provide the

defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.*

at 29-30 (quoting *Amedisys*, 769 F.3d at 320) (cleaned up).

As the Supreme Court held in *Dura*, this requirement of a "'short and plain statement'" is

"not meant to impose a great burden upon a plaintiff."  *Dura Pharms., Inc. v. Broudo*, 544 U.S.

336, 346-47 (2005).  Importantly, "the PSLRA did not create heightened pleading standards" for

loss causation.  *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014).  Rather,

Rule 8(a)(2) "must be applied . . . to determine whether the plaintiffs pleading of loss causation is

sufficient."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255 (5th Cir. 2009); *see Amedisys*, 769

F.3d at 320 (applying plausibility standard under Rule 8(a)(2) for loss causation).

Here, the Court previously upheld Plaintiffs' loss-causation allegations in the Complaint that a series of news articles, and other disclosures, concerning data manipulation in Cassava's pre-clinical and clinical research gradually revealed the truth and caused the Company's stock price to decline.  ECF 104 at 30 (Plaintiffs "may . . . rely on" news articles to plead loss causation.).  Plaintiffs' proposed supplement likewise alleges an additional partial corrective disclosure – the revelation of the results of the CUNY investigation in the 2023 *Science* Article and the evidence of scientific misconduct it uncovered – that caused Cassava's stock price to decline by ***over 30%***.  *See* Ex. A, Supp. ¶¶5-7.  The 2023 *Science* Article revealed this information about the CUNY Report for the first time, finding scientific misconduct based on non-public evidence and concluding neither Wang nor Burns could not provide ***any*** original or raw data to the investigators, among other facts.  This disclosure, therefore, partially corrected Defendants' false and misleading statements, including that that "original" and "raw" data had been provided to the journals investigating alleged data manipulation.  *Id*., Supp. ¶¶1-2.

These allegations are sufficient to meet the liberal Rule 8(a) pleading standard.  *See, e.g.*, *Amedisys*, 769 F.3d at 326 (finding that loss causation is properly pled where the complaint "sets forth specific allegations of a series of partial corrective disclosures, joined with the subsequent fall in [the company's] stock value").  This is doubly true because Defendants ***do not dispute*** that the article is related to the alleged fraud and identified no other cause of the sharp decline in Cassava's stock price following its publication.  *See Lormand*, 565 F.3d at 258 (Plaintiffs need only allege "a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss . . . followed by the leaking out of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock and plaintiff's economic loss."); *Amedisys*, 769 F.3d at 321 (Plaintiffs need only "'provide a defendant with some

indication of the loss and the causal connection that the plaintiff has in mind.'").  The proposed supplement thus adequately pleads loss causation and is therefore not futile.

Defendants nevertheless claim futility based on the same (unsuccessful) arguments made in their motion to dismiss.  There, Defendants argued, as they do again here: (i) that "[m]ost of the supposed 'corrective disclosures' identified in the Complaint occurred after . . . shareholder plaintiffs initiated this lawsuit" and contained no "new" information (ECF 81 at 34); and (ii) that certain of the corrective disclosures contained supposedly "unvetted and unverified" (*i.e.*, unreliable) accusations.  *Id*. at 31.  The Court, however, rejected both of those arguments.  *See* ECF 104 at 30-31 (sustaining Plaintiffs' allegations of a series of partial corrective disclosures in news articles and other sources that "'gradually informed the market of the relevant truth' regarding Cassava's clinical trial results and published research").  Here, Defendants claim that the supplement would be futile because the 2023 *Science* Article is "unreliable" and the "issues" in the article "have been the subject of repeated news coverage" and been addressed "by Plaintiffs' own amended complaint."  Ex. B at 1.  The Court should reject these arguments once again for the same reasons it did in denying Defendants' motion to dismiss.[8]

Defendants' fact-bound argument about whether the 2023 *Science* Article revealed "new" information or is reliable amounts to a truth-on-the-market defense inappropriate at this stage.  "[W]hether [Defendants'] corrective information was conveyed 'with a degree of intensity and credibility' is a fact-specific inquiry, which is ***not*** appropriately disposed of on a motion to dismiss."  *Wieland v. Stone Energy Corp.*, 2007 WL 2903178, at * 11 (W.D. La. Aug. 17, 2007), *report & rec. adopted*, 2007 WL 4403548 (W.D. La. Oct. 1, 2007).  As a result, courts "rarely"

---

[8]  *See also* ECF 86 at 34-35 (responding to Defendants' arguments that partial corrective disclosures supposedly cannot plead loss causation because they purportedly fail to disclose "new" information and are unreliable).

dismiss a complaint based on a truth-on-the-market defense.  *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008); *see, e.g.*, *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1080 (M.D. Tenn. 2022) (argument that allegations were already "public" in a prior complaint, not "new" information, is a "dispute of fact that [the court] cannot resolve on a motion to dismiss").[9]  After all, the Fifth Circuit has repeatedly cautioned against resolving fact-intensive issues related to loss causation on a motion to dismiss.  *See Lormand*, 565 F.3d at 267 n.35 (noting "several circuit courts and district courts point out that it is often inappropriate to use a Rule 12(b)(6) motion as a vehicle to resolve disputes over 'loss causation'"); *Amedisys*, 769 F.3d at 325 ("Whether the connection between [a company's] misleading statements and the alleged corrective disclosures may ultimately be found too attenuated at a later stage in litigation is a highly fact intensive inquiry that need not be reached at this point.").

In addition to being premature, Defendants are incorrect; the 2023 *Science* Article revealed new facts and information that moved the market.  The article did not simply re-characterize previously disclosed information.  Rather, the article exposed, for the first time, based on an extensive investigation of non-public information, that neither Burns nor Wang had ***any*** "original raw data" or "'even a single datum or notebook in response to any allegation'" to provide.  Ex. A, Supp. ¶¶1-2.  This new information directly contradicted Defendants' prior alleged false and misleading statements that "original" data had been provided to journals investigating the misconduct.  S*ee* ¶¶338-362, 386-407, 451-453.  And the report further revealed that evidence

---

[9]     *See also Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at *10 (M.D. Tenn. Apr. 19, 2018) (because the "'truth-on-the-market' defense . . . is intensely fact-specific, it is not appropriate for the Court to consider it on these Motions to Dismiss"); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004), *as amended* (Sept. 3, 2004) ("A 'truth-on-the-market' defense is available in principle, . . . but not at the pleading stage."); *In re Motorola Sec. Litig.*, 2004 WL 2032769, at *25 (N.D. Ill. Sept. 9, 2004) ("The truth-on-the-market defense 'is intensely fact-specific and is rarely an appropriate basis for dismissing a §10(b) complaint.'").

found in the CUNY investigation supported that scientific images had been "**_improperly manipulated_**" and that "**_deliberate scientific misconduct_**" occurred.  *See* Ex. A.  None of this information was previously publicly known, especially given that the CUNY investigation was based on **_non-public_** information.  *See id.*

The 2023 *Science* Article disclosed for the first time the CUNY Report and its conclusions, which were based on a first-hand investigation of non-public evidence and records conducted by the institution that originated much of the research forming the basis of Plaintiffs' claims.  *See id.*, Supp. ¶¶1-3.  When viewed alongside the prior disclosures, ongoing regulatory investigations and Defendants' repeated denials, the new information contained in the 2023 *Science* Article makes the alleged fraud "more probable than it would be without that alleged fact, taken as true" and therefore adequately pleads a corrective disclosure.  *See Amedisys*, 769 F.3d at 321.  Indeed, the 2023 *Science* Article, and CUNY Report findings described therein, provided "more authoritative fraud-related information that deflated the stock price"  *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010) (holding loss causation adequately pled).

The 30% stock-price drop following the 2023 *Science* Article also supports the inference in Plaintiffs' favor (required at this stage) that the article provided new information to the market. "Such a drop in price creates a reasonable inference that the information contained in those reports was material information that had not been previously available to the market."  *In re Res. Am. Sec. Litig.*, 2000 WL 1053861, at *5 (E.D. Pa. July 26, 2000); *see Asher*, 377 F.3d at 734 (noting if "the full truth had reached the market . . . it is hard to understand the sharp drop in the price of its stock").  Where, like here, the "trajectory of [the company's] stock price" supports a facially plausible loss causation theory, "[nothing] more is required at the pleading stage."  *In re BP p.l.c. Sec. Litig.*, 922 F. Supp. 2d 600, 638 (S.D. Tex. 2013).

- 18 -

Further, Defendants' fact-intensive truth-on-the-market defense would apply only if "'the corrective information [was] conveyed to the public "with a degree of intensity and credibility" sufficient to counterbalance effectively any misleading information created by' the allegedly false and misleading statements." *Stone Energy*, 2007 WL 2903178, at *11 (alteration in original); *see Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000).  But, here, Defendants attempted to "mitigate the impact of these disclosures by making contemporaneous misstatements to the market."  *Amedisys*, 769 F. 3d at 324.   In fact, Defendants continue to deny any scientific misconduct, repeatedly disparaging the allegations as "false" and "misleading" and stating that there is "no legitimate basis on which to make accusations against the Company."  §II, *supra* (citing ¶¶316, 331-333, 386, 412); Ex. A, Supp. ¶4.

Even after the Citizen Petition was released, Defendants provided doctored evidence to journals investigating the scientific misconduct in order to obtain exculpatory statements and inflate the Company's stock price.  ¶¶343, 346-347, 355, 389-393, 402-403.  In other words, Defendants, at every turn, have attempted to mitigate the impact of the prior alleged corrective disclosures by continuing to misstate the truth.  *See also* ¶¶412-413 (Barbier falsely telling investors that the FDA denied the Citizen Petition because they did not find evidence of fraud).  Defendants will thus be unable to establish a truth-on-the-market defense and certainly not as a matter of law at the pleading stage.  *See Stone Energy*, 2007 WL 2903178, at * 11 ("[W]hether [Defendants'] corrective information was conveyed 'with a degree of intensity and credibility' is a fact-specific inquiry, which is ***not*** appropriately disposed of on a motion to dismiss.").

Finally, Defendants' claims that the 2023 *Science* Article and CUNY Report revealed therein are unreliable are factual disputes for another day.  *See* ECF 104 at 12 (At the motion to dismiss stage, the court "'accept[s] "all well pleaded facts as true, viewing them in the light most favorable to the plaintiff."'"); *id.* at 21 ("[T]he reliability of short-seller reports – here, the Citizen

- 19 -

Petitions – is a question of fact that the Court cannot resolve at this time."); *Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) ("Defendants' arguments are fact-based and are insufficient to support a motion to dismiss.").  Further, Defendants are wrong. The CUNY Report is not unreliable:  it is the product of a many months long inquiry conducted by independent investigators at CUNY, which culminated in the "final" CUNY Report submitted to the ORI for the federal government.  *See* Ex. A, Supp. ¶¶1-2.  Certainly, the market credited the report, as demonstrated by the dramatic stock decline that followed.  *See id*., Supp. ¶5.

For all these reasons, Plaintiffs' proposed supplement is not futile.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to supplement the Complaint and allow Plaintiffs to file the supplemented Complaint attached as Exhibit C.

DATED:  February 22, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
RACHEL JENSEN (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)


                                    */s/ Kevin A. Lavelle*
                                   KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
rachelj@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

4854-3195-8435.v6

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 22, 2024, I authorized the

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

send notification of such filing to the email addresses on the attached Electronic Mail Notice List,

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  klavelle@rgrdlaw.com

# Mailing Information for a Case 1:21-cv-00751-DAE-SH In Re Cassava Sciences, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com

- **Michael Albert**
  malbert@rgrdlaw.com

- **Thomas E. Bilek**
  tbilek@bileklaw.com,lmank@bileklaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey C. Block**
  jeff@blockesq.com

- **Willie C. Briscoe**
  wbriscoe@thebriscoelawfirm.com,tsims@thebriscoelawfirm.com

- **Warren T. Burns**
  wburns@burnscharest.com,mkweik@burnscharest.com,jgravois@burnscharest.com,mvaleriano@burnscharest.com,twhiteside@burnscharest.com

- **Stuart L. Cochran**
  scochran@condontobin.com,lmedeles@condontobin.com

- **Gregg Jeffrey Costa**
  gcosta@gibsondunn.com

- **John Thomas Cox , III**
  tcox@gibsondunn.com,twesley@gibsondunn.com,LGadberry@gibsondunn.com,wcassidy@gibsondunn.com

- **Michael Dell'Angelo**
  mdellangelo@bm.net,csimon@bm.net,jgionnette@bm.net

- **Daniel S. Drosman**
  dand@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Bryan Fears**
  fears@fnlawfirm.com,pcox@fnlawfirm.com,nprola@maceybankruptcylaw.com

- **William B. Federman**
  wbf@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com

- **Michael I. Fistel , Jr**
  michaelf@johnsonfistel.com,paralegal@johnsonfistel.com

- **William J. Foley**
  wfoley@orrick.com,lpatts@orrick.com

- **Sammy Ford , IV**
  sford@azalaw.com,rperez@azalaw.com,tzamora@azalaw.com,jwarshauer@azalaw.com

- **Claudia Wilson Frost**
  cfrost@steptoe.com,casestream@ecf.courtdrive.com,phowell@orrick.com,dcmanagingattorneysoffice@ecf.courtdrive.com,srenfro@orrick.com

- **Heather Geiger**
  hschlesier@rgrdlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **B. Russell Horton**
  rhorton@gbkh.com,kseabolt@gbkh.com,tmanassian@gbkh.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,tdevries@rgrdlaw.com

- **Lewis S. Kahn**
  lewis.kahn@ksfcounsel.com,ecf.filings@ksfcounsel.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **James N. Kramer**
  jkramer@orrick.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Charles H. Linehan**
  CLinehan@glancylaw.com,info@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Matthew Ryan McCarley**
  mccarley@foresterhaynie.com,mccmat2000@yahoo.com,wage@foresterhaynie.com

- **Adam B. Miller**
  adam.miller@orrick.com,jcygnor@orrick.com

- **Megan A. Rossi**
  mrossi@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com

- **Jordan Lyn Warshauer**
  jwarshauer@azalaw.com,mrivers@azalaw.com,akeniston@azalaw.com

- **Braden Michael Wayne**
  braden@swclaw.com,lisa@swclaw.com,jamie@swclaw.com

- **John A. Yanchunis**
  jyanchunis@forthepeople.com,jcabezas@forthepeople.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`