IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES INC. SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | § § § § § § § § § § Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE CONSOLIDATED COMPLAINT**

Plaintiffs' Motion to Supplement seeks to almost double the putative class period based solely on a single document provided to a news outlet by an anonymous person claiming to be connected to an investigation into Dr. Hoau-Yan Wang by the City University of New York. *See* ECF 129. That document cannot hold that weight.[1] Characterized by Plaintiffs as a "conclusion" or "finding" attributable to CUNY, the document was disavowed by CUNY. *See* Ex. B (CUNY statement). CUNY refused to comment on the accuracy of the information in the document because no final action in the investigation had taken place. *See id*. CUNY instead announced a comprehensive investigation into the process itself and meanwhile stayed any investigation into Dr. Wang's research. *See id.*

Even at the pleading stage, the document cannot support Plaintiffs' proposed supplement. In fact, setting aside the document's validity, it contained no statement that can fairly be characterized as corrective of any alleged misrepresentation; parroted allegations that had been

---

[1] The document is only available for download through the October 12, 2023, *Science* article that Plaintiffs refer to in their proposed supplemental pleadings. *See* ECF 129-3; *see also* Ex. A (*Science* article, which can also be found here: https://shorturl.at/fGNQ). However, the document is password-protected and cannot be filed with the Court using the ECF filing system. The document can be found at the following URL: https://shorturl.at/ipB79.

public for years; and had no sustained effect on the price of Cassava's stock, if it had any effect at all.

As a result, Plaintiffs' proposed supplement fails to identify a corrective disclosure of new and relevant truth to the market and fails to plead that it was "more probable than not" that the corrective disclosure caused a "substantial" drop in the stock's price, both of which are required to plead loss causation. *See Pub. Emps. Ret. Sys. Of Mississippi, Puerto Rico Tchrs. Ret. Sys. V. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014). Because Plaintiffs cannot plausibly plead loss causation during the proposed supplemental class period, their attempt to drastically expand the class period is futile and should be denied.

## BACKGROUND

A.  **Plaintiffs' Complaint and Supplemental Allegations**

On August 18, 2022, Plaintiffs filed their Consolidated Complaint of the Federal Securities Laws. ECF 68 (the Complaint). Among other things, Plaintiffs allege that Defendants misrepresented the potential efficacy of simufilam, a drug being developed by Defendant Cassava Sciences, Inc. to treat Alzheimer's Disease. Specifically, Plaintiffs claim that Defendants overstated the strength of the pre-clinical research (performed by Dr. Wang) that supports simufilam's mechanism of action and misrepresented the results of certain clinical studies of the drug. *See generally* Complaint Section VI.

The Complaint further alleges that on August 25, 2021, a Citizen Petition filed with FDA by David Bredt and Geoffrey Pitt partially revealed the truth to the market by identifying anomalies in Dr. Wang's pre-clinical research and Cassava's clinical study results. *See generally id.* Section VII. Plaintiffs contend that Defendants attempted to conceal these anomalies from investors following the initial Citizen Petition filing, but that the truth about the science behind simufilam

and the drug's potential efficacy was revealed in a series of additional disclosures until July 26, 2022, the end of the putative class period. *See generally id.* Sections VIII & IX.

Plaintiffs now seek to nearly double the class period to October 13, 2023 by adding seven paragraphs to the "Loss Causation and Economic Loss" section of their Complaint. *See* ECF 129-3. The supplemental paragraphs allege that on October 12, 2023, *Science* magazine revealed "for the first time that CUNY investigators had found scientific misconduct involving 20 research papers about simufilam." *See id.* (Supp. ¶ 1). Plaintiffs' supplemental allegations further claim that Cassava's stock price dropped approximately 30% as a result of the *Science* article's disclosures about the purported CUNY document. *See id.* (Supp. ¶ 5).[2]

Notably, Plaintiffs do not append the relevant *Science* article or CUNY's public response to it to their Motion to Supplement. Nor do Plaintiffs direct the Court to the purported CUNY document that the *Science* article was predicated on. However, the Court may take judicial notice of the article, the document, and CUNY's response to consider whether Plaintiffs' supplemental allegations state a valid claim. *See, e.g., Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). To that end, Defendants have attached the *Science* article to this Opposition as Exhibit A, CUNY's response as Exhibit B, and have provided the Court with a link to the purported CUNY document (https://shorturl.at/ipB79). With the actual documents now before it the Court

---

[2] As Plaintiffs noted in their Notice of Related Case, ECF 142, a securities action was brought under § 10(b) and § 20(a) of the Securities Exchange Act of 1934 in the Northern District of Illinois on February 2, 2024, against Defendants Cassava Sciences, Inc., Remi Barbier, and Eric Schoen. That action, like Plaintiffs' proposed supplement, seeks to certify a putative class from August 18, 2022 to October 12, 2023, and seeks also to rely on the *Science* article and purported CUNY document as a corrective disclosure, too. Defendants intend to move to dismiss that action following the appointment of a lead plaintiff.

3

will see that Plaintiffs' representations in their proposed supplemental pleadings are both incomplete and inaccurate.

B.  The Purported CUNY Document

*First*, the purported CUNY document is not what Plaintiffs' supplemental allegations, ECF 129-3, describe it to be. Plaintiffs allege the document is a "'Final' 50-page report," which revealed what "CUNY investigators" either "found" or "concluded." *Id.* (Supp. ¶¶ 1, 2). But the authenticity and accuracy of the document is questionable at best. In fact, shortly after the *Science* article was published, CUNY corrected the record:

> On October 12, 2023, Science Magazine published an article – that later appeared in other publications – regarding The City University of New York's investigation into allegations of misconduct related to certain research conducted by Dr. Hoau-Yan Wang, a faculty member at the City College of New York. Consistent with its policy, ***CUNY will not comment on the accuracy of the investigation referenced in the articles because no final action as to this investigation has been taken.***
>
> CUNY is committed to ensuring that its investigative processes are held to the highest procedural and ethical standards and that the fairness of the proceedings is preserved for all parties. To that end, any finding regarding allegations of research misconduct must be reliable and credible. ***Because questions regarding the confidentiality and integrity of this investigation have been raised, CUNY will stay the underlying inquiry into the allegations regarding Dr. Wang's research until such time as the University completes a comprehensive investigation of the process.***

Ex. B (emphasis added). And not even the *Science* article provides a basis for attributing the document to CUNY or any allegations regarding the document's authenticity. *See* Ex. A (noting the document was merely "labeled 'Final'" and was provided to the magazine by someone who "requested ***anonymity*** because they [were] ***not authorized to share it.***" (emphasis added)).

*Second*, even setting aside that the document was explicitly disavowed as any investigation conclusion, the document itself does not contain any of the conclusions Plaintiffs allege about data or image manipulation by Dr. Wang or Dr. Burns. Plaintiffs allege that "CUNY investigators found

4

scientific misconduct involving 20 research papers about simufilam" and suggest that such misconduct was related to "images that were improperly manipulated." ECF 129-3 (Supp. ¶ 1). But the document clearly states that it could not "make an objective assessment for *even a single allegation*." *See* https://shorturl.at/ipB79 at 7 (emphasis added). The document further disclaims reaching any conclusion that Dr. Wang or Dr. Burns manipulated, fabricated, or otherwise misrepresented any research related to simufilam, repeatedly stating that it was "impossible to address the allegations objectively" and that it could not "therefore render a conclusion regarding the misconduct in the allegation[s]." *See, e.g., id.* (Allegations 1 through 8, 12, 14, 19, 23, 24, 27, 19, and 31); *see also id.* at 50 ("it is not possible to make definitive assessments for the 31 specific allegations.").

**Third**, the document did not reveal any new information to the market. The document states that CUNY's Vice Provost for Research commissioned an investigation committee to assess *already public allegations* of purported research misconduct made against Dr. Wang by the Citizen Petition authors and others, which were collected by and reported to CUNY by the National Institutes of Health's Office of Research Integrity. *See id.* at 1-2. Indeed, all of the allegations discussed in the report that related to simufilam or Cassava were already in the Citizen Petition filings or other public filings, sometimes years before the *Science* article's publication, and are *already alleged* by Plaintiffs as corrective disclosures. *See, e.g.,* Complaint Section V.G.

Further, the work that the committee supposedly performed would add nothing to the Citizen Petition filings, i.e. to the already public allegations against Dr. Wang regarding simufilam or Cassava. The committee was comprised not of investigative specialists but "research active faculty." https://shorturl.at/ipB79 at 1. These faculty purportedly "investigated" the already public allegations by examining western blot images in the publicly available versions of Dr. Wang's

5

research papers. *See id.* at 7. In other words, the committee did *exactly* what the Citizen Petition authors had already done over two years before and without the aid of an independent image consultant or other relevant expert. *See id.* at 3.

The *only* independent conclusion that the document purported to reach regarding Dr. Wang was that his "failure to store original data and maintain research records [was] reckless and clearly not in keeping with the standard practices in the field." *Id.* at 7. Plaintiffs allege that this conclusion revealed that "neither Wang nor Burns could have provided original data to the scientific journals investigating the alleged data manipulation in Cassava's pre-clinical and clinical research." ECF 129-3 (Supp. ¶ 2). But, according to Plaintiffs' own prior pleadings, the market *already knew that too*. *See* Complaint ¶¶ 390-404 409, 421, 422.

***Finally***, it is misleading to assert that the *Science* article or associated document "caused Cassava's stock price to decline by over 30%." Pls. Motion at 20. Although Cassava's stock price did decline from $18.46 to $12.64 between October 12 and October 16, 2023, the decline was nothing more than a blip. In fact, the stock's price more-than recovered to $19.89 by October 27, just 9 trading days later, when CUNY issued its statement declining to adopt the Report or its conclusions. The stock price has not fallen below $19 since.

6

**Figure 1 – Cassava Sciences, Inc.'s Stock Chart (October 1, 2023 to February 29, 2024)**



In short, Plaintiffs' attempted amendment is based on a document of unknown origin and questionable accuracy that contained no new information. And any ephemeral drop in the stock price that may have resulted was recovered when CUNY promptly refused to adopt it and instead announced that it was conducting its own investigation of the process and the document's integrity.

## LEGAL STANDARD

"Under Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). But as with other amended pleadings, a court should not allow a supplemental pleading under Rule 15(d) if the new allegations would not survive Rule 12 scrutiny. *See Guardiola v. Thaler*, No. W-11-CA-171, 2012 WL 12877961, at *2 (W.D. Tex. Nov. 21, 2012) (recognizing that the Fifth Circuit "has indicated that the same factors considered in a Rule 15(a) inquiry apply equally to Rule 15(d)" (citing *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir. 1982)). In other words, an amendment would be futile if it would "fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). To survive a Rule

12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And it is noteworthy that "[w]hile the text of Rule 15(a) provides that leave should be freely granted, the text of Rule 15(d) does not similarly provide." *Burns*, 158 F.3d at 343.

## ARGUMENT

The federal securities laws are not intended to, and do not, "provide investors with broad insurance against market losses"; rather, the securities laws are designed "to protect [investors] against those economic losses that misrepresentations [or omissions] actually cause." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (emphasis added). This is why a plaintiff must plead "loss causation" to state a claim for securities fraud. *See id.*; 15 U.S.C. § 78u-4(b)(4). Plaintiffs' attempt to nearly double the class period is futile here because there is no plausible allegation of loss causation during the new timeframe. Loss causation in fraud-on-the-market cases, like this one, can be demonstrated by:

- "(1) identifying a 'corrective disclosure' (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud)";
- "(2) showing that the stock price dropped soon after the corrective disclosure"; and
- "(3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a 'substantial' amount of price drop."

*Amedisys*, 769 F.3d at 320–21. Plaintiffs' supplemental pleadings do not meet this standard for two reasons. *First*, the document revealed nothing to the market. *Second*, given the prompt and sustained recovery of the stock price after the brief decline following the *Science* article publication, Plaintiffs have not alleged it was "more probable than not" that the corrective disclosure caused a "substantial" drop in the stock's price. *Id.*

8

A.   **The Science Article and CUNY Report Did Not Reveal New and Relevant Truth to the Market and Are Therefore Not Corrective Disclosures**

Plaintiffs' proposed supplement does not seek to add new claims or new alleged false statements by the Defendants; it instead seeks to extend the class period to October 2023 based on a disavowed document of unknown origin as an additional purported corrective disclosure. But the document is not a corrective disclosure for multiple reasons.

A "corrective disclosure" is "a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Amedisys, Inc.*, 769 F.3d at 321. For truth to be "pertinent" it must "make the existence of the actionable fraud more probable than it would be without that alleged fact," that is, "reveal to the market the falsity of the prior misstatements." *Id.* at 321-22. Additionally, "pertinent truth" in a corrective disclosure must be *new*; otherwise, nothing has been revealed. *See Emps.' Ret. Sys. V. Whole Foods Mkt., Inc.*, 905 F.3d 892, 904 (5th Cir. 2018) ("[T]he corrective disclosure must reveal some information not already known to the market.").

The proposed supplemental pleading does not plausibly allege a new or corrective disclosure. In the first instance, the Court should not credit Plaintiffs' allegations regarding the alleged CUNY document as its authenticity is questionable at best. There is no plausible basis to conclude that the document is authentic or accurate because there is no indication whatsoever who *Science* received the document from and CUNY has refused to claim it as its own. *Cf. Edge Sys. LLC v. Aguila,* No. 1:14-CV-24517-KMM, 2015 WL 6447502, at *7 (S.D. Fla. Oct. 26, 2015) (striking pleadings which relied upon "a document of questionable authenticity").

Further, neither the *Science* article nor the document revealed any new or pertinent information to the market. The committee's repeated insistence that it was "impossible to address the allegations objectively," that it could not "make an objective assessment for even a single

9

allegation," or that it therefore would not "render a conclusion regarding the misconduct in the allegation[s]" does not make Plaintiffs' allegations of fraud in the Complaint more likely or reveal the falsity of any prior alleged misstatement. *See* https://shorturl.at/ipB79. Also, as explained above, all of the allegations in the document that related to simufilam or Cassava (and are therefore at all relevant to Plaintiffs' claims) were in the Citizen Petition filings or other public sources and are *already pleaded in Plaintiffs' Complaint as corrective disclosures. Compare id.* (Allegations 4, 7, 9, 17, 18, 19, 21, 22, 23, 24, 25, 29, and 30) *with* Complaint at 35-82 104-142, 156-58. And the process the document describes for evaluating those allegations was at best the same as the process the Citizen Petition authors employed. Thus, at most, the document merely serves to "confirm" details of already corrective disclosures Plaintiffs have already alleged. *See, e.g., id.* at 45. But "[c]onfirmatory information is already known to the market and, having been previously digested by the market, will not affect the stock price." *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, 597 F.3d 330, 337 (5th Cir. 2010).

Similarly, the document's statement that "Dr. Wang's failure to store original data and maintain research records [was] reckless and clearly not in keeping with the standard practices in the field," https://shorturl.at/ipB79 at 7, does not bear on any alleged misrepresentation by Defendants. Plaintiffs allege that Defendants overstated the results of (or concealed anomalies with) pre-clinical research and clinical studies related to simufilam, not that Defendants touted Dr. Wang's recordkeeping. Indeed, neither Plaintiffs' Complaint nor their proposed supplement include any allegations that would suggest that Defendants were aware that Dr. Wang's recordkeeping was sub-par. *Cf. Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 667 (5th Cir. 2004) (the allegedly corrective disclosure was not sufficiently related to allegedly false earlier statements about the speed of new routers because the disclosure made "no reference to increased

10

router speed"); *In re Dell Inc., Sec. Litig.*, 591 F.Supp.2d 877, 910 (W.D. Tex. 2008) ("The disappointing earnings or expected earnings statements identified by the Plaintiffs fail to reveal the falsity of any of Dell's prior representations, and therefore do not qualify as a corrective disclosure.").

Plaintiffs contend in their supplemental allegations that the document's record-keeping allegations against Dr. Wang revealed that "neither Wang nor Burns could have provided original data to the scientific journals investigating the alleged data manipulation in Cassava's pre-clinical and clinical research." ECF 129-3 (Supp. ¶ 2). But again, according to Plaintiffs' own prior pleadings, the market *already knew that*. *See* Complaint ¶¶ 390-404 409, 421, 422.

**B.      Plaintiffs Do Not Plausibly Plead That the Alleged Disclosure Caused Any Drop in Cassava's Stock Price**

On top of their failure to plausibly allege a new corrective disclosure, Plaintiffs also cannot demonstrate that "the stock price dropped soon after the corrective disclosure" and eliminate "other possible explanations for th[e] price drop" to adequately plead loss causation. *Amedisys, Inc.*, 769 F.3d at 321. This failure to plead facts making it "more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a 'substantial' amount of price drop" dooms the new allegations. *Id.*

As explained above, Cassava's stock price experienced a "quick and sustained price recovery" following the very brief alleged drop, which should "refute[] the inference that the alleged concealment of th[e] particular fact caused any material drop in the stock price." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (citing T. Hazen, Law of Securities Regulation § 12.93 (2020 update) ("If the price movement of the stock in question is not in sync with the plaintiff's theory of recovery, loss causation will be extremely difficult, if not impossible, to prove.")); *see also Bajjuri v. Raytheon Techs. Corp.*, No. CV-20-00468-TUC-JCH, 2023 WL

3650554, at *15 (D. Ariz. May 25, 2023) (finding that "loss causation allegations [were] insufficient where a 'modest' drop in the stock prices coincide[d] with the disclosure of certain news but then 'recover[ed] very shortly after.'").

Further, the drop Plaintiffs rely upon—between October 12 and October 16—was far from an anomaly in Cassava's stock chart. Rather, it was consistent with the stock's price movement and volatility for over a year before the publication of the *Science* article. It is more likely that the stock price was doing exactly what it had done for the prior 13 months, moving in volatile fashion, than that the market was reacting to the document's unknown origins, or even its inability to draw relevant conclusions about allegations against Dr. Wang that had been publicly peddled for over two years. Plaintiffs have done nothing to eliminate this "other possible explanation[] for th[e] price drop." *Amedisys, Inc.*, 769 F.3d at 321.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' Motion to Supplement, ECF 129.

Dated: March 7, 2024                                    Respectfully submitted,

/s/ *Gregg Costa*
Gregg Costa (Tx. Bar No. 24028160)
Trey Cox (Tx. Bar No. 24003722)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street Suite 3000
Houston, TX 77002
Telephone: 346.718.6600
Facsimile: 346.718.6979
gcosta@gibsondunn.com
tcox@gibsondunn.com

Monica K. Loseman (admitted *pro hac vice*)
Scott Campbell (admitted *pro hac vice*)
John Turquet Bravard (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202-2642
Telephone: 303.298.5700
Facsimile: 303.298.5907
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
Facsimile: 212.351.6315
mmaloney@gibsondunn.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 7, 2024, a true and correct copy of the foregoing was served upon each attorney of record through the Court's CM/ECF system.

/s/ *Gregg Costa*
Gregg Costa