UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § Master File No. 1:21-cv-00751-DAE § § CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | § § § § § § |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' OPPOSED MOTION TO SUPPLEMENT THE CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

I.      INTRODUCTION

Defendants' sole argument in opposition to supplementation is that it would be futile. But Defendants' futility argument utterly flies in the face of this Court's order rejecting the *same* loss-causation arguments in their motion to dismiss.[1] *See* ECF 104 at 29-31. Defendants' attempt to spin the damning CUNY Report is unavailing. Specifically, Defendants claim the 2023 *Science* Article that sent Cassava's stock tumbling **30%** provided no "new" or "reliable" information to the market. The documents cited in the opposition (ECF 143) ("Opposition" or "Opp.") – the 2023 *Science* Article, CUNY Report, and CUNY's subsequent statement – only serve to confirm the adequacy of Plaintiffs' allegations, while exposing Defendants' disingenuous claims about what was revealed and what the market took away from the news. In any event, as this Court already found, such fact-bound arguments are inappropriate at the pleading stage. *Id.*

Here, the CUNY Report revealed never-before-disclosed information directly related to the alleged fraud. Indeed, it details evidence of "deliberate scientific misconduct" as to the very same Cassava research Plaintiffs allege Defendants misled investors about throughout the Class Period. And its release caused Cassava's stock price to drop by a third. Nothing more is required for loss causation at this stage. Plaintiffs' proposed supplement is, therefore, not futile.

Defendants do not dispute that all the other factors are met. The Motion should be granted.

II.     **LEAVE TO SUPPLEMENT SHOULD BE GRANTED**

A.      **The Proposed Supplement Sufficiently Pleads Loss Causation**

Just as at the motion to dismiss phase, Defendants do not dispute that the alleged corrective information relates to the alleged fraud or that it was followed by a decline in Cassava's stock price. In fact, Defendants agree that: (i) the CUNY Report is "relevant to Plaintiffs' claims"; and

---

[1]    Unless otherwise noted, defined terms are the same as used in Plaintiffs' motion to supplement the Complaint. ECF 129 (the "Motion" or "Mot.").

(ii) Cassava's stock price "did decline" over 30% following the report's disclosure. *See* Opp. at 6, 10. In doing so, Defendants effectively concede that Plaintiffs have met the liberal notice pleading standard for loss causation. *See* Mot. at 15; ECF 86 at 33-34; *Pub. Emps. Ret. Sys. of Miss., P.R. Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 326 (5th Cir. 2014) ("Where the Complaint sets forth specific allegations of a series of partial corrective disclosures, joined with the subsequent fall in [the company's] stock value, and in the absence of any other contravening negative event, the plaintiffs have complied with [the Supreme Court's] analysis of loss causation."). And because Defendants do not identify any "contravening negative event," nothing more is required to plead loss causation at this stage. Accordingly, the proposed supplement sufficiently pleads loss causation and, thus, is not futile.

### B. Defendants' Fact-Bound Arguments Are Inappropriate and Factually Incorrect

Unable to attack the sufficiency of the supplement, Defendants again resort to inappropriate fact-bound arguments that the alleged corrective information was not "new" or "reliable," despite the Court's rejection of such arguments at the motion to dismiss stage. *See* Mot. at 16; ECF 86 at 35; *see also* Mot. at 4 ("[T]he reliability of short-seller reports . . . is a question of fact that the Court cannot resolve at this time.") (quoting ECF 104 at 21). But courts do not resolve such fact-intensive issues at the pleading stage, especially regarding loss causation (Mot. at 16-17, 19-20; ECF 86 at 35) (collecting cases), and Defendants do not attempt to address these authorities. Defendants' arguments should, therefore, be rejected (again) for this reason alone.

Rather than contend with Plaintiffs' allegations, Defendants argue disputed facts and inferences regarding what the CUNY Report supposedly did or did not reveal and when and why the stock later recovered. These fact-intensive inquiries are for trial, not a motion to supplement decided on notice pleading standards, where the Court must "'accept "[Plaintiffs'] well pleaded facts as true, viewing them in the light most favorable"'" to Plaintiffs. ECF 104 at 12; Mot. at 14.

1. **The CUNY Report Contained New, Corrective Information**

While Defendants argue that the CUNY Report merely "parroted allegations" from the Citizen Petition (Opp. at 1-2, 5), they ignore that the CUNY Report disclosed new findings based on an independent investigation of non-public information previously unavailable to the Citizen Petition authors – or any other source.  After a ten-month investigation that included "interviews of Dr. Wang, a member of his lab," and "several administrators," and a review of image files and written responses Dr. Wang provided (CUNY Report at 1)[2], as well as "image files confiscated from Wang's computers" (ECF 143-2 at 2/5), the CUNY investigating committee (the "Committee") found "evidence highly suggestive of deliberate scientific misconduct" in Cassava's foundational research, including "numerous signs that images were improperly manipulated." CUNY Report at 1; ECF 143-2 at 1/5.  The Committee also found that defendant Burns shared "responsibility" in the misconduct.  ECF 143-2 at 1/5; *see* CUNY Report at 21, 31, 38, 40, 45-46, 48.  Defendants' contention that the Committee did nothing more than review "publicly available" images of the data at issue (Opp. at 5-6) is therefore sorely mistaken.

And although Plaintiffs' allegations come directly from the CUNY Report itself, Defendants bizarrely state that the report "does not contain any of the conclusions Plaintiffs allege."  Opp. at 4.  That is demonstrably wrong.  *See* §II.B.1.  In fact, the CUNY Report found the evidence of misconduct so serious that it formally recommended the academic journals that

---

[2]   The CUNY Report is attached as Exhibit ("Ex.") 1 to Affidavit of Kevin A. Lavelle in Support of the Reply in Further Support of Plaintiffs' Opposed Motion to Supplement the Consolidated Complaint for Violations of the Federal Securities Laws ("Lavelle Decl.").  Unless otherwise noted, all "Ex." references are to the Lavelle Decl.

- 3 -

published Cassava's foundational studies should **retract** the research if original data is not provided (which it has not been).  ECF 143-2 at 5/5; *see* CUNY Report at 14, 18, 36, 38, 39.[3]

Defendants ignore these newly disclosed facts and quibble with the Committee's findings as less than **100% certain** that data manipulation occurred.  *See* Opp. at 5, 9.  Tellingly, Defendants leave out the reason why that is so – "the failure of Dr. Wang to provide underlying, original data or research records."  CUNY Report at 1.  As the CUNY Report itself explained, to make such a "definitive" determination, original data is needed.  *Id*. at 48.  But, as was **disclosed for the first time in the CUNY Report**, in response to the Committee's requests for "primary data," Dr. Wang said he was providing the "underlying data," yet "***[i]n no instance***" did Dr. Wang actually provide "***any*** material that could be reasonably recognized as original."  *Id.* at 4.  That is far from the exoneration of either defendant Burns or Dr. Wang that Defendants attempt to spin, especially given that the CUNY Report implicates both Cassava scientists in the misconduct.

Nevertheless, Defendants suggest that the supplemental allegations cannot plead loss causation unless the CUNY Report contained "definitive" evidence demonstrating data manipulation.  *See* Opp. at 5.  This assertion is nothing more than a new riff on Defendants' previously rejected motion-to-dismiss argument that, to plead loss causation, there must be some sort of "'conclusive'" finding of fraud, such as through a criminal conviction.  But "'***that is not the law***.'"  *See* ECF 86 at 34 (citing *Amedisys*, 769 F.3d at 324-25) (quoting *Utesch v. Lannet Co., Inc.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019)).  The Court should reject Defendants' erroneous assertion again, for the same reasons it did at the motion to dismiss stage.[4]

---

[3]  The academic journals are awaiting CUNY's release of the report before taking final action, (Mot. at 6), and there is no evidence that any original data has been provided to them.

[4]  Even at trial, Plaintiffs need only prove their claims by a "preponderance of the evidence," not with 100% certainty.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 250 (5th Cir. 2009) ("At trial," a plaintiff in a § 10(b) action "must prove her case . . . by a preponderance of the evidence.").

Here, the CUNY Report found "evidence highly suggestive of deliberate scientific misconduct," "numerous signs that images were improperly manipulated," that defendant Burns shared responsibly, and that Cassava's research should be retracted. *See* §II.B.1. All of these findings, from an independent CUNY investigative committee with unrivaled access to evidence, make the alleged fraud "more probable than it would be without th[e] alleged fact[s]" (*Amedisys*, 769 F.3d at 321), and provides "more authoritative fraud-related information that deflated the stock price." *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010). Importantly, Defendants do not contend that the CUNY Report, or its findings, had been leaked prior to the 2023 *Science* Article.

In addition, the CUNY Report revealed, for the first time, that Dr. Wang could not provide **any** original data for **any** of the foundational Cassava research alleged to have been manipulated. *See* ECF 129-3, Supp. ¶2. This information not only makes Plaintiffs' allegations regarding the Cassava data's lack of integrity more probable, but it also directly contradicts Defendants' false and misleading statements that defendant Burns and Dr. Wang provided the original data to the journals investigating the misconduct. The CUNY Report revealed Defendants' statements as untrue by the simple fact that there was no original data to provide. *See* Mot. at 5-6; *Lormand*, 565 F.3d at 264 (noting that plaintiffs are not prevented from alleging loss causation through "indirect disclosures of such truth by persons other than the defendants").

Contrary to Defendants' claims (Opp. at 6, 11), the information in the CUNY Report was not the same as the information already in the market – as made obvious by the dramatic 30% stock drop. Previously, publicly released images indicated that defendant Burns and Dr. Wang may not have provided original images to two journals investigating the misconduct. *See* Mot. at 5-6. By contrast, the CUNY Report's revelations were far more expansive – there was **no** original

data or contemporaneous documentary support for *any* of Cassava's foundational research at issue. ECF 129-3, Supp. ¶2; ECF 143-2 at 2/5; CUNY Report at 1.

Even under their own authority, the CUNY Report could not have been merely "confirmatory," as Defendants claim, because confirmatory information "'will not affect the stock price.'" Opp. at 10 (quoting *Archdiocese of Milwaukee Supporting Fund v. Halliburton Co.*, 597 F.3d 330, 337 (5th Cir. 2010), *vacated and remanded by Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011)). Here, as explained above, the CUNY Report *did* affect Cassava's stock price, causing an over 30% decline. ECF 129-3, Supp. ¶5. If, in fact, the report only "parroted" the same old information without anything new (*see* Opp. at 1), "it is hard to understand the sharp drop in the price of [Cassava's] stock" following the CUNY Report's disclosure. *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004), *as amended* (Sept. 3. 2004). Thus, "[s]uch a drop in price creates a reasonable inference that the information contained in [the CUNY Report] was material information that had not been previously available to the market" – an inference that Plaintiffs are entitled to at this stage. *In re Res. Am. Sec. Litig.*, 2000 WL 1053861, at *5 (E.D. Pa. July 26, 2000). Once again, however, Defendants do not contend with this authority. *See* Mot. at 16-17.

Instead, Defendants speculate that the price movement was "likely" due to "volatility." Opp. at 12. Defendants offer no expert opinion to support their claim (nor could they at this stage), adding it to the pile of disputed facts not properly before the Court. Nor do Defendants offer any negative contravening event that could potentially explain the stock drop. The Opposition, in fact, ignores that the stock drop following the CUNY Report was statistically significant (ECF 129-3, Supp. ¶¶5-6), meaning that, contrary to Defendants' claim, the stock price decline is "'***unlikely*** to be explained by the normal random variations of the stock price,'" *i.e.*, volatility. *Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016), *aff'd sub nom. Waggoner v. Barclays PLC*,

875 F.3d 79 (2d Cir. 2017). The CUNY Report thus "'reveal[ed] some information not already known to the market,'" and was not merely "confirmatory." Opp. at 9.[5]

In sum, the supplement adequately pleads a corrective disclosure, especially given Defendants' repeated denials and attempts to "mitigate the impact of th[e]se disclosures by making contemporaneous misstatements to the market." *Amedisys*, 769 F.3d at 324; Mot. at 18, 19.[6] The fact that there were some allegations of data manipulation already in the market does not cut off loss causation for **new factual revelations**, like those set forth in the supplement. *See* ECF 104 at 29-31 (upholding sufficiency of Plaintiffs' loss-causation allegations for corrective disclosures that continued to gradually inform the market, even after the Citizen Petition was public); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 141 (D. Conn. 2021) (news report that, like the CUNY Report, was based on witness interviews and internal documents, "provided 'additional details about'" improper sales practices and therefore constituted a corrective disclosure, despite that those practices "had been discussed by Alexion before and during the Class Period").

### 2. The CUNY Report is Reliable

Even if Defendants' improper attempt to undermine the reliability of the CUNY Report was proper at the pleading stage (it is not), it is also entirely baseless. First, it strains credulity that

---

[5] Defendants' reliance on *Halliburton*, 597 F.3d 330, and *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004) is misplaced. Those decisions did not involve pleading loss causation. *Halliburton* required a plaintiff to prove loss causation at class certification (597 F.3d at 335, 337), which has been rejected by the Supreme Court. *See Halliburton*, 563 U.S. 804. Similarly, *Crossroads* is a summary-judgment decision.

[6] Defendants' authorities, *Crossroads*, 364 F.3d 657, and *In re Dell Inc. Sec. Litig.*, 591 F. Supp. 2d 877, 910 (W.D. Tex. 2008), are therefore inapposite. In those cases, the alleged corrective information neither related to the alleged misstatements and omissions nor made the fraud more probable. In fact, in *Dell*, the plaintiffs admitted that, unlike here, "none of these disclosures reveals or specifically corrects any prior fraud or misrepresentation." 591 F. Supp. 2d at 909. Here, by contrast, Defendants admit that the CUNY Report concerns the very same Cassava research at issue in this case. *See* Opp. at 10.

*Science*, a reputable scientific journal, would publish an article about the CUNY Report, or that an award-winning investigative journalist would put his name on it, if it lacked any reliability or basic fact checking.[7]  Second, the CUNY Report, as well as the reporting in the 2023 *Science* Article, are brimming with facts that confirm the plausibility of Plaintiffs' allegations.

As detailed in the CUNY Report itself, the Committee consisted of unbiased scientists with experience in biochemistry and Western blots, and they "worked closely, throughout this entire investigation, with a CUNY administrator with extensive experience with research misconduct investigations."  CUNY Report at 7.  Moreover, the report was not only marked "final," it was also "forwarded" to the federal Office of Research Integrity overseeing the investigation, "according to ***emails obtained by Science***."  ECF 143-2 at 2/5; ECF 129-3, Supp. ¶¶1-2.  And a biochemist at CUNY, Kevin Gardner, who helped prepare a preliminary assessment of Dr. Wang's work (though was not involved in the final review) called what the Committee found "embarrassing beyond words" and found Dr. Wang's record of research is "abhorrent."  ECF 143-2 at 2/5; ECF 129-3, Supp. ¶3.

Defendants go a bridge too far when they claim that CUNY "disavowed" the CUNY Report in an attempt to call into question its "authenticity and accuracy."  Opp. at 4.  As CUNY's October 27, 2023 release plainly states, the university offered "***no[] comment***" on the "accuracy" of the CUNY Report "because no final action as to this investigation has been taken."  ECF 143-3 at 2 of 5.  That is a far cry from a "disavowal" of the CUNY Report or its findings.  The fact that CUNY decided to investigate "the process" due to a leak of the Committee's final report (*id*. at 3 of 5)

---

[7]  "*Science*, founded by Thomas A. Edison in 1880 and published by AAAS [American Association for the Advancement of Science], today ranks as the world's largest circulation general science journal.  Published 51 times a year, Science is renowned for its highly cited, peer-reviewed research papers, its special strength in life science disciplines, and its award-winning coverage of breaking science news."  JSTOR, *Science*, https://www.jstor.org/journal/science (last visited March 14, 2024).

suggests that the report was indeed authentic. In any event, this leak-investigation certainly does not: (i) render the Committee's "final" report unreliable; or (ii) otherwise detract from the Committee's damming findings. The weight of the evidence and Plaintiffs' allegations in the supplement reflect both the reliability and credibility of the CUNY Report.[8]

### 3. Plaintiffs Sufficiently Allege the CUNY Report Caused Cassava's Stock Price to Decline

As Defendants concede that Cassava's stock price fell over 30% from $18.46 to $12.64 per share directly following the release of the CUNY Report (Opp. at 6) and do not claim that the information contained in the CUNY Report is unrelated to the fraud, loss causation is sufficiently pled. *See* §II.A., *supra*; Mot. at 15-16. Nevertheless, Defendants claim Plaintiffs have not "[p]lausibly [p]lead" that the CUNY Report caused "[a]ny [d]rop" in Cassava's stock price, due to Cassava's stock price purportedly "recover[ing]" by October 27 – over a week later – from CUNY's so-called "disavowal" of the CUNY Report. Opp. at 6, 11. But the Court is "not authorized or required to determine whether the plaintiff's plausible inference of loss causation is equally or more plausible than [Defendants'] other competing inferences." *Lormand*, 565 F.3d at 267.

Regardless, Defendants' argument is easily debunked. First, as already described, CUNY did not disavow the CUNY Report. §II.B.2., *supra*. Second, contrary to Defendants' claim, following the release of the CUNY Report, Cassava's stock price did not "recover" in response to the October 27 CUNY statement. Opp. at 6-7. Rather, **Cassava** issued a press release on October 25, 2023, two days **before** the CUNY statement, trumpeting purportedly positive information regarding Simufilam that apparently caused Cassava's stock price to increase. *See* Ex. 2. On

---

[8] Defendants' case is not applicable. *Edge Sys. LLC v. Aguila*, 2015 WL 6447502 (S.D. Fla. Oct. 26, 2015), *aff'd in part*, 708 F. App'x 998 (Fed. Cir. 2017), involved "[c]lear and convincing evidence" that a party "manufacture[d]" and submitted "fraudulent" evidence. *Id.* at *7.

- 9 -

October 25, Cassava's stock price opened at $14.78 per share, and *after* the Company issued its press release, the stock closed the day ***up*** 25.7% at $18.58 per share. *See* Ex. 3. The stock price thus did not simply bounce back or "recover" due to the October 27 CUNY statement.[9] Rather, the stock price movement was prompted by information Cassava injected into the market days earlier. In fact, on October 27, the day the CUNY statement was released, Cassava's stock price actually ***declined***, from $20.78 to $19.89 per share and closed ***even lower*** the next trading day on October 30 at $18.94 per share. *See* Ex. 3.[10] Defendants misleadingly omit these inconvenient facts from their Opposition.[11] Cassava's stock price movements are, therefore, not inconsistent with or otherwise negate Plaintiffs' theory of loss causation. At most, these are factual questions for another day.

## III.   CONCLUSION

For the reasons stated herein and in their opening papers, Plaintiffs should be granted leave to file their proposed supplemented complaint attached as Exhibit C to the Motion.

---

[9]   Cassava has a history of issuing press releases with an alleged aim of manipulating Cassava's stock price, which is directly at issue in this case. *See* Mot. at 6.

[10]   Defendants' additional claim that the stock price "has not fallen below $19 since [October 27]" (Opp. at 6) is therefore incorrect.

[11]   Defendants' out-of-circuit authority is inapt. In *Wochos v. Tesla, Inc.*, 985 F.3d 1180 (9th Cir. 2021), unlike here, there was no intervening event unrelated to the corrective disclosure that caused the stock price to increase, and, unlike here, there was a "quick" price recovery after a "modest" 3.9% drop that began on the second trading day after the alleged corrective disclosure. Here, by contrast, the stock price continued to drop on the second trading day following the disclosure, and the drop was not "modest" – it totaled over 30%. ECF 129-3, Supp. ¶5. Similarly, *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *16 (D. Ariz. May 25, 2023), involved a mere 7% decline that quickly recovered, and there was no plausible intervening event that caused the recovery. In fact, the court appeared to agree that "loss causation should not be defeated as a matter of law" where, like here, an intervening event causes a stock price to increase ***after*** a corrective disclosure. *Id*. at *17. Otherwise, defendants could simply follow corrective information with releases of positive information in an attempt to negate loss causation, as it appears Defendants did here on October 25. *See* Ex. 2.

| | |
|---|---|
| DATED: March 14, 2024 | Respectfully submitted,<br><br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>DANIEL S. DROSMAN (admitted *pro hac vice*)<br>RACHEL JENSEN (admitted *pro hac vice*)<br>KEVIN A. LAVELLE (admitted *pro hac vice*)<br>MEGAN A. ROSSI (admitted *pro hac vice*)<br>HEATHER GEIGER (admitted *pro hac vice*)<br><br>              */s/ Kevin A. Lavelle*<br>KEVIN A. LAVELLE<br><br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br>dand@rgrdlaw.com<br>rachelj@rgrdlaw.com<br>klavelle@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>hgeiger@rgrdlaw.com<br><br>Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone<br><br>KENDALL LAW GROUP, PLLC<br>JOE KENDALL (Texas Bar No. 11260700)<br>3811 Turtle Creek Blvd., Suite 825<br>Dallas, TX  75219<br>Telephone:  214/744-3000<br>214/744-3015 (fax)<br>jkendall@kendalllawgroup.com<br><br>Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone<br><br>GLANCY PRONGAY & MURRAY LLP<br>CHARLES H. LINEHAN (admitted *pro hac vice*)<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA  90067<br>Telephone: 310/201-9150<br>310/201-9160 (fax)<br>clinehan@glancylaw.com<br><br>Counsel for Additional Plaintiff Manohar K. Rao |

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 14, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

ROBBINS GELLER RUDMAN
&  DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  klavelle@rgrdlaw.com

# Mailing Information for a Case 1:21-cv-00751-DAE In Re Cassava Sciences, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzia@csgrr.com

- **Michael Albert**
  malbert@rgrdlaw.com

- **Thomas E. Bilek**
  tbilek@bileklaw.com,lmank@bileklaw.com

- **Mary K. Blasy**
  mblasy@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey C. Block**
  jeff@blockesq.com

- **Willie C. Briscoe**
  wbriscoe@thebriscoelawfirm.com,tsims@thebriscoelawfirm.com

- **Warren T. Burns**
  wburns@burnscharest.com,mkweik@burnscharest.com,jgravois@burnscharest.com,mvaleriano@burnscharest.com,twhiteside@burnscharest.com

- **Michael Scott Campbell**
  scampbell@gibsondunn.com,rjanzen@gibsondunn.com,stafoya@gibsondunn.com

- **Stuart L. Cochran**
  scochran@condontobin.com,lmedeles@condontobin.com

- **Gregg Jeffrey Costa**
  gcosta@gibsondunn.com

- **John Thomas Cox , III**
  tcox@gibsondunn.com,twesley@gibsondunn.com,LGadberry@gibsondunn.com,wcassidy@gibsondunn.com

- **Michael Dell'Angelo**
  mdellangelo@bm.net,csimon@bm.net,jgionnette@bm.net

- **Daniel S. Drosman**
  dand@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Bryan Fears**
  fears@fnlawfirm.com,pcox@fnlawfirm.com,nprola@maceybankruptcylaw.com

- **William B. Federman**
  wbf@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com

- **Michael I. Fistel , Jr**
  michaelf@johnsonfistel.com,paralegal@johnsonfistel.com

- **Sammy Ford , IV**
  sford@azalaw.com,rperez@azalaw.com,tzamora@azalaw.com,jwarshauer@azalaw.com

- **Claudia Wilson Frost**
  cfrost@steptoe.com,casestream@ecf.courtdrive.com,phowell@orrick.com,dcmanagingattorneysoffice@ecf.courtdrive.com,srenfro@orrick.com

- **Heather Geiger**
  hschlesier@rgrdlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **B. Russell Horton**
  rhorton@gbkh.com,kseabolt@gbkh.com,tmanassian@gbkh.com

- **Rachel L. Jensen**
  rachelj@rgrdlaw.com,tdevries@rgrdlaw.com

- **Lewis S. Kahn**
  lewis.kahn@ksfcounsel.com,ecf.filings@ksfcounsel.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Natalie F. Lakosil**
  nlakosil@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Kevin A. Lavelle**
  klavelle@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Charles H. Linehan**
  CLinehan@glancylaw.com,info@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Monica K. Loseman**
  mloseman@gibsondunn.com,lapodaca@gibsondunn.com

- **Mary Beth Beth Maloney**
  mmaloney@gibsondunn.com

- **Matthew Ryan McCarley**
  mccarley@foresterhaynie.com,mccmat2000@yahoo.com,wage@foresterhaynie.com

- **Megan A. Rossi**
  mrossi@rgrdlaw.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com,bengfelt@rgrdlaw.com

- **John L. Turquet Bravard**
  jturquetbravard@gibsondunn.com

- **Jordan Lyn Warshauer**
  jwarshauer@azalaw.com,mrivers@azalaw.com,akeniston@azalaw.com

- **Braden Michael Wayne**
  braden@swclaw.com,lisa@swclaw.com,jamie@swclaw.com

- **John A. Yanchunis**
  jyanchunis@forthepeople.com,jcabezas@forthepeople.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`