IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES INC. SECURITIES LITIGATION | § § § § § | No. 1:21-cv-00751-DAE |

ORDER GRANTING PLAINTIFFS MOTION TO SUPPLEMENT THE CONSOLIDATED COMPLAINT

Before the Court is a Motion for Leave to Supplement the Consolidated Complaint filed on February 22, 2024, by Lead Plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar Rao ("Plaintiffs"). (Dkt. # 129.) Defendants Cassava Sciences, Inc., Remi Barbier, Lindsay Burns, and Eric Schoen ("Defendants") submitted a response to the motion on March 7, 2024. (Dkt. # 143.) Plaintiffs replied on March 14, 2024. (Dkt. # 149.)

The Court finds this matter suitable for disposition without a hearing. Upon careful consideration of the arguments asserted in the filings, the Court **GRANTS** Plaintiff's Motion to Supplement the Consolidated Complaint. (Dkt. # 129.)

BACKGROUND

This securities fraud case concerns allegations of misconduct against Cassava Sciences, Inc. ("Cassava") and individual defendants for making fraudulent statements while attempting to design a drug to treat Alzheimer's disease. (Dkt. # 68 at ¶ 1.) On May 11, 2023, this Court denied Defendants' Motion to Dismiss and upheld all the claims in the Complaint, except as to a defendant who passed away. (Dkt. # 104.)

The Complaint alleges that on August 24, 2021, reports emerged that the FDA had received a Citizen Petition raising "grave concerns about the quality and integrity of the laboratory-based studies surrounding" simufilam, including evidence that defendant Burns and Wang manipulated foundational pre-clinical and clinical studies. (Id. at ¶¶12-13.) As a result of the Citizen Petition, City University of New York ("CUNY") began a research misconduct inquiry into Wang and the research at issue. (Id. at ¶¶28, 367-368.)

Now, Plaintiffs move to supplement the consolidated complaint by including the results of CUNY's investigation. (Dkt. # 129 at 1.) On October 12, 2023, the journal *Science* published an article revealing that investigators at CUNY had submitted a "final" 50+ page report" to the Office for Research Integrity ("ORI"), finding egregious scientific misconduct involving research papers used to support pre-clinical and clinical trials of Cassava's simufilam drug candidate

("2023 *Science* Article"). (Id.)[1] According to Plaintiffs, the 2023 *Science* Article revealed extensive data manipulation, research misconduct, destruction of original source data, and concluded that defendant Burns was at fault for at least some of the misconduct. (Id.) According to Plaintiffs, this corrective disclosure was quickly reflected in Cassava's stock price, resulting in a decline of over 30% and causing additional damage to putative Class members. (Id.) Therefore, Plaintiffs attempt to certify a class of purchasers or acquirers of Cassava securities spanning the entire period between September 14, 2020 and October 12, 2023, inclusive.

LEGAL STANDARD

"Under Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Burns v. Exxon Corp., 158 F.3d 336, 343 (5th Cir. 1998).

"The purpose of the Rule 'is to promote as complete an adjudication of the dispute between the parties as is possible.'" 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1504, at 245 (3d ed.2004).

[1] The Court may take judicial notice of the article, the document, and CUNY's response to consider whether Plaintiffs' supplemental allegations state a valid claim. See, e.g., Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

Whether to grant the motion to supplement is in the district court's discretion. Louisiana v. Litton Mortg. Co., 50 F.3d 1298, 1302–03 (5th Cir.1995). But granting leave "is by no means automatic." Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir. Unit A July 1981). This is especially so for Rule 15(d) because, although Rule 15(a) instructs courts to "freely give leave when justice so requires," "Rule 15(d) ... has no such liberal policy." Hyde v. Hoffman–La Roche Inc., 2008 WL 2923818, at *3 (N.D.Tex. July 30, 2008).

DISCUSSION

The Fifth Circuit has identified "five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH, 839 F.3d 422, 428 (5th Cir. 2016) (internal citation omitted).

Defendants only oppose the motion based on futility. It is undisputed that the motion is timely. (Dkt. # 129 at 11.) There is no suggestion that the motion has been filed in bad faith or that Plaintiffs have repeatedly failed to amend or supplement their pleading. (Id.) Lastly, there is no undue prejudice as the supplement does not change or add legal theories. (Id.) Therefore, the first four factors all weigh in favor of Plaintiffs.

I. Futility

Plaintiffs' motion to supplement seeks to add a corrective disclosure pertinent to loss causation stemming from an October 12, 2023 *Science* Article. As this Court held in denying Defendants' motion to dismiss, "[f]or a complaint to adequately plead loss causation, 'it need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."'" Pub. Emps. Ret. Sys. of Mississippi, Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc., 769 F.3d 313, 320 (5th Cir. 2014) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005)). Plaintiffs must plausibly plead the elements of loss causation, including 1) a corrective disclosure of new and relevant truth to the market and 2) that it was "more probable than not" that the corrective disclosure caused a "substantial" drop in the stock's price. Id. at 321.

Defendants object to the motion on the basis of futility because 1) the *Science* article is neither accurate nor authentic and 2) the *Science* article did not disclose any new information to the marketplace. The Court will address each of these objections in turn.

A. Accuracy of the *Science* Article

On October 12, 2023, *Science* published an article stating conclusions from a CUNY investigation into scientific misconduct. Defendants question the accuracy and authenticity of the *Science* Article. Indeed, after the leak, CUNY

stated "[it] will not comment on the accuracy of the investigation referenced in the articles because no final action as to this investigation has been taken." (Ex. B.) Defendants also note that the information comes from someone "requested anonymity because they [were] not authorized to share it." (Ex. A.)

Defendants also note that the document disclaims reaching any conclusion that Dr. Wang or Dr. Burns manipulated, fabricated, or otherwise misrepresented any research related to simufilam, repeatedly stating that it was "impossible to address the allegations objectively" and that it could not "therefore render a conclusion regarding the misconduct in the allegation[s]." See https://shorturl.at/ipB79 at 7, 50. Therefore, the CUNY report does not correct or reveal any truth regarding the allegations of misleading statements described in the Complaint.

The Court does not find that the aforementioned objections to the motion to supplement justify the Court denying Plaintiffs an opportunity to add these allegations of loss causation.

To begin, these fact-intensive inquiries about the accuracy and conclusions from the report are for trial, not a motion to supplement where the Court must "'accept "[Plaintiffs'] well pleaded facts as true, viewing them in the light most favorable."' Kiken v. Lumber Liquidators Holdings, Inc., 155 F. Supp. 3d 593, 609 (E.D. Va. 2015) ("With respect to loss causation, so long as the

plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings where the plaintiff's case can be rejected on evidentiary grounds.") Additionally, "[n]or is there any requirement that the disclosure take a particular form or be of a particular quality...." In re Winstar Commc'ns, No. 01 Civ. 3014, 2006 WL 473885, at *14 (S.D.N.Y. Feb. 27, 2006) (holding there is no requirement as to who may serve as the source of information of a corrective disclosure).

CUNY's response to the *Science* Article does not justify denying the additional allegations. While it is true that CUNY did not comment on the accuracy of the investigation, a senior adviser to City College of New York president Vincent Boudreau said "action on the report is imminent." Therefore, there is plausible credence to the authenticity of the *Science* Article. Indeed, the CUNY report was labeled "final" and allegedly submitted to ORI, a federal oversight agency.

The Court also finds that the disclaimers in the report do not take away from some of the factual conclusions stated in the *Science* Article. It is true the report "disclaims reaching any conclusion that Dr. Wang or Dr. Burns manipulated, fabricated, or otherwise misrepresented any research related to simufilam." Moreover the report did not "render a conclusion regarding the misconduct in the allegation." However, Defendant fails to provide context

regarding these disclaimers. In fact, the Report disclaims the ability to make a conclusion because of "Dr. Wang's failure to provide us with uncropped, unmanipulated images of the blots in question." https://shorturl.at/ipB79, at 11. The report goes onto say without qualification that "Dr. Wang's work in this case remains highly questionable." Id. The Report also stated unequivocally that Dr. Wang's failure to store original data and maintain research records is "clearly not in keeping with accepted standards in the field." Id. Therefore, the Court will not discount the *Science* Article merely because the report contains qualifying language.

B. New Information

A corrective disclosure is "a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." Amedisys, Inc., 769 F.3d at 321. For truth to be "pertinent" it must "make the existence of the actionable fraud more probable than it would be without that alleged fact," that is, "reveal to the market the falsity of the prior misstatements." Id. at 321-22. Additionally, "pertinent truth" in a corrective disclosure must be new; otherwise, nothing has been revealed. Emps.' Ret. Sys. V. Whole Foods Mkt., Inc., 905 F.3d 892, 904 (5th Cir. 2018) ("[T]he corrective disclosure must reveal some information not already known to the market.").

Defendants argue that the document did not reveal any new information to the market. According to Defendants, all the allegations discussed in the report were already in the Citizen Petition or other public filings inserted in the Complaint. According to Defendants, "[c]onfirmatory information is already known to the market and, having been previously digested by the market, will not affect the stock price." Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co., 597 F.3d 330, 337 (5th Cir. 2010).

Defendants argue the faculty "investigated" already public allegations by examining western blot images in the publicly available versions of Dr. Wang's research papers. In other words, Defendants say the committee did exactly what the Citizen Petition authors had already done over two years before and without the aid of an independent image consultant or other relevant expert.

The motion to supplement includes allegations that "Dr. Wang's failure to store original data and maintain research records [was] reckless and clearly not in keeping with the standard practices in the field," https://shorturl.at/ipB79 at 7. Defendants say this has already been alleged by Plaintiffs. Moreover, Defendants say any conclusion about Dr. Wang's recordkeeping in the report is not tied to the Complaint.

The Court recognizes that the *Science* Article discloses much of which is already known. Indeed, the Complaint details issues with the lack of original data supplied by Dr. Wang or Cassava. (Dkt. # 68 at ¶¶ 390-404 409, 421, 422.)

Nevertheless, the Court finds that Defendants take too narrow of a view as to what was revealed in the *Science* Article. The CUNY inquiry is highly relevant to the present lawsuit. Indeed, CUNY is the institution that hired Dr. Wang and where he serves as a professor at the medical school. The Complaint details that journals were waiting to make decisions on corrective action following the conclusion of the ongoing CUNY inquiry into the misconduct. (Id. ¶ at 417.) That other institutions are looking to CUNY for information makes it more than plausible that CUNY is in a position to relay facts not already in the public domain. And indeed, Plaintiffs state that the CUNY investigation concluded after "interviews of Dr. Wang, a member of his lab," and "several administrators," and a review of image files and written responses Dr. Wang provided as well as "image files confiscated from Wang's computers." (ECF 143-2 at 2/5). Thereafter, the CUNY investigating committee allegedly found "evidence highly suggestive of deliberate scientific misconduct" in Cassava's foundational research, including "numerous signs that images were improperly manipulated." CUNY Report at 1; ECF 143-2 at 1/5. The Committee also allegedly found that defendant Burns shared "responsibility" in the misconduct. The Court agrees with Plaintiff that

based on this process Defendants' contention that the Committee did nothing more than review "publicly available" images of the data is mistaken.

The Court finds that this process provided plausible additional details about the extent of the alleged fraudulent practices by Dr. Wang and Cassava. Indeed, the allegation that Dr. Wang could not provide any original data for any of the foundational Cassava research alleged to have been manipulated is new and based on the *Science* Article.

The *Science* Article had a direct impact on the stock price. Cassava's stock price fell over 30% from $18.46 to $12.64 per share directly following the release of the CUNY Report. (Opp. at 6.) If the report only "parroted" the same old information "it is hard to understand the sharp drop in the price of [Cassava's] stock" following the CUNY Report's disclosure. Asher v. Baxter Int'l Inc., 377 F.3d 727, 734 (7th Cir. 2004), *as amended* (Sept. 3. 2004). Defendants merely speculate that the price movement was "likely" due to "volatility."[2] However, at

---

[2] Cassava's stock price declined from $18.46 to $12.64 between October 12 and October 16, 2023, but recovered to $19.89 by October 27. The parties dispute the reason for the hike. Defendants say this occurred when CUNY issued its statement declining to adopt the Report or its conclusions. Plaintiff say Cassava issued a press release on October 25, 2023, two days before the CUNY statement, trumpeting purportedly positive information regarding Simufilam that apparently caused Cassava's stock price to increase. In fact, on October 27, the day the CUNY statement was released, Cassava's stock price actually declined, from $20.78 to $19.89 per share. Regardless of the reason for the hike, which is a factual dispute, the Court finds the "trajectory of [the company's] stock price" supports a facially plausible loss causation theory.

this stage, the Court must view the allegations in the light most favorable to the plaintiffs who have created a reasonable inference that the information contained in the report was material and had not been previously available to the market. In re Res. Am. Sec. Litig., 2000 WL 1053861, at *5 (E.D. Pa. July 26, 2000).

CONCLUSION

Having considered all the Rule 15 factors, including four of the five that are undisputed in favor of Plaintiffs, the Court **GRANTS** the Motion to Supplement the Complaint. (Dkt. # 129.)

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, June 12, 2024.

David Alan Ezra
Senior United States District Judge