```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
 2                        AUSTIN DIVISION

 3   PIERRE BRAZEAU, ET AL.,              ) AU:21-CV-00751-DAE
                                          )
 4      Plaintiffs,                       )
                                          )
 5   v.                                   ) AUSTIN, TEXAS
                                          )
 6   CASSAVA SCIENCES, INC., ET AL.       )
                                          )
 7      Defendants.                       ) AUGUST 1, 2024

 8         ************************************************
            TRANSCRIPT OF MOTIONS HEARING/STATUS CONFERENCE
 9             BEFORE THE HONORABLE DAVID A. EZRA
           ************************************************
10
     APPEARANCES:
11
     FOR THE PLAINTIFFS:  JOE KENDALL
12                        KENDALL LAW GROUP
                          3811 TURTLE CREEK BOULEVARD, SUITE 825
13                        DALLAS, TEXAS 75219

14                        KEVIN A. LAVELLE
                          DANIEL S. DROSMAN
15                        RACHEL L. JENSEN
                          ROBBINS GELLER RUDMAN & DOWD LLP
16                        655 WEST BROADWAY, SUITE 1900
                          SAN DIEGO, CALIFORNIA 92101
17
     FOR THE DEFENDANTS:  GREGG JEFFREY COSTA
18                        LLOYD S. MARSHALL
                          GIBSON DUNN & CRUTCHER
19                        811 MAIN STREET, SUITE 3000
                          HOUSTON, TEXAS 77002
20
                          MONICA K. LOSEMAN
21                        MICHAEL SCOTT CAMPBELL
                          GIBSON, DUNN
22                        1801 CALIFORNIA STREET, SUITE 4200
                          DENVER, COLORADO 80202
23
                          C SHAWN CLEVELAND
24                        BAKER & HOSTETLER LLP
                          2850 N. HARWOOD STREET, SUITE 1100
25                        DALLAS, TEXAS 75201
```

```
1   COURT REPORTER:        ARLINDA RODRIGUEZ, CSR
                           501 WEST 5TH STREET, SUITE 4152
2                          AUSTIN, TEXAS 78701
                           (512) 391-8791
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:08:42 | 1 | (Open court) |
| 09:08:42 | 2 | THE CLERK: AU:21-CV-751. |
| 09:08:48 | 3 | THE COURT: May we have appearances, please. |
| 09:08:50 | 4 | MR. KENDALL: Your Honor, Joe Kendall on behalf |
| 09:08:52 | 5 | of the plaintiffs. Along with me are my, not from |
| 09:08:58 | 6 | Cincinnati this morning, but from San Diego, Dan Drosman |
| 09:09:03 | 7 | or Kevin Lavelle, and Rachel Jensen. They're with |
| 09:09:05 | 8 | Robbins Geller Rudman & Dowd on behalf of the plaintiffs. |
| 09:09:06 | 9 | THE COURT: All right. And can I have |
| 09:09:10 | 10 | appearances for the movant. |
| 09:09:14 | 11 | MR. COSTA: For the defendant, Greg Costa. |
| 09:09:18 | 12 | Good to see you this morning. |
| 09:09:19 | 13 | THE COURT: Good to see you. |
| 09:09:19 | 14 | MR. COSTA: I'm joined by Monica Loseman, |
| 09:09:21 | 15 | Scott Campbell, and Lloyd Marshall. |
| 09:09:23 | 16 | THE COURT: All right. Now, before we move |
| 09:09:28 | 17 | forward, Mr. Costa, your firm has moved to withdraw in |
| 09:09:37 | 18 | this case. We have other counsel for the parties, and, |
| 09:09:48 | 19 | quite frankly, I can see no reason not to grant your |
| 09:09:51 | 20 | motion at this time. |
| 09:09:52 | 21 | MR. COSTA: Thank you, Your Honor. And we have |
| 09:09:53 | 22 | counsel for the individual defendants present here this |
| 09:09:58 | 23 | morning, if they want to introduce themselves. |
| 09:10:00 | 24 | MR. CLEVELAND: Good morning, Your Honor. |
| 09:10:02 | 25 | Shawn Cleveland for Lindsay Burns and Remi Barbier. |

| 09:10:05 | 1 | THE COURT: All right. So unless you would |
| 09:10:07 | 2 | like me to hold off and you wish to argue this morning, I |
| 09:10:09 | 3 | am more than happy to grant your motion at this time and |
| 09:10:13 | 4 | excuse you. |
| 09:10:16 | 5 | MR. COSTA: Well, we're still representing the |
| 09:10:18 | 6 | company -- |
| 09:10:18 | 7 | THE COURT: Yeah. |
| 09:10:19 | 8 | MR. COSTA: -- Your Honor. So it would just be |
| 09:10:20 | 9 | as to the individuals we're withdrawing. |
| 09:10:22 | 10 | THE COURT: You're withdrawing only as to the |
| 09:10:24 | 11 | individuals? |
| 09:10:25 | 12 | MR. COSTA: Exactly. |
| 09:10:25 | 13 | THE COURT: Oh. I thought you were withdrawing |
| 09:10:26 | 14 | entirely. |
| 09:10:27 | 15 | MR. COSTA: No. We're still right in the thick |
| 09:10:29 | 16 | of things here for Cassava. It's just the individual |
| 09:10:33 | 17 | defendants. |
| 09:10:33 | 18 | THE COURT: Well, I'm not kicking you out. |
| 09:10:35 | 19 | MR. COSTA: I appreciate that. |
| 09:10:36 | 20 | THE COURT: All right. So I am granting your |
| 09:10:40 | 21 | motion to withdraw with respect to the individuals. |
| 09:10:50 | 22 | MR. COSTA: Thank you. |
| 09:10:50 | 23 | THE COURT: Okay. This is a motion to stay. |
| 09:10:55 | 24 | Who's arguing? |
| 09:10:57 | 25 | MR. COSTA: It's our motion, Your Honor. We |

| | | |
|---|---|---|
| 09:10:59 | 1 | did -- I know the Court had sent out a sealed request for |
| 09:11:02 | 2 | information about the status of discovery, et cetera. |
| 09:11:06 | 3 | THE COURT:  Yeah.  Unfortunately, there was a |
| 09:11:08 | 4 | mix-up in the clerk's office.  And I was wondering why |
| 09:11:12 | 5 | nobody was responding, because we have very good law |
| 09:11:16 | 6 | firms here and not firms that would normally simply look |
| 09:11:20 | 7 | the other way.  And, boom, we find out that it wasn't |
| 09:11:24 | 8 | your fault at all, it was the clerk's fault.  And I |
| 09:11:28 | 9 | apologize for that.  And so, yeah, I'd like to know the |
| 09:11:33 | 10 | status. |
| 09:11:34 | 11 | MR. COSTA:  Right.  And so -- and Ms. Loseman |
| 09:11:41 | 12 | is prepared to address that -- |
| 09:11:41 | 13 | THE COURT:  All right. |
| 09:11:41 | 14 | MR. COSTA:  -- to start off. |
| 09:11:44 | 15 | MS. LOSEMAN:  Good morning, Your Honor.  May I |
| 09:11:45 | 16 | address you from here? |
| 09:11:46 | 17 | THE COURT:  Yes. |
| 09:11:46 | 18 | MS. LOSEMAN:  Thank you.  We thought it would |
| 09:11:49 | 19 | be helpful, Your Honor, to start with an update on recent |
| 09:11:52 | 20 | events concerning the company and how those recent events |
| 09:11:55 | 21 | impact these proceedings.  And these recent events really |
| 09:12:01 | 22 | have been very active and in development over the last |
| 09:12:03 | 23 | month and a half or so.  Most of this is addressed in a |
| 09:12:06 | 24 | notice that we filed with Your Honor, but there have also |
| 09:12:08 | 25 | been additional updates that we'd like to bring to your |

09:12:11  1  attention.

09:12:14  2          So first, Your Honor, on June 28th the Justice

09:12:16  3  Department announced that a grand jury in the U.S.

09:12:19  4  District Court of Maryland indicted a former consultant.

09:12:23  5          THE COURT:  Yes.  I was aware of that.

09:12:25  6          MS. LOSEMAN:  Dr. Wang.  This is an individual

09:12:27  7  that Plaintiffs have described as having particular

09:12:30  8  relevance to the allegations in their complaint.

09:12:32  9          And then on July 1st the company disclosed that

09:12:35  10  it was cooperating with the DOJ and the SEC regarding

09:12:40  11  ongoing investigations into the company as well as two

09:12:43  12  senior employees.  Further, based on new information --

09:12:48  13  newly obtained information provided to Cassava by the

09:12:51  14  SEC, the company created an ad hoc investigation

09:12:56  15  committee of the board of directors, comprised of

09:12:59  16  individual independent members of the board of directors,

09:13:03  17  to conduct an investigation concerning that newly

09:13:06  18  obtained information, as well as the events in the DOJ

09:13:10  19  indictment.

09:13:12  20          We provided an update to the Court on July 8th.

09:13:15  21  Since then, just two weeks ago, on July 17th, the company

09:13:18  22  disclosed that its chief executive officer,

09:13:22  23  Mr. Remi Barbier, resigned from the company that day.

09:13:26  24  That resignation is effective September 13th.  And until

09:13:29  25  that day he is serving in a nonexecutive capacity,

09:13:33    1    without duties or responsibilities at the company.  He

09:13:36    2    also resigned from the board of the company effective

09:13:39    3    immediately.

09:13:40    4            The company also announced that

09:13:42    5    Dr. Lindsay Burns resigned from the company, effective

09:13:45    6    immediately, and those two defendants in this case of

09:13:48    7    course are now represented by new counsel.

09:13:51    8            Cassava is still currently to this day actively

09:13:56    9    engaged in efforts to cooperate with the government in

09:13:59    10   its investigations.

09:14:00    11           Now, Plaintiffs have informed us that they

09:14:03    12   intend to move for leave to amend or supplement their

09:14:07    13   complaint to account for these very recent developments.

09:14:12    14   They further inform us that they intend -- they are

09:14:15    15   considering when to file that motion because we are very

09:14:18    16   much in the middle of developing a set of circumstances

09:14:22    17   that Plaintiffs contend are relevant to the claims in

09:14:26    18   their complaint.

09:14:27    19           And I'll get to the significance of that in a

09:14:30    20   moment.  Let me now turn to the status of discovery and

09:14:33    21   what Defendants have been doing to engage in discovery

09:14:36    22   and its efforts to comply with the Court's scheduling

09:14:39    23   order.

09:14:40    24           And I'm going to try to address the items in

09:14:43    25   the sealed order that we obtained a photo of courtesy of

09:14:47  1  Plaintiffs' counsel last evening.  So item 1 of the

09:14:50  2  sealed order, first and foremost, to address the

09:14:54  3  mischaracterization in Plaintiffs' submissions that

09:14:56  4  Defendants are somehow not fully participating in the

09:14:59  5  discovery process, by the time Gibson, Dunn appeared in

09:15:04  6  the case in February of this year, the company had

09:15:07  7  already produced over 300,000 documents to Plaintiffs.

09:15:12  8  With a substantial completion deadline of April 15th

09:15:15  9  around that time, we immediately undertook to review and

09:15:20  10  keep that ongoing review of documents that were

09:15:23  11  potentially responsive to Plaintiffs' nearly 140 requests

09:15:27  12  for production, keep that process moving.

09:15:29  13        We provided a comprehensive response to

09:15:33  14  Plaintiffs' proposed search parameters and agreed to

09:15:36  15  review numerous categories of documents on March 15th.

09:15:40  16        Over the course of those months, consistent

09:15:43  17  with that agreement, we completed a review of

09:15:45  18  approximately 100,000 additional documents.  And by April

09:15:50  19  15th we produced the responsive, nonprivileged documents

09:15:54  20  identified from that review, approximately 20,000

09:15:57  21  documents.

09:15:57  22        But days before that substantial completion

09:16:01  23  deadline, so approximately April 10th, after we had sent

09:16:04  24  a comprehensive response to Plaintiffs' discovery demands

09:16:09  25  or proposal, on April 10th, a month later, Plaintiffs

09:16:13  1   responded and indicated they disagreed with our

09:16:16  2   counterproposal and indeed wanted more searches

09:16:19  3   conducted.

09:16:20  4          Even though the substantial completion deadline

09:16:23  5   was just days away and had effectively passed at that

09:16:26  6   point, we engaged with Plaintiffs in good faith.  And

09:16:30  7   this now will address part 3 of the sealed order,

09:16:32  8   Your Honor, the additional documents Plaintiffs argue

09:16:35  9   Defendants have somehow refused to produce.

09:16:37  10         After applying search terms and further

09:16:41  11   conferring with Plaintiffs, following up on that

09:16:43  12   April 10th correspondence, on May 20th we reached

09:16:47  13   agreement.  We agreed to review an additional 35,000

09:16:50  14   documents hitting on various additional terms.

09:16:53  15         On June 18th we agreed to review an additional

09:16:57  16   25,000 documents, accompanying even -- or as the result

09:17:01  17   of agreeing to additional search terms.  And on July 26th

09:17:04  18   we completed that review of those additional documents

09:17:08  19   and produced another 10,000 documents that were

09:17:11  20   responsive to Plaintiffs' request for documents.

09:17:14  21         So, in sum, we have reviewed well over 100,000

09:17:18  22   documents since we were engaged as counsel in February

09:17:21  23   and produced nearly 30,000 in addition to the 300,000

09:17:25  24   that had already been produced.

09:17:27  25         As to the subpoenas issued to the board

09:17:30  1   members -- and this is part of item 3 in the sealed

09:17:32  2   order, Your Honor -- in parallel with the company's

09:17:35  3   ongoing review of documents that I just described, we

09:17:39  4   also collected from the individual directors, collected

09:17:44  5   materials from them and conducted review of those

09:17:47  6   materials.  That production was completed on May 6th of

09:17:50  7   this year.

09:17:50  8           So, in short, the pending motion to stay that

09:17:54  9   Defendants have filed has had no impact on the document

09:17:58  10  discovery that has occurred in earnest over the last

09:18:01  11  several months.  The only things that we have not

09:18:05  12  produced to date, aside from engaging with brand-new

09:18:09  13  discovery requests we received just two weeks ago -- and

09:18:11  14  I'll get to that in a moment -- there are just three

09:18:14  15  items.  And this is in response to item 2 of Your Honor's

09:18:17  16  sealed order.

09:18:18  17          The first category is of course documents

09:18:21  18  withheld for privilege.  When we finished our document

09:18:24  19  review last week, we began the process of preparing a

09:18:28  20  privilege log.  There are approximately 4500 documents

09:18:32  21  that were withheld on the basis of privilege.  We are

09:18:35  22  finalizing that log and the descriptions of those

09:18:39  23  documents that were withheld.

09:18:40  24          The second category, transcripts of SEC

09:18:43  25  testimony.  Your Honor, we have not produced those

09:18:45  1   because we do not have them.  We have made the request of

09:18:48  2   the SEC for copies of the transcripts.  They sent us a

09:18:52  3   copy of the order form.  That form requires us to make a

09:18:56  4   representation that we simply cannot make, that we will

09:18:59  5   not further disseminate a copy of that transcript.  So we

09:19:04  6   put the Plaintiffs in direct contact with the SEC.  That

09:19:08  7   can hardly be described as Defendants failing to

09:19:11  8   participate fully in the discovery in this case.

09:19:14  9          The third category of documents that we have

09:19:18  10  not produced, that's copies of communications with the

09:19:22  11  government, including four presentations previously made

09:19:26  12  to the government subject to privilege.

09:19:28  13         We did not produce those limited categories of

09:19:31  14  documents and, instead, brought those matters to the

09:19:36  15  attention of the Court in filing the motion to stay and

09:19:38  16  opposing the motion to compel.  That is it.  That is it.

09:19:42  17         This can hardly be described, not producing

09:19:46  18  those three limited categories of documents, as not fully

09:19:49  19  engaging in discovery in this proceeding.

09:19:52  20         On the interrogatories -- this is item 4 of

09:19:56  21  Your Honor's sealed order -- and why Defendants have not

09:19:58  22  answered Plaintiffs' interrogatories.  First, Your Honor,

09:20:02  23  both Plaintiffs and Defendants have served

09:20:05  24  interrogatories on the other side in this proceeding.

09:20:07  25         Plaintiffs have refused to answer any

09:20:10   1   interrogatories that Defendants have served on the

09:20:13   2   grounds that they are contention interrogatories and

09:20:16   3   should not be answered until the end of the discovery

09:20:18   4   process.

09:20:19   5          Now, Plaintiffs served Cassava with four

09:20:22   6   interrogatories, the first three of which contained

09:20:25   7   nearly 100 subparts, nearly.  We answered the first

09:20:30   8   interrogatory, including all 36 subparts of that

09:20:34   9   interrogatory.  We objected to the remaining

09:20:37   10  interrogatories as exceeding the limits in Rule 33.

09:20:40   11          Now, as part of an agreement regarding the

09:20:43   12  overall number of interrogatories and requests for

09:20:46   13  admission that is appropriate in this case, an agreement

09:20:49   14  that we reached in late June with Plaintiffs, we have

09:20:52   15  agreed to answer the pending interrogatories.  But

09:20:55   16  Plaintiffs still refuse to answer any of our

09:20:58   17  interrogatories, again, on grounds that they are

09:21:01   18  contention interrogatories.

09:21:04   19          We are still amenable to answering

09:21:07   20  interrogatories 1 through 3.  And, indeed, we are in the

09:21:09   21  process of drafting those very detailed responses.  But

09:21:12   22  Plaintiffs' fourth interrogatory is a contention

09:21:15   23  interrogatory, and we will object on the same grounds as

09:21:18   24  Plaintiffs have in answering that interrogatory.

09:21:21   25          Now, that all brings me, Your Honor, to the

09:21:25  1   last topic, which is depositions in this case and the

09:21:29  2   scheduling order.  The tone of Plaintiffs' status

09:21:32  3   conference requests, and even their submission of late

09:21:35  4   last evening, seems to suggest that Defendants have

09:21:38  5   somehow delayed their ability to begin taking testimony

09:21:42  6   from witnesses in this matter.

09:21:44  7           But, Your Honor, they could have deposed any

09:21:47  8   witness.  They could have deposed witnesses over the last

09:21:50  9   couple of months and then later sought leave from the

09:21:54  10  Court to take additional testimony outside of the single

09:21:57  11  seven-hour day the rule permits.  They didn't do that.

09:22:01  12          And we think, Your Honor, we understand why

09:22:03  13  they have not done that:  Because Plaintiffs intend to

09:22:07  14  move to supplement their complaint.  This story has not

09:22:11  15  yet completely unfolded, and Plaintiffs do not want to

09:22:15  16  risk taking a deposition now and not having the

09:22:18  17  opportunity to depose witnesses later about developments

09:22:21  18  that are literally unfolding as we speak.

09:22:24  19          On July 1st Defendants filed the notice of

09:22:28  20  developments related to the motion to stay.  Just a week

09:22:32  21  later, Plaintiffs filed their request for this status

09:22:35  22  conference.  And just a little over two weeks after that,

09:22:39  23  and on the deadline to move to supplement or to amend the

09:22:42  24  complaint, that's when Plaintiffs informed Defendants for

09:22:45  25  the first time they intended to seek leave to amend the

09:22:49  1  complaint and expand the scope of this case to capture

09:22:53  2  events that are unfolding right now.

09:22:55  3        They have not noticed depositions, not because

09:22:58  4  Defendants have some how delayed, but, instead, because

09:23:01  5  they don't want to risk deposing a witness too early.

09:23:05  6  And, frankly, Your Honor, that -- that makes some sense

09:23:08  7  to us.  That actually makes some sense in terms of

09:23:14  8  economically and efficiently prosecuting these claims and

09:23:18  9  defending these claims.

09:23:19  10       The parties have discussed the number of

09:23:21  11  witnesses they anticipate, and they number, Your Honor,

09:23:24  12  in the dozens.  It makes no sense.  It would only

09:23:27  13  needlessly drive up costs to depose witnesses now, only

09:23:31  14  to seek leave to recall them and depose them again early

09:23:34  15  next year.

09:23:35  16       We propose, Your Honor, that the Court -- after

09:23:38  17  the court has an opportunity to hear argument on the

09:23:41  18  motion to stay and resolves that motion, that the parties

09:23:45  19  meet and confer to work on a proposed amended scheduling

09:23:49  20  order that permits the parties and the Court the time it

09:23:52  21  needs to account for these recent developments, time to

09:23:56  22  develop a deadline to file a motion to supplement the

09:23:58  23  amended complaint, time -- a deadline to account for the

09:24:06  24  impact those amendments will have to the pending motion

09:24:08  25  to certify the class, and the impact of those proposed

09:24:11   1   amendments we believe are quite substantial on the motion

09:24:14   2   to certify the class.

09:24:15   3         So our proposal would be, after the motion to

09:24:19   4   stay is resolved that the parties meet and confer and

09:24:22   5   develop a workable schedule for the rest of this

09:24:24   6   proceeding.

09:24:25   7         Your Honor, if you have no other questions, I

09:24:27   8   believe I've addressed the --

09:24:29   9         THE COURT:  Yes.  I don't.

09:24:30   10         MS. LOSEMAN:  Thank you.

09:24:35   11         THE COURT:  Yeah.  What's going on here?  I

09:24:37   12   keep hearing a beep.

09:24:46   13         Let me tell you what my thoughts are before we

09:24:50   14   get into the -- if we get into the actual merits argument

09:24:56   15   of the motion to stay.  The reason Judge Pitman asked me

09:25:08   16   to handle this case was because he was aware that I have

09:25:11   17   handled complex litigation all over the country and that

09:25:20   18   I have some experience in dealing with very complex SEC

09:25:28   19   type cases, as well as other complex cases.  And this

09:25:35   20   case is most certainly a complex case, under any rubric

09:25:45   21   one might employ in their definition.

09:25:51   22         It is not unusual in these cases, particularly

09:25:58   23   where we have a situation of potential, if not real,

09:26:06   24   criminal indictment, that there are motions to stay,

09:26:13   25   motions to limit, disputes involving the Fifth Amendment

| | | |
|---|---|---|
| 09:26:22 | 1 | or the potential Fifth Amendment.  Of course, the company |
| 09:26:26 | 2 | doesn't have a Fifth Amendment right, but the individuals |
| 09:26:28 | 3 | do, and the individuals are the ones that control the |
| 09:26:32 | 4 | company. |
| 09:26:32 | 5 |          Certainly from the perspective of the |
| 09:26:39 | 6 | plaintiffs, they want to attempt to get as much |
| 09:26:45 | 7 | information as they possibly can prior to somebody being |
| 09:26:50 | 8 | indicted and then shutting down entirely.  On the other |
| 09:26:55 | 9 | hand, the defense has a legitimate concern that they will |
| 09:27:04 | 10 | be forced to provide information which might otherwise be |
| 09:27:11 | 11 | privileged. |
| 09:27:16 | 12 |          So the fact that you have run into this dispute |
| 09:27:27 | 13 | with parties refusing to answer, parties attempting to -- |
| 09:27:33 | 14 | the allegation that parties are not answering, we've got |
| 09:27:36 | 15 | it going both ways here, and that is absolutely not |
| 09:27:44 | 16 | unusual.  It's very reminiscent of a case I handled in |
| 09:27:51 | 17 | Chicago involving railroads and disputes and all of that. |
| 09:27:55 | 18 |          What I would -- first of all, what I need to |
| 09:28:00 | 19 | know is whether indeed the Plaintiffs intend to file a |
| 09:28:08 | 20 | motion to amend their complaint.  I mean, is that what |
| 09:28:14 | 21 | you intend to do? |
| 09:28:15 | 22 |          MR. LAVELLE:  May I, Your Honor? |
| 09:28:16 | 23 |          THE COURT:  Yeah. |
| 09:28:22 | 24 |          MR. LAVELLE:  Kevin Lavelle from Robbins Geller |
| 09:28:25 | 25 | for Plaintiffs. |

| | | |
|---|---|---|
| 09:28:26 | 1 | It is our intention to supplement the |
| 09:28:28 | 2 | complaint.  We e-mailed -- |
| 09:28:30 | 3 | THE COURT:  Well, when you say "supplement," |
| 09:28:32 | 4 | you mean you intend to file an amended complaint. |
| 09:28:35 | 5 | MR. LAVELLE:  Yes. |
| 09:28:36 | 6 | THE COURT:  You can't just supplement your |
| 09:28:38 | 7 | complaint. |
| 09:28:39 | 8 | MR. LAVELLE:  Yeah.  I think, you know, under |
| 09:28:40 | 9 | the federal rules there are rules for amending and |
| 09:28:42 | 10 | supplementing.  Supplementing the complaint usually |
| 09:28:45 | 11 | involves -- |
| 09:28:46 | 12 | THE COURT:  But not under these circumstances, |
| 09:28:48 | 13 | because we have -- this would be an amended complaint, |
| 09:28:54 | 14 | essentially. |
| 09:28:55 | 15 | MR. LAVELLE:  I think this would be -- I think |
| 09:28:55 | 16 | this would still be called a supplemented complaint, |
| 09:28:58 | 17 | because we have our complaint and we're adding events |
| 09:29:00 | 18 | that occurred after the events of the amendment. |
| 09:29:02 | 19 | THE COURT:  Oh, I see what you're saying. |
| 09:29:05 | 20 | Okay.  All right.  I misunderstood.  I thought you were |
| 09:29:07 | 21 | adding parties. |
| 09:29:08 | 22 | MR. LAVELLE:  No.  We're not adding parties. |
| 09:29:09 | 23 | We're adding events. |
| 09:29:09 | 24 | THE COURT:  Or removing parties.  I don't know. |
| 09:29:10 | 25 | MR. LAVELLE:  We're not removing parties. |

09:29:12  1           THE COURT:  I don't get to go -- I'm not

09:29:14  2  sitting in your deliberations.

09:29:16  3           MR. LAVELLE:  Sure.  And we sent over a draft

09:29:19  4  of our amendment, or our supplement, to the defendants

09:29:24  5  about two weeks ago.  We still haven't received their

09:29:27  6  position on it.  We're hoping to meet and confer as soon

09:29:32  7  as possible about what their position actually is on that

09:29:35  8  supplement.

09:29:36  9           But, yes, as defense counsel mentioned, there

09:29:39  10  have been numerous events, three in particular, that

09:29:43  11  occurred between July 28th and -- sorry -- June 28th and

09:29:48  12  July 17th that we are intending to supplement the

09:29:52  13  complaint with to add them as corrective disclosures.

09:29:58  14           THE COURT:  Okay.

09:29:58  15           MR. LAVELLE:  In other words, after those

09:29:59  16  events came out, the news --

09:29:59  17           THE COURT:  So you're not adding any new

09:30:02  18  claims?

09:30:03  19           MR. LAVELLE:  No.

09:30:03  20           THE COURT:  No.  All right.  Okay.  Well, you

09:30:05  21  wouldn't be amending the complaint, then.  All right.

09:30:08  22  Fine.  Okay.  Thank you.

09:30:11  23           MR. LAVELLE:  Sure.

09:30:12  24           THE COURT:  All right.  Here is -- I'll tell

09:30:16  25  you first what my initial thoughts were on this, and I'm

| | | |
|---|---|---|
| 09:30:20 | 1 | going to tell you why I'm parking the car, so to speak, |
| 09:30:25 | 2 | for a moment.  Initially looking at this, my feeling was |
| 09:30:34 | 3 | that I should deny the motion and have discovery go |
| 09:30:38 | 4 | forward, principally because -- well, I won't get into |
| 09:30:46 | 5 | it -- for a whole host of reasons. |
| 09:30:49 | 6 | However, in thinking about this very carefully |
| 09:30:53 | 7 | last night -- and, actually, what counsel indicated to me |
| 09:30:56 | 8 | today, both counsel, have simply reinforced my concern -- |
| 09:31:06 | 9 | what I am going to do is put the brakes on discovery for |
| 09:31:10 | 10 | a period of one month.  It may extend, it may not. |
| 09:31:19 | 11 | But what I want to do is to give what I thought |
| 09:31:25 | 12 | was going to be an amended complaint, but now is a |
| 09:31:28 | 13 | supplement, but, nonetheless, it does change the |
| 09:31:32 | 14 | landscape to a degree, of which they are aware.  Not a |
| 09:31:37 | 15 | great degree, but it does change the landscape. |
| 09:31:40 | 16 | MR. LAVELLE:  May I address that, Your Honor? |
| 09:31:41 | 17 | THE COURT:  Yeah. |
| 09:31:42 | 18 | MR. LAVELLE:  So, you know, from our -- |
| 09:31:44 | 19 | Plaintiffs' perspective, it does not really change the |
| 09:31:47 | 20 | landscape that much.  We're simply tacking on events that |
| 09:31:53 | 21 | caused Cassava's stock price to drop that we intend to |
| 09:31:58 | 22 | claim as corrective disclosures. |
| 09:32:00 | 23 | THE COURT:  Well.  But we're here because |
| 09:32:03 | 24 | Cassava's stock price dropped. |
| 09:32:05 | 25 | MR. LAVELLE:  Correct. |

09:32:06  1              THE COURT:  I mean, that's the whole gravamen

09:32:07  2  of this case, right?

09:32:08  3              MR. LAVELLE:  That is correct, Your Honor.

09:32:09  4              THE COURT:  All right.  So I understand what

09:32:10  5  you're saying.  I am not unmindful.  I understand what

09:32:14  6  you're saying.  You can be seated.  Thank you.

09:32:18  7              What I also intend to do is something I don't

09:32:21  8  do often, but I will do in this case because I think it's

09:32:24  9  absolutely necessary.  I understand that we have very

09:32:27 10  good lawyers on both sides of this case.  You're

09:32:32 11  experienced, and you're experienced in this area of the

09:32:35 12  law.  And that is very helpful to me.

09:32:42 13              On the other hand, there's always a -- you

09:32:51 14  know, we always say there's a silver lining in every dark

09:32:54 15  cloud.  Well, there's a dark cloud in every silver

09:32:57 16  lining.  And that is, because the lawyers are so

09:32:59 17  experienced, they know their way around this area, and

09:33:04 18  there are many ways in which we can get gummed up, so to

09:33:13 19  speak.

09:33:14 20              So what I intend to do is appoint one of the

09:33:17 21  magistrate judges -- and I haven't figured out which one

09:33:21 22  yet -- as a discovery master in this matter.  Huh?

09:33:26 23              THE CLERK:  I think it's Hightower.  She's been

09:33:29 24  doing all of the referred motions.

09:33:33 25              THE COURT:  All right.  I will have Judge

09:33:35  1  Hightower -- now, you say, well, why appoint somebody as

09:33:38  2  a discovery master if they're already the magistrate

09:33:40  3  judge.  Because it gives them additional brief, if you

09:33:50  4  will, additional authority, to work with counsel to -- to

09:33:56  5  tailor discovery, to avoid problems, and to give you,

09:34:05  6  if -- if I may, a preview of where you might get into

09:34:11  7  problems or avoid problems.

09:34:14  8         Now, sometimes I'll appoint a magistrate judge

09:34:20  9  who is not the actual magistrate so that we don't have

09:34:25  10  then a problem of an appeal from a magistrate's decision

09:34:31  11  and somebody say, well, wait a minute, they participated

09:34:33  12  in that decision.  You see what I'm saying here?

09:34:37  13         So I haven't figured that one out.  I'll ask

09:34:40  14  your input on that.  Because, if I have a -- a discovery

09:34:48  15  master that's working with you and you reach a

09:34:51  16  conclusion, and one side doesn't either agree with it or

09:34:56  17  the magistrate says, well, this is what I think ought to

09:35:00  18  happen, they don't agree and they want to appeal, they

09:35:03  19  would appeal to the magistrate.  Well, the magistrate

09:35:08  20  judge is the discovery master.  So that doesn't work

09:35:13  21  well.

09:35:14  22         So what I may do is ask one of the other

09:35:19  23  magistrate judges here or possibly even, with your

09:35:24  24  consent, from San Antonio to assist you, because you're

09:35:29  25  from where?

| | | |
|---|---|---|
| 09:35:30 | 1 | MR. LAVELLE:  San Diego, California. |
| 09:35:32 | 2 | THE COURT:  And you're from Houston. |
| 09:35:34 | 3 | MR. COSTA:  Correct.  And Denver. |
| 09:35:36 | 4 | THE COURT:  So the difference between you going |
| 09:35:40 | 5 | to San Antonio and coming to Austin is not that dramatic. |
| 09:35:45 | 6 | And I was thinking of possibly Judge Bemporad, who is our |
| 09:35:49 | 7 | most experience magistrate judge in San Antonio and |
| 09:35:52 | 8 | highly respected, as being your discovery master in this |
| 09:35:59 | 9 | case.  And then just leave Judge Hightower as the |
| 09:36:03 | 10 | magistrate judge on this case for contested matters so |
| 09:36:08 | 11 | that we avoid the problem of the circumstance which I was |
| 09:36:15 | 12 | talking about. |
| 09:36:19 | 13 | Now, this is -- this is something that I came |
| 09:36:24 | 14 | up with.  I am not some sort of vizier here.  I could |
| 09:36:34 | 15 | well be missing something that counsel sees or creating |
| 09:36:39 | 16 | an additional problem for you that you don't want.  But |
| 09:36:42 | 17 | I'm trying to see if we can't expedite this and avoid the |
| 09:36:56 | 18 | kinds of conflicts that I've often seen in these cases by |
| 09:37:00 | 19 | actually having somebody in there, a neutral in there, |
| 09:37:03 | 20 | who doesn't hold a brief for either party. |
| 09:37:05 | 21 | Because, look, you're counsel for your clients, |
| 09:37:09 | 22 | and you're -- when you meet, you're advocating your |
| 09:37:13 | 23 | client's position.  If we had a neutral in there -- it's |
| 09:37:16 | 24 | almost like a mediator.  Had a neutral in there to help |
| 09:37:19 | 25 | you work this out, it might well be helpful.  And it |

09:37:25  1   doesn't cost 15 cents, so we're not adding to the
09:37:29  2   litigation.
09:37:29  3        I'm not going out and saying, well, listen I
09:37:33  4   want you to find the most expensive lawyer in Austin,
09:37:36  5   Texas and hire them and you'll split the cost.  I'm not
09:37:40  6   trying to do that; I don't want to do that.  And I'm
09:37:43  7   trying to think of somebody who would be highly respected
09:37:48  8   and who is perfectly capable of doing this.
09:37:55  9        And all of you -- well, all of you don't know.
09:38:01  10  Judge Costa certainly knows, and those of you who were
09:38:04  11  from Texas will know Judge Bemporad, but you may not.
09:38:09  12  But he is a very highly qualified and highly -- and he's
09:38:15  13  our most senior magistrate judge, by the way, to my
09:38:18  14  knowledge.
09:38:19  15       Now, does -- I would love to have your input as
09:38:22  16  to whether you think this is a bad idea or a good idea.
09:38:31  17  And don't argue to me about the one month, because that's
09:38:34  18  going to happen.  Okay?  I think we need a pause here.  I
09:38:38  19  need to -- I want you to file your supplement, I want
09:38:41  20  them to get it, and then we'll see where we are.
09:38:48  21       So I'm going to deny the -- I'm going to grant
09:38:51  22  the request for stay for one month, okay?  That's what's
09:38:54  23  happening.  And then we will go from there.
09:38:59  24       So does anybody have any -- Mr. Costa.  It's so
09:39:05  25  hard for me to call you Mr. Costa because I've always

09:39:07  1  known you as Judge Costa.

09:39:09  2          MR. COSTA:  There's only one judge in this

09:39:10  3  courtroom, so Mr. Costa is the right way to do it.  I

09:39:12  4  understand that one-month pause which I think is helpful.

09:39:15  5  Does that mean will the motion to stay, then, still be

09:39:20  6  considered and can we still press that?

09:39:24  7          THE COURT:  What I'm going do is I will decide

09:39:26  8  it for one month.  And then at the end of when we -- when

09:39:31  9  you get -- I mean, you can decide whether you need to

09:39:32  10  file it again after you get together with -- if we have

09:39:38  11  the discovery master.  After you get together with the

09:39:40  12  discovery master, whether it's necessary.  That's why I

09:39:44  13  want the month, is to give Judge Bemporad and yourselves

09:39:49  14  an opportunity to get together.

09:39:50  15          I mean, every lawyer in this room doesn't need

09:39:52  16  to come.  I mean, you can decide who you wish to have.

09:39:59  17  Obviously, one lawyer from each party needs to be there

09:40:04  18  at least.  But I'm not going to tell you who to bring or

09:40:07  19  who not to bring.

09:40:08  20          MR. COSTA:  Understood.  And regardless of our

09:40:10  21  motion to stay, a discovery master could be appointed

09:40:14  22  because, even our motion is saying class cert. discovery

09:40:18  23  should go forward.

09:40:19  24          THE COURT:  Right.

09:40:19  25          MR. COSTA:  There's actually a deposition next

| | | |
|---|---|---|
| 09:40:20 | 1 | week, and -- |
| 09:40:20 | 2 | THE COURT:  I'm not staying that.  That's not |
| 09:40:22 | 3 | being stayed.  I'm staying only what you've asked to be |
| 09:40:24 | 4 | stayed. |
| 09:40:25 | 5 | MR. COSTA:  Okay.  Right.  So we would, then, |
| 09:40:28 | 6 | it sounds like, have an opportunity to reassert the |
| 09:40:30 | 7 | motion to stay. |
| 09:40:30 | 8 | THE COURT:  Absolutely. |
| 09:40:31 | 9 | MR. COSTA:  Because, you know, we thought it |
| 09:40:33 | 10 | was strong when we filed it, but it's grown even stronger |
| 09:40:37 | 11 | because some of the developments we shared, including the |
| 09:40:38 | 12 | indictment. |
| 09:40:38 | 13 | THE COURT:  You can reassert that motion at the |
| 09:40:40 | 14 | appropriate time, if it's necessary to reassert it. |
| 09:40:43 | 15 | Because what may be worked out may alleviate all or even |
| 09:40:49 | 16 | part of it.  So, yeah, absolutely. |
| 09:40:52 | 17 | MR. COSTA:  Understood. |
| 09:40:53 | 18 | THE COURT:  What I want to do here, I think, |
| 09:40:58 | 19 | does not severely prejudice anybody.  I mean, I |
| 09:41:02 | 20 | understand that -- that the plaintiffs want to go |
| 09:41:05 | 21 | tomorrow, and they want go through all their discovery. |
| 09:41:08 | 22 | You know, I am fully aware of that.  But I think we do |
| 09:41:12 | 23 | need to push the pause button here briefly.  I want to |
| 09:41:17 | 24 | get this discovery master on board.  And I want to have |
| 09:41:22 | 25 | you meet with the discovery master, see where you are, |

09:41:26   1   and then -- and then to be, quite frankly, I want --

09:41:30   2   you're going to have to help educate the discovery master

09:41:33   3   in this case, because they're coming from nowhere.

09:41:36   4          I mean, I know the case because I've been, you

09:41:40   5   know, involved with it.  But if it's Judge Bemporad, he

09:41:46   6   would not know it.  I mean, I don't know.  He maybe going

09:41:49   7   on a month vacation.  Heaven knows.  So it may end up not

09:41:53   8   being Judge Bemporad.  I know that Judge Pitman is headed

09:41:56   9   off to Spain Monday, and so I'm going to spend even more

09:42:03   10  time here than I normally do.

09:42:04   11         Yes?

09:42:07   12         MR. LAVELLE:  So we don't oppose a discovery

09:42:12   13  master.  We were actually going to suggest something

09:42:14   14  similar, so we're on board with that.

09:42:16   15         With regards to the one-month stay, just a

09:42:19   16  clarifying question, so that's only as to fact discovery.

09:42:23   17         THE COURT:  Yeah.  That's right.  It's only as

09:42:26   18  to what they've asked for, not the other discovery.

09:42:29   19         MR. LAVELLE:  And so we just have one follow-up

09:42:31   20  clarifying question.  There was a mention of a privilege

09:42:36   21  log for documents that are being withheld from past

09:42:39   22  discovery that we've already prepared.

09:42:42   23         THE COURT:  Right.

09:42:43   24         MR. LAVELLE:  I think we would just want to

09:42:44   25  clarify that that would still be produced on the same

09:42:47  1    schedule that Defendants were suggesting and not be.

09:42:50  2             THE COURT:  That's a log.  It's just a log.

09:42:51  3    It's not the documents.  Am I right?

09:42:53  4             MR. LAVELLE:  That's right.

09:42:58  5             MR. COSTA:  Yeah.  We'll complete that and

09:43:00  6    produce that within a couple of weeks.

09:43:02  7             THE COURT:  All right.  That will be fine.

09:43:03  8             MR. COSTA:  That won't be affected by the stay.

09:43:05  9             THE COURT:  All right.  Thank you, Mr. Costa.

09:43:07  10            Okay.  So I am not going hear any argument

09:43:10  11   today above and beyond where we are.  But I do think it

09:43:14  12   was very important for us to get together and discuss

09:43:17  13   this so we can find out where we're going here.  I mean,

09:43:24  14   I don't know whether this case will ultimately settle.

09:43:27  15   It may or may not.  But I have to proceed on the theory

09:43:33  16   that it won't and that we're going to trial, and so we

09:43:44  17   have to prepare that way.

09:43:45  18            Now, is there anything else anybody else would

09:43:48  19   like to place on the record?

09:43:52  20            MR. DROSMAN:  Just one question, Your Honor.

09:43:53  21            THE COURT:  Sure.  You want to --

09:43:59  22            MR. DROSMAN:  My name is -- should I come up to

09:43:59  23   the podium?

09:43:59  24            THE COURT:  No.  You don't need to, but you

09:43:59  25   need to identify yourself.

```
09:43:59    1              MR. DROSMAN:  Of course.  Daniel Drosman on
09:44:01    2   behalf of Plaintiffs.
09:44:01    3              So I guess I just have one clarifying question
09:44:04    4   about the supplementation.  You had said that the
09:44:09    5   plaintiffs, we should go ahead and put that on file, file
09:44:14    6   our supplemented complaint.  And I guess my concern is,
09:44:16    7   because events have been coming sort of fast and
09:44:19    8   furiously, that we had thought it might be more prudent
09:44:23    9   to wait a little bit to see whether there are additional
09:44:27   10   shoes to drop before we file that supplementation.
09:44:31   11              Given that, would you still like us to file a
09:44:32   12   supplemented complaint now?
09:44:33   13              THE COURT:  No.  Maybe -- well, I'm sure the
09:44:36   14   defendants would like you to file it so they know what's
09:44:39   15   going on.  But I think they have a pretty good idea.
09:44:43   16              MR. DROSMAN:  We provided a draft of the
09:44:45   17   supplementation.
09:44:46   18              THE COURT:  That's the kind of cooperation, by
09:44:50   19   the way, I like to see that I don't always see.
09:44:52   20              Listen, I'm old enough to have practiced law as
09:44:59   21   a trial lawyer when it was hide the ball, and that was
09:45:05   22   not -- that was not good.  I remember spending my first
09:45:12   23   week after I got out of the military, being shipped off
09:45:16   24   to Chicago in the bowels of the Libby, McNeill and Libby
09:45:23   25   offices going through thousands of documents with a Bates
```

09:45:28  1  stamp, looking for hidden gems that might have been stuck

09:45:33  2  in some kind of a crevice somewhere in some stupid file

09:45:40  3  that meant nothing.  That's what used to happen in the

09:45:43  4  old days.  It did.  Some of the older lawyers, they'll

09:45:46  5  remember that.  And it was not pleasant.

09:45:51  6        I would look out the window at the Art

09:45:53  7  Institute of Chicago across the way, and I would think to

09:45:58  8  myself, wow, I sure wish I was over there.  I don't know

09:46:01  9  how many Bates stamps I broke.  Thank goodness we don't

09:46:08  10  have that anymore.  That was awful.

09:46:11  11        So I will get an order out.  What I would

09:46:18  12  like -- I usually do 100 percent my own orders.  But,

09:46:22  13  because of the nature of this, I'm going to ask that

09:46:25  14  counsel prepare a draft order jointly for my

09:46:33  15  consideration.  I normally don't do that.  In fact, I

09:46:36  16  can't remember the last time I've done that.  Never.

09:46:40  17        But in this case, because of the nature of it

09:46:45  18  and because you've had so many discussions among

09:46:48  19  yourselves that I'm not privy to, I'm a little concerned

09:46:52  20  that might step on something.  And you just -- for

09:46:56  21  instance, you just brought a great point up.  I would

09:46:59  22  actually prefer that you hold off until you met with the

09:47:04  23  discovery master.  And by that time, which I'm hoping

09:47:08  24  will be within the next week or two -- and I may end up

09:47:12  25  extending this.  I've said a month.  It may end up being

09:47:16  1   a month and a half if you're unable to get to the

09:47:20  2   discovery master soon enough so that it makes a

09:47:22  3   difference.  And I'll get that cue from the discovery

09:47:26  4   master, okay?

09:47:30  5           MR. DROSMAN:  Thank you, Your Honor.

09:47:30  6           THE COURT:  I think it will be Judge Bemporad.

09:47:32  7   He doesn't know about this.  He's not going to be happy.

09:47:39  8   But he's the first guy I'm seeing.  Those of you who

09:47:43  9   don't know him, he's a very tall guy, very imposing.  I'm

09:47:49  10  six feet tall, and I'm looking up at him.  I hope he

09:47:54  11  treats me well.

09:47:55  12          In any event, he's used to -- he was the

09:48:07  13  federal defender -- as some of you probably know, he was

09:48:13  14  the federal defender for the Western District of Texas.

09:48:15  15  But he knows civil law.  He is very well educated.  He

09:48:18  16  had a good legal education.  And he is -- he is very,

09:48:23  17  very capable.

09:48:24  18          So I would like to have you submit a draft

09:48:32  19  order that you can both agree upon -- and if you can't

09:48:35  20  agree upon, let me know what you don't agree upon -- by,

09:48:43  21  say, Tuesday?  Is that enough time?

09:48:46  22          MR. COSTA:  Of course, Your Honor.

09:51:02  23          THE COURT:  We can go off the record for just a

09:51:50  24  second.

09:51:50  25      (Discussion off the record)

09:51:50   1              THE COURT:  Okay.  Well, thank you so very
09:51:51   2    much.  I know that you wanted to argue this.  You were
09:51:54   3    primed, you were ready.
09:51:58   4              MR. COSTA:  We'll hold our fire for next time.
09:52:01   5              THE COURT:  But I do think this is the right
09:52:03   6    way to go.  I am looking -- I'm trying to take, if you
09:52:08   7    will, the long view of this case rather than just the
09:52:11   8    short view.  And I want to set us on the right path so we
09:52:16   9    can get this case -- the plaintiffs the opportunity to
09:52:22  10    put their case on, the defense the opportunity to
09:52:25  11    properly defend it, and get all the discovery done.
09:52:29  12              This is an enormous amount of discovery, and
09:52:34  13    there's a lot of documents.  And even though we're not
09:52:37  14    Bates-stamping them, or most of them, and they're on disk
09:52:41  15    and so forth, it's still a lot to go through and it's
09:52:46  16    going to take some time.
09:52:48  17              So I don't expect -- we don't even have a trial
09:52:52  18    date in this case, do we?  No.  Okay.  Well, this is not
09:52:56  19    going to get tried in six months.  That's for sure.
09:52:59  20              Okay.  Well, thank you so very much.  I do
09:53:03  21    really appreciate your cooperation, and I appreciate your
09:53:06  22    willingness to listen to my thoughts on this.  And if
09:53:10  23    anything comes up that you would like to discuss with me,
09:53:15  24    please just get ahold of Ms. Springs.  She'll make sure
09:53:19  25    that you have her phone number.

09:54:06  1      (Discussion off the record)

09:54:06  2          THE COURT:  So thank you very much.  At least

09:54:11  3  for the moment, this is one case where I don't have to

09:54:15  4  worry about a mandamus petition being filed.

09:54:18  5          Thank you so very much.  Court stands in

09:54:23  6  recess.  Have a good weekend.

09:54:23  7      (End of transcript)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **UNITED STATES DISTRICT COURT        )**

2   **WESTERN DISTRICT OF TEXAS           )**

3        I, Arlinda Rodriguez, Official Court Reporter, United

4   States District Court, Western District of Texas, do certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7        I certify that the transcript fees and format comply with

8   those prescribed by the Court and Judicial Conference of the

9   United States.

10       WITNESS MY OFFICIAL HAND this the 14th day of August 2024.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2025
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25