UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | § § § § § § § § § § § § |  Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' CLASS-CERTIFICATION SUR-REPLY**

- i -

## TABLE OF CONTENTS

                                                          **Page**

I. INTRODUCTION ...................................................................................................1

II. PLAINTIFFS' EVIDENCE OF MARKET EFFICIENCY IS UNDISPUTED........................1

    A. Defendants Concede the Relevant Legal Factors Are Met ............................1

    B. Defendants' Own Case Condemns Their "Meme" Stock Argument ............2

    C. Defendants' "Evidence" Is Irrelevant and Incorrect ......................................3

    D. Plaintiffs' Market-Efficiency Definition Comes from the Supreme Court ....6

III. THE *AFFILIATED UTE* PRESUMPTION APPLIES ...............................................6

IV. DEFENDANTS STILL FAILED TO PROVE ZERO PRICE IMPACT ................................7

    A. Defendants Do Not Dispute Evidence of Front and Back-End Price Impact.................7

    B. Defendants Have No Evidence Proving a Lack of Price Impact...................8

    C. The Corrective Disclosures Revealed Fraud-Related Truth to the Market ....................9

V. PLAINTIFFS' DAMAGES METHODOLOGY SATISFIES *COMCAST* ..............................9

VI. PLAINTIFFS SATISFY TYPICALITY ............................................................10

VII. CONCLUSION...................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
   623 F. Supp. 3d 470 (E.D. Pa. 2022) ........................................................................................4

*Bratya SPLR v. Bed Bath & Beyond Corp.*,
   __ F. Supp. 3d __, 2024 WL 4332616 (D.D.C. Sept. 27, 2024)..................................3, 5, 6, 8

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) .................................................................................................4

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) .........................................................................9

*Dougherty v. Esperion Therap., Inc.*,
   2020 WL 6793326 (E.D. Mich. Nov. 19, 2020).......................................................................10

*Hall v. J&J*,
   2023 WL 9017023 (D.N.J. Dec. 29, 2023)................................................................................4

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ("*Halliburton II*")........................................................................3, 4, 6, 10

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   2013 WL 5815472 (S.D.N.Y Oct. 29, 2013)...........................................................................10

*In re Apache Corp. Sec. Litig.*,
   2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ...........................................................................8, 9

*In re Enron Corp. Sec.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) .......................................................................................7

*In re ETQ Corp. Sec. Litig.*,
   2022 WL 3293518 (W.D. Pa. Aug. 11, 2022).........................................................................10

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
   2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024)...........................................................................8

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
   2009 WL 2855601 (D.N.J. Sept. 2, 2009) .................................................................................4

*In re Petrobras Sec. Litig.*,
   312 F.R.D. 354 (S.D.N.Y. 2016),
   aff'd in part & vacating in part,
   862 F.3d 250 (2d Cir. 2017)...................................................................................................3, 4

**Page**

*In re Twitter, Inc. Sec. Litig.*,
   2020 WL 4187915 (N.D. Cal. Apr. 17, 2020),
   *order clarified*, 2020 WL 2519890 (N.D. Cal. May 18, 2020) .................................................. 4

*KB Part. I, L.P. v. Barbier*,
   2013 WL 2443217 (W.D. Tex. June 4, 2013) ......................................................................... 3

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ................................................................................... 7, 8, 10

*Plymouth Cnty. Ret. Sys. Patterson Cos.*,
   2020 WL 5757695 (D. Minn. Sept. 28, 2020) ................................................................. 9, 10

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ................................................................................ 7, 8, 10

*Rougier v. Applied Optoelectronics, Inc.*,
   2019 WL 6111303 (S.D. Tex. Nov. 13, 2019)
   *R&R adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) .............................................. 9

*Shupe v. Rocket Cos.*,
   __ F. Supp. 3d __, 2024 WL 4349172 (E.D. Mich. Sept. 30, 2024) ............................... 2, 9, 10

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016),
   *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) ................................ 8

*Unger v. Amedisys, Inc.*,
   401 F.3d 316 (5th Cir. 2005) ..................................................................................................... 1

*Willis v. Big Lots, Inc.*,
   242 F. Supp. 3d 634 (S.D. Ohio 2017) ................................................................................... 7

4854-6915-1472.v1

Plaintiffs respectfully submit the following response to Defendants' sur-reply. ECF 227.[1]

## I.  INTRODUCTION

As Defendants' culpability has become harder to deny with each passing day, they are desperate to distract the Court with anything they can contrive. Their sur-reply is more of the same. On September 26, 2024, the SEC filed civil charges against Cassava, Barbier and Burns for misleading investors about the Phase 2b Simufilam results, as Plaintiffs allege here. To resolve the charges – which the Company called "a ***very sad chapter*** in Cassava's history" – Defendants paid over $40 million in penalties (a "***staggering sum***" per Cassava's current CEO), and Barbier and Burns are barred for years from being officers or directors of SEC-reporting companies.

With liability all but certain here, too, Defendants are desperate to avoid a Class. So they resort to bluster, calling this "unlike any shareholder class action," and continue to press their strained "meme" stock argument. In reality, Defendants' arguments are neither new nor unique. Each has been rejected by courts, including the Supreme Court, and Defendants' recent case rejected a similar "meme" stock claim. Each issue in dispute has been resolved in favor of investors time and again – and nothing counsels a different outcome here. Plaintiffs respectfully ask the Court to certify the Class.

## II.  PLAINTIFFS' EVIDENCE OF MARKET EFFICIENCY IS UNDISPUTED

### A.  Defendants Concede the Relevant Legal Factors Are Met

Defendants had several opportunities to put forth their strongest class-certification defense. Tellingly, they do ***not*** dispute that the *Cammer* and *Krogman* factors are met for Cassava stock, including *Cammer* factor 5, which proves its price promptly reacted to new, material information during the Class Period. *See* Reply at 3-5. These are the relevant factors in determining whether a market is efficient. *See Unger v. Amedisys, Inc.*, 401 F.3d 316, 323 (5th Cir. 2005). It is unsurprising, then, that Defendants do not

---

[1] Emphasis is added and citations are omitted throughout, unless otherwise noted. All defined terms have the same meaning as in Plaintiffs' class-certification reply. ECF 212 ("Reply").

contend the market was *in*efficient. Instead, they falsely repeat claims that Plaintiffs "ignore" the "meme" stock phenomenon." ECF 227 at 1. They are wrong there, too.

**B.      Defendants' Own Case Condemns Their "Meme" Stock Argument**

Defendants' strained "meme" stock argument fails on its own terms. First, Defendants never established Cassava is a "meme" stock (whatever that means); in fact, their expert said the ***opposite***. Reply at 7 ("'I don't have a report saying that Cassava is a meme stock.'"); *id*. at 11-14.

Second, the undisputed *Cammer/Krogman* factors demonstrate that, even if Cassava was a "meme" stock (it is not), the market was still efficient. Reply at 8-11. After all, Defendants admit that "meme" stock status does ***not*** mean the market was necessarily inefficient. ECF 227 at 5.

Third, Defendants' own cases condemn their argument. Just weeks ago, *Shupe v. Rocket Cos.*, __ F. Supp. 3d __, 2024 WL 4349172 (E.D. Mich. Sept. 30, 2024) ("*Rocket*"), rejected the same arguments and with the same expert (Dr. Stulz): "Defendants['] argument ***ignores binding Supreme Court precedent*** which ***compels*** the conclusion that [defendants'] purported meme-stock status is ***inapposite*** to this Court's market-efficiency analysis." *Id.* at *19; *accord* Reply at 7-8. The court dismissed the claim that "meme" stocks upend the analysis, noting "a consensus of other – pre 'meme' era – decisions suggest that 'bubbles' of frenzied trading do ***not*** undermine market efficiency." *Id.* at *23; Reply at 9-10 (same). The court explained that: (i) "meme-stocks, generally, do ***not*** negate the notion that the stock price nevertheless responds to and includes public information"; and (ii) stock-price movements attributable to "meme stock status" "do[] ***not*** render the market inefficient" for an entire class period. *Rocket* at *19; *accord* Reply at 8-9. Further, *Rocket* held that, even if "meme-stock status ***suggested*** market inefficiency, it would not ***outweigh*** the eleven other factors which Plaintiffs have shown suggest the contrary." *Rocket* at *24 (emphasis in original); *see* Reply at 14. Here, as in *Rocket*, at least 11 factors support market efficiency, including the *Cammer* and *Krogman* factors, national exchange, significant options trading, and institutional investors. *Compare Rocket* at *18-*19, *with* Mot. at 12-17, *and* Reply at 17.

Defendants cite **no** case where, as here, every *Cammer* and *Krogman* factor is met for a stock traded on a national exchange, yet market efficiency was found lacking. *See* ECF 227 at 9 (citing OTC security cases, many that pre-date *Halliburton II*); Reply at 10 (distinguishing cases). Even *Bratya SPLR v. Bed Bath & Beyond Corp.*, __ F. Supp. 3d __, 2024 WL 4332616 (D.D.C. Sept. 27, 2024) ("*Bed Bath*"), "***reject[ed]***" defendants' "suggestion [in that case] that the *Cammer* factors are irrelevant in analyzing market efficiency in a period of high volatility." *Id.* at *14. Market efficiency was lacking for a different reason entirely: the company was subjected to a short squeeze throughout the ***entire*** seven-day class period. *Id*. at *12, *14. Here, in contrast, Defendants do not argue (and there is no evidence of) a short squeeze at any time. Reply at 7. Further, in *Bed Bath*, the plaintiffs failed to submit a class period event study, thus failing *Cammer* factor 5 (*id.* at *18), unlike here where Plaintiffs' event study proved new, material Class Period information promptly affected Cassava's stock price (Reply at 8). And Stulz conceded that the "***market reacted***" to such information. *Id*. at 5-6. Thus, the *Bed Bath* court would have found market efficiency satisfied under the facts here. *See Bed Bath* at *10 (plaintiff "must show that the market ***reacted*** – rationally or otherwise") (emphasis in original).[2]

### C.     Defendants' "Evidence" Is Irrelevant and Incorrect

Defendants say Cassava's stock price moved on seven days without new information and once in the "wrong" direction. ECF 227 at 7-8, 14. Even assuming *arguendo* that is true (it is not), it is "'not legally relevant'" under Supreme Court precedent (Reply at 8-9), as there are "'many days on which even large stocks traded on efficient markets experience significant changes in price despite an absence of major news events.'" *KB Part. I, L.P. v. Barbier*, 2013 WL 2443217, at *9, *13 (W.D. Tex. June 4, 2013). Further, "[w]hether the market . . . moved in the precise way analysts or experts would expect it to move is ***not*** the key to unlocking *Basic's* presumption of reliance." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 370

---

[2] The *Bed Bath* plaintiffs' second event study was flawed because they "did not use objective criteria in selecting" event days, which is not at issue here. *Id.* at *19; Reply at 8.

(S.D.N.Y. 2016), *aff'd in part & vacating in part*, 862 F.3d 250 (2d Cir. 2017). "What is essential" – and ***not disputed here*** – "is evidence that, when the market received new information, it 'generally affect[ed]' the price." *Id.*; Reply at 10-11.

Defendants are also wrong as a factual matter. First, they are mistaken that no Cassava-related information was disclosed on or around the dates challenged (Reply at 12; Feinstein Reply, ¶175):

- **July 21**. Defendants do not dispute that a Cassava press release revealed that new clinical data "Confirms Mechanism of Action" for Simufilam. Feinstein Reply, ¶¶155-160.

- **September 22**. The widely read *Seeking Alpha* published an analyst report saying "the SEC has officially closed its case [against Cassava]." *Id.*, ¶¶171-174. Whereas Defendants claim it was a "repost" (ECF 227 at 9), there was *new* analysis and a "strong buy" recommendation. Feinstein Reply, ¶¶171-174. Even if some "information was previously made public [it] does not preclude the possibility that any later disclosure of that information could impact a stock's price." *Hall v. J&J*, 2023 WL 9017023, at *11 (D.N.J. Dec. 29, 2023) (reprinted "story became ***more significant*** because it was deemed worthy of a reprint" and "the reprint brought the story to a ***wider***, national audience"); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 501 (E.D. Pa. 2022) (same). Similarly, the *Seeking Alpha* analyst validated and brought to a wide audience an obscure, anonymous tweet. Feinstein Reply, ¶¶173-174.

- **February 3-5**. Defendants do not dispute new, material information was released in the form of clinical trial results. Instead, they say Cassava's stock price reaction continued too long. But, in *Basic*, the Supreme Court declined to "'adopt any particular theory of how quickly and completely publicly available information is reflected in market price,'" *Halliburton II*, 573 U.S. at 271-72, and stocks can take multiple days to incorporate new information,[3] especially where, as here, analysts continued publishing *new* reports expressing, as Defendants concede, "cautionary views" that tempered purportedly positive news. ECF 227 at 8; Feinstein Reply, ¶¶144-150.[4]

- **June 11 and November 2**. As Dr. Feinstein explained, price movements due to random chance are ***expected*** on two of the 34 days Defendants tested. Thus, neither of these dates undermine efficiency. Feinstein Reply, ¶¶151-154, 165-166.

Second, on July 30, the day Defendants contend Cassava's stock price went down when they think

---

[3] *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *17 (N.D. Cal. Apr. 17, 2020) (cause of stock-price decline over 4 days was a jury question), *order clarified*, 2020 WL 2519890 (N.D. Cal. May 18, 2020); *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, 2009 WL 2855601, at *3 (D.N.J. Sept. 2, 2009) (5-day window); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 96 (S.D.N.Y. 2015) (2- to 3-day windows "common"); Feinstein Reply, ¶¶147-148 (5-day windows used).

[4] Defendants' cases (ECF 227 at 7-8) stand for the unremarkable proposition that an efficient stock's price promptly begins reacting to value-relevant news, which is exactly what Cassava's stock price did after the February 2 disclosure. Feinstein Reply, ¶¶145-150. Defendants' expert agrees that new, potentially material information was released on September 18, 2020. Stulz Rpt., ¶79.

- 4 -

it should have gone up, commenters said the news Defendants now claim as positive was actually "overblown, inappropriate, uninterpretable." *Id.*, ¶¶161-163. *See* Reply at 12.

Nor was Cassava's stock price "divorced from the value of the underlying company," as Defendants claim. Opp. at 1. Instead, it was highly sensitive to any clue about whether Simufilam would be a blockbuster or a dud. Feinstein Reply, ¶¶36-38, 90-93, 107, 144; Mot. at 12. Even the market commentary Defendants cite noted Cassava's stock price moved in response to this information. Feinstein Reply, ¶¶107-109.

Defendants are likewise incorrect to say Plaintiffs "cannot dispute" that high short-selling costs "impact[ed]" arbitragers' ability to "correct market inefficiencies" by shorting Cassava stock. ECF 227 at 6. As noted in the Reply, Defendants provided *no evidence* that short sellers were constrained, and there is none. Reply at 14-15. The evidence shows the opposite (which Defendants do not dispute): (i) short selling was effective, netting hundreds of millions of dollars in profit (Reply at 15); and (ii) short interest ***grew significantly throughout*** the Class Period. Feinstein Reply, ¶¶187-189 (climbing from 3 to 14 million shares). Further, as explained, courts reject "'concern about the high cost of short selling,'" where, as here, short interest grew during the Class Period, and traders could bet against Cassava in the options market. Reply at 15-16; Feinstein Reply, ¶¶187-189, 211. Even if there was evidence that short selling was constrained (it was not), that does not defeat efficiency, where, as here, each *Cammer* and *Krogman* factor is met (*see* Reply at 15). Notably, Defendants have ***zero*** cases holding otherwise.[5]

Finally, regarding options, Defendants do not dispute any of the salient facts: (i) Cassava's options are derivative of its common stock; (ii) courts in this Circuit deem this fact sufficient to find options

---

[5] *Bed Bath* considered short-sale constraints relevant because of the "short squeeze dynamics at play." *Bed Bath* at *14. Here, however, there was no short squeeze, and the cost to borrow was much less. *Compare id.* at *16 (50% cost), *with* Stulz Rpt., ¶107 (15% average). Moreover, the *Bed Bath* plaintiffs could not meet *Cammer* 5, and the court did not consider whether traders could use options to bet against the company or whether short interest continued to grow during the class period. Importantly, academics, including Defendants' expert, ***agree*** options serve as a substitute for short sales. Feinstein Reply, ¶¶25, 188-189.

efficient; and (iii) courts accept Feinstein's options analysis. Reply at 16-17. Defendants' failure to marshal any facts or law to the contrary sinks their options argument.

### D. Plaintiffs' Market-Efficiency Definition Comes from the Supreme Court

Defendants backpedal on their market-efficiency definition only after Plaintiffs pointed out that the Supreme Court has rejected their definition of fundamental efficiency (the stock price is correct) and embraced informational efficiency (the stock price reacts to new, material information). Reply at 7, Feinstein Rpt., ¶112; *Bed Bath* at *9 ("For purposes of the *Basic* presumption, a stock trades in an efficient market if that market is ***informationally*** efficient.") (emphasis in original).

To deflect from their mistake, Defendants falsely claim Feinstein relies on the wrong market-efficiency definition. ECF 227 at 9-11. Their claim is easily debunked. In his opening report, Feinstein relied on the definition of market efficiency from the Supreme Court and leading economists. Feinstein Rpt., ¶¶64-65 ("An efficient market, as defined and discussed by *Cammer*, *Basic*, *Amgen*, *Halliburton II*, Alan Bromberg and Lewis Lowenfels, Professor Fama, and other leading scholars, is a market in which publicly available information is incorporated into the price of a security such that the trading price reflects publicly available information with reasonable promptness."); *id.*, ¶58. This is the same definition in his reply report. *See* Feinstein Reply, ¶16 ("An informationally efficient market is one in which value-relevant information is impounded into the security price with reasonable promptness."). Ironically, Defendants' expert ***agrees*** with Feinstein that this is the correct definition. *See* Stulz Rpt., ¶31 ("[I]n a semi-strong form efficient market security prices react quickly and fully to new, unexpected, value-relevant public information, so that security prices reflect all public information fully and quickly."); *id.* ("Dr. Feinstein's definition of efficiency seems to most closely correspond to the semi-strong form of market efficiency."). Defendants' argument is much ado about nothing. Market efficiency is met here.

### III. THE *AFFILIATED UTE* PRESUMPTION APPLIES

After conceding that scheme and deceptive business acts claims are entitled to the *Affiliated Ute*

4854-6915-1472.v1

presumption of reliance (Reply at 18), Defendants backtrack to claim Plaintiffs' "entire theory of fraud is based on alleged misleading statements." ECF 227 at 17. Not so. The Complaint details Defendants' two-part "overarching, concealed scheme" (*In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 739 (S.D. Tex. 2006)) to fraudulently obtain funding for Simufilam and then their attempt to cover the fraud up once questions arose. Reply at 18-19. Thus, Plaintiffs may rely on *Affiliated Ute*, though they also allege misstatements. *See id.*; *Enron*, 529 F. Supp. 2d at 739. Further, none of Defendants' cases hold that *Affiliated Ute* cannot, in the alternative, be applied to Plaintiffs' Rule 10b-5(a) and (c) scheme claims, which are separate and distinct from their 10b-5(b) claims. *See* Reply at 19, n.20. *Affiliated Ute* applies.

## IV. DEFENDANTS STILL FAILED TO PROVE ZERO PRICE IMPACT

### A. Defendants Do Not Dispute Evidence of Front and Back-End Price Impact

Defendants now claim "when the market learned about the supposed fraud alleged by Plaintiffs, it did not react." ECF 227 at 12. That is demonstrably false. Defendants do not dispute that ***all*** six alleged corrective disclosures were followed by statistically significant stock drops. *See id.* at 12-13. Further, Defendants do not attempt to rule out price impact for two corrective disclosures, including after the Citizen Petition. *See id.* And Defendants do not dispute that Cassava's stock price rose significantly in response to misstatements on three dates, including at the start of the Class Period. *See id.* All of this is powerful, unrebutted evidence of both front and back-end price impact. Reply at 20-21; *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019) ("[S]tatistically significant price adjustment[s] following a corrective disclosure is evidence the original misrepresentation did, in fact, affect the stock price."); *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017) ("price impact is demonstrated" by statistically significant increase after misstatement ***or*** statistically significant drop after corrective disclosure). Defendants thus have not, and cannot, meet their "'daunting task'" of proving a "complete lack of price impact." Reply at 20-21; *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019).

### B. Defendants Have No Evidence Proving a Lack of Price Impact

In the face of this compelling evidence of price impact, Defendants misdirect by arguing 11 *other* dates (not expressly alleged as corrective disclosures (*see* Complaint, ¶¶495-508)) "are not associated with any statistically significant decline in the price of Cassava's stock." ECF 227 at 13. But courts repeatedly hold that "the absence of a statistically significant price adjustment does *not* show the stock price was unaffected by the" fraud. *Rooney*, 330 F.R.D. at 450; *S. Co.*, 332 F.R.D. at 394-95 ("[C]ourts routinely reject the argument that a non-statistically significant stock price decline proves an absence of price impact."); Reply at 21-22. And none of Defendants' cases hold otherwise.[6]

Defendants also have *no other* evidence to prove a lack of price impact, making it impossible for them to meet their burden. Defendants only speculate that "meme" stock "market volatility" *might* have caused stock-price declines, at some point, during the Class Period. ECF 227 at 14. But Defendants' expert did not opine Cassava was a "meme" stock, and they do not offer *any* evidence, from their expert or otherwise, that "market volatility" actually caused the stock price decline on *any* corrective disclosure date (or the other eleven dates).[7] And their concession that the corrective disclosure dates were each statistically significant *rules out* "market volatility" as a cause. *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016) (statistically significant drop means decline is "'unlikely to be explained by the normal random variations of the stock price,'" *i.e.*, volatility), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017); Feinstein Rpt., ¶¶126-127. While Defendants claim certain analysts did not change their price targets for Cassava immediately after the Citizen Petition (ECF 227 at 14), those same analyst reports ***specifically attributed the stock drop to the Citizen Petition***. *Id. See, e.g.*, ECF 179, Ex. 19 ("Cassava's

---

[6] *See In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *11 (S.D. Tex. Feb. 9, 2024) ("Plaintiffs argue that lack of statistical significance *alone* cannot rebut the *Basic* presumption. *I agree*."); *Bed Bath* at *20 (mismatch *in addition to* statistical insignificance); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *9 (S.D.N.Y. Mar. 29, 2024) (misstatements were generic *and* mismatched to corrective disclosure, *plus* no market commentary, *in addition to* statistical insignificance).

[7] Defendants' "evidence" does not analyze the reasons for stock price movement on *any* alleged corrective disclosure or misstatement date or on the other dates Defendants cite. *See* ECF 227 at 14.

stock came under pressure . . . following [the Citizen Petition]."). Analysts, moreover, credited Defendants' misstatements as the cause for the price increases in the first place. *See* Complaint, ¶97.[8]

### C. The Corrective Disclosures Revealed Fraud-Related Truth to the Market

In their sur-reply, Defendants do not deny this Court already found the subset of corrective disclosures at issue revealed new, fraud-related truth regarding Defendants' misstatements, and Defendants do not show otherwise. *See* Reply at 23; ECF 104 at 30-31; ECF 175 at 10-12. Accordingly, there is no mismatch. *See* Reply at 23; *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023). Nor do Defendants' fact-bound claims about the truth of their statements hold any water. The Court already upheld Plaintiffs' allegations that the statements were false or misleading, and the merits of those allegations are class-wide issues for another day. *See* Reply at 24.[9]

## V. PLAINTIFFS' DAMAGES METHODOLOGY SATISFIES *COMCAST*

*Comcast* requires only that "the method for calculating class damages be consistent with the theory of liability asserted in the case." *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *15 (S.D. Tex. Nov. 13, 2019), *R&R adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019). This is "easily satisfied" where, as here, Plaintiffs rely on the "out-of-pocket" method. *Id*.; Reply at 27-30. Defendants do not dispute Feinstein's methodology has met *Comcast* in dozens of securities cases. Reply at 27. Nor do Defendants claim Plaintiffs' damages methodology is inconsistent with the theory of liability or incapable of measuring damages. *See id*. at 28. Instead, Defendants speculate there **might be** "difficulties" in calculating damages. ECF 227 at 2. Such claims "do not prevent class certification because all of these alleged obstacles . . . are the same if there is one plaintiff or one million." *Plymouth Cnty. Ret. Sys. Patterson Cos.*, 2020 WL 5757695, at *15 (D. Minn. Sept. 28, 2020). Moreover, Feinstein's detailed event

---

[8] For this same reason, Defendants' reliance on *Rocket* is misplaced. *Cf. Rocket* at *26 (citing "proof that no analysts relied on Farner's misrepresentations throughout the Class Period").

[9] Defendants' citation to *Apache* is unavailing. Unlike here, the corrective disclosure did not reveal new, relevant truth, and the stock drop was unrelated to the fraud. 2024 WL 532315, at *9-*11.

study model is sufficient at this stage.  *Rooney*, 330 F.R.D. at 451; *S. Co.*, 332 F.R.D. at 399; *In re ETQ Corp. Sec. Litig.*, 2022 WL 3293518, at *27-*28 (W.D. Pa. Aug. 11, 2022).

At bottom, Defendants' complaint that Feinstein has not said how he will disaggregate ***unspecified*** "market forces" (ECF 227 at 18) "is really a merits inquiry into loss causation" for a different day. *Dougherty v. Esperion Therap., Inc.*, 2020 WL 6793326, at *7 (E.D. Mich. Nov. 19, 2020); *Plymouth Cnty.*, 2020 WL 5757695, at *14 (same); Reply at 30.  Feinstein, moreover, explained at length ***how*** his model could disaggregate non-fraud related information, if necessary.  Feinstein Reply, ¶¶282-296.  Even under Defendants' case, nothing more is required.  *See Rocket* at *29.  And Defendants' other cases (ECF 227 at 20) are inapt as already explained.  *See* Reply at 30-31, n.32-33.

## VI. PLAINTIFFS SATISFY TYPICALITY

Despite multiple chances, Defendants have not made a dent on typicality.  Reply at 31-35.  First, Defendants cite no cases to support their argument about "erratic" trading, and *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472 (S.D.N.Y Oct. 29, 2013), concerned "in-and-out" trading.  *Id.* at *19, *22.  This Court already held Mr. Bozorgi was ***not*** an "in-and-out trader" (ECF 59 at 9-10), and the Court's reasoning applies equally to the other plaintiffs.  Reply at 32.

Second, Defendants' argument about trading stocks to "profit" is inapt.  ECF 227 at 20. Defendants do not dispute Plaintiffs purchased Cassava stock because they believed it to be a good investment that would go up in value.  Reply at 33.  Thus, they are exactly the type of "value" investors that rely on the integrity of the market and are entitled to the *Basic* presumption.  *See id.* at 33 n.36 (quoting *Halliburton II*, 573 U.S. at 273-74).  And, again, Defendants' own case has rejected the same "meme" stock typicality argument that Defendants make here.  *See Rocket* at *33-*34.  Typicality is met.

## VII. CONCLUSION

Plaintiffs respectfully request that the Court: (i) certify the Class; (ii) appoint Plaintiffs as Class Representative; and (iii) appoint Robbins Geller as Class Counsel.

| | |
|---|---|
| DATED:  October 15, 2024 | Respectfully submitted,<br><br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>DANIEL S. DROSMAN (admitted *pro hac vice*)<br>RACHEL JENSEN (admitted *pro hac vice*)<br>KEVIN A. LAVELLE (admitted *pro hac vice*)<br>MEGAN A. ROSSI (admitted *pro hac vice*)<br>HEATHER GEIGER (admitted *pro hac vice*)<br>JEREMY W. DANIELS (admitted *pro hac vice*)<br><br>                /s/ Kevin A. Lavelle               <br>KEVIN A. LAVELLE<br><br>655 West Broadway, Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br>dand@rgrdlaw.com<br>rachelj@rgrdlaw.com<br>klavelle@rgrdlaw.com<br>mrossi@rgrdlaw.com<br>hgeiger@rgrdlaw.com<br>jdaniels@rgrdlaw.com<br><br>Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone<br><br>KENDALL LAW GROUP, PLLC<br>JOE KENDALL (Texas Bar No. 11260700)<br>3811 Turtle Creek Blvd., Suite 825<br>Dallas, TX  75219<br>Telephone:  214/744-3000<br>214/744-3015 (fax)<br>jkendall@kendalllawgroup.com<br><br>Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone |

4854-6915-1472.v1

- 12 -

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao