UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | § § § § § § § § § § § § | Master File No. 1:21-cv-00751-DAE <br><br> CLASS ACTION |

**PLAINTIFFS' OPPOSED MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS DISCLOSED TO THE U.S. SECURITIES AND EXCHANGE COMMISSION AND U.S. DEPARTMENT OF JUSTICE**

4861-4694-2388.v6

Lead Plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar Rao (together, "Plaintiffs") respectfully move this Court for an order compelling defendants Cassava Sciences, Inc. ("Cassava"), Remi Barbier, Lindsay Burns, and Eric Schoen (collectively, "Defendants") to produce four documents disclosed to the U.S. Securities and Exchange Commission ("SEC") and U.S. Department of Justice ("DOJ") during those agencies' ongoing investigations into the alleged misconduct ("Withheld Documents") also at issue in this case.

## I.     INTRODUCTION

This securities class action was filed after two scientists filed a Citizen Petition with the U.S. Food and Drug Administration ("FDA") alleging that, *inter alia*, the scientific research underpinning Cassava's primary drug candidate, simufilam, suffered from widespread data manipulation and was tainted by conflicts of interest.  Shortly after the public disclosure of the Citizen Petition, news broke that that the SEC and DOJ had both opened investigations into the same underlying allegations.  Those investigation remain ongoing.

During the course of those investigations, Defendants made presentations to both the SEC and the DOJ to dissuade them from bringing an enforcement action or criminal charges.  Despite Defendants' disclosure of these documents to adversarial third parties, Defendants continue to withhold these presentations in discovery from Plaintiffs on the basis of the work-product doctrine and a purported "settlement privilege."  It is well established, however, that disclosure of the information in the presentations to the SEC and DOJ waives any work-product protection.

Further, Defendants' assertion of a "settlement privilege," based on the inapplicable out-of-circuit decision in *Goodyear Tire & Rubber Co. v. Chiles Power Supply*, 332 F.3d 976 (6th Cir. 2003) ("*Goodyear*"), fails for numerous reasons.  First, neither the Supreme Court nor the Fifth Circuit (nor any other sister circuit) has recognized a federal "settlement privilege"; instead, most have rejected it.  Second, no court has ever applied a settlement privilege in the context Defendants

- 1 -

assert here – voluntary disclosures to investigating government agencies. Rather, the majority of courts have rejected the proposition that defendants may, as they advocate here, selectively waive privilege to the government yet maintain it as to all other parties. Third, Defendants have provided *no* evidence that the Withheld Documents were disclosed in furtherance of settlement discussions; thus, such a privilege is inapplicable, even if it were recognized here (which it should not be).

The Court should therefore compel the production of the four Withheld Documents.

## II.   BACKGROUND

### A.   Plaintiffs' Claims

Plaintiffs allege that Defendants engaged in a fraudulent scheme and materially misled investors regarding simufilam, a purported treatment for Alzheimer's disease. ¶80.[1] Unbeknownst to investors, Cassava's pre-clinical and clinical studies justifying the continued commercial development of simufilam contained extensive data manipulation and significant anomalies, and the research was tainted by conflicts of interest. ¶¶80-104.

The truth began to be revealed, however, through a "Citizen Petition" to the FDA, which raised "grave concerns" regarding "the quality and integrity of the laboratory-based studies surrounding" simufilam. ¶¶105-130. According to the Citizen Petition, data in these studies appearing in a string of academic journals and presentations had been manipulated and falsified. ¶¶143-251. In response to the Citizen Petition, the Company's share price plummeted 39.9%, between August 25 and 26, 2021. ¶¶495-498.

On November 17, 2021, *The Wall Street Journal* reported that "[t]he [SEC] is investigating claims that [Cassava] . . . manipulated research results of its experimental Alzheimer's drug."

---

[1]   All "¶__" or "¶¶__" are to the Consolidated Complaint for Violation of the Federal Securities Laws (ECF 68) ("Complaint"). Additionally, emphasis is added and citations are omitted unless otherwise noted.

¶367. The investigation followed a meeting between the SEC and the authors of the Citizen Petition. *Id*. Then, on July 27, 2022, *Reuters* reported that the DOJ "opened a criminal investigation into Cassava . . . involving whether the biotech company manipulated research results for its experimental Alzheimer's drug." ¶435. Since then, on October 12, 2023, the journal *Science* revealed that Cassava's chief neuroscientists were unable to provide any original data to investigators at the City University of New York tasked with probing the misconduct allegations and that defendant Burns shared responsibility for certain of the alleged misconduct. ECF 129 at 7.

### B. The Four Withheld Documents

After agreeing to produce to Plaintiffs all documents produced in the government investigations, Defendants withheld certain documents on a the privilege log, dated December 12, 2023. Exhibit ("Ex.") A;[2] Ex. B (noting that the process of re-producing to Plaintiffs the documents previously produced to the SEC and DOJ had begun). The first four documents on the log consisted of one "white paper" and three "presentations" that were disclosed to the SEC and/or DOJ. Defendants withheld these four documents on the basis of a purported "settlement privilege" and the work-product doctrine. Ex. A.

Pursuant to L.R. CV-7(g), Plaintiffs met and conferred with Defendants several times before bringing this motion. During the parties' discussions regarding the privilege log, Defendants stated that the "purpose" of the Withheld Documents was to "explain to the regulators that the information they had been provided about Cassava was incorrect, incomplete, and lacked credibility" and that the regulators therefore "should either not pursue any legal action against

---

[2]   All "Ex. __" references are to the Affidavit of Kevin Lavelle in Support of Plaintiffs' Opposed Motion to Compel Defendants to Produce Documents Disclosed to The U.S. Securities and Exchange Commission and U.S. Department of Justice, filed concurrently herewith.

Cassava or should resolve their inquiries by permitting Cassava to accept the least severe penalties." Ex. C at 2. At no point did Defendants claim that the Withheld Documents were irrelevant. *See id.*

Defendants later claimed that the purported "settlement privilege" referred to in their privilege log was based on the out-of-circuit case of *Goodyear*, but were unable to provide any authority applying *Goodyear* in this context, by the Fifth Circuit or in this District. *See id.* at 6. Nor did Defendants dispute that the SEC Enforcement Manual explicitly prohibits settlement offers in "white papers." *See id.* at 4-5.

Plaintiffs requested further information to evaluate the privilege claims, but Defendants refused and declared an impasse. *See id.* at 1-3. Defendants refused to clarify, for example, whether the Withheld Documents contained any settlement offer or designation as offers of compromise under Federal Rule of Evidence 408. *See id.* Defendants further refused to answer whether the SEC or DOJ: (i) committed not to use the information in the Withheld Documents in any subsequent proceeding; (ii) stated that the parties were in settlement negotiations; or (iii) executed confidentiality agreements with Cassava. *Id.* This motion followed.

## III.  LEGAL STANDARDS

Waiver of work-product protection occurs when a disclosure has "'substantially increased the opportunities for potential adversaries to obtain the information.'" *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir 2010). The party asserting waiver of the work-product privilege bears "the burden of proving [such] waiver." *SEC v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006).

"Because privileges are not lightly created" the Fifth Circuit does "not infer one where Congress has not clearly manifested an intent to create one." *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 493 (5th Cir. 1998). The "burden of establishing that a settlement

privilege exists" rests on the party seeking to shield documents from discovery. *In re Urethane Antitrust Litig.*, 2009 WL 2058759, at *4 (D. Kan. July 15, 2009).

IV. **ARGUMENT**

A. **Defendants Waived Work-Product Protection by Disclosing the Withheld Documents to Adversarial Third Parties**

Defendants' "voluntary disclosure" of the Withheld Documents to the SEC and DOJ at the time they were at least "potential adversar[ies]" waived any work-product protection. *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016); *Brady*, 238 F.R.D. at 444 (disclosure to government investigators "constituted a waiver of work product immunity").

Although the Fifth Circuit has not weighed in on this issue, the overwhelming weight of appellate authority establishes that work-product protection is waived when a party discloses information to a federal agency during an adversarial investigation. *See L-3 Commc'ns*, 315 F.R.D. at 470; *Brady*, 238 F.R.D. at 444.[3] Here, where the withheld "'white papers'" and "'presentations'" were "'generated by counsel during'" the government investigations and provided to the SEC and DOJ "'with the specific intent to dissuade the government from bringing

---

[3] *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006) (collecting cases on waiver of work-product privilege based on disclosures to investigating agencies); *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 306-07 (6th Cir. 2002) (holding selective waiver to government agencies is not permitted and noting that the "decision on whether or not to 'show your hand' is quintessential litigation strategy"); *In re Steinhardt Partners, L.P.*, 9 F.3d 230 (2d Cir. 1993) (finding work-product waiver for memorandum voluntarily produced to SEC in hope of avoiding enforcement proceeding); *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1429 (3d Cir. 1991) ("When a party discloses protected materials to a government agency investigating allegations against it, it uses those materials to forestall prosecution (if the charges are unfounded) or to obtain lenient treatment (in the case of well-founded allegations). These objectives, however rational, are foreign to the objectives underlying the work-product doctrine."); *see also In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 472 (S.D.N.Y. 1996) ("[W]hen a corporation provides an otherwise privileged internal investigative report to the SEC as part of an effort to obtain favorable treatment, it waives the privilege both for the report and for those underlying documents necessary for the Commission to evaluate the reliability and accuracy of the report.").

- 5 -

suit,'" their disclosure is "'inconsistent with the purposes behind the attorney work product doctrine.'" *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2017 WL 280816, at *1-*3 (S.D.N.Y. Jan. 20, 2017). The disclosure of the Withheld Documents to the SEC and DOJ thus waived work product protection.[4]

### B. The "Settlement Privilege" Does Not Shield the Withheld Documents from Discovery

#### 1. This Circuit Does Not Recognize a "Settlement Privilege" and District Courts Have Largely Rejected It

In relying on the out-of-circuit *Goodyear* case as justification for their purported "settlement privilege," Defendants overlook that "the Fifth Circuit has not recognized an implied settlement privilege under the federal common law." *Wash.-St. Tammany Elec. Coop., Inc. v. La. Generating, LLC*, 2019 WL 1950394, at *6 (M.D. La. May 1, 2019). The Fifth Circuit is not alone; neither the Supreme Court nor any other circuit has recognized such a purported privilege. *Two-Way Media LLC v. AT&T Inc.*, 2011 WL 13113724, at *2 (W.D. Tex. Mar. 7, 2011). Nor has any court in this District recognized the *Goodyear* "settlement privilege."

Rather, "the majority of courts do not recognize an absolute privilege for settlement agreements and negotiations." *Id.* at *2-*3; *see, e.g.*, *Meier v. UHS of Del., Inc.*, 2021 WL 1226619, at *5 (E.D. Tex. Apr. 1, 2021) (rejecting *Goodyear* and finding "no [settlement] privilege applies"); *Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 132265, at *3 (E.D. Tex. Jan. 12, 2017) (concluding there is no "federal settlement privilege"); *Performance Aftermarket Parts Grp., Ltd. v. TI Grp. Auto. Sys., Inc.*, 2007 WL 1428628, at *3 (S.D. Tex. May 11, 2007) (same). As one court reasoned: "Given the language of Rule 408, the analysis in the foregoing decisions, and the Fifth Circuit's jurisprudence with respect to the potential admissibility of settlement

---

[4] Plaintiffs reserve the right to argue that a broader subject matter waiver has occurred.

- 6 -

negotiations with respect to the interpretation of Consent Decrees," there is "no basis for holding that an implied settlement privilege precludes discovery of the settlement negotiations." *La. Generating*, 2019 WL 1950394, at *6.[5]

Courts have rejected *Goodyear* for good reason. As one court observed, "[t]he federal courts do not enjoy unbridled authority to define new privileges in discovery whenever they see fit." *Subpoena*, 370 F. Supp. 2d at 208. And in reaching its decision, "the court in *Goodyear* did not analyze each of the important factors identified by the United States Supreme Court in order to determine whether a new privilege should be implied under Rule 501." *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, 2007 WL 963975, at *5 (N.D. Cal. Mar. 30, 2007).[6] As courts in this Circuit agree, those factors do **not** support the judicial creation of such a privilege. *See TI Grp.*, 2007 WL 1428628, at *3; *Teva Pharms.*, 2017 WL 132265, at *3; *La. Generating*, 2019 WL 1950394, at *6; *UHS of Del.*, 2021 WL 1226619, at *5 (citing *Subpoena*, 370 F. Supp. 2d at 209-13, as persuasive and collecting cases).[7]

---

[5]   *See also, e.g.*, *In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed. Cir. 2012) (declining to adopt a settlement privilege in light of the factors identified by the Supreme Court in assessing the propriety of recognizing an implied privilege); *In re Subpoena Issued to Commodity Futures Trading Comm.*, 370 F. Supp. 2d 201, 208-12 (D.D.C. 2005) (rejecting *Goodyear* based on analysis of factors set forth by the Supreme Court and holding no "settlement negotiations" privilege exists); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n. 20 (7th Cir. 1979) (finding "no convincing basis" for proposition that "the conduct of the settlement negotiations is protected from examination by some form of privilege"); *Alfaro v. City of San Diego*, 2018 WL 4562240, at *6 (S.D. Cal. Sept. 21, 2018) ("The Ninth Circuit has not recognized a settlement negotiation privilege that would shield information from discovery . . . .").

[6]   The six factors are enumerated in *Mediatek, Inc.*, 2007 WL 963975, at *4.

[7]   Though some courts in the Eastern District of Texas have applied the settlement privilege in past **patent** cases – not in the context of government investigations, like here – none have undertaken the analysis to determine whether the privilege should be implied under Rule 501. *See Software Tree, LLC v. Red Hat, Inc.*, 2010 WL 2788202 (E.D. Tex. June 24, 2010). Courts elsewhere that have conducted that analysis determined, as noted above, that the privilege does **not** exist. And, more recently, courts in the Eastern District of Texas have moved away from applying the settlement privilege in patent cases since the Federal Circuit's 2010 decision in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), which held settlement

Among the compelling reasons for rejecting such a privilege: "Congress chose to promote th[e] goal" of settling disputes outside the judicial process "through limits on the *admissibility* of settlement material rather than limits on their *discoverability*." *Subpoena*, 370 F. Supp. 2d at 210-11 (emphasis in original); *Two-Way Media*, 2011 WL 13113724, at *4 (Federal Rule of Evidence "408 does *not* provide a rule against disclosure."). Thus, as one court reasoned, Federal Rule of Evidence 408 "on its face contemplates that settlement documents may be used for several purposes at trial, making it unlikely that Congress anticipated that discovery into such documents would be impermissible." *Subpoena*, 370 F. Supp. 2d at 211.[8] In fact, the Fifth Circuit previously *rejected* the argument that information concerning settlement negotiations in a federally funded state mediation program is privileged, because "confidential" is not the same as "privileged," and Congress manifested no intent to create such a privilege under the statute at issue. *Grand Jury Subpoena*, 148 F.3d at 492-93. The Court should thus reject Defendants' settlement privilege claims.

### 2. Even If A Settlement Privilege Could Shield Documents from Discovery, Defendants Have Not Shown It Applies Here

Even assuming *arguendo* that a federal settlement privilege exists and can shield relevant documents from discovery, Defendants cannot carry their burden of showing it applies in this case. As recognized by a court in this District, *Goodyear* based its holding on "'[t]he public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any

---

negotiations may be relevant in patent cases. *See, e.g., Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, 2010 WL 774878 (E.D. Tex. Mar. 2, 2010); *Datatreasury Corp. v. Wells Fargo & Co.*, 2010 WL 903259 (E.D. Tex. Mar. 4 2010).

[8] Even courts within the Sixth Circuit question *Goodyear*. "Subsequent opinions by lower courts have also noted that the *Goodyear* case . . . was a diversity case, and as such, should have been governed by the controlling state's law of privilege." *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 WL 1959168, at *3 (W.D. Ky. June 29, 2007) ("This Court shares its sister district courts' 'latent misgivings' about the propriety of the rule announced in *Goodyear* . . . .").

statements made therein.'" *Two-Way Media LLC*, 2011 WL 13113724, at *2 (quoting *Goodyear*, 332 F.3d at 981). But neither of *Goodyear*'s policy justifications apply here.

First, Defendants have provided no evidence that Cassava entered into confidential settlement negations with the SEC or DOJ, as opposed to merely advocating to obtain a favorable outcome. In response to Plaintiffs' requests, Defendants did not claim they entered into confidentiality agreements with the SEC and DOJ before disclosing the Withheld Documents, that the Withheld Documents were designated as settlement materials, or even that the government acknowledged that settlement discussions were, in fact, occurring. *See* §II.C., *supra*. To the contrary, Defendants conceded that they provided the Withheld Documents to the SEC and DOJ "with the specific intent to dissuade the government from bringing suit."

Second, the assertions in the Withheld Documents are not of questionable truthfulness. After all, unless Defendants are prepared to admit that the information they provided to the SEC and DOJ was untruthful, the second prong is not a concern. Indeed, Defendants claim the Withheld Documents are based on "***factual***" information taken from documentary evidence and witness interviews. *See* Ex. C at 2-3. Such "purely factual" information with "no indication that they contain the sort of unreliable puffery that warrants protection under the settlement privilege" are "not the sort of communications the settlement privilege was designed to protect." *Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, at *33 (S.D. Ohio Nov. 13, 2012).

Defendants' claim is, moreover, inconsistent with the SEC's own position regarding the discoverability of materials provided to persuade the agency during investigations. *See In re Initial Pub. Offering Sec. Litig.*, 2004 WL 60290, at *3, *5 n.34 (S.D.N.Y. Jan. 12, 2004) (holding Wells submission, "consist[ing] primarily of . . . argument as to why the particular bank should not be charged," "'may be used as evidence in subsequent proceedings,'" which was "consistent with the SEC's position"); *see also Subpoena*, 370 F. Supp. 2d at 207-08 (noting that the Commodity

- 9 -

Futures Trading Commission "urge[d] the Court to **reject** the application of any settlement privilege to" "protect the documents in this case from third-party discovery"). Defendants have neither demonstrated that the settlement privilege exists nor that it would be applicable here.

### C. Defendants' May Not Selectively Waive Privilege

By withholding the four documents they produced to the government, Defendants essentially contend that they may selectively waive privilege over these documents. However, "an ***overwhelming*** amount of authority has found this argument wholly unpersuasive and ***rejected*** the selective waiver doctrine." *Brady*, 238 F.R.D. at 440. Even the Sixth Circuit, which decided *Goodyear*, has held that a party cannot selectively waive the privilege: "'The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.'" *HCA*, 293 F.3d at 303. After all, it would be "inconsistent and unfair to allow [Defendants] to select according to their own self-interest to which adversaries they will allow access to the materials." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984).

Plaintiffs are not aware of a single Texas district court that has applied *Goodyear* to government investigations. Indeed, in *Qwest*, the Tenth Circuit declined to recognize "a new privilege for materials surrendered in a government investigation," noting that "[m]ore often than not, the Supreme Court has ***declined*** to recognize new privileges." 450 F.3d at 1197. The Court should do the same here.

### V. CONCLUSION

For all the reasons herein, Plaintiffs respectfully request that the Court issue an order compelling Defendants to produce the four Withheld Documents to Plaintiffs within three days.

| | |
|---|---|
| DATED: April 12, 2024 | Respectfully submitted, |

<div style="margin-left: 50%;">

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
RACHEL JENSEN (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)

                 */s/ Kevin A. Lavelle*
                KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
rachelj@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

</div>

- 11 -

4861-4694-2388.v6

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 12, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Kevin A. Lavelle
KEVIN A. LAVELLE

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  klavelle@rgrdlaw.com

4861-4694-2388.v6