UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC.<br>SECURITIES LITIGATION | §<br>§<br>§<br>§ | Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | §<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE SECOND
SUPPLEMENTED COMPLAINT**

4879-8708-4023.v2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL ALLEGATIONS .........................................................................3

    A.   Summary of Relevant Allegations in the Complaint ..............................3

    B.   Summary of the Supplemental Allegations ...........................................5

III. PROCEDURAL HISTORY............................................................................7

    A.   Plaintiffs Seek to Supplement the Complaint's Allegations...................7

    B.   The Court's Deadline for Amending Pleadings......................................9

IV.  LEGAL STANDARD.....................................................................................9

V.   THE RELEVANT FACTORS WEIGH IN FAVOR OF MODIFYING THE SCHEDULING ORDER ...............................................................................11

    A.   Plaintiffs Diligently Moved to Supplement the Complaint ..................12

    B.   The Proposed Supplement Clarifies Significant Corrective Disclosures and Adds Supporting Facts and Misstatements to the Complaint ................13

    C.   The Supplement Does Not Prejudice Defendants..................................14

    D.   A Continuance Is Available, but Unnecessary .....................................17

VI.  THE RELEVANT FACTORS WEIGH IN FAVOR OF SUPPLEMENTING THE COMPLAINT ...............................................................................................17

    A.   Undisputed: No Bad Faith or Dilatory Motive .....................................18

    B.   Undisputed: No Repeated Failure to Supplement..................................18

    C.   The Motion Is Timely ..........................................................................19

    D.   Supplementation Does Not Unduly Prejudice Defendants....................20

VII. CONCLUSION..............................................................................................20

4879-8708-4023.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alicia Santiago v. Toyota Motor Corp.*,
  2014 WL 12495296 (W.D. Tex. Oct. 6, 2014) ...................................................10

*BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*,
  2024 WL 4229312 (S.D. Tex. Sept. 18, 2024) .................................................14

*D4D Techs., LLC v. Medit Corp.*,
  2024 WL 4016012 (W.D. Tex. Jan. 22, 2024) ..................................................10

*DiSalvatore v. Foretravel, Inc.*,
  2015 WL 12941884 (E.D. Tex. Oct. 28, 2015) .....................................10, 12, 14

*DT Apartment Grp., LP v. CWCaptial, LLC*,
  2012 WL 4740488 (N.D. Tex. Oct. 3, 2012) ....................................................18

*Dueling v. Devon Energy Corp.*,
  623 F. App'x 127 (5th Cir. 2015) ....................................................................20

*Duggins v. Steak 'N Shake, Inc.*,
  195 F.3d 828 (6th Cir. 1999) ...........................................................................20

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981) ...........................................................................19

*Entergy Miss., Inc. v. Marquette Transp. Co.*,
  742 F. App'x 800 (5th Cir. 2018) ....................................................................18

*Foman v. Davis*,
  371 U.S. 178 (1962).........................................................................................11

*Good Sportsman Mktg. LLC v. Testa Assocs., LLC*,
  2006 WL 8440722 (E.D. Tex. May 24, 2006)......................................10, 12, 15

*Hegwood v. Ross Stores, Inc.*,
  2006 WL 8437334 (N.D. Tex. June 26, 2006) .................................................19

*Hudson v. L&W Supply Corp.*,
  2009 WL 10693829 (S.D. Tex. June 18, 2009).................................................19

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 1812822 (S.D. Cal. May 6, 2021)......................................................16

*In re Connetics Corp. Sec. Litig.*,
  2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) .................................................15

Page

*In re Dura Pharms., Inc. Sec. Litig.*,
   452 F. Supp. 2d 1005 (S.D. Cal. 2006) ...................................................................15

*In re FirstEnergy Corp.*,
   2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ..........................................................15

*In re Uplift RX, LLC*,
   625 B.R. 364 (Bankr. S.D. Tex. 2021) ...................................................................13

*Karinski v. Stamps.com, Inc.*,
   2020 WL 5084093 (C.D. Cal. July 21, 2020) .........................................................16

*LCP RCP, LLC v. Ally Bank*,
   2020 WL 12602659 (N.D. Tex. Sept. 14, 2020) .....................................................12

*Leykin v. AT&T Corp.*,
   423 F. Supp. 2d 229 (S.D.N.Y. 2006),
   *aff'd* 216 F. App'x 14 (2d Cir. 2007) ......................................................................17

*Lighthouse Fin. Group v. Royal Bank of Scot. Grp., PLC*,
   2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013),
   *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v.*
   *Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015) ...............................17

*Lowrey v. Tex. A & M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ...................................................................................11

*Matter of Southmark Corp.*,
   88 F.3d 311 (5th Cir. 1996) .....................................................................................19

*Mayeaux v. La. Health Serv. & Indem. Co.*,
   376 F.3d 420 (5th Cir. 2004) ...................................................................................11

*Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*,
   2011 WL 2193294 (S.D. Tex. Jun. 6, 2011) ...........................................................10

*New World Art Center Inc. v. Singh*,
   2022 WL 20527601 (W.D. La. Nov. 10, 2022) ............................................. *passim*

*SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*,
   839 F.3d 422 (5th Cir. 2016) ........................................................................11, 17, 19

*Smith v. EMC Corp.*,
   393 F.3d 590 (5th Cir. 2004) ...................................................................................20

**Page**

*Snellink v. Gulf Res., Inc.*,
   870 F. Supp. 2d 930 (C.D. Cal. 2012) ...................................................................15

*Ultra Premium Servs., LLC v. OFS Int'l, LLC*,
   2019 WL 13191627 (S.D. Tex. Dec. 18, 2019)......................................................10

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 15..............................................................................................................18
   Rule 15(a)....................................................................................................11, 18
   Rule 15(a)(2)......................................................................................................11
   Rule 15(d) ...............................................................................................2, 10, 17
   Rule 16..........................................................................................................10, 14
   Rule 16(b)(4)..........................................................................................3, 4, 5, 9
   Rule 26(b)(1)......................................................................................................16

**SECONDARY AUTHORITIES**

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004)
   §1504..................................................................................................................10

4879-8708-4023.v2

Lead Plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar K. Rao (collectively, "Plaintiffs") respectfully move for leave to supplement their June 13, 2024 Supplemented Consolidated Complaint for Violations of the Federal Securities Laws (ECF 176) ("Complaint")[1] against defendants Cassava Sciences, Inc. ("Cassava" or the "Company"), Remi Barbier, Eric Schoen, and Lindsay Burns (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) or (d).

## I.    INTRODUCTION

Based on recent events that occurred after Plaintiffs initially supplemented the Complaint, Plaintiffs seek to file a second supplemented complaint to add new corrective disclosures and supporting allegations.  Within weeks of this Court granting Plaintiffs leave to file their initial supplemental allegations on June 12, 2024 (*see* ECF 175, 176), additional revelations began to come to light.  On June 28, 2024, news outlets reported that a grand jury indicted Cassava's longtime scientific collaborator, Dr. Hoau-Yan Wang ("Wang") for "Major Fraud" in Cassava's simufilam-related research.  Cassava's stock price declined approximately 35% as a result.  The news did not stop there.

Days later, on July 1, 2024, Cassava filed a Form 8-K disclosing that "two senior employees" were under investigation by the Securities and Exchange Commission ("SEC") and Department of Justice ("DOJ").  As a result of the SEC's investigation, Cassava "supplement[ed]" its Class Period disclosures because, contrary to Defendants' prior representations, an "attachment to ***an email sent by a senior employee of Cassava to Wang before the [Phase 2b] bioanalysis could have been used to unblind him***."  Cassava Sciences, Inc., Current Report at 4 (Form 8-K)

---

[1]    Unless otherwise noted, all "¶__", "¶¶__", "Supp. ¶__", or "Supp. ¶¶__" references are to the Complaint and emphasis is added and citations are omitted.

(July 1, 2024) (the "8-K"). The 8-K also detailed, among other things, Wang's extensive financial conflicts of interest.

Then, just over two weeks later, on July 17, 2024, Cassava issued a press release announcing that defendant Barbier resigned as Cassava's CEO and Board Chairman, defendant Burns resigned as Cassava's Senior Vice President of Neuroscience, and the Company was enacting "[e]nhanced [c]orporate [g]overnance." Following the press release, Cassava's stock dropped 29% on heavy trading volume.

Finally, on September 26, 2024, the SEC filed civil charges against defendants Cassava, Barbier, and Burns for misleading investors regarding the Company's Phase 2b clinical trial results, including by manipulating the reported data (the "SEC Charges"). To resolve the SEC Charges, *Cassava, Barbier, and Burns consented to penalties of over $40 million*, including payments of $175,000 and $85,000 from Barbier and Burns personally, and both Barbier and Burns are barred from serving as officers or directors of public companies for a number of years. The SEC Charges caused Cassava's stock to drop approximately 11% on heavy trading volume.

Rule 15(d) contemplates precisely this scenario, allowing parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented" with leave of court. Fed. R. Civ. P. 15(d). Accordingly, Plaintiffs seek to supplement the Complaint based on the: (i) June 28, 2024 Wang indictment; (ii) the July 1, 2024 8-K; (iii) the July 17, 2024 Cassava press release; and (iv) the September 26, 2024 SEC Charges and Consent Decrees. Plaintiffs' proposed supplemental allegations are reflected in redline in Ex. A, ¶¶268-278, 287, 294, 304, 316-319 and Supp. ¶¶8-27.[2]

---

[2]    All "Ex.__" references to the exhibits attached to the Declaration of Kevin A. Lavelle in Support of Plaintiffs Motion for Leave to File Second Amended Complaint, filed herewith.

Defendants raise just two objections to this motion, both of which lack merit.  **First**, Defendants claim this motion is untimely because the Court set, at Defendants' request, July 19, 2024 as the deadline to amend the pleadings.  ECF 147.  But even Defendants admit that the July 19 deadline does "not preclude either party from seeking to amend."  ECF 144 at 3.  Rather, the amending party must merely demonstrate "good cause" for the supplement under Rule 16(b)(4).  *Id.*  Here, Plaintiffs' readily satisfy the "good cause" standard because the supplemental allegations reflect *recent events* that only *just occurred* and are a *continuation* of the allegations in the Complaint.  Indeed, Defendants do *not* dispute that the supplemental allegations contain extensive new fraud-related information.  The supplemental allegations, moreover, do not add any additional parties or change Plaintiffs' legal theories, and are based on the same nucleus of facts pled in the operative Complaint.

**Second**, Defendants mistakenly assert that the supplemental allegations extend the Class Period and therefore require reopening class certification briefing.  But the supplemental allegations do *not* extend the Class Period, or amend the proposed Class definition in any way.  As a result, no additional class certification briefing is required.  Thus, Defendants' objection is unfounded.  Accordingly, Plaintiffs respectfully request leave to supplement the Complaint.

## II.    FACTUAL ALLEGATIONS

### A.    Summary of Relevant Allegations in the Complaint

The Complaint alleges, *inter alia*, that Cassava's pre-clinical and clinical research, including its Phase 2b trial results, contained extensive data manipulations and undisclosed conflicts of interest concealed by Defendants.  ¶¶105-109, 143-251.  On August 24, 2021, reports emerged that the FDA had received a Citizen Petition raising "grave concerns about the quality and integrity of the laboratory-based studies surrounding" simufilam, including evidence that

defendant Burns and Wang manipulated foundational pre-clinical and clinical studies and Western blot results.  ¶¶12-13.

The next day, on August 25, 2021, Defendants publicly denied the Citizen Petition's allegations, stating that "Cassava Sciences believes the claims made in this post regarding scientific integrity are false and misleading" and the Company "stands behind its science, its scientists and its scientific collaborators."  ¶316.  Defendants went on to label various statements from the Citizen Petition as "fiction" before setting out the purported "facts."  ¶¶14, 317.  Despite Defendants' denials, the Company's stock price collapsed, plummeting roughly 40% (¶¶15, 497), and the SEC and DOJ launched criminal and civil investigations into whether Cassava "manipulated research results of its experimental" drug.  ¶¶28, 44.

With its stock in free fall, Cassava issued additional press releases on November 4 and December 21, 2021, falsely asserting that two scientific journals that were separately investigating the alleged misconduct had received "original" Western blot images and "raw" data from defendant Burns and Wang, supposedly exonerating Defendants.  ¶¶338-356, 386-407.  As the Complaint alleges, however, defendant Burns and Wang never provided the "raw data" or "original" images to the journals, but rather submitted doctored data in an attempt to exonerate themselves.  ¶¶343, 346-347, 355, 389-393, 402-403.  The purported exculpatory statements from the journals were obtained under false pretenses and then cited by Cassava in press releases to drive up Cassava's stock price.  *Id.*

But, on October 12, 2023, an article published by *Science* finally revealed the results of an investigation by Wang's institution, the City University of New York ("CUNY").  The CUNY report detailed extensive evidence of data manipulation in Cassava's research and found defendant Burns responsible for certain misconduct.  Supp. ¶¶1-7.  The article also revealed that defendant Burns and Wang could not provide any "original" or "raw" data to the investigators, contradicting

Defendants' claims that the original data had been provided to the scientific journals investigating the Citizen Petition's allegations of wrongdoing.  *See id.*  On this news, Cassava's stock dropped about 32%.  Supp. ¶5.

### B.    Summary of the Supplemental Allegations

On June 28, 2024, news outlets reported that a federal grand jury in Maryland indicted Wang for "Major Fraud" against the United States, among other crimes, following the DOJ's investigation.  The indictment detailed that Wang "fraudulently caused to be submitted, through [Cassava], grant proposals to NIH based upon purported scientific research involving [simufilam] and [SAVADx], including Western blotting," and disclosed ***new*** instances of data manipulation in Cassava articles, such as the 2017 *Neurobiology of Aging* paper.  The indictment continued, alleging (as Plaintiffs have) that Cassava sent "***fabricated***" Western blot images to journals investigating the data manipulation.  Ex. A, Supp. ¶¶8-15.  As a result, Cassava's stock price dropped 34%.  *Id.*, Supp. ¶16.

The following business day, July 1, 2024, Cassava filed an 8-K with the SEC revealing that Cassava "has been engaging with the [DOJ] and [SEC] in connection with ongoing investigations into the Company and ***two senior employees***."  As a result, the Company told investors that it was supplementing its disclosures regarding its Phase 2b trial results based, in part, on the fact that an "attachment to an email sent by a senior employee of Cassava to Dr. Wang before the bioanalysis could have been used to ***unblind*** him as to some number of Phase 2b Study participants."  *Id.*, Supp. ¶17.  Although Defendants had relentlessly insisted that that Cassava conducted the Phase 2b trial under blinded conditions, this disclosure rendered these statements manifestly false and misleading.  *Id.*, ¶287(e)-(f).  In contrast to Defendants' prior statement that an "outside lab" had conducted Cassava's Phase 2b reanalysis, the 8-K further detailed Wang's extensive conflicts of

interest, which included cash payments, stock options, and participation in the Company's bonus plan. *Id.*, Supp. ¶17.

Just over two weeks later, on the heels of Wang's indictment and the 8-K, Cassava announced on July 17, 2024, that, effective immediately: (i) defendant Barbier resigned as Cassava's CEO and Board Chairman; (ii) defendant Burns resigned as Cassava's Senior Vice President of Neuroscience; and (iii) Cassava would implement "[e]nhanced [c]orporate [g]overnance" reforms. *Id.*, Supp. ¶18. In response, Cassava's stock price declined 29%. *Id.*, Supp. ¶19.

Then, on September 26, 2024, the SEC filed charges against Cassava, Burns, and Barbier for misleading investors regarding the Company's Phase 2b trial results. *Id.*, Supp. ¶20. The SEC Charges revealed that: (i) Burns ***manipulated*** the Phase 2b episodic memory ***and*** spatial working memory results to falsely show improvement in simufilam patients where there was none; (ii) Wang used the information Burns provided to unblind himself in the Phase 2b trial and ***manipulate*** the results to falsely show improvement in simufilam patients where there was none; and (iii) Cassava audited Wang's lab and found it was "***not qualified***" to conduct the Phase 2b biomarker analysis. *Id.*, Supp. ¶¶21-26. As a result, Cassava's stock price declined 10.6%. *Id.*, Supp. ¶27.

To resolve the charges, Cassava, Barbier and Burns consented to penalties of over $40 million, including payments of $175,000 and $85,000 from Barbier and Burns personally. *Id.*, Supp. ¶20. Barbier and Burns also agreed to be subject to officer-and-director bars of three and five years, respectively. *Id.* In addition, the SEC ordered Dr. Wang to pay $50,000 for his role in Cassava issuing false and misleading statements. *Id.* Cassava's current CEO described the penalties as "staggering" and "a very sad chapter in Cassava's history" while announcing "steps to enhance corporate governance, transparency, and accountability," as a result. *Id.*

III.    **PROCEDURAL HISTORY**

    A.    **Plaintiffs Seek to Supplement the Complaint's Allegations**

On May 11, 2023, the Court denied Defendants' motion to dismiss the Consolidated Complaint. *See* ECF 104.[3] Plaintiffs later filed an opposed motion to supplement the Consolidated Complaint on February 22, 2024, based on the revelations contained in the October 12, 2023 *Science* article disclosing the results of the CUNY investigation. ECF 129. On June 12, 2024, the Court granted Plaintiffs' motion and permitted Plaintiffs to add the allegations to the Consolidated Complaint. ECF 175. Plaintiffs then filed the operative Complaint on June 13, 2024. ECF 176.

In response to the events that subsequently occurred on June 28, July 1, and July 17, 2024, Plaintiffs provided Defendants with a draft of their proposed second supplement to the Complaint on July 19, 2024, within two days of Burns's and Barbier's resignations. At that time, Plaintiffs asked Defendants whether they would oppose a motion to supplement based on this new information. Ex. B. Defendants, however, did not respond to Plaintiffs until July 31, 2024, when they stated that the deadline to amend pleadings had passed and requested a final draft of the proposed amendments. Ex. C. During the August 1, 2024 hearing with this Court, Defendants described these same recent events as "***very active*** and ***in development***." Ex. D at 5:21-23. Defendants further explained to the Court that "these very recent developments" affected when Plaintiffs would file a motion to supplement "because [Defendants] are ***very much in the middle of*** developing a set of circumstances that Plaintiffs contend are relevant to the claims in their complaint." *Id.* at 7:13-18. Plaintiffs then asked the Court for guidance on whether they should file the motion to supplement immediately, given that additional events adverse to Cassava were

---

[3]    Former Cassava executive Nadav Friedmann was dismissed as a defendant due to his death, but the Court otherwise upheld Plaintiffs' allegations in their entirety.

likely to occur.  The Court responded: "I would actually prefer that you hold off until you met with the discovery master."  *Id.* at 28:3-29:23.

The parties continued to confer over the motion to supplement in advance of the September 30, 2024 status conference with the assigned Special Discovery Master, Magistrate Judge Henry Bemporad.  Plaintiffs again requested Defendants' position on the motion to supplement on September 4, 2024.  Ex. E.  Defendants responded on September 6, 2024, reiterating their request for the final draft of the amendments and expressing concern over the timing of the motion as well as its potential impact on class certification.  Ex. F.  On September 10, 2024, Plaintiffs informed Defendants that the draft had not changed and did not have any impact on class certification.  Ex. G.  Then, on September 12, 2024, Defendants requested clarification from Plaintiffs regarding the purpose and effect of the supplemental allegations because the complaint did not amend the class period.  Ex. H.  On September 16, 2024, Plaintiffs explained that corrective disclosures can continue to occur after the end of a class period and damage those that purchased securities at inflated prices during the class period.  Ex. I.  Ultimately, Defendants did not confirm their opposition to the supplement until September 23, 2024, over two months after Plaintiffs provided their proposed supplemental allegations.  Ex. J.

The announcement of the SEC Charges three days later, on September 26, 2024, however, required Plaintiffs to update the supplemental allegations, which Plaintiffs provided to Defendants on October 18, 2024 (Ex. K).  During the September 30, 2024 conference with Magistrate Judge Bemporad, Plaintiffs advised the Court and Defendants that they were considering further supplementation based on the SEC Charges.  On October 23, 2024, Defendants informed Plaintiffs they opposed the supplement because: (i) supplementation would purportedly require the Class Period to be extended, prejudicing Defendants in the event class certification briefing needed to be reopened; and (ii) the July 19, 2024 deadline for amending pleadings had passed.  Ex. L.  As

Plaintiffs explained, however, no additional class certification briefing is required because the supplemental allegations neither extend the Class Period nor amend the Class definition, and because the information in the supplemental allegations is entirely based on new information, which Plaintiffs could not have included in the Complaint.  Ex. M.

B.    **The Court's Deadline for Amending Pleadings**

On March 11, 2024, the Court issued a Scheduling Order establishing, at Defendants' request, July 19, 2024 as the deadline for supplementing pleadings.  *See* ECF 146 at 1, 147 at 1. In their submission to the Court, Plaintiffs argued that the deadline to supplement should be set later, after the close of fact discovery, so as to allow the parties to incorporate new information. *See* ECF 144 at 2-3.  In response, Defendants made clear that the deadline "w[ould] not preclude either party from seeking to amend," only that that the amending party "will be held to the 'good cause' standard for amending the Scheduling Order."  ECF 144 at 3.  As Defendants stated on March 6, 2024, "[i]f Plaintiffs truly discover information that creates good cause to amend the pleadings, Plaintiff can file a Motion for Leave to Amend the Schedule and the pleadings at the same time."  Ex. N at 1.  Having discovered such information, Plaintiffs seek to supplement the Complaint.

IV.    **LEGAL STANDARD**

Rule 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  To satisfy the good cause standard, the party seeking relief must show that the deadlines could not reasonably be met despite the diligence of the party needing the extension.  *New World Art Center Inc. v. Singh*, 2022 WL 20527601, at *1 (W.D. La. Nov. 10, 2022).  Courts in the Fifth Circuit consider four factors when determining whether to allow a scheduling order modification: (i) the explanation for the failure to meet the deadline; (ii) the importance of the supplementation; (iii) potential prejudice in allowing the supplementation;

and (iv) the availability of a continuance to cure such prejudice.  *Id.*; *see also Good Sportsman Mktg. LLC v. Testa Assocs., LLC*, 2006 WL 8440722, at *2 (E.D. Tex. May 24, 2006) (same). Further, while these factors are "relevant to good cause," the Fifth Circuit has imposed "no requirement that all four factors weigh in favor of the party seeking leave to amend in order for the district court to allow an untimely amendment."  *Alicia Santiago v. Toyota Motor Corp.*, 2014 WL 12495296, at *1 (W.D. Tex. Oct. 6, 2014).

Courts routinely find that good cause exists where parties discover new information after the deadline to supplement pleadings has expired.  *See Ultra Premium Servs., LLC v. OFS Int'l, LLC*, 2019 WL 13191627, at *2 (S.D. Tex. Dec. 18, 2019) ("The discovery of new information constitutes good cause for allowing the amendment."); *DiSalvatore v. Foretravel, Inc.*, 2015 WL 12941884, at *2 (E.D. Tex. Oct. 28, 2015) (finding good cause existed where the proposed amendment was "based on the discovery of new information"); *Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*, 2011 WL 2193294, at *5 (S.D. Tex. Jun. 6, 2011) ("New information learned during discovery is good cause to amend under Rule 16.").  Moreover, district courts have "broad discretion in determining how to best preserve the integrity and purpose of its scheduling order."  *Toyota Motor Corp.*, 2014 WL 12495296, at *1; s*ee also D4D Techs., LLC v. Medit Corp.*, 2024 WL 4016012, *1 (W.D. Tex. Jan. 22, 2024) ("The trial court is given broad discretion when deciding whether to grant leave to amend . . . .").

As this Court has previously held, "[u]nder Rule 15(d), the court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  ECF 175 at 3.  "The purpose of the Rule 'is to promote as complete an adjudication of the dispute between the parties as is possible.'"  *Id*. (quoting 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1504 at

245 (3d ed. 2004)).   "Whether to grant the motion to supplement is in the district court's discretion."  ECF 175  at 4.

Additionally, Rule 15(a)(2) instructs courts to "freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court holds that "this mandate is to be heeded" to allow a plaintiff the "opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Fifth Circuit interprets the language of Rule 15(a) as "'evinc[ing] a bias in favor of granting leave to amend'" and instructs district courts to "entertain a presumption in favor of granting parties leave to amend."  *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

> The Fifth Circuit has identified "five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment."

ECF 175 at 4 (quoting *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016)).  Because of the Fifth Circuit's "bias in favor of granting leave to amend," "a district court must possess a substantial reason to deny [such] a request."  *SGIC Strategic*, 839 F.3d at 428; *see also Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) (cleaned up) ("The Supreme Court has explicitly disapproved of denying leave to amend without adequate justification . . . .") (citing *Foman*, 371 U.S. at 182).

## V.    THE RELEVANT FACTORS WEIGH IN FAVOR OF MODIFYING THE SCHEDULING ORDER

Plaintiffs readily satisfy the four factors that courts in the Fifth Circuit consider when determining whether to allow a scheduling order modification.  *See Singh*, 2022 WL 20527601, at *1 ((i) the explanation for the failure to meet the deadline; (ii) the importance of the supplementation; (iii) potential prejudice in allowing the supplementation; and (iv) the availability of a continuance to cure such prejudice).  Here, Plaintiffs promptly sought to supplement their

- 11 -

Complaint each time new fraud-related information was revealed to the market, and Defendants will not suffer any prejudice because, contrary to their claims, the supplemental allegations do not extend the Class Period or amend the Class definition.

### A.    Plaintiffs Diligently Moved to Supplement the Complaint

Courts readily grant supplementation where, as here, the moving party did not – and could not – possess the information underlying the supplement until after the deadline passed. *See Singh*, 2022 WL 20527601, at *1 (permitting supplement where the plaintiffs learned new information more than four months after the relevant deadline expired); *LCP RCP, LLC v. Ally Bank*, 2020 WL 12602659 (N.D. Tex. Sept. 14, 2020) ("This Court has previously held that the discovery of new information after the pleading deadline constitutes a reasonable explanation."); *Good Sportsman*, 2006 WL 8440722, at *2 (same).  As discussed *supra*, Plaintiffs timely provided Defendants with a draft of the proposed supplement to the Complaint on July 19, 2024 – just two days after Barbier and Burns resigned on July 17, 2024 – based on information learned on June 28, July 1, and July 17, 2024.  None of this information was available when Plaintiffs initially moved to supplement the Complaint on February 22, 2024.  ECF 129.

Plaintiffs then followed the Court's direction at the August 1, 2024 hearing to wait to supplement the Complaint until after meeting with Magistrate Judge Bemporad on September 30, 2024, due to, as Defendants put it, the "very active" events "in development."  *See* §III.A., *supra*.

The Court's directive was prescient.  The next month, on September 26, 2024, the SEC announced the charges against Cassava, Burns, and Barbier.  In order to avoid burdening the Court with *seriatim* motions to supplement, Plaintiffs promptly informed Defendants they were considering adding the SEC charges to their proposed supplemental complaint, and again provided Defendants with an updated draft within weeks of the SEC Charges.  *See id.*; *DiSalvatore*, 2015 WL 12941884, at *2 (granting leave to amend based on newly discovered information where

- 12 -

plaintiffs' motion was filed over two months after the amendment cutoff date and "plaintiffs reached out to defense counsel regarding their amendment promptly after discovering the importance of the new information"). Thus, Plaintiffs promptly moved to supplement the Complaint following the final disclosure on September 26, 2024 by the SEC. Needless to say, Plaintiffs could not have met the July 19, 2014 deadline, despite their diligence. This factor, therefore, weighs in favor of permitting modification.

**B.    The Proposed Supplement Clarifies Significant Corrective Disclosures and Adds Supporting Facts and Misstatements to the Complaint**

The proposed supplement updates Plaintiffs' allegations with key post-Complaint events. These events include additional false and misleading statements and significant new instances of data manipulation. They also contain additional corrective disclosures that resulted in substantial stock price declines and damages to putative Class members. *See In re Uplift RX, LLC*, 625 B.R. 364, 373-74 (Bankr. S.D. Tex. 2021) (new allegations related to plaintiffs' potential to recover funds "weigh[] in favor of modification").

Defendants, moreover, do not dispute that the supplemental allegations sufficiently allege three additional corrective disclosures. Nor could they. Indeed, each resulted in significant declines in Cassava's stock price. *See* Ex. A, Supp. ¶16 (34.8% decline following Wang's indictment on June 28, 2024); *id*., Supp. ¶19 (29% decline following the 8-K announcing Barbier and Burns resignations); *id*., Supp. ¶27 (nearly 11% decline following the September 26, 2024 announcement of the SEC Charges).

Likewise, Defendants do not dispute that the supplemental allegations sufficiently allege that the corrective disclosures revealed new fraud-related information previously concealed by Defendants, including, but not limited to: (i) Wang was not blinded in the Phase 2b trial, as Defendants claimed, and Wang's lab was unqualified to conduct that Phase 2b analysis; (ii) Burns manipulated the cognitive test results in the Phase 2b trial in order to make them appear efficacious

when they were not; and (iii) Cassava engaged in additional instances of data manipulation in its foundational research. *See id.*, Supp. ¶¶8-26. Defendants do not dispute that this omitted information, as alleged, rendered additional statements Defendants made during the Class Period false and misleading and that the misstatements were made knowingly or with severe recklessness. *See id.*, ¶¶287(e)-(i); 319(c)-(g).

Last, the supplemental allegations corroborate Plaintiffs' allegations concerning Wang's undisclosed conflicts of interest and Defendants' scheme to submit doctored data to the journals investigating the data manipulation in order to obtain exculpatory statements and drive up the stock price. *See id.*, Supp. ¶¶9(c), 13 ("[Cassava], on Wang's behalf, sent the journals additional Western blot images fabricated by Wang."); *id.*, Supp. ¶17 (detailing the extent of Wang's financial conflicts of interest).

These important allegations thus weigh in favor of allowing supplementation.

### C.    The Supplement Does Not Prejudice Defendants

In the Rule 16 context, prejudice is found "where amendments would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a party's ability to present its case at trial." *BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*, 2024 WL 4229312, at *4 (S.D. Tex. Sept. 18, 2024) (cleaned up). Here, Defendants do not claim that the supplement would delay the case or prejudice their defense. Nor could they. Fact discovery remains ongoing, a trial date has not been set, and there is no change to Plaintiffs' theory of the case. Moreover, the proposed supplement directly relates to the theories already alleged in the Complaint – and upheld by the Court at the motion-to-dismiss stage. As such, adding these supplemental allegations will not "severely prejudice defendant or interfere with the trial setting." *DiSalvatore*, 2015 WL 12941884, at *2.

Defendants have also been aware of most or all of the additional facts and allegations in the supplement for months or longer. Each of the proposed supplemental disclosures is a result of

the SEC and DOJ investigations, which Defendants have been involved in since the inception of this case. The information is therefore not new to Defendants. While Plaintiffs will require some additional document discovery related to the new allegations in the supplement, this is not a wholesale reopening of document discovery. Defendants, in fact, do ***not*** (and could not) claim that the proposed supplement would unduly prejudice them on these grounds. *See Good Sportsman*, 2006 WL 8440722, at *3 (finding no prejudice where Defendants knew of plaintiffs proposed allegations for six months and discovery remained ongoing).

Instead, Defendants claim that "those corrective disclosures needed to be included and assessed as part of the request for class certification." Ex. J at 2. But that is incorrect. As an initial matter, the supplemental allegations do not expand the Class Period or amend the Class definition. Those remain entirely the same. Defendants nevertheless assert that all corrective disclosures must occur during the Class Period. Therefore, Defendants insist, Plaintiffs must extend the Class Period to the last alleged corrective disclosure. But Defendants' argument rests on a faulty premise.

"[T]he Supreme Court could have held that as a matter of law Plaintiffs cannot establish loss causation because the corrective disclosures . . . were made several months after the Class Period," but it "did not so hold." *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1023 (S.D. Cal. 2006) (upholding damages claims for stock drops that occurred seven, nine, and ten months ***after*** the class period ended). Thus, courts have repeatedly found that "[w]here, as here, details of wrongdoing emerge in the Class Period and ***a series of disclosures continues beyond it, no rule prohibits loss causation as to the later events***." *In re FirstEnergy Corp.*, 2022 WL 681320, at *29 (S.D. Ohio Mar. 7, 2022). *See Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 942 (C.D. Cal. 2012) ("Gulf's suggestion that Plaintiffs cannot suffer any loss as a result of fraud that was not disclosed until after the close of the class period is incorrect."); *In re Connetics Corp. Sec.*

- 15 -

*Litig.*, 2008 WL 3842938, at *11 (N.D. Cal. Aug. 14, 2008) ("The Court also agrees with plaintiffs that they may allege loss causation based on a disclosure that occurred the day after the end of the class period."). There is therefore no requirement that the Class Period must encompass all alleged corrective disclosures in order for the Class to recover damages for these more recent corrective events. As a result, there is no need for class certification briefing to be reopened.[4]

However, even assuming *arguendo* that class certification briefing did need to be reopened to extend the Class Period, that would not result in the degree of prejudice required to deny Plaintiffs' Motion. Indeed, any prejudice could be easily addressed by allowing supplemental briefing on the extended portion of the Class Period. Indeed, Defendants' counsel themselves suggested this procedure and said it would obviate any objection to supplementation: "[W]e can agree not to oppose your motion to supplement if you agree to supplemental class certification briefing addressing the supplemental allegations." *See* Ex. L at 1. As the above authority makes clear, however, Plaintiffs need not extend the Class Period to encompass all corrective disclosures;

---

[4] Supplementing the Complaint now will also prevent Defendants from attempting to avoid producing relevant documents by claiming these events are not contained in the Complaint. This is not mere speculation. Defendants are currently using the fact that these recent events were not pled in the Complaint – a Complaint that predated these events – to resist document discovery, despite the fact that the supplemental allegations relate to the claims ***already alleged*** in the ***current*** Complaint, including, *inter alia*: (i) data manipulation in Cassava's clinical and pre-clinical research; (ii) Cassava's incomplete Class Period SEC disclosures that the Company was forced to supplement regarding the Phase 2b trial; and (iii) Dr. Wang's extensive financial conflicts of interest. *See* ECF 221 at 5-7. Of course, Defendants' objection is misplaced as "[t]here is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate." *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021); *id*. at *6 (permitting discovery of events eight months after class period); *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (seven months after class period). Discovery into these post-Class Period events is therefore appropriate. Supplementation of the Complaint will put Defendants' baseless objection to rest, which is yet another benefit of supplementation.

the current Class Period and Class definition suffice.  Accordingly, additional class certification briefing is unnecessary.[5]

### D.     A Continuance Is Available, but Unnecessary

A continuance is available, but unnecessary, because a trial date has not been set.  ECF 146. While the Court may grant a continuance, ample time remains to complete any potential additional discovery related to the proposed supplement.  Thus, all four factors support that there is good cause to grant Plaintiffs leave to supplement their Complaint.

## VI.    THE RELEVANT FACTORS WEIGH IN FAVOR OF SUPPLEMENTING THE COMPLAINT

As set forth above, courts consider five factors in determining whether to grant a party leave to supplement a complaint under Rule 15(d): (i) undue delay; (ii) bad faith or dilatory motive; (iii) repeated failure to cure deficiencies by previous amendments; (iv) undue prejudice to the opposing party; and (v) futility of the amendment.  *See SGIC Strategic*, 839 F.3d at 428.

Here, none of the relevant factors provides a "substantial reason to deny" Plaintiffs' request.  *Id.* (cleaned up).  In fact, Defendants do not claim that the motion is made in bad faith or that it is futile.  Nor do Defendants claim that Plaintiffs have repeatedly failed to address deficiencies in their pleading.  Thus, three of the five factors are undisputed, and all of them weigh

---

[5]    In response, Defendants' cite a smattering of inapplicable out-of-circuit cases.  In *Leykin*, the court did not even address this issue because, unlike here, the plaintiffs "d[id] not adequately plead a securities fraud" and, thus, "the issue whether extending the class period is warranted need not be addressed."  *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 237 n.3 (S.D.N.Y. 2006), *aff'd* 216 F. App'x 14 (2d Cir. 2007).  Similarly, *Lighthouse* (which relies on *Leykin*) concerned inactionable claims where the corrective disclosures were (unlike here) not connected to the fraud.  *Lighthouse Fin. Group v. Royal Bank of Scot. Grp., PLC*, 2013 WL 4405538, at *1, *10, *12 (S.D.N.Y. Aug. 5, 2013), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383 (2d Cir. 2015).  Here, by contrast, Plaintiffs already have sufficiently pled loss causation based on the corrective disclosures alleged in the Complaint, and Defendants do not dispute that Plaintiffs have now sufficiently alleged loss causation for the three new partial corrective disclosures that continued after the Class Period based on recently revealed information.

- 17 -

in favor of granting leave to file the supplement under Rule 15. The two factors that Defendants do dispute – timeliness and prejudice – both weigh in favor of supplementation, as Plaintiffs did not delay in bringing their supplemental allegations and Defendants' purported prejudice – reopening class certification briefing – is illusory. Accordingly, leave to supplement the Complaint "should be granted." *Entergy Miss., Inc. v. Marquette Transp. Co.*, 742 F. App'x 800, 803 (5th Cir. 2018) (analyzing amendment under Rule 15(a)).

### A.    Undisputed: No Bad Faith or Dilatory Motive

Defendants do not contend that this motion is brought in bad faith or for dilatory motive. As discussed in §III.A., *supra*, Plaintiffs' motion to supplement arises from subsequent, post-Complaint events. Supplementation thus supports and expands Plaintiffs' claims by including the: (i) June 28, 2024 Wang indictment; (ii) the 8-K; and (iii) July 17, 2024 Barbier and Burns resignations; and September 26, 2024 SEC Charges. It also provides notice to Defendants of the additional false and misleading statements. Therefore, there is no bad faith or dilatory motive. *DT Apartment Grp., LP v. CWCaptial, LLC*, 2012 WL 4740488, at *3 (N.D. Tex. Oct. 3, 2012) ("Examples of behavior that qualifies as bad faith include supplementing a pleading in order to destroy federal jurisdiction or intentionally delaying filing a supplement despite knowing all the relevant facts."). This factor weighs in favor of supplementation.

### B.    Undisputed: No Repeated Failure to Supplement

It is undisputed that Plaintiffs have not repeatedly failed to amend or supplement their pleading. Plaintiffs filed their consolidated complaint on August 18, 2022, and Defendants moved to dismiss the consolidated complaint on October 25, 2022. The Court denied Defendants' motion on May 11, 2023. ECF 104. Thereafter, Plaintiffs filed a motion to supplement the consolidated complaint on February 22, 2024, which was granted on June 12, 2024. ECF 129, 175. Plaintiffs then filed the operative Complaint on June 13, 2024. ECF 176. Subsequent, recent events,

however, have prompted further supplementation to the Complaint. Thus, Plaintiffs have not "'repeated[ly] fail[ed] to cure deficiencies by previous amendments,'" *SGIC Strategic*, 839 F.3d at 428. This factor, too, counsels in favor of granting the motion.

### C.    The Motion Is Timely

A court cannot deny leave to amend on grounds of delay based on the "mere passage of time." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (the "mere passage of time need not result in refusal of leave to amend; on the contrary, it is only ***undue delay*** that forecloses amendment"). Here there was no undue delay because "'the facts underlying the [supplemented] complaint'" did not begin to occur until June 28, 2024, and continued through September 26, 2024 – months ***after*** Plaintiffs moved for leave to file their first supplemented Complaint. *See Hegwood v. Ross Stores, Inc.*, 2006 WL 8437334, at *2 (N.D. Tex. June 26, 2006) (finding amendment timely where plaintiff lacked "the information which forms the basis for the proposed amendment [or supplement] . . . at the time they filed their complaint") (citing *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996)).

Here, Plaintiffs expeditiously advised Defendants of their intention to supplement the Complaint and provided them with a draft of the new allegations within two days of Barbier's and Burns's resignations on July 17, 2024. *See* §III.A., *supra*. The Court then advised Plaintiffs to wait to supplement the Complaint until after the September 30, 2024 hearing with Magistrate Judge Bemporad. *See id.* When the SEC Charges were announced days before that hearing, on September 26, 2024, rather than burdening the Court with *seriatim* supplements, Plaintiffs began updating their supplemental allegations with the information contained in the SEC Charges. *See id.* On October 18, 2024, Plaintiffs then provided Defendants with a draft of the completed allegations. *See Hudson v. L&W Supply Corp.*, 2009 WL 10693829, at *5 (S.D. Tex. June 18, 2009) (noting "one month is not 'undue' delay"). After Defendants refused to stipulate to

Plaintiffs' supplement on October 23, 2024, Plaintiffs prepared and brought this Motion. Thus, the supplement is timely and weighs in favor of granting Plaintiffs' Motion.

### D. Supplementation Does Not Unduly Prejudice Defendants

Defendants will not suffer undue prejudice if the Court grants the Motion. In certain situations, a defendant is prejudiced if an added claim would require the defendant "'to reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court.'" *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (alterations in original); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) ("Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial.").

Here, however, "there is no undue prejudice as the supplement does not change or add legal theories." ECF 175 at 4. Indeed, Defendants do not assert that Plaintiffs are attempting to present a new claim or legal theory. Nor could they, for the reasons already explained. *See* §V.C., *supra*. Instead, Defendants claim they would be prejudiced **only** in the event class certification briefing were reopened. But, for the reasons already stated, Defendants' purported prejudice is illusory; there is no reason to reopen class certification briefing. *See id.* Therefore this factor supports granting Plaintiffs' Motion.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to supplement the Complaint and allow Plaintiffs to supplement the Complaint with the allegations reflected in Exhibit A, filed herewith.

DATED:  November 13, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)


*/s/ Kevin A. Lavelle*

KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com


Counsel for Additional Plaintiff Manohar K. Rao

- 21 -