IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES INC. SECURITIES LITIGATION § § § § This Document Relates to: § § ALL ACTIONS § § | Master File No. 1:21-cv-00751-DAE  CLASS ACTION |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTED COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1
**FACTUAL BACKGROUND** ............................................................................................... 2
**PROCEDURAL BACKGROUND** ...................................................................................... 3
**LEGAL STANDARD** .......................................................................................................... 4
**ARGUMENT** ....................................................................................................................... 5
  I.   Plaintiffs Delayed Filing this Motion Until After Class Certification Briefing Ended ................................................................................................................. 6
  II.  The Proposed Second Supplemented Complaint Alleges New Corrective Disclosures Outside the Class Period, Requiring that the Class Period Be Extended ............................................................................................................ 7
  III. Even if the Class Period Is Not Extended, the Newly Alleged Corrective Disclosures Impact Class Certification ............................................................. 8
       A.  Newly Alleged Corrective Disclosures Must Be Considered in the Court's Price Impact Analysis .................................................................. 9
       B.  Newly Alleged Corrective Disclosures Must Be Analyzed in Determining Whether Damages Can Be Measured on a Classwide Basis ............................................................................................................ 10
  IV.  Granting Plaintiffs' Motion Without Reopening Class Certification Briefing Would Severely Prejudice Defendants ............................................................ 11
  **CONCLUSION** ............................................................................................................... 12

# **TABLE OF AUTHORITIES**

## **Cases**

*Air Force Officer v. Austin*,
  2022 WL 1240856 (M.D. Ga. Apr. 27, 2022) ............................................................................5

*In re Am. Int'l Refinery, Inc.*,
  676 F.3d 455 (5th Cir. 2012) ..................................................................................................11

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
  2023 WL 4865617 (S.D.N.Y. July 31, 2023) ............................................................................6

*In re Apache Corp. Sec. Litig.*,
  2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ..............................................................................10

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F.4th 74 (2d Cir. 2023) .......................................................................................................10

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ..........................................................................................................1, 8, 9

*Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Oao*,
  811 F. Supp. 2d 853 (S.D.N.Y. 2011) ......................................................................................7

*In re BP p.l.c. Sec. Litig.*,
  2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) ..........................................................................11

*Burchfield v. Corel Corp.*,
  2013 WL 12120088 (N.D. Cal. Sept. 12, 2013) ........................................................................5

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...............................................................................................................2, 10

*Crowley v. Collier*,
  2024 WL 1220170 (S.D. Tex. Feb. 16, 2024) ...........................................................................5

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) ..................................................................................................10

*DW Volbleu, LLC v. Honda Aircraft Co., LLC*,
  2024 WL 169569 (E.D. Tex. Jan. 16, 2024) ...........................................................................11

*Fahim v. Marriot Hotel Servs., Inc.*,
  551 F.3d 344 (5th Cir. 2008) ...............................................................................................4, 11

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
  594 U.S. 113 (2021) .......................................................................................................2, 9, 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................................................................................9

*Jones v. Robinson Prop. Grp., L.P.*,
  427 F.3d 987 (5th Cir. 2005) ....................................................................................................5

*King v. Life School*,
    2011 WL 5242464 (N.D. Tex. Nov. 3, 2011)..................................................................4, 12

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)..................................................................................................7

*Leykin v. AT & T Corp.*,
    423 F. Supp. 2d 229 (S.D.N.Y. 2006)..................................................................................7

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013).....................................................................1, 7

*Lopez v. City of Dallas, Tex.*,
    2004 WL 2026804 (N.D. Tex. Sept. 9, 2004).......................................................................5

*Lozano v. Ocwen Fed. Bank, FSB*,
    489 F.3d 636 (5th Cir. 2007) ................................................................................................7

*Marable v. Dep't of Com.*,
    857 F. App'x 836 (5th Cir. 2021) .........................................................................................4

*Mayeaux v. Louisiana Health Serv. & Indem. Co.*,
    376 F.3d 420 (5th Cir. 2004) .............................................................................................11

*Navarro v. Microsoft Corp.*,
    214 F.R.D. 422 (N.D. Tex. 2003) ..................................................................................5, 12

*Neely v. Khurana*,
    2009 WL 1605649 (N.D. Tex. June 5, 2009) ................................................................4, 12

*Ramirez ex rel. Ramirez v. Bexar Cnty., Texas*,
    2011 WL 1627381 (W.D. Tex. Apr. 28, 2011)...................................................................11

*S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,
    315 F.3d 533 (5th Cir. 2003) ............................................................................................4, 5

*Saad Maura v. Scotiabank Puerto Rico*,
    328 F.R.D. 14 (D.P.R. 2018) ................................................................................................5

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ............................................................................................5, 7

*Matter of Southmark Corp.*,
    88 F.3d 311 (5th Cir. 1996) ..............................................................................................5, 7

*Strong v. Green Tree Servicing, L.L.C.*,
    716 F. App'x 259 (5th Cir. 2017)........................................................................................11

*Tan v. Quick Box, LLC*,
    2022 WL 17184568 (S.D. Cal. Nov. 23, 2022) ....................................................................6

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ................................................................................................8

Defendants submit this response to Plaintiffs' Opposed Motion for Leave to File Second Supplemental Complaint. ECF 252 ("Motion"). Because Plaintiffs' Motion seeks to introduce new allegations that fundamentally affect class certification, the Court either should deny the Motion or order that class certification briefing be reopened.

## INTRODUCTION

Plaintiffs' proposed Second Supplemental Complaint alleges entirely new "corrective disclosures" that occurred months after the end of the class period. *See* ECF 259. Plaintiffs allege these new disclosures caused them loss and directly relate to their claims for damages. *See id.*, Supp. ¶¶ 8-27. But these disclosures were not included in Plaintiffs' Motion for Class Certification, have not been analyzed by either side's expert, and were not the subject of *any* class certification briefing. Granting Plaintiffs' request thus would require reopening class certification briefing for a host of reasons.

For one, the Second Supplemental Complaint's allegations would require extending the class period. The newly alleged corrective disclosures occurred nearly a year *after* the alleged class period, and disclosures after the class period "cannot be a corrective disclosure sufficient to establish loss causation." *E.g.*, *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013) (so holding), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015). Extending the class period would impact class certification in several respects, including by lengthening the period during which Plaintiffs would need to prove that the market for Cassava's stock was "efficient." *See Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988).

What's more, contrary to Plaintiffs' assertions, the newly alleged disclosures fundamentally alter class certification regardless of whether the class period is extended. Among other things, the disclosures would need to be analyzed when determining whether Defendants can

1

demonstrate a lack of "price impact," *see Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021), and when determining whether damages reliably can be established on a classwide basis, *see Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

Class certification must be evaluated and decided based on the *operative* complaint. Plaintiffs' Motion, however, seeks to insert a *new* operative complaint with *new* corrective disclosures beyond the class period. Accordingly, the Court either should deny Plaintiffs' Motion, or reopen class certification briefing to allow the parties to address the newly alleged corrective disclosures.

## **FACTUAL BACKGROUND**

In August 2021, a group of short-sellers submitted a Citizen Petition to the FDA, claiming to identify anomalies in the science underlying simufilam. Plaintiffs filed this action shortly thereafter, based on the allegations raised in the Citizen Petition. The FDA denied the Citizen Petition in February 2022.

Around the time Plaintiffs filed this action, the DOJ and the SEC commenced investigations inquiring into the Citizen Petition's allegations. On June 28, 2024, a federal grand jury in Maryland returned a criminal indictment against Dr. Hoau-Yan Wang. Dr. Wang, who is employed as a professor at the School of Medicine of the City University of New York, previously served as a scientific collaborator and advisor to Cassava. The indictment alleges that Dr. Wang manipulated or otherwise fabricated certain research results relating to simufilam. Cassava terminated its consulting relationship with Dr. Wang before his indictment. The criminal case against Dr. Wang is ongoing.

On September 26, 2024, Cassava announced that it had reached a settlement with the SEC of negligence-based disclosure charges that resolved the SEC's investigation of the Company. The

same day, Cassava also announced that it did not anticipate DOJ bringing charges against or seeking a resolution with the Company.

## **PROCEDURAL BACKGROUND**

Plaintiffs filed their first motion to supplement the complaint on February 22, 2024, asserting that an article published in *Science* on October 12, 2023 was a new "corrective disclosure" that allegedly revealed the falsity of Defendants' prior statements. ECF 129. The First Supplemented Complaint extended the proposed class period to cover the newly alleged disclosure. *Id.* The Court granted Plaintiffs' motion on June 12, and Plaintiffs filed the First Supplemented Complaint on June 13. ECF 175; ECF 176.

On March 11, the Court issued a Scheduling Order establishing July 19, 2024 as the deadline for amending or supplementing pleadings. ECF 146; ECF 147.

Plaintiffs filed their Motion for Class Certification two days later on March 13, supported by an expert report from Dr. Steven Feinstein. *See* ECF 148. In that motion, Plaintiffs argued (i) that the market for Cassava stock was "efficient" during the class period alleged in the First Supplemented Complaint, and (ii) that classwide damages could reliably be measured based on the "corrective disclosures" alleged in the First Supplemented Complaint.

Defendants filed their Opposition to Class Certification on June 28, supported by an expert report from Dr. Rene Stulz. *See* ECF 179. Among other things, Defendants argued (i) that Plaintiffs failed to establish Cassava's market was "efficient" during the class period alleged in the First Supplemented Complaint, (ii) that there was no "price impact" associated with the corrective disclosures alleged in the First Supplemented Complaint, and (iii) that Plaintiffs failed to show that classwide damages could reliably be measured based on those corrective disclosures.

3

Plaintiffs filed their Reply in Support of Class Certification on August 23, supported by a rebuttal report from Dr. Feinstein. ECF 214. Defendants filed their Surreply on October 4, ECF 227, and Plaintiffs filed their Response to Defendants' Surreply on October 15, ECF 231.

Plaintiffs filed the instant Motion on November 13, seeking to file a Second Supplemented Complaint alleging new "corrective disclosures" that occurred on June 28, July 1, July 17, and September 26, 2024. ECF 252. The Second Supplemented Complaint specifically alleges that these new disclosures caused Plaintiffs loss and seeks damages stemming from such losses. *Id.*, Supp. ¶¶ 8-27.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 16 governs amendments to pleadings after a scheduling order's deadline to amend has passed. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Marable v. Dep't of Com.*, 857 F. App'x 836, 838 (5th Cir. 2021). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15…apply to the district court's decision to grant or deny leave." *S&W Enters.*, 315 F.3d at 536.

Four factors determine whether there is good cause under Rule 16: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* at 535. When determining the extent of potential prejudice, courts consider whether an amendment would delay proceedings, restart a case at an earlier stage, or limit a party's ability to present their case. *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008); *see, e.g., King v. Life School*, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (finding prejudice because the amendment would "require essentially restarting" the case at an earlier stage); *Neely*

4

*v. Khurana*, 2009 WL 1605649, at *5-6 (N.D. Tex. June 5, 2009) (finding prejudice because case had been pending for 18 months); *Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 424 (N.D. Tex. 2003) (finding prejudice because new allegations raised potential new defenses).

If the movant satisfies Rule 16's requirements, the court then determines whether to grant leave under Rule 15. *S&W Enters.*, 315 F.3d at 536. And when considering whether to grant leave to supplement or amend under Rule 15, courts must consider any "undue delay," "dilatory motive on the part of the movant," or "undue prejudice to the opposing party by virtue of allowance of the amendment." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *see also Smith v. EMC Corp.,* 393 F.3d 590, 595 (5th Cir. 2004); *Matter of Southmark Corp.*, 88 F.3d 311, 315 (5th Cir. 1996).

## ARGUMENT

To date, class certification proceedings have been premised on the First Supplemented Complaint, which alleges a series of corrective disclosures ending on October 12, 2023. Plaintiffs' Motion, however, now seeks to inject a *new* operative complaint in the middle of these proceedings, with new corrective disclosures extending to September 26, 2024.

An amended or supplemented complaint "supersedes a motion for class certification that is keyed to a prior version of the complaint." *Crowley v. Collier*, 2024 WL 1220170, at *1 (S.D. Tex. Feb. 16, 2024), *report and recommendation adopted,* 2024 WL 1221578 (S.D. Tex. Mar. 21, 2024) (citing *Burchfield v. Corel Corp.*, 2013 WL 12120088, at *1 (N.D. Cal. Sept. 12, 2013) and *Saad Maura v. Scotiabank Puerto Rico*, 328 F.R.D. 14, 23 (D.P.R. 2018)). Thus, courts regularly deny motions for class certification as moot when a plaintiff seeks to amend or supplement their complaint while the motion is pending. *E.g.*, *Lopez v. City of Dallas, Tex.*, 2004 WL 2026804, at *11 (N.D. Tex. Sept. 9, 2004) (dismissing motion for class certification as moot due to "the anticipated filing" of a further amended complaint); *see also Air Force Officer v. Austin*, 2022 WL

5

1240856, at *3 (M.D. Ga. Apr. 27, 2022) ("Given that Plaintiff's Second Amended Class Action Complaint will supersede her former pleading, her Motion to Certify Class and Appoint Counsel [has] to be denied as moot."). Alternatively, courts will order further class certification briefing to address new allegations in an amended or supplemented complaint. *E.g.*, *Ap-Fonden v. Goldman Sachs Grp., Inc.*, 2023 WL 4865617, at *8 (S.D.N.Y. July 31, 2023) (ordering supplemental class certification briefing "in light of the amendments to the operative complaint"); *Tan v. Quick Box, LLC*, 2022 WL 17184568, at *2 (S.D. Cal. Nov. 23, 2022) (vacating class certification briefing schedule due to plaintiffs' motion for leave to amend complaint).

Granting Plaintiffs' request here would require, at a minimum, that class certification briefing be reopened to address the new corrective disclosures alleged in the Second Supplemental Complaint. For one, the new disclosures occurred months *after* the class period, requiring that the class period be extended. But even if the class period did not need to be extended, the disclosures still would fundamentally affect class certification. Among other things, such disclosures would be relevant to evaluating price impact and determining whether damages reliably can be measured on a classwide basis.

If the Court grants Plaintiffs' Motion without reopening class certification briefing, the parties will not have *any* opportunity to address the new disclosures' impact on class certification. Such an outcome would prejudice Defendants, effectively barring them from presenting a full defense to Plaintiffs' claims.

**I.    Plaintiffs Delayed Filing this Motion Until After Class Certification Briefing Ended**

Plaintiffs could have brought this Motion at any point after, at the very latest, the September 30 status conference, while class certification briefing was ongoing. They did not. Instead, Plaintiffs waited until *after* class certification briefing closed, stripping Defendants of any ability to address the new disclosures' impact on class certification. Such dilatory tactics support denying

6

Plaintiffs' Motion, or at the very least reopening class certification briefing. *See, e.g.*, *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007); *Smith*, 393 F.3d at 595; *Southmark Corp.*, 88 F.3d at 315.

## II. The Proposed Second Supplemented Complaint Alleges New Corrective Disclosures Outside the Class Period, Requiring that the Class Period Be Extended

The Second Supplemented Complaint alleges that new "corrective disclosures" related to the DOJ and SEC's investigations occurred on June 28, July 1, July 17, and September 26, 2024. ECF 252. The proposed class period in the operative complaint, however, ended on October 12, 2023. ECF 176.

Because the alleged new revelations occurred "*after* the close of the proposed class period," they "cannot be a corrective disclosure sufficient to establish loss causation." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013) (so holding), *aff'd sub nom. IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383 (2d Cir. 2015); *see also Leykin v. AT & T Corp.*, 423 F. Supp. 2d 229, 243-44 (S.D.N.Y. 2006) (concluding that information cannot serve as a corrective disclosure if it was not disclosed during the class period); *Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Oao,* 811 F. Supp. 2d 853, 858 n.2 (S.D.N.Y. 2011) (citing *Lentell v. Merrill Lynch & Co., Inc.,* 396 F.3d 161, 173 (2d Cir. 2005)) (noting complaint would fail to adequately allege loss causation if corrective disclosure occurred after the class period).[1]

Until recently, Plaintiffs recognized this fact. When Plaintiffs previously sought to amend their complaint to add the alleged October 12 corrective disclosure, they sought to extend the class

---

[1] Plaintiffs criticize Defendants for citing "out-of-circuit cases," Motion at 17 n.4, while conveniently ignoring that *none* of the cases Plaintiffs cite are within the Fifth Circuit. Indeed, courts in the Fifth Circuit have not squarely addressed whether securities plaintiffs can allege corrective disclosures outside the class period, as plaintiffs rarely attempt such a maneuver.

7

period accordingly. *See* ECF 252. This makes good sense, as Plaintiffs seek damages stemming from the price drop supposedly caused by the October 12 disclosure. And that is *precisely* the case here. The Second Supplemented Complaint seeks damages from price drops allegedly caused by the "corrective disclosures" on June 28, July 1, July 17, and September 26, 2024. ECF 252, Supp. ¶¶ 7-28. Because Plaintiffs are seeking to recover for those alleged losses, the class period must be extended to cover the disclosures.

Extending the class period would impact class certification in a host of ways, all of which would need to be addressed in further briefing. Among other things, to invoke the *Basic* presumption, Plaintiffs must show that the relevant market was "efficient" throughout the class period. *See, e.g.*, *Basic*, 485 U.S. at 242; *Unger v. Amedisys Inc.*, 401 F.3d 316, 322-23 (5th Cir. 2005). The Second Supplemented Complaint would require extending the class period by nearly a year, in a period in which Cassava's stock experienced enormous volatility. The impact of such an extension on Plaintiffs' efficiency arguments would need to be analyzed before this Court could make any class certification decision.

### III. Even if the Class Period Is Not Extended, the Newly Alleged Corrective Disclosures Impact Class Certification

Plaintiffs assert the new corrective disclosures are relevant to class certification only if the class period must be extended. Motion at 15-16, 20. This makes no sense. Plaintiffs allege the new corrective disclosures caused Cassava's stock price to drop, that they suffered losses from these drops, and that they are entitled to damages stemming from those losses. *See* ECF 259, Supp. ¶¶ 8-27. Thus, whether the class period is extended or not, the new corrective disclosures are centrally relevant to the class certification inquiry.

A.   **Newly Alleged Corrective Disclosures Must Be Considered in the Court's Price Impact Analysis**

Regardless of whether the new corrective disclosures require extending the class period, they must be considered in evaluating whether Defendants can demonstrate a lack of price impact.

"Price impact is…an essential precondition for any Rule 10b-5 class action." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 282 (2014) (citing *Basic*, 485 U.S. at 242). Although *Basic* can allow a plaintiff to "establish that precondition indirectly" by demonstrating the relevant market is efficient, defendants may defeat the *Basic* presumption "through evidence that an alleged misrepresentation did not actually affect the market price of the stock." *Id.* at 282, 284. "In assessing price impact at class certification, courts 'should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense.'" *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021) (citation omitted). "The district court's task is simply to assess *all* the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Id.* at 126-27 (emphasis added).

Plaintiffs allege that Defendants' misrepresentations "caused Cassava securities to trade at artificially inflated prices" and that "when Defendants' prior misrepresentations and omissions were disclosed or otherwise leaked to the market," Cassava's stock price "declined significantly, as the prior inflation came out of the price." ECF 184 ¶ 495. Plaintiffs thus are "proceeding under the inflation-maintenance theory" of fraud, where "price impact is the amount of price inflation maintained by an alleged misrepresentation." *Goldman*, 594 U.S. at 123. To demonstrate price impact under that theory, Plaintiffs must "point to a negative disclosure about a company and an associated drop in its stock price; allege that the disclosure corrected an earlier misrepresentation; and then claim that the price drop is equal to the amount of inflation maintained by the earlier

9

misrepresentation." *Id.* These are called "corrective disclosures." *Id.* And such "a disclosure is considered corrective only when it 'reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading.'" *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *10 (S.D. Tex. Feb. 9, 2024) (citation omitted). Further, courts must scrutinize each alleged corrective disclosure for any "mismatch between the contents of the misrepresentation and corrective disclosure," as such a "mismatch" would "break[] down" any inference that the alleged misrepresentation "maintained" any inflation in the stock price. *Goldman*, 594 U.S. at 123; *see also Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 105 (2d Cir. 2023) (rejecting class certification due to "insufficient link between the corrective disclosure and the alleged misrepresentations"); *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *11 (same).

It follows that, when adjudicating price impact, the Court must scrutinize *all* corrective disclosures alleged by Plaintiffs. Through their eleventh-hour request to supplement the complaint, Plaintiffs seek to sidestep that required analysis. The Court must provide Defendants an opportunity to address the newly alleged corrective disclosures' implications for price impact.

### B. Newly Alleged Corrective Disclosures Must Be Analyzed in Determining Whether Damages Can Be Measured on a Classwide Basis

In the same vein, the new alleged corrective disclosures must be considered when determining whether damages can be established on a classwide basis.

"Even where plaintiffs seeking class certification show that common issues predominate on questions of liability, they must also present a damages model 'establishing that damages are capable of measurement on a classwide basis.'" *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Any "model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the plaintiffs'] theory" of liability. *Comcast*, 569 U.S. at 35.

"Following *Comcast,* circuit and district courts have rigorously examined proposed damages methodologies in putative class action cases for disconnects between damages and liability" and have not hesitated to deny class certification on that ground. *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (collecting cases). "Plaintiffs cannot avoid this hard look by refusing to provide the specifics of their proposed methodology" and how that methodology applies to the facts. *Id.*

Granting Plaintiffs' request without reopening class certification briefing would avoid this "hard look." *Neither party* has addressed whether Plaintiffs reliably can measure classwide damages based on the newly alleged corrective disclosures. If Plaintiffs are seeking damages stemming from those disclosures, they must demonstrate that such damages can be calculated on a classwide basis. They have had no opportunity to do so, and Defendants have had no opportunity to scrutinize the effect of Plaintiffs' new damages allegations on the availability of classwide damages.

## IV. Granting Plaintiffs' Motion Without Reopening Class Certification Briefing Would Severely Prejudice Defendants

The relevance of Plaintiffs' new allegations to class certification is plain. If the Court permits these new allegations without providing Defendants an opportunity to address their implications for certification, Defendants will have been barred from presenting a full defense to Plaintiffs' claims. Such severe prejudice would more than warrant denying leave to amend. *See, e.g.*, *Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x 259, 264 (5th Cir. 2017); *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 467 (5th Cir. 2012); *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004); *Fahim*, 551 F.3d at 349; *DW Volbleu, LLC v. Honda Aircraft Co., LLC*, 2024 WL 169569, at *5 (E.D. Tex. Jan. 16, 2024); *Ramirez ex rel. Ramirez v.*

*Bexar Cnty., Texas*, 2011 WL 1627381, at *2 (W.D. Tex. Apr. 28, 2011); *King*, 2011 WL 5242464, at *2; *Neely*, 2009 WL 1605649, at *6; *Navarro*, 214 F.R.D. at 424.

## **CONCLUSION**

For these reasons, the Court either should deny Plaintiffs' Opposed Motion for Leave to File a Second Supplemented Complaint, or reopen class certification briefing to allow the parties to address the newly alleged corrective disclosures.

Dated: November 27, 2024                    Respectfully submitted,

/s/ *Gregg Costa*
Gregg Costa (Tx. Bar No. 24028160)
Trey Cox (Tx. Bar No. 24003722)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: 346.718.6600
gcosta@gibsondunn.com
tcox@gibsondunn.com

Monica K. Loseman (admitted *pro hac vice*)
Scott Campbell (admitted *pro hac vice*)
John Turquet Bravard (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202-2642
Telephone: 303.298.5700
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
mmaloney@gibsondunn.com

*Counsel for Defendants Cassava Sciences, Inc. and Eric J. Schoen*

Douglas W. Greene
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.847.7090
dgreene@bakerlaw.com

C. Shawn Cleveland
BAKER & HOSTETLER LLP
2850 N. Harwood Street, Suite 1100
Dallas, TX 75201
Telephone: 214.210.1200
scleveland@bakerlaw.com

*Counsel for Defendants Remi Barbier and Lindsay Burns*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 27, 2024, a true and correct copy of the foregoing was served electronically upon each attorney of record.

/s/ *Gregg Costa*
Gregg Costa