IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES INC. SECURITIES LITIGATION | § § § | Master File No. 1:21-cv-00751-DAE |
| | § § | CLASS ACTION |
| This Document Relates to: | § § | |
| ALL ACTIONS | § § § | |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

I.  Retail Meme-Stock Trading Caused Cassava's Stock Price to Swing Wildly in 2021 ................................................................................................................ 3

II.  Plaintiffs' Allegations Target Aspects of Simufilam's Research ...................... 5

PROCEDURAL BACKGROUND ........................................................................... 5

LEGAL STANDARD .............................................................................................. 8

ARGUMENT ........................................................................................................... 9

I.  The Magistrate Judge Committed Serious Procedural Errors in Issuing the R&R .... 9

II.  Plaintiffs Fail to Demonstrate that the Markets for Cassava Stock and Options Were "Efficient" During the Class Period ...................................................... 11

    A.  The R&R Misconstrues Defendants' Arguments Regarding Market Efficiency ................................................................................................ 12

    B.  The R&R Fails to Account for the Many Significant Movements in Cassava's Price that Occurred in the Absence of News ............................ 13

    C.  On the Unusual Facts of this Case, Plaintiffs Fail to Carry Their Burden to Prove the Relevant Markets Were "Efficient" During the Class Period ............ 14

III.  Defendants Have Demonstrated a Lack of Price Impact from the Alleged Corrective Disclosures .................................................................................... 15

    A.  The Complete Lack of Statistically Significant Price Movements for Most of the Alleged Corrective Disclosures Is Relevant to Price Impact .............. 15

    B.  Defendants Do Not "Concede" Price Impact ............................................ 16

    C.  The R&R Ignores Defendants' Arguments that There Is a Mismatch Between the Alleged Misstatements and the Alleged Corrective Disclosures ............................................................................................... 17

IV.  Plaintiffs Fail to Show that Classwide Damages Can Be Reliably Calculated in a Manner Consistent with Their Theory of Liability .......................................... 18

V.  The Named Plaintiffs Were Meme Traders Who Did Not Rely on Any Representation of the Company, Undermining Typicality ............................... 20

CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).................................................................................................2, 12

*In re Anadarko Petroleum Corp. Sec. Litig.*,
   Case No. 4:20-cv-00576 (S.D. Tex.), ECF No. 237 ............................................10

*In re Apache Corp. Sec. Litig.*,
   2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ........................................15, 16, 17, 18

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)........................................................................................1, 2, 13

*Bell v. Ascendant Sols., Inc.*,
   422 F.3d 307 (5th Cir. 2005) ................................................................................11

*In re BP p.l.c. Sec. Litig.*,
   2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .......................................................18

*Bratya SPRL v. Bed Bath & Beyond Corp.*,
   2024 WL 4332616 (D.D.C. Sept. 27, 2024) ...................1, 2, 11, 12, 13, 14, 15, 16

*Cammer v. Bloom*,
   711 F. Supp 1264 (D.N.J. 1989) ............................................................................5

*Camper v. Calumet Petrochemicals, Inc.*,
   584 F.2d 70 (5th Cir. 1978) ..................................................................................10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)........................................................................................1, 2, 19

*Dallas Cnty., Tex. v. MERSCORP, Inc.*,
   2012 WL 6208385 (N.D. Tex. Dec. 13, 2012) ....................................................10

*Davidson v. Georgia-Pac., L.L.C.*,
   819 F.3d 758 (5th Cir. 2016) ..................................................................................8

*Edwards v. City of Tupelo, Mississippi*,
   2019 WL 4643989 (N.D. Miss. Sept. 24, 2019) ..................................................10

*George v. China Auto. Sys., Inc.*,
   2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...................................................13, 14

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
   99 F.4th 770 (5th Cir. 2024) ..................................................................1, 3, 9, 10, 11

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
   594 U.S. 113 (2021)......................................................................................2, 15, 17, 18

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
   2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) ...............................................15, 16

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ............................................................5, 13

*Madison v. Chalmette Ref., L.L.C.*,
637 F.3d 551 (5th Cir. 2011) ....................................................................9

*Merrill v. S. Methodist Univ.*,
806 F.2d 600 (5th Cir. 1986) ..................................................................10

*O'Neil v. Appel*,
165 F.R.D. 479 (W.D. Mich. 1996) ........................................................14

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ................................18, 19

*Prantil v. Arkema Inc.*,
986 F.3d 570 (5th Cir. 2021) ....................................................................9

*Ramirez v. Exxon Mobil Corp.*,
2023 WL 5415315 (N.D. Tex. Aug. 21, 2023) ........................................17

*Residents of Gordon Plaza, Inc. v. Cantrell*,
25 F.4th 288 (5th Cir. 2022) ..................................................................10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015) ..................................................14

*Serfaty v. Int'l Automated Sys., Inc.*,
180 F.R.D. 418 (D. Utah 1998) ..............................................................14

*Shupe v. Rocket Companies, Inc.*,
2024 WL 4349172 (E.D. Mich. Sept. 30, 2024) ....................................16

*Sicav v. James Jun Wang*,
2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ............................................19

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ....................................................1, 2, 9, 11, 12

*In re Vale S.A. Sec. Litig.*,
2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ............................................19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..................................................................................9

**Statutes**

28 U.S.C. § 636..............................................................................................8

**Rules**

Federal Rule of Civil Procedure 23 ..............................................3, 9, 10, 20

Federal Rule of Civil Procedure 72 ............................................................8

Defendants submit these objections to the Magistrate Judge's Report and Recommendation on Plaintiffs' Opposed Motion for Class Certification. ECF 254 ("R&R"). The R&R fails to engage with the unusual market dynamics that impacted Cassava's stock during the class period, and errs in concluding that (1) Plaintiffs demonstrate market efficiency under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), *see* R&R at 17-29; (2) Defendants fail to show a lack of price impact from the alleged corrective disclosures, *see* R&R at 29-32; (3) Plaintiffs show that damages can reliably be calculated on a classwide basis under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), *see* R&R at 32-34; and (4) the named Plaintiffs' claims are typical of the purported class, *see* R&R at 12-14.

Adding to these substantive errors are serious procedural ones: The Magistrate Judge rejected Defendants' unopposed request for an evidentiary hearing, *see* R&R at 6-7, refused to consider the Surreply Report submitted by Dr. Rene Stulz, *see* ECF 238, and issued the R&R before either side filed *Daubert* motions. Similar procedural errors led the Fifth Circuit to vacate a class certification ruling just months ago. *See Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 773-74 (5th Cir. 2024).

## INTRODUCTION

The R&R fails to engage with the unusual facts of this case. It dismisses the meme stock phenomenon's impact on the market for Cassava's stock, despite a district court's recently recognizing the phenomenon's implications for class certification. *See Bratya SPRL v. Bed Bath & Beyond Corp.*, 2024 WL 4332616 (D.D.C. Sept. 27, 2024) (denying class certification, concluding market was inefficient due to meme stock phenomenon's impact on stock). The R&R does not even cite the *Bratya* decision.

Instead, in concluding that the relevant markets were "efficient" so that the *Basic* presumption applies, the R&R adopts wholesale Plaintiffs' rote analysis of the *Cammer/Krogman* factors. *See* R&R at 17-29. But these factors are not a "checklist." *Unger v. Amedisys Inc.*, 401

F.3d 316, 325 (5th Cir. 2005). "Nor are they a guarantee of market efficiency." *Bratya*, 2024 WL 4332616, at *11, 14. Rather, the ultimate question is whether it is "reasonable to presume" that class members relied "on the integrity of the price set by the market" for Cassava stock during the class period. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 462 (2013) (quoting *Basic*, 485 U.S. at 245). In this case, it clearly is not. *See* Opp. at 1-16; *Bratya*, 2024 WL 4332616, at *12-19.

And even if the *Basic* presumption somehow applied, Defendants have rebutted it by demonstrating a lack of price impact. *See* G*oldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 126-27 (2021). Plaintiffs do not dispute that the bulk of their alleged "corrective disclosures" are not associated with *any* statistically significant impact on Cassava's price whatsoever. Reply at 19-23. When combined with Defendants' other proffered evidence, this provides compelling reason to conclude that the alleged corrective disclosures did not impact Cassava's stock. The R&R fails to engage with Defendants' arguments and evidence on this point.

Separately, Plaintiffs fail to show how damages can be calculated on a classwide basis, offering nothing but bare, insufficient assertions about the generalized "out-of-pocket" method. *Id.* at 27-30; *see Comcast*, 569 U.S. 27 at 34-35. The market forces impacting Cassava's stock raise obvious difficulties in reliably calculating classwide damages, which Plaintiffs do *nothing* to address. But the R&R, without meaningful discussion, concludes that Plaintiffs' assertions on damages satisfy *Comcast*.

These errors may have been avoided had a hearing been held on class certification, during which Dr. Stulz could have explained the analysis from his Surreply Report filed in response to new arguments and evidence raised by Plaintiffs. But the Magistrate Judge refused to consider that report, did not engage with all the available evidence, and rushed to issue the R&R without a hearing. The process for evaluating a motion to certify must leave room for full consideration of the issues and evidence, which the process here did not. *See Anadarko*, 99 F.4th at 773-74.

Because Plaintiffs fail to show that Rule 23's requirements are satisfied, their Opposed Motion for Class Certification should be denied. The R&R errs in concluding otherwise.

## **FACTUAL BACKGROUND**

## I.    **Retail Meme-Stock Trading Caused Cassava's Stock Price to Swing Wildly in 2021**

In 2021, Cassava was swept up in the "meme stock phenomenon" Indeed, the *only* two stocks in the Russell 2000 that saw higher gains than Cassava in the first half of 2021 were GameStop and AMC Entertainment—the two paradigmatic examples of meme stocks. Opp. Ex. 7. Market participants, business publications, and professional analysts repeatedly described Cassava as a "meme stock" during this period and attributed large movements in Cassava's price to "meme traders." *E.g.*, Opp. Exs. 8-11. Cassava also was included in the Solactive Roundhill Meme Stock Index, which tracks meme stocks. Stulz Rpt. ¶ 66. Moreover, Cassava's stock was the subject of zealous enthusiasm on social media platforms, and was recognized as one of the top-mentioned stocks in the 10-million-member online forum known to drive the meme-stock phenomenon, WallStreetBets. Opp. Exs. 11-12; *see* Stulz Rpt. Exs. 1A & 1B.

Throughout this period, Cassava's stock price frequently underwent massive swings in the absence of any new, value-relevant information about the company.

Specifically, on December 31, 2020—nearly two months after Defendants had released the final Phase 2b clinical trial results, more than a year since the Phase 2a results were public, and after Defendants had supposedly been misrepresenting the merits of Cassava's pre-clinical research for over a decade—Cassava's stock price closed at $6.82 per share. But during January 2021, Cassava's stock price nearly quadrupled, closing near $23 per share on February 1, 2021, despite no new value-relevant news being released.

On February 2, 2021, Cassava released interim 6-month cognition results from its Phase 2 open-label drug safety study. Opp. Ex. 30. Notwithstanding the lack of a placebo control in the

study, the study's small sample size, and the study's relatively short timeframe, Cassava's stock ticker began being mentioned on Reddit and Twitter more than *1,600 times per day*. *See* Stulz Rep. Exs. 1A & 1B.

Virtually no value-relevant news about Cassava was released between February 2 and July 28, 2021. *See* Feinstein Rpt. Exs. 14 & 15. But Cassava's massive price swings continued throughout this period. For example, between February 3 and 5, 2021, Cassava's share price fluctuated from $60 all the way up to $117 before falling back down to $45. No new information was published on those days. That volatility instead was associated with increased social media activity surrounding Cassava's stock. *See* Stulz Rpt. ¶ 82.

Cassava's price continued to fluctuate after February 5, bouncing between $32 and $62 per share until May 2021. Then, between May 13 and July 13, 2021, Cassava's stock price nearly tripled, skyrocketing from about $37 per share to more than $103 per share. And between July 13 to July 16, the stock price dropped to about $80 per share, before rebounding to over $135 per share by July 28. This zigging and zagging occurred during a time when Plaintiffs' expert found that no statistically significant movements in the stock could be attributed to value-relevant news about Cassava. *See* Feinstein Rpt. Exs. 14 & 15. Instead of "news," these enormous swings were attributed to retail trading. *See* Stulz Rpt. ¶¶ 83-84; Opp. Ex. 14.

The day after that $135 closing price, Cassava reported additional results from its Phase 2 open-label study. Market analysts were highly encouraged by this data, which they described as "positive," Opp. Ex. 15, and "better than expected," Opp. Ex. 16. Yet despite these positive results, Cassava's share price *plummeted*, closing at $103 on July 29, 2021, down 29% from the intraday high of $146, and closing at $69 on July 30, 2021, a drop of more than 50% from the intraday high the day before.

II.    **Plaintiffs' Allegations Target Aspects of Simufilam's Research**

In August 2021, a group of short-sellers submitted a Citizen Petition to the FDA, claiming to identify anomalies in the science underlying simufilam. Plaintiffs filed this action soon thereafter, based on the allegations raised in the Citizen Petition. The FDA denied the Citizen Petition in February 2022.

Around the time Plaintiffs filed this action, the DOJ and the SEC commenced investigations inquiring into the Citizen Petition's allegations. On June 28, 2024, a federal grand jury in Maryland returned a criminal indictment against Dr. Hoau-Yan Wang. Dr. Wang, who is employed as a professor at the School of Medicine of the City University of New York, previously served as a scientific collaborator and advisor to Cassava. The indictment alleges that Dr. Wang manipulated or otherwise fabricated certain research results relating to simufilam. Cassava terminated its consulting relationship with Dr. Wang before his indictment. The criminal case against Dr. Wang is pending.

On September 26, 2024, Cassava announced that it had reached a settlement with the SEC of negligence-based disclosure charges that resolved the SEC's investigation of the Company. The same day, Cassava also announced that it did not anticipate DOJ bringing charges against or seeking a resolution with the Company.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Motion for Class Certification on March 13, supported by an expert report from Dr. Steven Feinstein. *See* ECF 148. In arguing that the market for Cassava stocks and options during the proposed class period were "efficient," Plaintiffs and Dr. Feinstein relied entirely on a rote analysis of the factors articulated in *Cammer v. Bloom*, 711 F. Supp 1264 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 477 (N.D. Tex. 2001). Plaintiffs and Dr. Feinstein failed to address (or even mention) how Cassava stock was affected by the "meme stock"

phenomenon, which caused significant volatility in Cassava's stock during the class period divorced from value-relevant news. Feinstein Rpt. ¶¶ 77-218. In fact, they failed to mention *any* of the massive swings in Cassava's price that occurred in the absence of news. *Id.* They also ignored social media's impact on Cassava's stock, ignored short-selling constraints that affected Cassava stock during the class period, and ignored the unique characteristics of the markets for Cassava options. *Id.*

As for damages, Plaintiffs and Dr. Feinstein stated only that they would use the "out of pocket" method to calculate damages. Feinstein Rpt. ¶¶ 219-32. As described by Dr. Feinstein, his proposed "methodology" is "to use…the information set that's available to investors each day of the class period and assess, using all tools available, what would the stock price have been had there been no misrepresentations or omissions." Opp Ex. 2 at 251:20-252:8; *see also* Feinstein Rpt. ¶ 225. Plaintiffs and Dr. Feinstein did not specify which "tools" they would use in such an analysis, made no attempt to apply this general "methodology" to the facts, and provided no explanation whatsoever about how they could account for the unusual dynamics impacting Cassava's stock during the class period. Feinstein Rpt. ¶¶ 219-32.

Defendants filed their Opposition to Class Certification on June 28, supported by an expert report from Dr. Rene Stulz, explaining the many fundamental flaws in Dr. Feinstein's opinions. *See* ECF 179. Among other things, Defendants and Dr. Stulz explained that, as with many meme stocks, many of Cassava's price movements could not be explained by new information and thus were inconsistent with market efficiency. Stulz Rpt. ¶¶ 16-19, 60-94. With respect to damages, Defendants and Dr. Stulz explained how Dr. Feinstein's "methodology" was entirely disconnected from—and in tension with—the circumstances of this case. *Id.* ¶¶ 167-78. Further, Defendants and Dr. Stulz pointed out that the bulk of the "corrective disclosures" alleged by Plaintiffs were not associated with *any* statistically significant movement in Cassava's price. *Id.* ¶¶ 164-65.

Anticipating Plaintiffs would submit one or more additional reports from Dr. Feinstein, Defendants stated they intended to file a *Daubert* motion at a later date. *See* ECF 179 at 17.

Plaintiffs filed their 35-page Reply in Support of Class Certification on August 23, supported by a rebuttal report from Dr. Feinstein. *See* ECF 214. That rebuttal report—which at 110 pages is nearly double the length of Dr. Feinstein's first report—tried to explain away the meme-stock dynamics that impacted Cassava during the class period. For example, in an attempt to salvage his market efficiency opinion, Dr. Feinstein asserted that price swings divorced from value-relevant news *are* consistent with his understanding of efficiency. Feinstein Rebuttal ¶¶ 110-29, 181-85. Despite this assertion, however, Dr. Feinstein also attempted to concoct "economically material" information released on days pointed out in Dr. Stulz's report, despite his earlier characterization of the dates as "non- or lesser-news days." *Id.* ¶¶ 19, 138-75. Anticipating a further report from Dr. Stulz, Plaintiffs also stated they intended to later file a *Daubert* motion. *See* ECF 214 at 11.

A week later, Defendants filed a Motion for Extension of Time to Seek Leave to File Surreply, explaining that Defendants were entitled to respond to the extensive new evidence raised in Plaintiffs' Reply and Dr. Feinstein's rebuttal report. ECF 215; *see* ECF 218. The Magistrate Judge then issued an Order allowing Defendants to file a 20-page Surreply, noting that "[b]ecause Plaintiffs' reply brief presented new evidence, the Court must allow Defendants to respond." ECF 219 at 3. The order instructed, however, that "[t]he parties should not file any new evidence." *Id.* At the time of the order, Dr. Feinstein already had been deposed about the contents of his second report, and Dr. Stulz already had performed substantial work on his Surreply Report.

Defendants filed their Surreply on October 4. ECF 227. Defendants also requested that an evidentiary hearing be held on Plaintiffs' Motion for Class Certification. ECF 228. Consistent with the Magistrate Judge's order, Defendants did not mention any new evidence in their Surreply, instead citing only to evidence already before the Court. *Id.* As an offer of proof showing what

evidence Defendants would have raised, however, Defendants attached Dr. Stulz's Surreply Report to their Request for an Evidentiary Hearing, to inform the Court's decision about whether to hold a hearing. *See* ECF 228.

Plaintiffs filed a response to Defendants' Request for an Evidentiary Hearing on October 14, indicating they did not oppose the request. ECF 229. Plaintiffs then filed their Response to Defendants' Surreply on October 15. ECF 231. They also moved to strike Dr. Stulz's Surreply Report, or in the alternative admit a further report from Dr. Feinstein, on October 16. ECF 232. Plaintiffs attached Dr. Feinstein's proposed report to that motion. *Id.*

Defendants responded to Plaintiffs' motion to strike on October 23, explaining why Defendants were entitled to proffer expert testimony rebutting the new expert opinions submitted with Plaintiffs' Reply. ECF 234. The next day, the Magistrate Judge stuck Dr. Stulz's Surreply Report, citing only the prior order. ECF 238.

The R&R issued three weeks later, rejecting Defendants' request for an evidentiary hearing and recommending that Plaintiffs' Motion for Class Certification be granted. ECF 254. Despite both Plaintiffs and Defendants' indicating they intended to file *Daubert* motions, *see* ECF 179 at 17; ECF 214 at 11, the R&R issued before the parties filed those motions.

## LEGAL STANDARD

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 762 (5th Cir. 2016). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3), meaning they bear the burden of showing not just that the Rule 23(a) requirements are met, but also that common

issues predominate and that a class action is the superior method of adjudicating this case. Fed. R. Civ. P. 23(b)(3).

Plaintiffs must go beyond the "mere pleading" and "affirmatively demonstrate" and "prove" compliance with each of the requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Rule 23 requirements must be established by at least a preponderance of the evidence, *Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011), and Plaintiffs' proffered evidence must be subjected to "rigorous analysis" because "actual, not presumed, conformance" with Rule 23 is "indispensable" to any class certification, *Dukes*, 564 U.S. at 350-51. *See Unger*, 401 F.3d at 322-23 ("Courts have likened the degree of proof required to the standards used in preliminary injunction hearings…or in…12(b)(1) and 12 (b)(2) jurisdiction contexts."); *see also Madison*, 637 F.3d at 554. Reliable evidence is especially important when expert testimony is relevant to the decision to certify. *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021). If expert testimony does not satisfy the *Daubert* standard for reliability, it "cannot 'prove' that the Rule 23(a) prerequisites have been met." *Id*. Plaintiffs' proffered evidence falls far short of this rigorous standard, especially considering the unusual facts of this case.

## ARGUMENT

### I.    The Magistrate Judge Made Serious Procedural Errors in Issuing the R&R

The R&R is riddled with procedural error. For one, the Magistrate Judge refused to consider Dr. Stulz's Surreply Report, which addressed the entirely new expert opinions introduced with Plaintiffs' Reply. The refusal to consider Dr. Stulz's Surreply Report contradicts recent Fifth Circuit precedent. In *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770 (5th Cir. 2024), the defendants filed a motion in the district court seeking leave to file a "sur-reply and accompanying expert rebuttal report in further opposition to Plaintiffs' Motion for Class Certification." ECF 234, Ex. A at 2, 6. The district court denied the motion and subsequently certified the class. *See* ECF 234, Ex. B. The Fifth Circuit vacated the class certification order,

holding the district court abused its discretion by denying the defendants' motion because the defendants were entitled to "an adequate opportunity to respond" to new evidence raised in the plaintiffs' reply. 99 F.4th at 774 (quoting *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022)). On remand, the defendants were permitted to file a surreply and accompanying expert report. *See In re Anadarko Petroleum Corp. Sec. Litig.*, Case No. 4:20-cv-00576 (S.D. Tex.), ECF No. 237.

*Anadarko* thus stands for the proposition that defendants in class certification proceedings must be provided an "adequate opportunity to respond," including through expert testimony if needed, before a court may consider evidence introduced in a plaintiff's reply. *See* 99 F.4th at 773-74 (citations omitted). Given the complexities of this case and the extensive evidence submitted with Plaintiffs' Reply, an "adequate opportunity" here required that Dr. Stulz be permitted to respond to the opinions introduced in Dr. Feinstein's second report. *Id.* Yet the Magistrate Judge, without discussion, struck Dr. Stulz's Surreply Report from the record.

It was also error to reject Defendants' unopposed request for an evidentiary hearing. "Though an evidentiary hearing is not expressly required by Federal Rule of Civil Procedure 23, the Fifth Circuit has indicated that 'if there is any doubt as to the propriety of a class action, a preliminary evidentiary hearing on maintainability is essential.'" *Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2012 WL 6208385, at \*10 (N.D. Tex. Dec. 13, 2012) (quoting *Camper v. Calumet Petrochemicals, Inc.,* 584 F.2d 70, 72 (5th Cir. 1978)); *see also Edwards v. City of Tupelo, Mississippi*, 2019 WL 4643989, at \*5 (N.D. Miss. Sept. 24, 2019) (noting that "a 'district court should ordinarily conduct an evidentiary hearing on this question'" (quoting *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 608 (5th Cir. 1986)). "The Fifth Circuit has typically found error in cases where the trial court failed to hold an evidentiary hearing on the issue of class certification when issues of fact existed as to whether the elements of Rule 23 were satisfied." *MERSCORP*, 2012 WL 6208385, at \*11.

10

There is, to say the least, substantial doubt as to whether a class action is appropriate here, and numerous factual issues bear on that question. Such issues would benefit from live testimony and cross-examination. Indeed, the R&R itself recognizes as such, noting that "Defendants' criticisms of Feinstein's report can be 'brought out through vigorous cross-examination.'" R&R at 27-28 (quoting *Barbier*, 2013 WL 2443217, at *9). But the R&R issued without any hearing.

Moreover, despite both Plaintiffs and Defendants indicating they intended to file *Daubert* motions, *see* ECF 179 at 17; ECF 214 at 11, the R&R issued before such motions were filed. Defendants since have filed their *Daubert* motion. ECF 268. The Court must conduct a full *Daubert* inquiry prior to ruling on class certification. *See Anadarko*, 99 F.4th at 773-74.

As the above procedural errors demonstrate, the R&R fails to meaningfully engage with the complicated facts of this case. Such error taints the entire R&R, leading it to wrongly conclude that Plaintiffs' proposed class should be certified.

## II.    Plaintiffs Fail to Demonstrate that the Markets for Cassava Stock and Options Were "Efficient" During the Class Period

When "considering the certification of securities class actions dependent on the 'fraud on the market' theory" articulated in *Basic*, "a careful certification inquiry is required and findings must be made based on adequate admissible evidence to justify class certification." *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 312 (5th Cir. 2005) (quoting *Unger*, 401 F.3d at 319). Courts must "consider the nature of the market on a case-by-case basis to decide whether the totality of the circumstances supports a finding of market efficiency." *Bratya*, 2024 WL 4332616, at *11 (citation omitted). "Because this inquiry can prove decisive for class certification," courts must apply a "rigorous" standard when evaluating proffered proof of efficiency. *Unger*, 401 F.3d at 322.

In crediting Plaintiffs' rinse-and-repeat recitation of the *Cammer/Krogman* factors, the R&R fails to engage in any meaningful analysis of the unique market dynamics that bore on Cassava's stock during the class period. Instead, the R&R dismisses those dynamics as irrelevant,

11

misconstruing Defendants' arguments and failing to grapple with the many ways that Cassava's stock departed from the workings of an efficient market. *See* R&R 17-29.

**A.    The R&R Misconstrues Defendants' Arguments Regarding Market Efficiency**

The R&R finds "Defendants' meme stock argument to be legally and factually inaccurate" because "Defendants identify no Fifth Circuit case law stating that courts should not apply the *Cammer/Krogman* factors in securities fraud cases when the defendant argues that the stock was a meme stock or that the market was inefficient." R&R at 21.

This conclusion is flawed in many respects. For one, the meme stock phenomenon is relatively new, so it is unsurprising that the Fifth Circuit has not yet addressed it. And in terms of caselaw, the R&R ignores that a federal district court recently recognized meme-stock dynamics in a decision denying class certification. *See Bratya*, 2024 WL 4332616, at *12-19.

In any event, Defendants are *not* arguing that the Court "should not apply the *Cammer/Krogman* factors" or that such factors are irrelevant. *Cf.* R&R at 21. Rather, Defendants argue that, given the unique market forces at play, Plaintiffs' cookie-cutter analysis of these factors is insufficient to establish that the market was "efficient" during the class period. As the Fifth Circuit has long recognized, the *Cammer/Krogman* factors are an "analytical tool," not a "checklist." *Unger*, 401 F.3d at 325. "Nor are they a guarantee of market efficiency." *Bratya*, 2024 WL 4332616, at *11, 14. Instead, the factors are helpful to the extent they illuminate the ultimate question—whether it is "reasonable to presume" that class members relied "on the integrity of the price set by the market" during the class period. *Amgen*, 568 U.S. at 462. If the Court considers *all* the available evidence, as it must, it should conclude the answer to that question is no.

The R&R also misconstrues Dr. Stulz's expert opinions, asserting Dr. Stulz "admitted that he has no evidence Cassava was a meme stock." R&R at 22. That is incorrect. As Dr. Stulz explains, the academic literature surrounding the meme stock phenomenon is developing, and the

academy has yet to arrive at a single, consensus definition of "meme stock." Stulz Rpt. ¶¶ 55-68. Numerous academics and market observers, however, have recognized that the meme stock phenomenon raises serious implications for market efficiency, concluding that affected stocks often behave in a manner inconsistent with efficiency. *Id.* ¶¶ 55-59. Dr. Stulz examined whether Cassava's stock demonstrated such behavior during the class period. *Id.* ¶¶ 60-69. He concluded it did. *Id.*

More fundamentally, the relevant question is *not* whether Cassava should be defined as a "meme stock." The question is whether the market for Cassava's stock was *efficient*. And meme-stock dynamics are relevant to that inquiry, regardless of whether Cassava fits some technical "meme stock" definition. Defendants and Dr. Stulz have identified numerous actual consequences of the meme stock phenomenon on Cassava's stock during the class period, consequences which undermined "the integrity of the price set by the market." *Basic*, 485 U.S. at 245; *see also Bratya*, 2024 WL 4332616, at *9-10. "[T]he Court cannot simply ignore these dynamics…in determining whether [the] market was efficient." *Bratya*, 2024 WL 4332616, at *14. By categorically dismissing Defendants' meme-stock-related evidence, however, the R&R did just that.

**B.    The R&R Fails to Account for the Many Significant Movements in Cassava's Price that Occurred in the Absence of News**

The R&R's dismissal of the meme-stock dynamics that impacted Cassava's stock leads it to ignore swaths of relevant evidence. As explained in Defendants' class certification briefing, Cassava's stock demonstrated enormous volatility during the class period, untethered to material information in the market. Combined with market analysts and media's attributing these swings to retail meme-stock traders, this volatility is compelling evidence that the market for the stock should not be presumed "efficient" merely because Cassava was listed on the Nasdaq and actively traded. *See* Stulz Rpt. ¶¶ 16-19; *Krogman*, 202 F.R.D. at 477 (holding that there was "no efficient market where price movements were random and volatile"); *George v. China Auto. Sys., Inc.*, 2013 WL

3357170, at *12 (S.D.N.Y. July 3, 2013) (same); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119

F. Supp. 3d 1213, 1257 (C.D. Cal. 2015) (same); *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D.

418, 423 (D. Utah 1998) (same); *O'Neil v. Appel*, 165 F.R.D. 479, 503 (W.D. Mich. 1996) (same);

*see also Bratya*, 2024 WL 4332616, at *11-14 (finding market inefficient due to meme stock

phenomenon's impact on stock).

In its discussion of market efficiency, the R&R fails to address *any* of the massive

movements in Cassava's stock that occurred in the absence of news. R&R at 17-29.

### C.    On the Unusual Facts of this Case, Plaintiffs Fail to Carry Their Burden to Prove the Relevant Markets Were "Efficient" During the Class Period

When all relevant evidence is considered, it is clear that Plaintiffs fail to show market

efficiency under *Basic*. Beyond the many swings in Cassava's price disconnected from news, other

market realities undermine Plaintiffs' efficiency arguments, including severe short-selling

constraints during the class period, analysts' difficulty in assessing information about the

Company, and the radical differences between different Cassava options. *See* Opp. at 18-19. The

R&R fails to engage with these realities.

Further, Dr. Feinstein's event study is fatally flawed and unreliable. As explained in Dr.

Stulz's report, many swings in Cassava's stock price during the class period are better explained

by social media activity than by the publication of any value-relevant news. *See* Stulz Rpt. ¶¶ 70-

94. Dr. Stulz identified 34 days during the class period that (1) Dr. Feinstein characterizes as "non-

or lesser-news days," but (2) on which Cassava received extremely high levels of social-media

attention. *Id.* ¶¶ 71-74. Applying the same significance metric employed by Dr. Feinstein, the rate

at which Cassava's stock price underwent statistically significant changes on these no-news dates

is "*indistinguishable*" from the "news" dates Dr. Feinstein identifies. *Id.* ¶ 75 (emphasis added).

"This finding suggests that either Cassava's stock price was often moving in the absence of new,

value-relevant information, inconsistent with the 'cause-and-effect' relationship Dr. Feinstein

attempts to establish, or that the construction of Dr. Feinstein's 'collective events study' is deficient and flawed, or both." *Id.* ¶ 19. The R&R does not engage with Dr. Stulz's analysis or conclusion on this point.

Because Plaintiffs fail to carry their burden to demonstrate market efficiency, the *Basic* presumption cannot apply.

## III.    Defendants Have Demonstrated a Lack of Price Impact from the Alleged Corrective Disclosures

Even if the *Basic* presumption did apply, however, Plaintiffs have rebutted that presumption by demonstrating a lack of price impact. The available evidence shows "it is more likely than not" that the alleged misrepresentations *did not* have a price impact on Cassava's stock. *See Goldman*, 594 U.S. at 126-27. The R&R errs in concluding otherwise, again failing to meaningfully engage with the facts. R&R at 29-32.

### A.    The Complete Lack of Statistically Significant Price Movements for Most of the Alleged Corrective Disclosures Is Relevant to Price Impact

Eleven of the seventeen corrective disclosures Plaintiffs identify—which relate to the *exact* research Plaintiffs allege Defendants misrepresented—are not associated with *any* statistically significant movement in the price of Cassava's stock. Opp. at 22-24. The R&R dismisses this fact as irrelevant, however, pointing to courts that have concluded that a lack of statistically significant price movement is not dispositive of price impact. R&R at 30-31. But "a fact can be relevant without being dispositive." *Apache,* 2024 WL 532315, at *11. Accordingly, the fact that none of the eleven alleged collective disclosures "showed statistically significant price declines—even if not dispositive of price impact—is nevertheless a relevant fact to consider alongside Defendants' other evidence concerning price impact." *Id.*; *see also Bratya*, 2024 WL 4332616, at *20 (noting the lack of a statistically significant price reaction meant there was "no evidence" that misrepresentation impacted stock price); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL

1342800, at *10 (S.D.N.Y. Mar. 29, 2024) (criticizing Dr. Feinstein's position on statistical significance).

Defendants have ample "other evidence" beyond the lack of statistically significant price movements. For example, Defendants have shown that Cassava's stock price frequently underwent massive swings in the absence of any new information about the company; was just as likely to change significantly due to increased social media discussion as it was in response to any actual new information; and often reacted in bizarre ways that sophisticated market analysts did not anticipate. *See* Opp. at 11-16; Stulz Rpt. ¶¶ 51-94. This evidence, bolstered by the lack of statistically significant declines in Cassava's stock price following most of Plaintiffs' alleged corrective disclosures, strongly suggest that the misrepresentations Plaintiffs allege did *not* impact the price of the stock. And the declines that did follow alleged corrective disclosures are more likely associated with Cassava's consistent and extreme market volatility than with some random reaction to largely duplicative "corrective" news by the market. *E.g.*, *Shupe v. Rocket Companies, Inc.*, 2024 WL 4349172, at *24 (E.D. Mich. Sept. 30, 2024) (concluding that "broader context" supplied evidence to find a lack of price impact).

The R&R errs by failing to evaluate all such evidence and by categorically dismissing the relevance of the lack of significant price movements following most of the corrective disclosures. R&R 29-32.

### B.  Defendants Do Not "Concede" Price Impact

The R&R further errs in asserting that Defendants "concede" price impact. R&R at 31. In so asserting, the R&R points to three dates on which Cassava's stock price increased following a disclosure. *Id.* Effectively, the R&R contends that this supposed "evidence of front-end price impact," has rendered "each of Defendants' back-end price impact arguments irrelevant." *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *7 (S.D. Tex. Feb. 9, 2024). But that is "an

16

extraordinary argument" that "would render *Goldman* essentially meaningless." *Id.* Indeed, it makes little sense that a stock's price would increase on the front end due to a misrepresentation, but then fail to decrease on the back end once the misrepresentation was corrected. That is: the lack of a back-end price drop provides "less reason to infer front-end price inflation." G*oldman*, 594 U.S. at 123.

In the same vein, the R&R asserts that Defendants' price impact arguments fail because there were price movements after six of the alleged corrective disclosures. R&R at 31. Thus, according to the R&R, if *any* alleged corrective disclosure is followed by a statistically significant drop, Defendants fail to rebut *Basic's* presumption.

But "that is not the law." *Apache,* 2024 WL 532315 at *6. The Court "must consider Defendants' analysis to comply with *Goldman Sach's* directive that the Court be 'open to all probative evidence' when assessing price impact." *Ramirez v. Exxon Mobil Corp.*, 2023 WL 5415315, at *13 (N.D. Tex. Aug. 21, 2023) (quoting *Goldman,* 594 U.S. at 122). Indeed, "[c]onsistent with *Goldman Sachs*, the Court considers all evidence of price impact for each of the…alleged Corrective Disclosures.'" *Id.* at *15. Thus, Defendants need not contest *every* corrective disclosure for the Court to conclude that price impact is lacking. Nor do Defendants have "to prove that their alleged misstatements had *no* price impact whatsoever during the *entire* Class Period." *Apache,* 2024 WL 532315 at *6 (emphasis in original). That would be antithetical to the analysis of the *cumulative* evidence the Court is required to undertake.

The R&R does not engage with either of the above arguments, despite them being presented in Defendants' Surreply. ECF 227 at 12-13.

### C.    The R&R Ignores Defendants' Arguments that There Is a Mismatch Between the Alleged Misstatements and the Alleged Corrective Disclosures

As explained in Defendants' class certification briefing, there is a fundamental "mismatch between the contents of the misrepresentation[s] and corrective disclosure[s]" Plaintiffs allege,

"breaking down" any inference that the alleged misrepresentations "maintained" any inflation in Cassava's stock price. *Goldman*, 594 U.S. at 123; *see In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *11 (finding defendants rebutted *Basic* presumption due to "mismatch" between alleged misrepresentations and corrective disclosures). Plaintiffs' alleged misstatements overwhelmingly concern simufilam's supposedly manipulated research and trial results. *See* Compl. ¶¶ 268-413. But, in many instances, the alleged corrective disclosures fail to address those specific alleged misstatements. Such "mismatches" are explained at length in Defendants' class certification briefing. *See* Opp. at 24-26; Surreply at 15-16.

The R&R fails to mention, let alone address, any of these points. R&R at 29-32.

## IV.    Plaintiffs Fail to Show that Classwide Damages Can Be Reliably Calculated in a Manner Consistent with Their Theory of Liability

The R&R further errs in concluding that Plaintiffs have shown they can reliably calculate classwide damages in a manner consistent with their theory of liability. R&R at 32-34.

"Following *Comcast,* circuit and district courts have rigorously examined proposed damages methodologies in putative class action cases for disconnects between damages and liability" and have not hesitated to deny class certification on that ground. *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (collecting cases). "Plaintiffs cannot avoid this hard look by refusing to provide the specifics of their proposed methodology" at the class certification stage. *Id.* Yet that precisely is what Plaintiffs and Dr. Feinstein try to do here.

Plaintiffs' and Dr. Feinstein's promise to calculate "out-of-pocket" damages "is vague, indefinite, and unspecific, [and] simply asserts" that "there are unspecified 'tools' available to measure damages" without providing any details whatsoever for how those "tools" will be used to measure damages in this case. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) (granting motion to exclude Dr. Feinstein's testimony). In fact, the *only* thing in Dr. Feinstein's damages discussion that is specific to this case

is a conclusory statement that his methodology is "consistent in this case with these Plaintiffs' theory of liability." Opp. Ex. 2 at 237:7 14; 238:16-20. That plainly cannot satisfy Plaintiffs' burden under *Comcast* to assure the Court that there is an available damages model that reliably can measure "only those damages attributable to [Plaintiffs'] theory" of liability. *Comcast*, 569 U.S. at 35; *see also* Opp. at 28-34.

Plaintiffs' theory of liability is that Defendants misrepresented highly technical details in certain disclosures of pre-clinical and clinical research during the early stages of simufilam's development. In their Opposition, Defendants explain at length that measuring "only those damages attributable to that theory" of liability is potentially impossible given the unusual market forces bearing on Cassava's stock during the proposed class period. *See* Opp. at 28-34. Given Cassava's massive volatility, including during the period in which Cassava was labeled a meme stock, Dr. Feinstein has not established that residual price declines on alleged corrective disclosure dates reliably can be used to measure damages. *See* Stulz Rpt. ¶¶ 196, 204.

Dr. Feinstein did not grapple with any of these issues or offer anything more than a boilerplate summary of a collection of vaguely described "valuation tools." Reply at 29. Nor did he specify which of these "valuation tools he may or may not deploy" in this case. *Id.* Indeed, Plaintiffs have supplied *no information whatsoever* that could allow the Court to determine that Dr. Feinstein is capable of measuring damages at a later stage. Plaintiffs must do more to satisfy *Comcast* than assert a "vague, indefinite, and unspecific" damages methodology, as that "amounts to no damages model at all." *Ohio Pub. Emps. Ret. Sys.*, 2018 WL 3861840, at *19; *see also In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *12 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) (rejecting Dr. Feinstein's opinion as "black box-like, unverifiable, standardless, and subjective"); *Sicav v. James Jun Wang*, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015) (similar).

Yet the R&R blesses Plaintiffs' barebone approach, finding that "Plaintiffs have proffered a damages model consistent with their theory of liability and capable of calculating damages on a classwide basis." R&R at 34. This is error.

## V.    The Named Plaintiffs Were Meme Traders Who Did Not Rely on Any Representation of the Company, Undermining Typicality

Plaintiffs dispute neither (i) the named Plaintiffs' trading history, which was characterized by high-volume trading in meme stocks throughout the class period, nor (ii) that none of the named Plaintiffs relied on *any* of Defendants' alleged misrepresentations. Reply at 31-35. Courts have recognized that such evidence of erratic trading behavior can "raise individualized questions" defeating typicality. *See* Opp. at 34-35. As explained in Defendants' Opposition, such individualized questions are present here. *See id.* at 34-40. The R&R errs in concluding otherwise. *See* R&R at 12-14.

As the record makes clear, each named Plaintiff was a meme stock trader seeking to profit from short-term volatility in Cassava's stock. *See* Opp. at 35-49. Such reckless retail trading, disconnected from any disclosure by the company, undermines typicality and epitomizes the market forces that rendered the relevant markets inefficient during the class period.

## CONCLUSION

For these reasons, Plaintiffs fail to establish Rule 23's requirements, and their Opposed Motion for Class Certification therefore should be denied.

Dated: November 29, 2024                    Respectfully submitted,

/s/ *Gregg Costa*
Gregg Costa (Tx. Bar No. 24028160)
Trey Cox (Tx. Bar No. 24003722)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: 346.718.6600
gcosta@gibsondunn.com
tcox@gibsondunn.com

Monica K. Loseman (admitted *pro hac vice*)
Scott Campbell (admitted *pro hac vice*)
John Turquet Bravard (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1801 California Street
Denver, CO 80202-2642
Telephone: 303.298.5700
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

Mary Beth Maloney (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
mmaloney@gibsondunn.com

*Counsel for Defendants Cassava Sciences, Inc. and
Eric J. Schoen*

Douglas W. Greene
Zachary R. Taylor
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.847.7090
dgreene@bakerlaw.com

C. Shawn Cleveland
BAKER & HOSTETLER LLP
2850 N. Harwood Street, Suite 1100
Dallas, TX 75201
Telephone: 214.210.1200
scleveland@bakerlaw.com

*Counsel for Defendants Remi Barbier and
Lindsay Burns*

21

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 29, 2024, a true and correct copy of the foregoing was

served electronically upon each attorney of record.

/s/ *Gregg Costa*_____
Gregg Costa