UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC.<br>SECURITIES LITIGATION | § <br> § <br> § <br> § | Master File No. 1:21-cv-00751-DAE <br><br> CLASS ACTION |
| This Document Relates To:<br><br> ALL ACTIONS | § <br> § <br> § <br> § <br> § <br> § | |

**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   THE SUPPLEMENTAL ALLEGATIONS DO NOT MOOT PLAINTIFFS'
      CLASS CERTIFICATION MOTION.....................................................................2

      A.    The Supplement Does Not Supersede the Operative Complaint ............................2

      B.    There Is No Requirement that the Class Period Be Extended ................................4

III.  LEAVE TO SUPPLEMENT THE COMPLAINT SHOULD BE GRANTED.................5

      A.    Plaintiffs Did Not Unduly Delay In Supplementing the Complaint .......................5

      B.    Defendants Fail to Demonstrate Undue Prejudice...................................................7

            1.    The New Corrective Disclosures Need Not Be Considered as Part
                  of Any Class Certification Price Impact Analysis .......................................8

            2.    The New Corrective Disclosures Need Not Be Considered as Part
                  of Any Class Certification *Comcast* Analysis ..........................................10

IV.   CONCLUSION...................................................................................................10

4908-1930-3427.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Air Force Officer v. Austin*,
2022 WL 1240856 (M.D. Ga. Apr. 27, 2022) ....................................................4

*Ap-Fonden v. Goldman Sachs Grp., Inc.*,
2023 WL 4865617 (S.D.N.Y. July 31, 2023) ...........................................4, 7, 8, 9

*Bd. of Trs. of City of Ft. Lauderdale Gen. Ems. Ret. Sys. v. Mechel OAO*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011)...............................................................5

*BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*,
2024 WL 4229312 (S.D. Tex. Sept. 18, 2024) ...................................................7

*Burchfield v. Corel Corp.*,
2013 WL 12120088 (N.D. Cal. Sept. 12, 2013) .................................................3

*Bush v. Pioneer Mining Co.*,
179 F. 78 (9th Cir. 1910) ...............................................................................3

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)......................................................................................10

*Crowley v. Collier*,
2024 WL 1220170 (S.D. Tex. Feb. 16, 2024),
*report and recommendation adopted by*,
2024 WL 1221578 (S.D. Tex. Mar. 21, 2024)....................................................3

*Dean v. Ford Motor Credit Co.*,
885 F.2d 300 (5th Cir. 1989) .......................................................................2, 3

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
2023 WL 6300569 (S.D. Tex. Sept. 27, 2023),
*leave to appeal denied*, 2023 WL 8794620 (5th Cir. Nov. 17, 2023) ....................9

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ..........................................................................5

*DW Volbleu, LLC v. Honda Aircraft Co., LLC*,
2024 WL 169569 (E.D. Tex. Jan. 16, 2024).......................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)......................................................................................9

*Fahim v. Marriot Hotel Servs., Inc.*,
551 F.3d 344 (5th Cir. 2008) ..........................................................................7

Page

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  594 U.S. 113 (2021) .................................................................................8

*Hegwood v. Ross Stores, Inc.*,
  2006 WL 8437334 (N.D. Tex. June 26, 2006) ........................................6

*In re Am. Int'l Refinery, Inc.*,
  676 F.3d 455 (5th Cir. 2012) ..................................................................7

*In re Apache Corp. Sec. Litig.*,
  2024 WL 532315 (S.D. Tex. Feb. 9, 2024) .............................................9

*In re Dura Pharms., Inc. Sec. Litig.*,
  452 F. Supp. 2d 1005 (S.D. Cal. 2006) ...................................................4

*In re FirstEnergy Corp.*,
  2022 WL 681320 (S.D. Ohio Mar. 7, 2022) .......................................4, 5

*King v. Life Sch.*,
  2011 WL 5242464 (N.D. Tex. Nov. 3, 2011) ..........................................7

*Leykin v. AT&T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006) .....................................................5

*Lopez v. City of Dall., Tex.*,
  2004 WL 2026804 (N.D. Tex. Sept. 9, 2004) ..........................................3

*Lozano v. Ocwen Fed. Bank, FSB*,
  489 F.3d 636 (5th Cir. 2007) ..................................................................6

*Matter of Southmark Corp.*,
  88 F.3d 311 (5th Cir. 1996) ....................................................................6

*Mayeaux v. La. Health Serv. & Indem. Co.*,
  376 F.3d 420 (5th Cir. 2004) ..................................................................7

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) .........................................................8, 9

*Navarro v. Microsoft Corp.*,
  214 F.R.D. 422 (N.D. Tex. 2003) ...........................................................7

*Neely v. Khurana*,
  2009 WL 1605649 (N.D. Tex. June 5, 2009) ..........................................7

4908-1930-3427.v1

Page

*Ramirez ex rel. Ramirez v. Bexar Cnty., Tex.*,
    2011 WL 1627381 (W.D. Tex. Apr. 28, 2011)........................................................7

*Rougier v. Applied Optoelectronics, Inc.*,
    2019 WL 6111303 (S.D. Tex. Nov. 13, 2019)
    *report & recommendation adopted*,
    2019 WL 7020349 (S.D. Tex. Dec. 20, 2019)......................................................10

*Saad Maura v. Scotiabank P.R.*,
    328 F.R.D. 14 (D.P.R. 2018),
    *aff'd*, 2023 WL 9468285 (1st Cir. Mar. 13, 2023).................................................4

*Smith v. EMC Corp.*,
    393 F.3d 590 (5th Cir. 2004) ...................................................................................6

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) ....................................................................4

*Strong v. Green Tree Servicing, L.L.C.*,
    716 F. App'x 259 (5th Cir. 2017) ............................................................................7

*Tan v. Quick Box, LLC*,
    2022 WL 17184568 (S.D. Cal. Nov. 23, 2022) .......................................................4

*U.S. v. Russell*,
    241 F.2d 879 (1st Cir. 1957)...............................................................................2, 3

**SECONDARY AUTHORITIES**

*6 C. Wright & A. Miller*,
*Federal Practice & Procedure* (1971)
    §1504...........................................................................................................................2

4908-1930-3427.v1

## I.   INTRODUCTION

Defendants' opposition (ECF 269) (the "Opp." or "Opposition") is based on the false premise that "the Second Supplemented Complaint's allegations would require extending the class period" because "disclosures after the class period 'cannot be a corrective disclosure sufficient to establish loss causation.'" *Id.* at 1.[1] But no case holds that. To the contrary, courts have squarely rejected the proposition. Defendants, in fact, have no answer to Plaintiffs' on-point authority and do not even attempt to distinguish it. In contrast, courts have found Defendants' cited cases inapplicable in situations such as this involving continuing disclosures. Defendants' contention is therefore meritless.

Defendants' fallback argument that "the newly alleged disclosures fundamentally alter class certification regardless of whether the class period is extended" (Opp. at 1) fares no better. Defendants now claim for the first time that the new disclosures must be analyzed to determine: (i) whether the alleged misstatements had a "price impact"; and (ii) whether Plaintiffs have presented a methodology for calculating damages that is consistent with their theory of liability. *See id.* at 1-2. But the parties already addressed both of these questions in their class certification briefing. Magistrate Judge Hightower, indeed, rejected both of Defendants' arguments, finding that Defendants conceded that the alleged misstatements had a price impact and that Plaintiffs' proposed out-of-pocket damages methodology – the standard methodology used in securities litigation – presents a class-wide damages model consistent with Plaintiffs' theory of liability. The new corrective disclosures therefore do not require additional class certification briefing on either issue.

At bottom, Defendants' Opposition is an attempt to unnecessarily reopen class certification briefing in order to cause further delay. Class certification, however, was fully briefed months ago,

---

[1]   Unless otherwise noted, defined terms are the same as used in Plaintiffs' motion for leave to file the proposed second supplemented Complaint. ECF 252 (the "Motion" or "Mot.").

and now Magistrate Judge Hightower has recommended the Class be certified. Plaintiffs timely moved to supplement their complaint in accordance with the guidance provided by the Court. Defendants, meanwhile, do not argue the supplement is futile. Nor do they identify any undue prejudice caused by the proposed supplement or dispute that the additional corrective disclosures revealed new information brought to light in the various government investigations that directly relates to Defendants' alleged fraud.

Accordingly, the Court should grant Plaintiffs leave to file their proposed second supplemented complaint and deny Defendants' request to re-open class certification briefing.

## II.    THE SUPPLEMENTAL ALLEGATIONS DO NOT MOOT PLAINTIFFS' CLASS CERTIFICATION MOTION

### A.    The Supplement Does Not Supersede the Operative Complaint

Defendants claim that "courts regularly deny motions for class certification as moot when a plaintiff seeks to amend or supplement their complaint while the motion is pending" because "[a]n amended or supplemented complaint 'supersedes a motion for class certification that is keyed to a prior version of the complaint.'" Opp. at 5. Not so. Defendants' "argument misconstrues the basic difference between amended and supplemental claims." *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 302 (5th Cir. 1989). "'[A]mended and supplemental pleadings differ in two respects. The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and ***merely represent additions to or continuations of the earlier pleading***.'" *Id.* (quoting *6 C. Wright & A. Miller, Federal Practice & Procedure*, §1504 at 540 (1971)).[2]

In other words, a supplemental pleading, like the one at issue here, does not supersede or replace the original. *See Ford*, 885 F.2d at 302; *U.S. v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957)

---

[2]    Emphasis is added and citations are omitted throughout unless otherwise indicated.

(supplemental pleading "stands with the original pleading and is a mere addition to, or continuation of, the original complaint or answer"); *see also Bush v. Pioneer Mining Co.*, 179 F. 78, 80 (9th Cir. 1910) ("the supplemental complaint differs from an amended complaint in that it does not take the place of the original pleading, but stands with it and adds to it some fact which has occurred since the beginning of the action"); *id.* ("'A supplemental complaint is ***not***, like an amended complaint, a substitute for the original complaint, by which the former complaint is superseded; but it is a further complaint, and assumes that the original complaint is to stand.'").  There is therefore no basis to deny Plaintiffs' motion for class certification as moot.

Defendants, in fact, do not cite a ***single*** case where a motion for class certification was denied because supplemental allegations were filed.  Rather, Defendants' cases concern, ***unlike*** here, amended complaints that sought to replace the operative pleading.[3]  Here the supplemental allegations add to, but do not replace, the existing allegations.  *See Ford*, 885 F.2d at 302; *Russell*, 241 F.2d at 882; *Pioneer Mining*, 179 F. at 80; *see also Collier*, 2024 WL 1220170, at *1 ("An amended complaint supersedes the original complaint ***unless*** it specifically refers to and adopts or incorporates it by reference.").  Plaintiffs' existing allegations, and the class certification motion based on those allegations, thus continue to stand, especially given that the supplemental allegations do ***not*** modify the proposed Class in any way.  *See* Mot. at 3, 15.

Nor is there any basis to "order further class certification briefing to address new allegations."  Opp. at 6.  Defendants' cited cases concern instances where a plaintiff sought to

---

[3]   *See, e.g., Crowley v. Collier*, 2024 WL 1220170, at *1 (S.D. Tex. Feb. 16, 2024), *report and recommendation adopted by*, 2024 WL 1221578 (S.D. Tex. Mar. 21, 2024) (pro se plaintiff's motion for class certification mooted when amended complaint ***did not make*** class action allegations); *Burchfield v. Corel Corp.*, 2013 WL 12120088, at *1 (N.D. Cal. Sept. 12, 2013) (plaintiff filed a superseding amended complaint); *Lopez v. City of Dall., Tex.*, 2004 WL 2026804, at *11 (N.D. Tex. Sept. 9, 2004) (plaintiff sought to file an amended complaint, not supplemental allegations).

modify the proposed class definition or add new representative parties.[4]  Here, by contrast, the proposed supplemental complaint does **not** modify the Class definition in any way or seek to add class representatives.  *See* Mot. at 3, 15.  Thus, there is no reason to re-open class certification briefing.

### B.    There Is No Requirement that the Class Period Be Extended

Defendants claim that because "the new disclosures occurred months after the class period," the supplemental allegations "require extending the class period" because "disclosures after the class period 'cannot be a corrective disclosure sufficient to establish loss causation.'"  Opp. at 1, 6, 8.  But Defendants' "suggestion that Plaintiffs cannot suffer any loss as a result of fraud that was not disclosed until after the close of the class period is **incorrect**."  *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 942 (C.D. Cal. 2012).  *See* Mot. at 15-16.

**No case** Defendants cite holds that corrective disclosures cannot continue to occur after the end of the class period.  Rather, Defendants' "cited authorities find loss causation lacking where plaintiffs' **first** concrete knowledge of the scheme or misstatement **postdates** the class period."  *In re FirstEnergy Corp.*, 2022 WL 681320, at *29 (S.D. Ohio Mar. 7, 2022).  But "[w]here, **as here**, details of wrongdoing emerge in the Class Period and a series of disclosures continues beyond it, **no rule prohibits loss causation as to the later events**."  *Id.*  "[T]he Supreme Court could have held that as a matter of law Plaintiffs cannot establish loss causation because the corrective disclosures . . . were made several months after the Class Period," but it "did **not** so hold."  *In re Dura Pharms., Inc.*

---

[4]    *See Ap-Fonden v. Goldman Sachs Grp., Inc.*, 2023 WL 4865617, at *3 (S.D.N.Y. July 31, 2023) (amendment sought to "modify the class period"); *Tan v. Quick Box, LLC*, 2022 WL 17184568, at *2 (S.D. Cal. Nov. 23, 2022) ("adding four additional parties"); *Air Force Officer v. Austin*, 2022 WL 1240856, at *3 (M.D. Ga. Apr. 27, 2022) (adding three new plaintiffs as putative class representatives); *Saad Maura v. Scotiabank P.R.*, 328 F.R.D. 14, 23 (D.P.R. 2018), *aff'd*, 2023 WL 9468285 (1st Cir. Mar. 13, 2023) ("The Court, however, cannot certify a class when Plaintiffs are **still figuring the class membership itself** as shown by filing additional amended complaints with the sole purpose of **adding Plaintiffs**.").

*Sec. Litig.*, 452 F. Supp. 2d 1005, 1023 (S.D. Cal. 2006). Defendants do not – and cannot – distinguish this authority.[5] Accordingly, Defendants' argument that the class period must be extended is unsupported and contrary to established precedent.[6]

## III.    LEAVE TO SUPPLEMENT THE COMPLAINT SHOULD BE GRANTED

Defendants do not dispute that the supplement "set[s] forth" significant fraud-related events "'which have happened since the date of the pleading sought to be supplemented.'" ECF 175 at 3. *See* Mot. at 3, 13-14. Nor do Defendants claim that the proposed supplement is futile. As for the challenges they do raise regarding the timing of the supplement and its purported effect on class certification, Defendants misstate both the law and the facts. Defendants' arguments should therefore be rejected.

### A.    Plaintiffs Did Not Unduly Delay In Supplementing the Complaint

A court cannot deny leave to amend on grounds of delay based on the "mere passage of time." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Rather, "it is only undue delay that forecloses amendment." *Id. See* Mot. at 19. Here there was no undue delay because "'the facts underlying the [supplemented] complaint'" did not begin to occur until June 28, 2024, and continued through September 26, 2024 – months ***after*** Plaintiffs moved for leave to file

---

[5]    In fact, the court in *FirstEnergy* distinguished Defendants' cases on this basis. *See In re FirstEnergy*, 2022 WL 681320, at *29, n.39 (noting that in *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013), "'Plaintiffs only allege that the truth about [defendant's] exposure to subprime securities came out in [defendant's] 2008 annual report,' released 'more than a month after the close of the proposed class period,' and 'do not allege that the market became aware [of the scheme] at any previous point' (emphasis removed)."); *id.* (noting that in *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 243 (S.D.N.Y. 2006), the "complaint 'does not allege facts showing that, during the class period, the market became aware' of the scheme; '[o]n the contrary, plaintiffs acknowledge that [defendants' wrongdoing] did not become public knowledge during the class period'").

[6]    Defendants' remaining case, *Bd. of Trs. of City of Ft. Lauderdale Gen. Ems. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 858 (S.D.N.Y. 2011), concerned a scriveners' error where the date of the corrective disclosure was misstated. It does ***not*** hold that corrective disclosures cannot also continue to occur after the end of a class period.

- 5 -

their first supplemented Complaint.  *See id.* (quoting *Hegwood v. Ross Stores, Inc.*, 2006 WL 8437334, at *2 (N.D. Tex. June 26, 2006)).

Defendants' contention that Plaintiffs improperly stalled filing the proposed supplement until after class certification briefing is therefore belied by the record.  Plaintiffs filed their motion for class certification on March 13, 2024 (ECF 148), over three months **before** the new corrective disclosures in Plaintiffs' second supplement began to come to light on June 28, 2024, the date Dr. Wang's indictment was disclosed.  *See* Mot. at 7-8.  The other additional corrective disclosures then continued through September 26, 2024, the date of the SEC Charges, over a month **after** Plaintiffs filed their August 23, 2024 class certification reply ("Reply").  *See* ECF 210.  Plaintiffs therefore could not have filed the proposed supplement prior to moving for class certification.

Defendants, moreover, ignore that they delayed taking a position on whether they would oppose the proposed supplement until July 31, 2024, the day before the August 1, 2024 hearing.  *See* Mot. at 7-8.  At that hearing, Defendants indicated that the recent events underlying the proposed supplement were "'very active and in development,'" and the Court, in response, requested that Plaintiffs hold off on further supplementation until after the September 30, 2024 status conference with Magistrate Judge Bemporad, *i.e.*, **after** class certification briefing was set to be completed.  *See id.*  The Court's directive proved prescient, as the September 26, 2024 SEC Charges required Plaintiffs to further update their supplemental allegations.  *See id.*  Plaintiffs followed the Court's guidance, and Defendants' accusations of "dilatory tactics" (Opp. at 6) are therefore meritless.[7]

---

[7]    Unlike here, Defendants' cases, *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007); *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004); and *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996), concern amendments to add claims based on information that was already known at the time of the original complaint or should have been explored in discovery.

**B.        Defendants Fail to Demonstrate Undue Prejudice**

Defendants do not contend that the supplement "'would "delay trial, restart a case at an earlier stage, or otherwise unfairly limit a party's ability to present its case at trial,"'" *BMSH I Katy TX, LLC v. Smith Seckman Reid, Inc.*, 2024 WL 4229312, at *4 (S.D. Tex. Sept. 18, 2024) (cleaned up).  Nor could they.  *See* Mot. at 14.  There is no trial date, granting the supplement would not limit any trial defense, and no part of the case would need to be restarted.  Even assuming *arguendo* that the class period needed to be extended – it does not – some additional class certification briefing would not constitute undue prejudice.  *See Ap-Fonden*, 2023 WL 4865617, at *5 ("[M]ere allegations that an amendment 'will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice.'").  Thus, because "the supplement does not change or add legal theories," there "is no undue prejudice."  ECF 175 at 4.  *See* Mot. at 20.[8]

---

[8]    Defendants' cases are thus inapposite as they concern, unlike here, a plaintiff belatedly amending to add new claims and/or parties, which, in many instances, would have dramatically altered those cases.  *See Strong v. Green Tree Servicing, L.L.C.*, 716 F. App'x 259, 264 (5th Cir. 2017) (amendment asserted "a dozen new claims based on the same events as the original complaint, including four new causes of action"); *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 467 (5th Cir. 2012) (amendment was not based on new information, but rather information that had been available for a year or longer and the "newly added fraud claims would have dramatically altered the subject matter of the suit at a late juncture"); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426, 427 (5th Cir. 2004) (proposed amendment "essentially pleaded a fundamentally different case with new causes of action and different parties" and "'should have been brought far earlier'"); *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 347-49 (5th Cir. 2008) (proposed amendment added an "entirely new claim" based on existing facts after amendment deadline without explanation); *DW Volbleu, LLC v. Honda Aircraft Co., LLC*, 2024 WL 169569, at *2-*6 (E.D. Tex. Jan. 16, 2024) (proposed amendment added new claims in bad faith "that could have easily been asserted at the beginning of the case"); *Ramirez ex rel. Ramirez v. Bexar Cnty., Tex.*, 2011 WL 1627381, at *2 (W.D. Tex. Apr. 28, 2011) (proposed amendment added three new lawsuits from three new plaintiffs); *King v. Life Sch.*, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (proposed amendment added multiple new claims after amendment deadline had passed which "would require essentially restarting the lawsuit"); *Neely v. Khurana*, 2009 WL 1605649, at *6 (N.D. Tex. June 5, 2009) (concerned a motion to reopen discovery just months before trial, not leave to supplement a complaint); *Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 424 (N.D. Tex. 2003) (proposed amendment belatedly added a new claim despite that plaintiff "could have brought this claim at any time since the filing of this lawsuit").

Further, as Defendants' own case states, "[t]he prospect of additional liability is not a basis for finding prejudice." *Ap-Fonden*, 2023 WL 4865617, at *5. "Nor is a plaintiff's attempt to maximize damages for a class bad faith – rather, that is the lead plaintiff's charge when appointed lead plaintiff." *Id.* That Plaintiffs seek to recover additional damages on the basis of recent corrective disclosures is therefore appropriate and does not warrant the denial of Plaintiffs' Motion.

### 1. The New Corrective Disclosures Need Not Be Considered as Part of Any Class Certification Price Impact Analysis

Defendants incorrectly claim that the timing of Plaintiffs' Motion "stripp[ed] Defendants of any ability to address the new disclosures' impact on class certification," thereby causing them to be prejudiced. Opp. at 6. First, Defendants state that, according to *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113 (2021) ("*Goldman*"), the new corrective disclosures "must be considered in evaluating whether Defendants can demonstrate a lack of price impact." Opp. at 9. But Defendants cite no authority for this position, and *Goldman* concerns whether Defendants have rebutted the "*Basic* presumption by showing that an alleged **misrepresentation** did not actually affect the market price of the stock." ECF 254 at 29. Here Defendants already had the opportunity to make that showing and failed to meet their burden.

As Magistrate Judge Hightower found in her Report & Recommendation, "Defendants admit that there was a price impact on Cassava stock at least six times after disclosures." *Id.* at 31. "Defendants also do not dispute that Cassava's stock price climbed in response to the alleged misrepresentations made on September 14, 2020, February 2, 2021, and November 4, 2021." *Id.* "Defendants thus concede price impact" (*id.*), which "dooms [Defendants'] attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a **complete** lack of price impact during the Class Period." *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019). *See* Reply at 20-21 (citing cases). Thus, Defendants did not, and cannot, demonstrate that the alleged **misstatements** "did not actually affect the market price of the stock"

- 8 -

(ECF 254 at 29).  "[B]ecause Defendants concede that a statistically significant price decline following an alleged corrective disclosure means one cannot rule out price impact . . . Defendants cannot prove an absence of price impact during the Class Period.  *S. Co.*, 332 F.R.D. at 393.  Therefore, the new corrective disclosures need not also be "considered" as part of any class certification price impact analysis.

Defendants also suggest that the Court must assess whether the corrective disclosures "'reveal[] new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading.'"  Opp. at 10 (citing *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *10 (S.D. Tex. Feb. 9, 2024)).  But *In re Apache* addresses the standard for proving loss causation, and "Plaintiffs need not show loss causation at the class certification stage."  ECF 254 at 17, n.5 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011)).  *See* ECF 214 at 24.

And although Defendants could have argued that the Motion is futile because the new allegations do not sufficiently allege corrective disclosures, they do not.[9]  Nor do Defendants dispute that the alleged misstatements are "'related' or 'relevant'" to their new corrective disclosures, which is all that is required under *Goldman*.  *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023), *leave to appeal denied*, 2023 WL 8794620 (5th Cir. Nov. 17, 2023); ECF 214 at 25.

Nor are Defendants deprived of any defense.  Defendants will still have the opportunity at summary judgment or trial to show these disclosures did not correct the alleged fraud.  But that is a loss causation issue for another day, not a question for resolution at class certification.  *See* ECF 254 at 17, n.5, 31; Reply at 24.  Therefore, there is no basis for the Court to re-open class certification briefing based on the new corrective disclosures.

---

[9]    Defendants previously (unsuccessfully) made such a futility argument in response to Plaintiffs' first motion to supplement.  *See* ECF 143 at 2.

### 2.    The New Corrective Disclosures Need Not Be Considered as Part of Any Class Certification *Comcast* Analysis

Defendants claim that, if the Court granted the Motion, Plaintiffs would somehow escape scrutiny under *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("*Comcast*").  *See* Opp. at 10-11. That is, again, incorrect.  According to *Comcast*, Plaintiffs need only "present a damages model 'establishing that damages are capable of measurement on a classwide basis.'"  ECF 254 at 32 (quoting *Comcast*, 569 U.S. at 34).  And, here, that analysis has already been undertaken with respect to Plaintiffs' out-of-pocket damages model.

As Magistrate Judge Hightower found, Plaintiffs "proffered a damages model consistent with their theory of liability and capable of calculating damages on a classwide basis."  *Id.* at 34.  *See id.* at 33 ("Many courts recognize out-of-pocket damages models as an accepted way to calculate damages on a classwide basis in securities fraud class actions."); *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *15 (S.D. Tex. Nov. 13, 2019), *report & recommendation adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) (*Comcast* only "requires that the method for calculating class damages be consistent with the theory of liability asserted in the case"); ECF 214 at 27.

Moreover, "Defendants do not dispute that Dr. Feinstein's out-of-pocket methodology is consistent with Plaintiffs' theory of liability," *id.* at 28, and the supplemental allegations do not assert any new theory of liability or require the use of some other model for presenting damages. *Comcast* has therefore already been satisfied and there is no reason for the Court to undertake that analysis again in connection with the new alleged disclosures.

## IV.    CONCLUSION

For the reasons stated herein and in their Motion, Plaintiffs should be granted leave to file their proposed second supplemented complaint, attached as Exhibit A to the Motion, and Defendants' request to unnecessarily re-open class certification briefing should be denied.

DATED:  December 4, 2024          Respectfully submitted,

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)


                    */s/ Kevin A. Lavelle*
                    KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

- 12 -