UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC.<br>SECURITIES LITIGATION | § <br> § <br> § <br> § | Master File No. 1:21-cv-00751-DAE <br><br> CLASS ACTION |
| This Document Relates To:<br><br>    ALL ACTIONS | § <br> § <br> § <br> § <br> § | |

**JOINT ADVISORY TO MAGISTRATE JUDGE BEMPORAD IN ADVANCE OF
DECEMBER 19, 2024 DISCOVERY STATUS CONFERENCE**

On November 14, 2024, the Special Discovery Master, Magistrate Judge Henry J. Bemporad, ordered the Parties[1] to file a Joint Advisory by December 12, 2024.  ECF 255 (the "Order").  The Parties respectfully submit the following in compliance with the Order.

## I.     MAGISTRATE JUDGE BEMPORAD'S PROPOSED ROLE IN THIS LITIGATION

### A.     Plaintiffs' Position

On November 14, 2024, Magistrate Judge Bemporad asked the Parties whether they agree to participate in regularly scheduled discovery hearings before him where he can resolve disputes and issue orders on discovery matters.  Plaintiffs believe such conferences, and attendant orders, would expeditiously resolve discovery disputes and agreed to participate.  Moreover, Plaintiffs understood that when Judge Ezra conferred jurisdiction on Magistrate Judge Bemporad on August 5, 2024 to "determin[e] any such [discovery] matters," he gave Magistrate Judge Bemporad the authority to resolve discovery disputes by issuing orders.  ECF 203 at 2.  This grant of authority to Magistrate Judge Bemporad to "determin[e] any such [discovery] matters" is clear from Judge Ezra's order.  *See id*.

The necessity of resolving mounting discovery disputes in a timely manner by court order has grown exponentially since Judge Ezra referred discovery matters this Court.  Disputes between the Parties have been ongoing for nearly a year and still have not been resolved.  For example, Defendants agreed nearly one year ago to request deposition transcripts from the U.S. Securities and Exchange Commission ("SEC"), and, despite recently confirming they would do so, ***Defendants still have not requested SEC transcripts from the SEC***.  The Parties have been unable

---

[1]     The "Parties" are lead plaintiff Mohammad Bozorgi, additional plaintiffs Ken Calderone and Manohar Rao (together, "Plaintiffs"), and Cassava Sciences, Inc. ("Cassava" or the "Company") and Eric J. Schoen (the "Cassava Defendants"), and Remi Barbier and Lindsay Burns (together with the Cassava Defendants, "Defendants").

to reach even simple agreements, despite Plaintiffs' best efforts.  As outlined below, ***none*** of the outstanding discovery issues discussed at the November 14, 2024 status conference have been resolved.  Plaintiffs therefore respectfully request that the Court hold regular hearings and resolve discovery disputes via court order.

      **B.**      **Defendants' Position**

Judge Ezra appointed Judge Bemporad to act as a Special Discovery Master in this case on the premise that it would be helpful to have a neutral to mediate discovery disputes and help the parties reach agreement without motions practice and discovery orders.  Judge Ezra envisioned that any disputes that could not be resolved by agreement through mediation would be resolved by Judge Ezra or the existing Magistrate Judge assigned to the case, Judge Hightower. That is why he took the unusual step of involving a third judge in this matter.  Defendants and Plaintiffs both consented to this arrangement, and Cassava continues to believe the structure Judge Ezra created is a good one.  The involvement of a judge who will not be deciding disputed issues helps facilitate agreement by allowing the parties to freely discuss resolutions without fear of undermining their litigation positions.

Plaintiffs' suggestion that discovery disputes have grown "exponentially" since Judge Ezra appointed Judge Bemporad in August is incorrect.  The only example they cite – Cassava requesting deposition transcripts from the SEC – existed well before August.  And, as set forth below, the parties were able to resolve that issue, by agreement, with guidance from Judge Bemporad and without motions practice or a Court Order. Further, the parties have agreed to a

- 2 -

temporary stay of party discovery and third-party depositions, pending a ruling from Judge Ezra on Defendants' Motion to Stay.

The current structure thus is working as intended. And the need to litigate discovery disputes has, if anything, lessened at least for the time being.

## II.    THE SEC DEPOSITION TRANSCRIPTS

### A.    Plaintiffs' Position

Defendants' guerrilla litigation tactics evidence a pattern of abuse of the discovery rules. Defendants are waging a war of attrition, seeking to stymie Plaintiffs with endless discovery embroilments in order to frustrate the effective prosecution of their claims.  To this end, Defendants further evidence their intention to force Plaintiffs to seek the Court's intervention at every turn in order to obtain even the most routine and obviously relevant discovery.  Defendants' persistent refusal to request deposition transcripts from the SEC is a perfect example of such a frivolous waste of the resources of the Parties and the Court.  Defendants' tactics should not be countenanced by this Court.

Plaintiffs have asked Defendants ad nauseum to request deposition transcripts, and any associated exhibits, identified in the October 22, 2024 Joint Advisory (ECF 233 at 3) (the "SEC Transcripts") from the SEC – something defense counsel agreed to do nearly a year ago. Consistent with the Parties' discussion with the Court during the November 14, 2024 status conference, Plaintiffs offered to delay noticing or taking depositions until after Defendants' Motion to Stay Discovery Merits (ECF 250) (the "Motion to Stay") is resolved.  As an additional compromise, Plaintiffs also agreed to refrain from serving new written discovery on any current or former Cassava employees or directors until the Motion to Stay is resolved.[2]

---

[2]    Defendants require Plaintiffs to agree to not proffer ***any*** new discovery until the Motion to Stay is decided.

4932-7817-1397.v4

In return, Plaintiffs requested that: (i) Cassava request that the SEC produce all relevant transcripts to Plaintiffs; (ii) Defendants confer with the government regarding the list of documents the SEC provided to Cassava during the agency's investigation (*see* ECF 233, §A) (the "Government Investigation Documents") to determine if the government objects to their production to Plaintiffs; and (iii) that Barbier and Burns take a position regarding whether they will request their SEC Transcripts in the event Cassava is unable to obtain them on its own.

As part of these negotiations, Plaintiffs sought to preserve the Parties' rights to issue document subpoenas to third parties, other than current or former Cassava employees or directors, while the Motion to Stay is pending. The reason for the carve-out is simple: should Plaintiffs learn, through the SEC Transcripts or otherwise, the identities of witnesses with potentially relevant information, or identify relevant documents that are in the possession, custody, or control of previously-subpoenaed third parties, Plaintiffs should be able to issue subpoenas to preserve and obtain their documents. Plaintiffs should also retain the right to issue subpoenas to obtain SEC deposition transcripts from other third parties, to the extent any exist. Defendants have failed to explain how they might suffer any prejudice from this arrangement.

When it became clear that the Cassava Defendants refused to agree to the carve-out for third-party document subpoenas, Plaintiffs asked the Cassava Defendants to request the SEC Transcripts, and the Parties would await the upcoming conference before this Court to resolve the dispute regarding third-party document subpoenas. Defendants' refusal to do so makes clear that their dilatory conduct is designed to stonewall discovery. Simply put, the Cassava Defendants have no legitimate reason for failing to seek the SEC Transcripts; they instead seek to drag out every negotiation for as long as possible to create further delay.

Defendants' refusal to agree to a carve-out for third-party document subpoenas is equally improper – particularly where they have been unable to articulate how they might be prejudiced

- 4 -

from this arrangement. Instead, Defendants insist they need to determine whether a specific third-party subpoena is **necessary** or **appropriate** before reaching agreement on this carve out. Defendants' attempt to control Plaintiffs' third-party document discovery is inappropriate.

*First*, Plaintiffs respectfully request that the Court resolve both issues at the forthcoming December 19, 2024 status conference, and order the Cassava Defendants to request the SEC Transcripts from the SEC. There is no reason for Cassava to continue to delay making the request. Even if the Parties are unable to reach agreement, that does not prevent Cassava from making the request to the SEC now, so that the transcripts are available to be produced.

*Second*, this Court should order the Cassava Defendants to request from the SEC any exhibits to the SEC Transcripts. The Cassava Defendants have steadfastly refused to request any of the exhibits to the SEC Transcripts, claiming there is not a mechanism available to request these documents. However, the Cassava Defendants can simply ask the SEC for these exhibits, which are typically attached to the transcript itself, when they seek the deposition transcripts. Indeed, the utility of the SEC Transcripts would be significantly diminished if the documents used at the deposition were missing from the production.

*Third*, this Court should require Barbier and Burns to request their deposition transcripts, and associated exhibits, from the SEC. This issue has already been delayed nearly a year and should be resolved promptly.

*Finally*, this Court should make clear that Plaintiffs may issue third-party document subpoenas, regardless if Defendants find them necessary or appropriate. Indeed, Defendants have no standing to object to a subpoena issued to a third party on relevance grounds. *See Diamond Consortium Inc. v. Manookian*, 2017 WL 699052, at *1 (E.D. Tex. Feb. 22, 2017) ("A party does not have standing to quash a subpoena served on a third party unless the party seeks to quash based on a 'personal right or privilege with respect to the materials subpoenaed.'") (quoting *Brown v.*

- 5 -

*Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)); *Wilemon Found., Inc. v. Wilemon*, 2021 WL 1649507, at *3 (N.D. Miss. Apr. 27, 2021) (a party "may not challenge a subpoena made to a third-party on the grounds that the information sought is not relevant or imposes an undue burden").[3]

Defendants' claim below that Plaintiffs agreed to follow the Court's direction on the third-party document subpoena issue requires clarification.  Plaintiffs also asked Defendant to agree to follow the Court's direction, as well.  They delayed confirming that they would do so until the time of this filing.

**B.    Defendants' Position**

Plaintiffs' hyperbolic claims are not supported by their own narrative, and do not match reality.

As reflected in the parties' correspondence after the last hearing, the parties promptly agreed (by November 20) to the terms discussed at the November 14 discovery hearing, including that (1) Cassava would contact the government regarding production of SEC transcripts to which Cassava is entitled, as well as reproduction of documents provided to Cassava by the government; and (2) Plaintiffs would agree to stay prospective discovery pending a ruling on Defendants' pending Motion to Stay merits discovery. *See* Ex. A. This should have ended the matter. But Plaintiffs sought to amend the agreement to, among other things, carve out a right to serve ongoing document subpoenas to third parties. Cassava reasonably asked which third-party subpoenas Plaintiffs intended to serve so that Cassava could assess whether Plaintiffs' requested carve-out was reasonable, but Plaintiffs indicated that they did not presently intend to serve any such subpoenas.  Accordingly, Defendants suggested that the parties confer about any such subpoena if

---

[3]    Unless otherwise noted, citations are omitted.

and when the need arose. But Plaintiffs refused to agree—instead insisting that Defendants agree to an undefined carve-out for any subpoena they may ultimately decide to serve.

In short, the parties could agree on everything raised at the prior hearing, and only disagreed about Plaintiffs' subsequently proposed, undefined carve-out. Defendants therefore proposed that the parties bring the single issue before Judge Bemporad, and state in the Joint Advisory:

> "The parties have reached agreement that Cassava will request the SEC deposition transcripts it is entitled to, and ask the government for its position on Cassava producing documents the government provided to Cassava during the course of its investigations. Plaintiffs, in turn, will agree not to pursue discovery until the Court rules on Defendants' pending Motion to Stay. Plaintiffs seek an exception to this agreement allowing it to serve new third-party documents subpoenas. Because Plaintiffs have stated no current need for any new subpoena, Defendants believe the issue is not ripe and all discovery should be stayed unless or until Plaintiffs can show a need for a specific new third-party document subpoena."

In this December 9 email, Cassava indicated that if Plaintiffs would agree to follow Judge Bemporad's direction about how the parties should address potential new third-party subpoenas at the next conference on December 19, Cassava would promptly reach out to the government regarding deposition transcripts and documents. On December 11, Plaintiffs so agreed.

Accordingly, all issues proposed for agreement at the last conference have been resolved and agreed as recommended by the Court. The sole remaining issue is when and how to address any third-party subpoenas Plaintiff discovers a need to serve between now and when the Court rules on Defendants' Motion to Stay. As indicated above, Defendants' position is that any such subpoena can and should be addressed by the parties if and when that need arises. If Judge Bemporad agrees with Plaintiffs that they should retain a right to serve third-party discovery until the Court rules on Defendants' Motion to Stay, or instead agrees with Defendants that the parties should address the need for such discovery if and when it arises, the Cassava Defendants will follow that direction.

- 7 -

III.    **DOCUMENTS THE SEC PROVIDED TO CASSAVA DURING THE SEC'S INVESTIGATION**

A.    **Plaintiffs' Position**

Despite their agreement to do so last month, the Cassava Defendants still have not told Plaintiffs whether they have contacted the U.S. Department of Justice ("DOJ") and/or the SEC to determine whether they object to the production of the Government Investigation Documents. As with the SEC Transcripts, Defendants have refused to contact these government entities, pretending as though their refusal to do is justified by a lack of resolution of unrelated discovery disputes.

Accordingly, Plaintiffs respectfully request that the Court order Defendants to contact the DOJ and/or SEC regarding the production of the Government Investigation Documents. Just as with the SEC Transcripts, there is no legitimate reason for Defendants to delay conferring with the government. Even if the Parties are unable to reach agreement on other issues, that should not prevent Cassava from conferring with the government now, so that the documents are available to be produced.

B.    **Defendants' Position**

The parties have come to agreement on this issue, as described in the Defendants' statement in Section II.B above, and reflected in the parties' correspondence attached as Ex. A.

IV.    **DEFENDANTS' PRIVILEGE LOG**

A.    **Plaintiffs' Position**

On November 19, 2024, Plaintiffs again asked Defendants to provide information regarding privilege log entries that: (i) lacked an attorney author or recipient; (ii) included a third party (or to which a third party had access); or (iii) contained a non-privileged email attachment. Plaintiffs require this information in order to assess the validity of Defendants' privilege claims. *See S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (5th Cir. 2009) ("A general allegation of

- 8 -

privilege is insufficient to meet this burden."); *Tonti Mgmt. Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *5 (E.D. La. June 25, 2020) (defendants must demonstrate that third parties "'served some specialized purpose in facilitating the attorney-client communications'").

Defendants waited ***three weeks*** to respond.  When they did finally respond, Defendants simply stonewalled, failing to provide the information requested, and claimed that Plaintiffs are not entitled to this information.  This is just one more indication of Defendants' gamesmanship.

First, despite Plaintiffs' request, Defendants have flatly refused to provide a revised privilege log that identifies the lawyer triggering the attorney-client privilege on approximately 250 log entries that do not currently include an attorney.  Rather than providing the triggering attorney for each of the hundreds of entries at issue, they supplied just two, and they have not agreed to provide the attorneys for the remaining entries or committed to a date that information will be supplied.

Second, Defendants offered to provide only a generic description of the numerous third parties included in the privilege log, including investors, bankers, insurers, consultants, and auditors, among other third parties, but have failed to do so.  And consistent with their strategy of delay, Defendants have not agreed to provide that information by any particular date.  Regardless, a general description of the third parties is insufficient to establish that the attorney-client privilege would protect these communications.  Rather, contemporaneous documents, such as engagement letters, invoices, and retention agreements, are necessary to determine if a third party was crucial to the provision of legal advice.  *See In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 3140050, at *11 (D.N.J. July 22, 2021) (court reviewing an engagement letter), *objections overruled*, 2021 WL 4272654 (D.N.J. Sept. 21, 2021); *Cavallaro v. United States*, 284 F.3d 236, 241 (1st Cir. 2002) (court reviewing invoices and engagement letter).  Defendants have refused,

- 9 -

however, to provide Plaintiffs with this information to validate their claims that the attorney-client privilege protects communications with third parties.

Third, with respect to the non-privileged attachments, Defendants claim that the majority of these documents have already been produced to Plaintiffs. Plaintiffs requested that Defendants identify which documents were not included in previous productions. Unsurprisingly, Defendants have failed to do so. Instead, they claim they "have never suggested an unwillingness to do so," but, of course, they have not identified the unproduced documents or provided a date by which they will do so.

Finally, Defendants agreed to confirm – ***over a month ago*** – whether Pat Gussin, the spouse of one of Cassava's board members, reviewed emails sent to a shared email address. Defendants have logged certain of those emails as privileged. Nonetheless, Defendants have still failed to provide Plaintiffs with an answer to this critical question, which is entirely consistent with their pattern of delay. *See Westmoreland v. Wells Fargo Bank Nw., N.A.*, 2016 WL 6471433, at *5 (D. Idaho Oct. 31, 2016) (relying on a spouse's sworn affidavit "that it is his practice to inform his wife when he sees an e-mail in the Saxman inbox that is from his wife's counsel and addressed to her, and to not otherwise read the contents" to determine that the attorney-client privilege was not waived). Their continuing failure to do so demonstrates Defendants' are more interested in delay than advancing the Parties' discussions.

Defendants' response in this Joint Advisory to provide only certain of the requested information – at some unspecified point in the figure – perfectly illustrates Defendants' dilatory tactics: Defendants delay responding to requests for information and drag out negotiations over potential disputes. Then, they promise to take some action, but allow the issue to languish, never doing what they said they would, because they have no deadline by which they need to act. Indeed, despite Plaintiffs' repeated requests for information supporting their privilege claims, Defendants

- 10 -

still have not provided it.  Court orders would resolve this issue by setting dates certain by which Defendants are compelled to take action.

Accordingly, as discussed at the November 14, 2024 status conference, Plaintiffs respectfully request that the Court conduct an *in camera* review of a subset of documents selected by Plaintiffs from Defendants' privilege log to determine if the claimed privileges are properly applied.  *See* ECF 261 at 43:18-23.

### B.    Defendants' Position

Plaintiffs again misstate the nature and status of the parties' conferrals regarding Defendants' privilege log, which is fully reflected in the parties' written correspondence.  *See* Ex. B.

First, Plaintiffs have never requested "a revised privilege log that identifies the lawyer triggering the attorney-client privilege on approximately 250 log entries that do not currently include an attorney" and Defendants certainly never "flatly refused to provide one." To the contrary, it is Defendants that suggested exactly this possibility on December 6. Ex. B ("[I]t appears that Plaintiffs' primary concern is actually that the relevant attorney who is consulted is not listed in the metadata for these emails. If that is correct, I expect we can find a solution here that is not overly burdensome to Defendants. For example, for the documents you cite, BUL010_1_00000001-03596 reflects legal advice from Christopher J. Betti at Morgan Lewis and BAR_005_1_00000001-18662 relays a communication seeking legal advice from Guy Singer and William Foley at Orrick."). Plaintiffs did not respond to Cassava's suggested solution before preparing this Joint Submission, but Cassava is happy to provide such information to Plaintiffs.

Second, Cassava has already offered to provide a description of the role each third-party played in assisting with the request for or provision of legal advice to Cassava.  Again, Plaintiffs did not respond to that offer or indicate to Cassava that this would not be satisfactory prior to

- 11 -

preparing this Joint Submission. If Plaintiffs are dissatisfied with the descriptions Defendants offer, the parties can assess at that time what, if any, additional information is necessary to evaluate Defendants' privilege claims.

Third, Defendants can identify the attachments to privileged communications that have already been produced to Plaintiffs and determine whether Mr. Gussin's wife reviewed the documents in question. Defendants have never suggested an unwillingness to do so. To the contrary, Defendants would commit to undertaking these tasks in a timely manner if Plaintiffs confirm they will help advance the parties discussions (as Defendants expect they will).

None of these issues requires *in camera* review. Further, based on this reduced list of disputes, it appears the parties have already succeeded in narrowing the issues in dispute, and likely can do so further.

## V. OTHER DISCOVERY DISPUTES THAT REMAIN OUTSTANDING FROM THE JOINT ADVISORY FILED ON OCTOBER 22, 2024

### A. Plaintiffs' Position

The following issues were not specifically addressed at the November 14, 2024 status conference, but remain outstanding: (i) Plaintiffs' July 19, 2024 second set of document requests to Defendants; and (ii) Plaintiffs' July 19, 2024 document subpoenas to the Cassava directors. These issues were outlined in the Parties' October 22, 2024 Joint Advisory (ECF 233) in sections F.2 and F.4.

As Plaintiffs explained in the prior Joint Advisory to the Court, the document requests concern topics that are relevant to the information Plaintiffs allege was omitted from Defendants' Class Period misstatements in the current complaint. *See* ECF 221 at 6-7 (previously undisclosed conflicts of interests, data manipulation, and Dr. Wang's unblinding, as well as the resulting government investigations, are all relevant to existing claims and defenses).

- 12 -

The topics of the requests include Dr. Wang's indictment for data manipulation, defendants Barbier's and Burns's resignations from Cassava, and Defendants' public SEC Form 8-K filing, which: (i) supplemented incomplete Class Period SEC disclosures that Plaintiffs allege to be false and misleading; (ii) disclosed evidence that defendant Burns unblinded Dr. Wang in the Company's Phase 2 clinical trial at issue in this case; and (iii) detailed Dr. Wang's extensive financial conflicts of interest, as a result of the SEC's investigation.

That these events occurred after the Class Period has no impact on their relevance, "[t]here is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate." *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021); *see also id.* at *6 (permitting discovery of events eight months after class period); *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (seven months after class period).

### B. Defendants' Position

As stated in the previous Joint Advisory, Plaintiffs' Second Set of Document Requests plainly relate to allegations in Plaintiffs' proposed Second Amended Complaint, not Plaintiffs' original Complaint or Plaintiffs' Amended Complaint. Despite stating for months that they intended to seek leave to file a Second Amended Complaint, Plaintiffs waited until after the close of briefing on their Motion for Class Certification to file a Motion to Supplement. Because further amending the Complaint at this stage may have significant implications for class certification, Defendants have opposed further Amendment of Plaintiffs' Complaint, and Plaintiffs' Motion is currently pending. If Plaintiffs are granted leave to amend, Defendants will revisit their objections.

- 13 -

DATED:  December 12, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)

*/s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

- 14 -

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

DATED:  December 12, 2024          GIBSON, DUNN & CRUTCHER LLP
GREGG COSTA (TX. Bar No. 24028160)
TREY COX (TX. Bar No. 24003722)

*/s/ Gregg Costa (with permission)*
GREGG COSTA

811 Main Street Suite 3000
Houston, TX 77002
Telephone: 346/718.6600
346/718.6979 (fax)
gcosta@gibsondunn.com
tcox@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
MONICA K. LOSEMAN (admitted *pro hac vice*)
SCOTT CAMPBELL (admitted *pro hac vice*)
JOHN TURQUET BRAVARD (admitted *pro hac vice*)
1801 California Street
Denver, CO 80202-2642
Telephone: 303/298.5700
303/298.5907 (fax)
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
MARY BETH MALONEY (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: 212/351.4000
212/351.6315 (fax)
mmaloney@gibsondunn.com

Counsel for Defendants Cassava Sciences, Inc. and Eric
Schoen

- 15 -

DATED:  December 12, 2024            BAKER & HOSTETLER LLP
                                     DOUGLAS W. GREENE


                                     */s/ Douglas W. Greene (with permission)*
                                     DOUGLAS W. GREENE

                                     45 Rockefeller Plaza
                                     New York, NY  10111
                                     Telephone: 212/847-7090
                                     dgreene@bakerlaw.com

                                     BAKER & HOSTETLER LLP
                                     C. SHAWN CLEVELAND
                                     2850 N. Harwood Street, Suite 1100
                                     Dallas, TX  75201
                                     Telephone: 214/210-1200
                                     scleveland@bakerlaw.com

                                     Counsel for Defendants Remi Barbier and Lindsay Burns

- 16 -

4932-7817-1397.v4