# Exhibit B

| | |
|---|---|
| **From:** | Campbell, Scott |
| **Sent:** | Friday, December 6, 2024 2:37 PM |
| **To:** | Megan Rossi; Kevin Lavelle |
| **Cc:** | Loseman, Monica K.; Dan Drosman; Jeremy Daniels; Cox, Trey; Costa, Gregg J.; Turquet Bravard, John L.; Marshall, Lloyd Steven; Heather Geiger; 'Greene, Douglas W.' |
| **Subject:** | RE: Cassava - privilege log |

Megan,

Responses to each item are below in red.

Best,
Scott

**Scott Campbell**
Of Counsel

T: +1 303.298.5989 | M: +1 303.775.5547
SCampbell@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
1801 California Street Suite 4200, Denver, CO 80202-2642

**From:** Megan Rossi <MRossi@rgrdlaw.com>
**Sent:** Tuesday, November 19, 2024 6:23 PM
**To:** Campbell, Scott <SCampbell@gibsondunn.com>; Kevin Lavelle <KLavelle@rgrdlaw.com>
**Cc:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Dan Drosman <DanD@rgrdlaw.com>; Jeremy Daniels <JDaniels@rgrdlaw.com>; Cox, Trey <TCox@gibsondunn.com>; Costa, Gregg J. <GCosta@gibsondunn.com>; Turquet Bravard, John L. <JTurquetBravard@gibsondunn.com>; Marshall, Lloyd Steven <LMarshall@gibsondunn.com>; Heather Geiger <HGeiger@rgrdlaw.com>; 'Greene, Douglas W.' <dgreene@bakerlaw.com>
**Subject:** RE: Cassava - privilege log

**This Message Is From an External Sender**
This message came from outside your organization.

Scott,

1. Defendants' privilege log should set "forth facts rather than 'mere conclusory … assertions.'" *Mr. Dee's Inc. v. Inmar, Inc.*, 2021 WL 3861839, at *3 (M.D.N.C. Aug. 30, 2021). As explained previously, Defendants' conclusory assertions that the documents are privileged because they "reflect[ ] legal advice" or are "relevant to legal advice" are improper. *See S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (5th Cir. 2009) ("A general allegation of privilege is insufficient to meet this burden."). It is Defendants' burden to establish how these documents would be privileged. Defendants have failed to carry this burden, especially where the privilege log does not indicate that an attorney was included in the communication. For example, there is an email between Dr. Burns and a third party without an attorney on the communication that states "communication reflecting legal advice regarding Western blot images for review." (BUL010_1_ 00000001-03596). It is unclear how this email is "reflecting legal advice." An additional example is an email between Dr. Burns and Mr. Barbier, without an

1

attorney copied, where the subject of the email is redacted and it attaches numerous twitter posts, but Defendants merely assert that it is "relevant to legal advice." It is impossible to discern how this email and its attachments are "relevant to legal advice" especially because the subject line is redacted. (BAR_005_1_00000001-18662). These are examples of a reoccurring problem with the privilege log; they are certainly not the only entries where Defendants have failed to establish how documents without an attorney present are protected by the attorney-client privilege.

Defendants' privilege log follows the traditional format, which is widely recognized and accepted as the most detailed and burdensome to prepare in complex litigation such as this case where logs can extend to cover thousands of documents.  Indeed, the high burden associated with drafting logs such as this is exactly why other types of less-detailed logs, such as categorical privilege logs, metadata only logs, or metadata-plus-topic logs have been created.  *See, e.g.,* Appx. A to The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 543 (2024) (Example Privilege Logs).  The descriptions you cite above from our log (e.g., "communication reflecting legal advice regarding Western blot images for review") directly parallel the highly burdensome, detailed descriptions in the Sedona Conference's "exemplar" traditional log (e.g., "e-mail seeking legal advice regarding overdue accounts with Fish.")  *See id*. at A-1.  There is nothing conclusory or insufficient about the descriptions, and they are of the same form as the 2000 or so other entries on the log which Plaintiffs have not challenged.

Setting aside the description, looking back through our email chain, it appears that Plaintiffs' primary concern is actually that the relevant attorney who is consulted is not listed in the metadata for these emails.  If that is correct, I expect we can find a solution here that is not overly burdensome to Defendants.  For example, for the documents you cite BUL010_1_00000001-03596 involves reflects legal advice from Christopher J. Betti at Morgan Lewis and BAR_005_1_00000001-18662 relays a communication seeking legal advice from Guy Singer and William Foley at Orrick.

2. Defendants still have not provided sufficient information to establish that communications with third parties would be protected. In fact, Defendants' own authority, *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) explains "a client's disclosure of documents directly to an auditor, accountant or tax analyst **destroys confidentiality with respect to those documents**." Moreover, the court in *Ferko* held that "an attorney must prove that he or she hired an accountant for a specific purpose." *Id*. Defendants have not asserted that Ernst & Young was retained for a "specific purpose." Nor have Defendants specified how (i) Dr. Wang, (ii) Cassava's auditors, (iii) investment banks, (iv) outside scientists/researchers (such as Charles Spruck), (v) an insurance company, and (vi) others (such as Matthew Nachtrab and Daniel Achord) "served some specialized purpose in facilitating the attorney-client communications." *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *5 (E.D. La. June 25, 2020).  Please provide that information for every third party included on Defendants privilege log, including, but not limited to, those listed above, as well as any retention agreements, invoices and similar documents describing the scope of the services each third party was to provide.

Plaintiffs' demand for retention agreements, invoices, and similar documents for every third party included on Defendants' privilege log is overbroad and unduly burdensome.  We are unaware of any case law requiring the provision of contracts, bills, and payments to sustain a privilege claim where third parties have assisted in the request for or provision of legal advice.  We do think it is reasonable to provide a description of the role each third party played in assisting with the request for or provision of legal advice to Cassava.

With regard to Pat Gussin, please also confirm whether she had access to the apparently shared email account in question.

Whether Ms. Gussin could access the account is not relevant.  Sending an email to a joint email account shared by a husband and wife does not waive attorney-client privilege.  *See, e.g., Eagle F. v. Phyllis*

2

*Schlafly's Am. Eagles*, No. 3:16-CV-946-DRH-RJD, 2018 WL 6249688, at *4 (S.D. Ill. Nov. 29, 2018), *aff'd*, No. 3:16-CV-946-NJR-RJD, 2019 WL 1064338 (S.D. Ill. Mar. 6, 2019) (emphasis added) (sending email to a joint email account shared by husband and wife does not waive attorney-client privilege); *Westmoreland v. Wells Fargo Bank Nw.*, N.A., No. 1:15-CV-00312-CWD, 2016 WL 6471433, at *5 (D. Idaho Oct. 31, 2016) (same).

Please confirm whether the NASDAQ correspondences were in Defendants' latest production on November 14, and if not, please produce as soon as possible.

They were included in the November 14 production.

3. Defendants' argument misses the mark. Defendants have not established that the attachments **themselves** are privileged. *See Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("[A] fact is not privileged 'merely because [a client] incorporated a statement of such fact into communication to his attorney.'"). "Underlying facts … are classically outside the privilege's protection." *Petteway v. Galveston Cnty.*, 2023 WL 3452065, at *4 (S.D. Tex. May 15, 2023). The non-privileged attachments that we identified in our October 17 spreadsheet fall into the following general categories: (i) published press releases; (ii) letters to entities such as the NIH, journals, FDA, and consultants; (iii) agreements; (iv) articles; (v) LinkedIn messages; (vi) general ledgers; (vii) data and figures; (viii) the AAIC poster; (ix) twitter and other online forum posts; (x) grant applications and information regarding the grants; (xi) organizational charts and employee information; (xii) screenshots of emails and websites; (xiii) board documents; (xiv) information regarding Cassava's stock; (xv) SEC forms; (xvi) concept proposals; (xvii) presentations regarding PTI-125; and (xviii) curriculum vitaes. It is unclear how these categories of documents would fall under the scope of the attorney-client privilege other than by association to the email sent to counsel. Even Defendants admit that they are not inherently privileged as they contend that other versions of many of them have already been produced. Accordingly, these documents should be produced to Plaintiffs. Additionally, please identify which of the documents identified in our October 17 spreadsheet are not already in Defendants' production.

   Respectfully, I think Plaintiffs' response misses the mark. We are not claiming that the underlying facts became privileged when they were communicated to an attorney. As noted, we have already produced the majority of these documents where they were implicated by Plaintiffs' search terms in a non-privileged context. But the actual communication of facts to an attorney for purposes of seeking legal advice is privileged. Whether the information communicated is in the body of an email or attached to the email is irrelevant. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 n. 21("[C]ommunications of facts are privileged even if the original facts are not. Thus, when letters to counsel included certain attachments, the fact that those documents were attached may be privileged, even if the originals are not.").

4. Again, underlying facts are not protected by the attorney client privilege. This information should not be redacted on Defendants' privilege log. Moreover, "a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). Redactions within the privilege log make it difficult for Plaintiffs to evaluate Defendants' claims of attorney-client privilege and/or work product doctrine.

   The only thing redacted in the log are email subjects that directly relate to the privileged advice sought, and where disclosure would reflect privileged communications. Again, the fact that the privileged communication is in the email subject vs. the body of the communication has no bearing on the privilege protection.

5. Defendants have still failed to provide Plaintiffs with adequate information to evaluate Defendants' assertion of the common interest privilege. Defendants have failed to identify how the legal interest between Defendants (Cassava, Eric Schoen, Lindsay Burns, and Remi Barbier) and Dr. Wang is identical. Notably, Defendants provide

3

no authority to establish that communications between Dr. Burns and Dr. Wang without an attorney is privileged in the first instance, and is not a waiver of the common interest privilege in the second instance. Additionally, Defendants have failed to provide Plaintiffs with information regarding when the common interest agreement was formed, the litigation (actual or potential) that the individuals are co-defendants in, and what evidence there is of the common interest agreement. Plaintiffs reiterate their request to be provided with this information.

Plaintiffs' authority cited below established that "communications between potential co-defendants" as well as their counsel are privileged.  This is also a matter of common sense.  If a communication between Dr. Burns, Dr. Wang, and their counsel conveying legal advice about their common interest is privileged, there is no reason a follow-up communication regarding that advice by a subset of the participants in the privileged communication would waive privilege.  Also, I don't know why you say we did not provide information regarding when the common interest agreement was formed (I noted below that it has existed since at least August 2021).  And, as Plaintiffs are well aware given their allegations in this case, Dr. Wang and the parties were potential co-defendants in the government investigations that arose subsequent to the Citizens Petition.  As for evidence of the common interest agreement, I am telling you as counsel for Cassava that there was a common interest agreement.  It is also evidenced by the fact that some of the relevant communications were contemporaneously labeled "Common Interest Privileged" as reflected on the log.  *See, e.g.* BUL_015_1_00000005-22001.

Thank you,

Megan


**Megan A. Rossi**
Associate

Robbins Geller Rudman & Dowd LLP

655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058



---

**From:** Campbell, Scott <SCampbell@gibsondunn.com>
**Sent:** Friday, November 8, 2024 4:45 PM
**To:** Megan Rossi <MRossi@rgrdlaw.com>; Kevin Lavelle <KLavelle@rgrdlaw.com>
**Cc:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Dan Drosman <DanD@rgrdlaw.com>; Rachel Jensen <RachelJ@rgrdlaw.com>; Jeremy Daniels <JDaniels@rgrdlaw.com>; Cox, Trey <TCox@gibsondunn.com>; Costa, Gregg J. <GCosta@gibsondunn.com>; Turquet Bravard, John L. <JTurquetBravard@gibsondunn.com>; Marshall, Lloyd Steven <LMarshall@gibsondunn.com>; Heather Geiger <HGeiger@rgrdlaw.com>; 'Greene, Douglas W.' <dgreene@bakerlaw.com>
**Subject:** RE: Cassava - privilege log

EXTERNAL SENDER

Thanks for your email, Megan. We are, of course, happy to collaborate to describe the privileged documents in a manner that does not reveal privileged information or result in undue burden on Cassava. Our responses are below in red.

Best,
Scott


**Scott Campbell**
Of Counsel

T: +1 303.298.5989 | M: +1 303.775.5547
SCampbell@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
1801 California Street Suite 4200, Denver, CO 80202-2642

---

**From:** Megan Rossi <MRossi@rgrdlaw.com>
**Sent:** Friday, October 25, 2024 1:24 PM
**To:** Campbell, Scott <SCampbell@gibsondunn.com>; Kevin Lavelle <KLavelle@rgrdlaw.com>
**Cc:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Dan Drosman <DanD@rgrdlaw.com>; Rachel Jensen <RachelJ@rgrdlaw.com>; Jeremy Daniels <JDaniels@rgrdlaw.com>; Cox, Trey <TCox@gibsondunn.com>; Costa, Gregg J. <GCosta@gibsondunn.com>; Turquet Bravard, John L. <JTurquetBravard@gibsondunn.com>; Marshall, Lloyd Steven <LMarshall@gibsondunn.com>; Heather Geiger <HGeiger@rgrdlaw.com>; 'Greene, Douglas W.' <dgreene@bakerlaw.com>
**Subject:** RE: Cassava - privilege log

Scott,

It is Defendants' burden to establish how each document identified on their privilege log is privileged. *See S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (5th Cir. 2009). Defendants have failed to do so.

1. "[T]he privilege does not protect documents and other communications simply because they result from an attorney-client relationship." *Id*. The documents without attorneys provide a generic explanation that states "reflecting legal advice." *See id*. ("A general allegation of privilege is insufficient to meet this burden."). Defendants have failed to establish how the documents Plaintiffs identified as lacking an attorney are still protected under the attorney-client privilege.

   The privilege log's privilege descriptions for the documents or communications without attorneys in the metadata fields offer more detail that just stating: "reflecting legal advice." They specifically indicate how each communication relates to the relevant legal advice (such as "providing information related to legal advice" or communication reflecting legal advice") as well as the relevant subject of the legal advice. For example, they describe: "Communication providing information relevant to legal advice regarding meeting minutes of the Board of Directors"; "Communication reflecting legal advice regarding securities litigation against Cassava"; "Communication providing information relevant to legal advice regarding New York Times article"  These are quite detailed descriptions for a several-thousand entry log, which you demanded we create through your extensive documents requests, and were burdensome to create. And, of course, they supplement the metadata fields which provided substantial additional information regarding each communication.

<span style="color:red">If there are particular communications where we have only made general allegations of privilege, or simply stated "reflecting legal advice" without a non-privileged description of the topic of that legal advice – please tell us which communications and we are happy to review.</span>

2. The information in the privilege log does not establish how the communications with third parties fall within the few narrow exceptions. *See id.* at 317 ("Generally, a party waives the attorney-client privilege when it voluntarily discloses the privileged communication to a third party."). Defendants' privilege log contains communications with, including, but not limited to, Dr. Wang, Cassava's auditors, investment banks, outside scientists/researchers, insurance company, the NASDAQ, and a director's wife. The inclusion of these individuals destroys the attorney-client privilege. *See, e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 439 (N.D. Tex. 2006) ("Even disclosure of privileged information directly to a client's independent auditor, accountant, or tax analyst destroys confidentiality."); *Williams v. Jeld-Wen, Inc.*, 2022 WL 509373, at *6 (W.D. La. Feb. 18, 2022) (holding that communications with the client's spouse were not privileged). Please provide Defendants' basis that there is no waiver of attorney-client privilege for each of the third-parties identified in Plaintiffs' challenged entries.

    <span style="color:red">The communications that include third parties in Defendants' privilege log are work product or privileged under the exceptions to the rule of third parties breaking privilege and have had their privilege designations described to the extent necessary to establish the asserted privilege while not revealing the underlying privileged information. Either these documents were prepared in anticipation of litigation and are still protected as work product, or the relevant third parties were assisting Cassava's counsel with the rendering of legal advice.</span>

    <span style="color:red">An exception to the breaking of attorney-client privilege by third parties "exists for third parties who assist an attorney in rendering legal advice. Because the practice of law has increasingly grown more complex, attorneys cannot function effectively without the help of others. This logic extends to financial professionals . . . This exception also protects documents produced as a result of those communications." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) (citing *United States v. Kovel*, 296 F.2d 918, 921-22 (2d Cir.1961)). It also extends to "technical experts, accountants, patent agents, and other scientific specialists." *See, e.g., Tonti Mgmt. Co. v. Soggy Doggie, LLC*, No. CV 19-13134, 2020 WL 9172077, at *4-*5 (E.D. La. June 25, 2020). This exception applies to specified communications with Dr. Wang, Cassava's auditors, investment banks, outside scientists/researchers, and its insurance company.</span>

    <span style="color:red">Your reference to a director's wife is non-specific. But assuming you are referencing Pat Gussin, our understanding is that the two emails on the log that are addressed to an address that includes both Bob Gussin and Pat Gussin were only directed to and reviewed by Bob Gussin. We will confirm.</span>

    <span style="color:red">With regard to the communications between Cassava's counsel and the Nasdaq, we agree those communications are not privileged. Thank you for bringing them to our attention. They will be removed from the log and produced.</span>

3. Attachments are not simply privileged because they are attached to a possibly privileged communication. *United State v. City of Hesperia*, 2021 WL 5034381, at *6 (C.D. Cal. June 17, 2021) ("Similarly, attachments to privileged emails are not themselves privileged simply by association."); *Petteway v. Galveston Cnty.*, 2023 WL 3452065, at *3 (S.D. Tex. May 15, 2023) (finding that "pre-existing documents" are "underlying facts that are not protected by the attorney-client privilege."). Again, Defendants have failed to carry their burden to establish that the attachments themselves are privileged.

    <span style="color:red">The transmission of attachments during the process of seeking or providing legal advice is privileged. *Wolff v. Biosense Webster, Inc.*, No. EP-17-CV-00328-PRM, 2018 WL 3795302, at *3 (W.D. Tex. Aug. 8, 2018) ("Collecting information for transmission to counsel is privileged if integral to the legal advice. *Nalco Co. v.</span>

6

*Baker Hughes Inc.*, 2017 U.S. Dist. LEXIS 111127, at *7 (S.D. Tex. 2017).  Similarly, '[c]ourts have consistently held that communications relaying legal advice provided by corporate counsel among nonattorney corporate employees who share responsibility "for the subject matter underlying the consultation" are privileged.' *Moffatt v. Wazana Bros. Int'l*, 2014 U.S. Dist. LEXIS 151326, at *4-5, 2014 WL 5410201 (E.D. Pa. 2014) (collecting cases). Thus, the Court finds that the emails gathering information for counsel and relaying the advice of counsel are privileged.").  The relevant privilege descriptions provided in this privilege log are adequate to establish that such attachments are privileged.

To be clear, we have not claimed that the documents are "privileged by association" or that the underlying facts are privileged.  It is the collection and transmission of specific documents in connection with legal advice that is privileged.  The vast majority of these attached documents have already been produced in a non-privileged context.

4. Many of the entries contain factual information that is itself redacted from the privilege log. This is improper. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("[A] fact is not privileged 'merely because [a client] incorporated a statement of such fact into his communication to his attorney.'"). Additionally, some of the information redacted does not include an attorney on the document, including, but not limited to, entry 2578.  Defendants have not provided sufficient information to demonstrate that any information on the privilege log itself is privileged in nature, therefore, Plaintiffs request a new privilege log be provided without redacted information.

   Redaction of email subjects (or portions thereof) is appropriate where disclosure of the email subject on the log would reveal details of the legal advice. The redactions in the privilege log are necessary to protect the privileged information, as described in the privilege descriptions, within these communications.  *See NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-01023 (MPS), 2021 WL 2109112, at *5 (D. Conn. May 25, 2021).  This includes document 2578, where revealing the subject line of a communication between two defendants would disclose privileged information communicated to counsel.

5. The common interest privilege is recognized in cases where the "parties have an ***identical, not similar, legal interest***, and not merely a commercial interest." *SB IP Holdings LLC v. Vivint Smart Home, Inc.*, 2022 WL 19977100, at *4 (E.D. Tex. Aug. 18, 2022). Additionally, the common interest privilege applies to communications with an attorney, however, Defendants assert the common interest privilege on communications that do not include an attorney. *See e.g.*, *id.* ("In the Fifth Circuit, the common interest doctrine protects two types of communications in civil litigations: '(1) communications between co-defendants in actual litigation ***and their counsel***; and (2) communications between potential co-defendants ***and their counsel***.'"). In order for Plaintiffs to evaluate Defendants assertion of common interest privilege, please state the basis for invoking the common interest privilege and identify with whom the privilege is shared and how the legal interest is identical to that of Defendants. Please also state Defendants' basis for claiming that communications between Dr. Burns and Dr. Wang without an attorney is not a waiver. Last, please provide us with information regarding when the common interest agreement was formed, what actual or potential litigation are the individuals co-defendants in, and what evidence there is of the common interest agreement.

   The Defendants in this case have shared a common legal interest with Dr. Wang with respect to particular matters since at least August of 2021.  As you know, they have been potential co-defendants in multiple actions since then. And, as you note above, the Common Interest privilege extends to "communications between potential co-defendants" as well as their counsel.

   As part of our review, we noted that 3 documents from August 2020 (BUL_001_1_00000002-20463, BUL_001_1_00000002-20463-1, BUL_001_1_00000001-12933) were erroneously marked as common interest privilege as well as attorney-client privilege.  They were correctly marked as attorney-client privileged.

7

Thank you,

Megan

---

**From:** Campbell, Scott <SCampbell@gibsondunn.com>
**Sent:** Monday, October 21, 2024 7:26 PM
**To:** Kevin Lavelle <KLavelle@rgrdlaw.com>
**Cc:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Dan Drosman <DanD@rgrdlaw.com>; Rachel Jensen <RachelJ@rgrdlaw.com>; Jeremy Daniels <JDaniels@rgrdlaw.com>; Cox, Trey <TCox@gibsondunn.com>; Costa, Gregg J. <GCosta@gibsondunn.com>; Turquet Bravard, John L. <JTurquetBravard@gibsondunn.com>; Marshall, Lloyd Steven <LMarshall@gibsondunn.com>; Megan Rossi <MRossi@rgrdlaw.com>; Heather Geiger <HGeiger@rgrdlaw.com>; 'Greene, Douglas W.' <dgreene@bakerlaw.com>
**Subject:** RE: Cassava - privilege log

EXTERNAL SENDER
Thanks Kevin.

1. First, none of the categories you list mean there is a lack of privilege.

   1. As you know, communications do not need to include an attorney to be privileged. *See, e.g., OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. CIV.A. H-11-3061, 2013 WL 6002166, at *3 (S.D. Tex. Nov. 12, 2013). ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. . . In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys.") (citations and quotations omitted).

   2. Communications with third-parties can remain privileged under various circumstances. *See, e.g., Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) (An exception to the breaking of attorney-client privilege by third parties "exists for third parties who assist an attorney in rendering legal advice.").

   3. And the transmission of attachments in the course of seeking or providing legal advice is privileged. *See, e.g., Wolff v. Biosense Webster, Inc.*, No. EP-17-CV-00328-PRM, 2018 WL 3795302, at *3 (W.D. Tex. Aug. 8, 2018) ("Collecting information for transmission to counsel is privileged if integral to the legal advice.").

   4. Further, redaction of email subjects (or portions thereof) is appropriate where disclosure of the email subject on the log would reveal details of the legal advice. *NovaFund Advisors, LLC v. Capitala Grp., LLC*, No. 3:18-CV-01023 (MPS), 2021 WL 2109112, at *5 (D. Conn. May 25, 2021)

   5. Finally, the common interest privilege is a well-recognized privileged between privilege between parties with a common legal interest and their counsel. I don't know what you mean by the "exact common interest invoked."

We are in the process of preparing a production of redacted documents, and will provide applicable bates numbers when the documents are produced.

Please let us know when you have completed your analysis of the privilege log.

Best,
Scott

**Scott Campbell**
Of Counsel

T: +1 303.298.5989 | M: +1 303.775.5547
SCampbell@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
1801 California Street Suite 4200, Denver, CO 80202-2642

---

**From:** Kevin Lavelle <KLavelle@rgrdlaw.com>
**Sent:** Thursday, October 17, 2024 10:36 PM
**To:** Campbell, Scott <SCampbell@gibsondunn.com>
**Cc:** Loseman, Monica K. <MLoseman@gibsondunn.com>; Dan Drosman <DanD@rgrdlaw.com>; Rachel Jensen <RachelJ@rgrdlaw.com>; Jeremy Daniels <JDaniels@rgrdlaw.com>; Cox, Trey <TCox@gibsondunn.com>; Costa, Gregg J. <GCosta@gibsondunn.com>; Turquet Bravard, John L. <JTurquetBravard@gibsondunn.com>; Marshall, Lloyd Steven <LMarshall@gibsondunn.com>; Megan Rossi <MRossi@rgrdlaw.com>; Heather Geiger <HGeiger@rgrdlaw.com>; 'Greene, Douglas W.' <dgreene@bakerlaw.com>
**Subject:** Cassava - privilege log

Scott,

After reviewing Defendants' nearly 3,000 entry privilege log served on Sunday, September 29, to date, we have identified over 1,200 entries that do not appear to be privileged, as reflected in the attached challenge log. While we are still analyzing the privilege log, the categories of entries that jumped out at us as not appearing to be privileged include communications that do not include an attorney, communications including or accessible by third-parties, and attachments that themselves do not appear to be privileged.

In addition, Defendants' privilege log reflects redactions, but the space in the log indicating where the redacted document can be found in Defendants' production is blank. In fact, it appears that some, or all, of these redacted documents may not have been produced yet. Please confirm all redacted documents have been produced and indicate their Bates numbers in the log.

Relatedly, many entries contain information that is itself redacted from the privilege log, including, but not limited to, entry nos. 1065-72. As this is factual information that does not appear to be legal advice, please produce a log with this information un-redacted.

Finally, please state the basis for Defendants' invocation of the "common interest privilege" and identify the exact common interest privilege defendants have invoked and with whom.

Please provide your position on these issues so that we may meaningfully meet and confer.

Plaintiffs reserve their right to raise additional deficiencies or disputes concerning Defendants' privilege log.

-Kevin

**NOTICE:** This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender

**by reply email and destroy all copies of the original message.**

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

**NOTICE: This email message is for the sole use of the intended recipient(s) and may contain information that is confidential and protected from disclosure by the attorney-client privilege, as attorney work product, or by other applicable privileges.  Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.**