UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC.<br>SECURITIES LITIGATION | §<br>§<br>§<br>§ | Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | §<br>§<br>§<br>§<br>§<br>§ | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.    LEGAL STANDARDS........................................................................................2

III.    THE R&R CORRECTLY FOUND MARKET EFFICIENCY ...............................3

    A.    It Is Undisputed that Every *Cammer/Krogman* Factor Is Met ......................3

    B.    Defendants Failed to Support Their "Meme Stock" Arguments...................3

    C.    Courts Have Rejected Defendants' "Meme Stock" Arguments....................4

        1.    Defendants' "Evidence" Is Irrelevant...............................................6

        2.    Defendants' Authority Rejected Their "Meme Stock" Arguments .................7

        3.    Defendants' "Meme Stock" Arguments Are Inaccurate..................8

IV.    DEFENDANTS HAVE NOT REBUTTED THE *BASIC* PRESUMPTION..........................10

    A.    The Evidence of Price Impact Is Undisputed............................................10

    B.    Defendants' Provided No Evidence to Meet Their Burden on Price Impact...............11

    C.    Defendants Never Made a Mismatch Argument.......................................13

V.    PLAINTIFFS' DAMAGES METHODOLOGY IS CONSISTENT WITH THEIR THEORY OF LIABILITY AND SUFFICIENTLY DETAILED ..........................................14

VI.    PLAINTIFFS ARE TYPICAL OF THE CLASS..................................................16

VII.    THE MAGISTRATE DID NOT MAKE "PROCEDURAL ERRORS"...............................17

    A.    The Evidence Supporting Class Certification Is Overwhelming................................17

    B.    Defendants Received "Adequate Opportunity to Respond" and Their Objection Is Untimely..............................................................................................18

    C.    Defendants' Late *Daubert* Motion Does Not Impact Class Certification ...................19

VIII.    CONCLUSION....................................................................................................20

4931-9347-2262.v4

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................... 13

*Battle v. U.S. Parole Comm'n*,
  834 F.2d 419 (5th Cir. 1987) ......................................................................... 2

*Bradford v. Sears, Roebuck & Co.*,
  673 F.2d 792 (5th Cir. 1982) ....................................................................... 16

*Bratya SPLR v. Bed Bath & Beyond Corp.*,
  __ F. Supp. 3d __, 2024 WL 4332616 (D.D.C. Sept. 27, 2024).................... 7, 11

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ..................................................................... 9

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2022 WL 1459567 (N.D. Cal. May 9, 2022) ................................................ 15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................... *passim*

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) ......................................... 12, 13

*Dougherty v. Esperion Therapeutics, Inc.*,
  2020 WL 6793326 (E.D. Mich. Nov. 19, 2020)............................................ 15

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ....................................................................... 16

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
  99 F.4th 770 (5th Cir. 2024)................................................................17, 18, 19

*George v. China Auto. Sys., Inc.*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ................................................... 3

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
  594 U.S. 113 (2021)............................................................................10, 12, 13

*Gray v. Winco Foods, LLC*,
  683 F. Supp. 3d 571 (E.D. Tex. 2023).......................................................... 2

4931-9347-2262.v4

**Page**

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ........................................................................................ 6, 16

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
  2014 WL 46818 (W.D. La. Jan. 6, 2014) .......................................................... 17

*In re Apache Corp. Sec. Litig.*,
  2024 WL 532315 (S.D. Tex. Feb. 9, 2024) ................................................. 11, 13

*In re Apple Inc. Sec. Litig.*,
  2023 WL 2763952 (N.D. Cal. Mar. 28, 2023) ................................................... 10

*In re Groupon, Inc. Sec. Litig.*,
  2015 WL 1043321 (N.D. Ill. Mar. 5, 2015) ..................................................... 5, 9

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
  2024 WL 1342800 (S.D.N.Y. Mar. 29, 2024) .................................................... 11

*In re NIO, Inc. Sec. Litig.*,
  2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023) ..................................................... 13

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part*,
  862 F.3d 250 (2d Cir. 2017) .............................................................................. 6

*In re Vale S.A. Sec. Litig.*,
  2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ..................................................... 15

*In re Vale S.A. Sec. Litig.*,
  2022 WL 969724 (E.D.N.Y. Mar. 31, 2022) ......................................... 3, 14, 15

*Jamison v. Harbor Freight Tools Inc.*,
  2024 WL 3217418 (N.D. Miss. June 27, 2024) ................................................. 18

*KB Partners I, L.P. v. Barbier*,
  2013 WL 2443217 (W.D. Tex. June 4, 2013) ........................................... 4, 6, 16

*Koetting v. Thompson*,
  995 F.2d 37 (5th Cir. 1993) ................................................................................ 2

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ....................................................................... 3

*Lumen v. Anderson*,
  280 F.R.D. 451 (W.D. Mo. 2012) ....................................................................... 7

4931-9347-2262.v4

**Page**

*Marcus v. J.C. Penney Co.*,
    2016 WL 8604331 (E.D. Tex. Aug. 29, 2016) ......................................................................... 10

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ....................................................................................... 11, 14

*O'Neil v. Appel*,
    165 F.R.D. 479 (W.D. Mich. 1996) ........................................................................................ 3

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ................................................................ 14, 15

*Pedigo v. 3003 S. Lamar, LLP*,
    666 F. Supp. 2d 693 (W.D. Tex. 2009) ................................................................................ 17

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) ........................................................................................... 6

*Plymouth Cnty. Ret. Sys. v. Patterson Cos.*,
    2020 WL 5757695 (D. Minn. Sept. 28, 2020) ...................................................................... 15

*Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*,
    2020 WL 919249 (N.D. Ill. Feb. 26, 2020) .......................................................................... 15

*Rooney v. EZCORP, Inc.*,
    330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................................ 11

*Rougier v. Applied Optoelectronics, Inc.*,
    2019 WL 6111303 (S.D. Tex. Nov. 13, 2019),
    *report and recommendation adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019) ......... 10, 13, 14

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ................................................................................. 3

*Serfaty v. Int'l Automated Sys., Inc.*,
    180 F.R.D. 418 (D. Utah 1998) ............................................................................................. 3

*Shupe v. Rocket Cos.*,
    __ F. Supp. 3d __, 2024 WL 4349172 (E.D. Mich. Sept. 30, 2024) ...........................................*passim*

*Sicav v. Wang*,
    2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) .......................................................................... 15

*Sloan Valve Co. v. Zurn Indus., Inc.*,
    2013 WL 3147349 (N.D. Ill. June 19, 2013) ........................................................................ 18

4931-9347-2262.v4

Page

*Strougo v. Barclays PLC*,
312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd sub nom.*
*Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) .................................................................. 12

*Talbert v. Lynch*,
2017 WL 11236935 (W.D. Tex. Feb. 17, 2017) ................................................................................... 1

*Warren v. Miles*,
230 F.3d 688 (5th Cir. 2000) .................................................................................................................. 2

*Williams v. Lakeview Loan Servicing LLC*,
694 F. Supp. 3d 874 (S.D. Tex. 2023) .................................................................................................. 2

*Willis v. Big Lots, Inc.*,
242 F. Supp. 3d 634 (S.D. Ohio 2017) ............................................................................................... 12

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 72(a) ................................................................................................................................................. 18

The Court should adopt Magistrate Judge Hightower's November 15, 2024 Report and Recommendation (ECF 254) (the "R&R"), which rightly concluded that Plaintiffs' motion for class certification should be granted after extensive briefing and evidentiary submissions. Defendants' Objections (ECF 270) ("Obj."), which recycle their class certification opposition, are meritless.[1]

## I.    INTRODUCTION

As Magistrate Judge Hightower recognized in the R&R, Plaintiffs provided overwhelming evidence demonstrating that the requirements for class certification are satisfied. Though they try to characterize the R&R as "fail[ing] to engage with the unusual facts of this case" (Obj. at 1), it is Defendants that ignore that they effectively conceded every issue they now argue the R&R incorrectly decided. In effect, Defendants misstate the record in order to rehash failed arguments that courts, including the Supreme Court, and now Magistrate Judge Hightower, have rejected. But Defendants "are not to be afforded a 'second bite at the apple' when they file objections to the R&R." *Talbert v. Lynch*, 2017 WL 11236935, at *3-*4 (W.D. Tex. Feb. 17, 2017).

Here, it is undisputed that Plaintiffs satisfied every *Cammer/Krogman* factor that courts look to when determining market efficiency. And though Defendants claim the *Cammer/Krogman* factors are undermined by the "meme stock phenomenon" (Obj. at 12-13), they admittedly did not attempt to demonstrate that Cassava actually was a "meme stock" and disregard recent authority "specifically reject[ing]" (R&R at 21) Defendants' "meme stock" arguments as "ignor[ing] ***binding Supreme Court precedent***." *Shupe v. Rocket Cos.*, __ F. Supp. 3d __, 2024 WL 4349172, at *19 (E.D. Mich. Sept. 30, 2024) ("*Rocket*").

On price impact, Defendants repeat the false argument that Plaintiffs "do not dispute" that the "bulk

---

[1] Unless otherwise noted, all defined terms have the same meaning as in Plaintiffs' Reply in Further Support of Class Certification (ECF 214) (the "Reply"), emphasis is added, and citations are omitted.

of their alleged 'corrective disclosures' are not associated with any statistically significant impact on Cassava's price" (Obj. at 2) to distract from the fact that they conceded that *every* corrective disclosure actually alleged *did* result in statistically significant price declines, evidencing price impact. Then Defendants claim that they have "other proffered evidence" that "provides compelling reason to conclude" there was no price impact. *Id.* In fact, their own expert disclaimed providing such evidence.

Nor do Defendants dispute that Dr. Feinstein's damages methodology, which has been accepted by dozens of courts, satisfies *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) because it is consistent with Plaintiffs' theory of liability. Instead, they again raise premature loss causation arguments based on speculation that there could be "difficulties" calculating damages at a later stage (Obj. at 2), while ignoring that Dr. Feinstein specifically addressed how such issues could be resolved.

Defendants also claim that Magistrate Judge Hightower purportedly made "serious procedural errors." Obj. at 1. But there were no such errors – Magistrate Judge Hightower declined to hold an evidentiary hearing because the evidence overwhelmingly supported granting class certification; refused to consider an unauthorized expert report; and properly issued the R&R after class certification was fully briefed. In others words, the R&R was correctly decided and should be adopted in full.

## II.    LEGAL STANDARDS

A district court is neither required to make new findings of fact independent of those made by the magistrate judge, *see Warren v. Miles*, 230 F.3d 688, 694-95 (5th Cir. 2000), nor reiterate the magistrate judge's findings and conclusions. *See Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993). A district court also need not consider "[f]rivolous, conclusive, or general objections." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). "And de novo review *isn't* invoked by simply re-urging arguments . . . ." *Williams v. Lakeview Loan Servicing LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023); *Gray v. Winco Foods, LLC*, 683 F. Supp. 3d 571, 582 (E.D. Tex. 2023) ("'objections that simply rehash or mirror the underlying claims addressed in the report are not sufficient to entitle the party to *de novo*

review'").

## III.    THE R&R CORRECTLY FOUND MARKET EFFICIENCY

### A.    It Is Undisputed that Every *Cammer/Krogman* Factor Is Met

There is no real controversy concerning market efficiency. Here, the R&R found "all the *Cammer/Krogman* factors favor a finding that Cassava Securities were traded in an efficient market during the Class Period." R&R at 29; *see id.* at 23-29 (analyzing each factor).[2] Defendants do not object to this finding, and it is undisputed. *See* R&R at 20 ("Defendants fail to address most of the *Cammer/Krogman* factors and instead argue that Feinstein's analysis of market efficiency is flawed because he did not consider whether Cassava's stock was a "'meme stock.'"); Reply at 4-6.

Defendants, moreover, now admit, in a reversal from their class certification opposition (*see* Opp. at 16), that the *Cammer/Krogman* factors *are* relevant and that the Court *should* apply them. *See* Obj. at 12. Yet, Defendants do not cite *any* authority supporting their argument that a plaintiff has not demonstrated market efficiency where, like here, *every Cammer/Krogman* factor is met.[3] Thus, the R&R did not "[m]isconstrue[]" Defendants' argument (Obj. at 12), but correctly held that "Plaintiffs are entitled to a classwide presumption of reliance under *Basic*." R&R at 29; *see* Reply at 2-6.

### B.    Defendants Failed to Support Their "Meme Stock" Arguments

---

[2] Indeed, "many district courts have accepted Feinstein's *Cammer/Krogman* analysis to show market efficiency" (R&R at 21 (citing cases)), which was hardly "cookie-cutter," as Defendants contend. Obj. at 12; *see* R&R at 27 ("The Court disagrees that Feinstein's 454-page Expert Report, 155-page Rebuttal Report, and detailed event studies therein are cursory.").

[3] Defendants' cases (*see* Obj. at 13-14) concern, unlike here, over-the-counter ("OTC") and other securities *unsupported* by the *Cammer* factors. *See Krogman v. Sterritt*, 202 F.R.D. 467, 474, 478 (N.D. Tex. 2001) (OTC security where "*most*" *Cammer* factors "weigh against" market efficiency); *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 421-23 (D. Utah 1998) (OTC security did not meet *Cammer* factors); *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1252 (C.D. Cal. 2015) (OTC security at motion to dismiss stage); *O'Neil v. Appel*, 165 F.R.D. 479, 486, 504 (W.D. Mich. 1996) ("*none* of the attributes of an 'efficient' market" present). *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *12 (S.D.N.Y. July 3, 2013) failed *Cammer* 5, did not analyze the other factors, and is now "out of step" with Second Circuit precedent. *See In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *4 (E.D.N.Y. Mar. 31, 2022).

In their class certification opposition, Defendants argued that the *Cammer/Krogman* factors are "insufficient to establish" market efficiency (Obj. at 12) *only* when "retail traders coordinate in trading a meme stock." Opp. at 16. But Defendants did not attempt to demonstrate that either of those conditions were met. Defendants provided *zero evidence* of coordinated trading by retail investors. *See* Reply at 6-7; Stulz Tr. 174:5-11 ("Q. Now, did you find any evidence of a coordinated short squeeze . . . ? A. *I did not go looking for it*."); Feinstein Reply, ¶¶34, 114-116, 123-124.

And, as the R&R correctly pointed out, Defendants and their expert never attempted to establish that: (i) Cassava actually was a "meme stock"; or (ii) that the market for Cassava stock was *in*efficient. *See* R&R at 22. Thus, the R&R did not "misconstrue[]" Defendants' expert's opinions (Obj. at 12), either. In fact, Stulz admitted that even "meme stocks" can *still* trade in *efficient markets*. *See* Stulz Tr. 107:20-108:10 (noting "[i]t depends"); *see* Reply at 13. Thus, the R&R did not "err"; Defendants simply failed to provide support for their arguments. *See* R&R at 22; Reply at 3-4.

### C. Courts Have Rejected Defendants' "Meme Stock" Arguments

Nevertheless, Defendants regurgitate from their class certification opposition that, because there are purported "unique market forces at play" as a result of the "relatively new" "meme stock phenomenon," the *Cammer/Krogman* factors cannot be trusted. Obj. at 12. But Defendants' "meme stock" arguments are "legally and factually inaccurate" and "Defendants identify *no* Fifth Circuit case law stating that courts should not apply the *Cammer/Krogman* factors in securities fraud cases when the defendant argues that the stock was a meme stock or that the market was inefficient." R&R at 21.

Without a leg to stand on, Defendants claim that those "meme stock" "market forces" are so "new" that Fifth Circuit courts have yet to consider them. Obj. at 12. But courts have "*specifically rejected*" them. *See* R&R at 21 (citing, *e.g.*, *Rocket*, 2024 WL 4349172, at *20). For example, in *Rocket*, the court rejected the same arguments by the same expert (Dr. Stulz) because they "ignor[ed] *binding Supreme Court precedent* which *compels* the conclusion that [defendants'] purported meme-stock status is

*inapposite* to this Court's market-efficiency analysis." 2024 WL 4349172, at *19; *see* ECF 231 ("Sur-Response") at 2; *accord* Reply at 7-8.

Indeed, "[t]he relevant legal question is whether the market price responds to publicly available information quickly." *KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *5 (W.D. Tex. June 4, 2013). Thus, "meme-stocks, generally, do ***not*** negate the notion that the stock price nevertheless responds to and includes public information." *Rocket*, 2024 WL 4349172, at *19; *see* Sur-Response at 2; *accord* Reply at 7-10. Importantly, Defendants ***do not dispute*** the R&R's *Cammer/Krogman* findings, including that Plaintiffs' expert (Dr. Feinstein) demonstrated "a causal relationship between the release of [Cassava] news and movement in [its] stock price" with his well-accepted event study analysis. R&R at 28; *see* Reply at 5, 8; Feinstein Reply, ¶¶16, 33, 55 (Stulz "does not dispute that these tests prove that the Cassava stock price reacted significantly more frequently on news dates").[4]    Accordingly, "Dr. Feinstein's methodology established that the price of [Cassava Securities] was affected by false statements, ***which is all that* Basic *requires*." *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at *9 (N.D. Ill. Mar. 5, 2015); *see* Reply at 7-11; Feinstein Reply, ¶¶32, 61-62, 203-205.

And although Defendants now assert that Dr. Feinstein's event study is "fatally flawed and unreliable" (Obj. at 14), they still do ***not*** dispute his methodology or its results. Instead, Defendants claim that Dr. Feinstein did not sufficiently address Defendants' expert's opinions, which merely "'suggest[ed]'" that Cassava's stock price moved in the absence of new information on isolated dates. Obj. at 14-15. But that does "not negate" the undisputed fact that the price of Cassava Securities "nevertheless respond[ed] to and include[d] public information." *Rocket*, 2024 WL 4349172, at *19; *see* R&R at 28; Sur-Response at 2; *accord* Reply at 7-10. Even Defendants' expert, Dr. Stulz, conceded that the "'***market reacted***'" to new, Cassava-specific information during the Class Period. *See* Reply at 5-6.

---

[4] "Courts have found similar event studies by Feinstein reliable to show a causal relationship between the release of company-specific news and movement in that company's stock price." R&R at 27.

1.    **Defendants' "Evidence" Is Irrelevant**

Defendants contend that, even if Cassava was not a "meme stock," the market for its stock still exhibited purported "behavior[s]" linked to the "meme stock phenomenon" that undermine market efficiency.  Obj. at 12-13.  Defendants then accuse Magistrate Judge Hightower of "categorically dismissing" this so-called "relevant evidence." *Id.* at 13-14.  Defendants are wrong again.  As the R&R noted, Defendants did not establish Cassava was a "meme stock," and courts have rejected this argument.

Defendants, nonetheless, press their flawed argument, asserting the R&R "ignor[ed]" "compelling evidence" that the market for Cassava's stock "should not be presumed 'efficient'" because, on just seven days during the over two-year Class Period, Defendants contend that Cassava's stock price moved in the absence of new information, and, on one day, moved in the wrong direction, all due to the supposed "meme stock phenomenon." *See id.*  This evidence, however, is irrelevant, and required no further discussion in the R&R.  As the *Rocket* court explained, stock price movements attributable to "meme-stock status do[] ***not*** render the market inefficient."  2024 WL 4349172, at *19; *see* Sur-Response at 2; Reply at 7-10.

That a stock may be priced incorrectly "'does ***not*** detract from the fact ***that false statements affect it, and cause loss,' which is 'all that Basic requires.***'"  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) ("*Halliburton II*").  Thus, a "consensus" of decisions have rejected Defendants' argument that price movements in the absence of new information undermine market efficiency.  *See Rocket*, 2024 WL 4349172, at *23 ("'bubbles' of frenzied trading do not undermine market efficiency"); *Barbier*, 2013 WL 2443217, at *9, *13 (rejecting criticism that plaintiff "did not account for specific days where [Cassava's] stock price moved but there was no new information introduced into the market"); Reply at 8-10.  Indeed, "only a third of abnormally large stock price movements are typically associated with news events." *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 353 (C.D. Cal. 2015); *see Barbier*, 2013 WL 2443217, at *9, *13 (crediting evidence that "there are many days on which even large stocks traded on efficient markets experience significant changes in price despite an absence of major news

events"); Reply at 8-9; Feinstein Reply, ¶125; Sur-Response at 3.

Likewise, "[w]hether the market, upon receiving new information, moved in the precise way [Defendants] would expect it to move is *not* the key to unlocking *Basic*'s presumption of reliance." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 370 (S.D.N.Y. 2016), *aff'd in part, vacated in part*, 862 F.3d 250 (2d Cir. 2017). Rather, "[w]hat is essential," and not disputed here, "is evidence that, when the market received new information, it 'generally affect[ed]' the price." *Id.* (quoting *Halliburton II*, 573 U.S. at 272); *see* Reply at 10-11. The R&R therefore did not "ignore" Defendants' purported "evidence." Obj. at 13-14. Rather, it is "*not legally relevant*." *See Lumen v. Anderson*, 280 F.R.D. 451, 460-61 (W.D. Mo. 2012); Reply at 8-9; Sur-Response at 3-4.

Yet, even if "meme-stock status *suggested* market inefficiency, it would not *outweigh* the eleven other factors which Plaintiffs have shown suggest the contrary." *Rocket*, 2024 WL 4349172, at *24 (emphasis in original); *see* Sur-Response at 2. Cassava's stock price behavior on a handful of days during the two-year Class Period does not negate Plaintiffs' undisputed market efficiency evidence, especially given that Defendants do *not* contend the market was *in*efficient. *See id.*; Reply at 14.

### 2. Defendants' Authority Rejected Their "Meme Stock" Arguments

Nor did the R&R "ignore" the *Bratya SPLR v. Bed Bath & Beyond Corp.*, __ F. Supp. 3d __, 2024 WL 4332616 (D.D.C. Sept. 27, 2024) decision (Obj. at 12), which was discussed in the parties' briefing. *See* Sur-Response at 3. Rather, *Bed Bath*, like *Rocket*, "*reject[ed]*" Defendants' "suggestion that the *Cammer* factors are irrelevant in analyzing market efficiency in a period of high volatility." 2024 WL 4332616, at *14. Market efficiency was instead found lacking for two entirely different reasons, neither of which are present here. First, the company was subjected to a short squeeze throughout the entire class period. *Id.*, at *12, *14. Here, by contrast, Defendants do *not* argue (and there is *no* evidence of) a short squeeze at any time. *See* Sur-Response at 3, 5 n.5; Reply at 7; Feinstein Reply, ¶¶188-189.

Second, in *Bed Bath*, the plaintiffs failed to submit a class period event study, thus failing *Cammer*

factor 5 (*Bed Bath*, 2024 WL 4332616, at *18), unlike here, where it is undisputed Plaintiffs' event study proved that new, material Class Period information promptly affected Cassava's stock price. *See* R&R at 28; Reply at 8. Thus, the *Bed Bath* court would have found market efficiency satisfied here. *See Bed Bath*, 2024 WL 4332616, at *10 (plaintiff "must show that the market ***reacted***") (emphasis in original); *see* Sur-Response at 3. There was therefore no reason for the R&R to mention this case.

### 3.    Defendants' "Meme Stock" Arguments Are Inaccurate

Defendants claim that the R&R failed to "engage" with the so-called "unusual facts" of this case. Obj. at 14-15. But the arguments Defendants raise are legally irrelevant, and, because the *Cammer/Krogman* factors are undisputedly met, Defendants effectively conceded market efficiency. Nevertheless, as the R&R found, Dr. Feinstein considered Defendants' "other factors" in his reports, but "did not find that they undermined his event studies." R&R at 27. And, indeed, Defendants' arguments are factually wrong, too. First, though Defendants assert that Cassava's stock price "'often'" moved in the "'absence'" of new information (Obj. at 14) or, once, in an unexpected direction (*see id.* at 4), they point to just eight days as evidence (*see* Opp. at 17). Further, Plaintiffs' expert demonstrated that there either ***was*** identifiable Cassava-related information that the market was reacting to on these days, or the movements are otherwise explainable, thus deflating the entire premise of Defendants' argument. *See* Reply at 12; Feinstein Reply, ¶¶17-22, 35, 127-129, 136-175; Sur-Response at 4-5. As for the single day Cassava's stock price went down when Defendants think it should have gone up, commenters called Defendants' "positive" news (Obj. at 4) "overblown, inappropriate, [and] uninterpretable." Feinstein Reply, ¶¶161-163; *see* Reply at 12; Sur-Response at 4-5.

Second, Cassava did not trade like a "meme stock" during the Class Period. Rather, it was highly sensitive to information regarding whether Simufilam would be a blockbuster or a dud. *See* Reply at 12-13; Feinstein Reply, ¶¶36-38, 90-93, 107, 144. That the stock was subject to volatility during the Class Period is, therefore, unsurprising and not indicative of inefficiency. *See* Feinstein Reply, ¶¶90-93. Even

the market commentary Defendants cite noted Cassava's stock price moved in response to this information. *See* Sur-Response at 5; Feinstein Reply, ¶¶107-109. As did their expert. *See* Reply at 5-6 (Stulz: "'the market reacted'"). In fact, Cassava's stock price traded essentially *within* analysts' price targets, which widely ranged from $8 per share to $215 per share based on the uncertainty surrounding the Company. *See* Feinstein Reply, ¶¶120-121; Reply at 12-13.

Third, Defendants misleadingly claim that "[m]arket participants, business publications, and professional analysts repeatedly described Cassava as a 'meme stock.'" Obj. at 3. Yet, Cassava was rarely described as a "meme" stock. *See* Reply at 13-14; Feinstein Reply, ¶¶102-106. And Cassava was discussed on social media far less than other purported "meme stocks." *See* Reply at 14 n.14; Feinstein Reply, ¶¶76-83. Further, the Roundhill stock index Defendants point to (Obj. at 3) is, as Stulz conceded at his deposition, *not* determinative of whether a stock is a "meme" stock and "'wasn't available in 2021'" during the Class Period. *See* Reply at 13; Feinstein Reply, ¶¶98-101; Stulz Tr. 220:2-221:1.

Fourth, Defendants assert that purported "short-selling constraints" undermined Plaintiffs' efficiency arguments. Obj. at 14. But Defendants provided no evidence that short sellers were constrained. *See* Reply at 14-15. The evidence rather shows the opposite: (i) short selling was profitable (Reply at 15); and (ii) short interest grew significantly throughout the Class Period. Feinstein Reply, ¶¶187-189 (climbing from 3 million to 14 million shares). In fact, courts reject Defendants' "concern about the high cost of short selling," where, as here, short interest grew during the Class Period, and traders could bet against Cassava using options. *See Groupon*, 2015 WL 1043321, at *9; Reply at 15-16; Feinstein Reply, ¶¶187-189, 211.

Yet, even if short selling was constrained (it was not), that does not defeat efficiency, where, as here, the *Cammer/Krogman* factors are met and Defendants do not claim the market was *in*efficient. *See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 94 (S.D.N.Y. 2015) ("Plaintiffs' evidence is sufficient to prove market efficiency . . . notwithstanding defendants' evidence that the market *may have been* inefficient" due to a short selling ban); Reply at 15. Defendants cite no authority holding

- 9 -

otherwise.  Sur-Response at 5.

Further, Stulz did *not* analyze the purported short-selling "constraints" to determine whether they actually impacted Cassava's stock price.  Reply at 15; *see* Stulz Tr. 204:25-205:12.  Instead, Stulz pointed to "potential" frictions, which is insufficient.  *See Barclays*, 310 F.R.D. at 94 n.168 (rejecting argument that a short sale ban is indicative of inefficiency where defendants' expert "did not analyze the impact of the short selling ban on [the company's security] during the [c]lass [p]eriod"); Reply at 15.

Fifth, contrary to Defendants' bare assertion that analysts had "difficulty in assessing information about the Company" (Obj. at 14), the opposite was true.  *See* Feinstein Reply, ¶¶3, 54-55, 197, 199-202.  Plus, there is no objection that Cassava's analyst coverage was sufficient.  *See* R&R at 23-24.

Last, "differences" between Cassava options do not "undermine" Plaintiffs' efficiency arguments.  Obj. at 14.  Defendants do not dispute: (i) "[c]ourts in the Fifth Circuit routinely have held that a finding of market efficiency for common stock also applies to options, because the price for the option is derivative of the price of the stock" (*Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *14 (S.D. Tex. Nov. 13, 2019), *R&R adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019)); or (ii) that courts accept Dr. Feinstein's options analysis, while rejecting Defendants' argument that "differences" between Cassava options precludes market efficiency.  *See* Reply at 16-17 (citing *In re Apple Inc. Sec. Litig.*, 2023 WL 2763952 (N.D. Cal. Mar. 28, 2023) (finding, over the same objections Defendants make here, that Dr. Feinstein's analysis is sufficient for class certification); *Marcus v. J.C. Penney Co.*, 2016 WL 8604331, at *8-*9 (E.D. Tex. Aug. 29, 2016) (rejecting arguments that options efficiency cannot be considered "in the aggregate")).  Defendants, indeed, cited *no legal authority* for their arguments, and Dr. Feinstein refuted them.  *See* Reply at 17; Feinstein Reply, ¶¶40-46, 231-261.

## IV.    DEFENDANTS HAVE NOT REBUTTED THE *BASIC* PRESUMPTION

### A.    The Evidence of Price Impact Is Undisputed

The R&R correctly held that Defendants failed to meet their burden to "prove [a] lack of price

impact." R&R at 18, 31 (citing *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 119 (2021) ("*Goldman*")). Defendants, indeed, do not object to the R&R's finding that there is "evidence that Defendants['] statements caused statistically significant increases in Cassava's stock price," *i.e.*, front-end price impact, on three alleged misstatement dates, including September 14, 2020, the start of the Class Period. R&R at 30-31; *see* Reply at 20.

Nor do Defendants dispute the alleged corrective disclosures "were followed by statistically significant drops in Cassava stock [price]" – *i.e.*, evidence of back-end price impact. R&R at 30. In fact, Defendants do not dispute that *all* six alleged corrective disclosures were followed by statistically significant stock drops. Sur-Response at 7; Reply at 21. Thus, as the R&R found, Defendants effectively "conceded" the issue, as this undisputed evidence of *both* front- and back-end price impact ensures that "'Defendants cannot prove an absence of price impact during the Class Period.'" R&R at 31 (quoting *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 393 (N.D. Ga. 2019)); *see* Reply at 20-21; Sur-Response at 7. Accordingly, the R&R's finding was not based, contrary to Defendants' suggestion, only on evidence of front-end price impact. Obj. at 16. Defendants' objection is therefore baseless.

Moreover, as discussed in Plaintiffs' class certification briefing, there is extensive additional evidence of price impact, as well, including analyst reports that specifically attributed the stock drop to the Citizen Petition corrective disclosure. Sur-Response at 8-9 ("'Cassava's stock came under pressure . . . following [the Citizen Petition].'"). Analysts, moreover, credited Defendants' misstatements as the cause for the price increases in the first place. *Id.*; *see* Complaint, ¶97.[5]

## B.     Defendants' Provided No Evidence to Meet Their Burden on Price Impact

In the face of Plaintiffs' compelling evidence of price impact, Defendants resort to misdirection by arguing 11 *other* dates (not alleged as corrective disclosures (*see* Complaint, ¶¶495-508)) "are not

---

[5] Defendants' selective reliance on *Rocket* is therefore misplaced. *Cf. Rocket*, 2024 WL 4349172, at *26 (citing "proof that no analysts relied on Farner's misrepresentations throughout the Class Period").

associated with any statistically significant movement in the price of Cassava's stock." Obj. at 15. Defendants' claim that "Plaintiffs do not dispute that the bulk of their alleged 'corrective disclosures' are not associated with any statistically significant impact" is therefore incorrect. Obj. at 2. Nevertheless, the R&R rightly disposed of this "flawed" argument, because, even if these dates were corrective disclosures, "'the absence of a statistically significant price adjustment does *not* show the stock price was unaffected by the misrepresentation.'" R&R at 31 (quoting *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019)); *see* Reply at 21-22. Defendants do not cite any case holding otherwise.[6]

Defendants therefore have ***no evidence*** to prove a lack of price impact. Scrambling, Defendants claim that "Cassava's stock price frequently underwent massive swings in the absence of any new information about the company" and that this is somehow evidence of a lack of price impact. Obj. at 16. But that argument is wrong. First, Cassava's stock price did not frequently move in the absence of new information. Reply at 12-13; Sur-Response at 4-5. Second, the analysis Defendants are referring to concerns eight ***other*** dates, ***not*** any misstatement or corrective disclosure date. Indeed, Defendants' expert did ***not*** opine that the alleged misstatements had no price impact (Feinstein Reply, ¶317), and there is ***no evidence*** that this so-called "market volatility" (Obj. at 16) impacted Cassava's stock price on any corrective disclosure or misstatement date. Sur-Response at 8. As Stulz admitted: "'I ***don't have*** an affirmative opinion saying that, yep, [ab]normal return on certain days were affected by the meme phenomenon.'" Feinstein Reply, ¶294 (quoting Stulz Tr. 314:1-314:12); *see Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 657 (S.D. Ohio 2017) (defendants failed to prove lack of price impact where expert "failed to conduct such analyses to affirmatively determine whether there was price impact").

Moreover, Defendants' concession that Cassava's stock price movements on misstatement and

---

[6] *See In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *11 (S.D. Tex. Feb. 9, 2024) ("Plaintiffs argue that lack of statistical significance alone cannot rebut the *Basic* presumption. ***I agree***."); *Bed Bath*, 2024 WL 4332616, at *20 (mismatch in addition to statistical insignificance); *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 1342800, at *9 (S.D.N.Y. Mar. 29, 2024) (misstatements were generic, no market commentary, in addition to statistical insignificance).

corrective disclosure dates were statistically significant rules out "market volatility." *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016) (statistically significant drop means decline is "'unlikely to be explained by the normal random variations of the stock price,'" *i.e.*, volatility), *aff'd sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017); Sur-Response at 8; Feinstein Rpt., ¶¶126-127. Thus, there is no evidence these stock price movements were "random" (Obj. at 16). Instead, **all** the evidence points to the alleged misstatements having price impact on both the front- and back-end.

### C.    Defendants Never Made a Mismatch Argument

Though they claim otherwise, Defendants never made a "mismatch" argument under *Goldman* (Obj. at 17-18), and therefore there was no reason for the R&R to address it. According to *Goldman*, misstatements and omissions "need only be 'related' or 'relevant'" to their corrective disclosures. *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *7 (S.D. Tex. Sept. 27, 2023); Reply at 23. Defendants, however, did not dispute that the misstatements and corrective disclosures are related, thus ending the inquiry. Nor could Defendants dispute this point, as the Court already found the corrective disclosures to be "'relevant'" at the pleading stage. Reply at 23.[7]

Defendants' expert, moreover, conceded he offered no opinion on this issue. *See* Stulz Tr. 309:12-16 ("I'm not having a statement saying something to the effect that an alleged curative disclosure is unrelated to the misstatements or something like that."); Reply at 23. And, given that Defendants do not claim the misstatements are "generic," *Goldman* is inapplicable. *See* Reply at 25; *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *14-*15 (E.D.N.Y. Aug. 8, 2023) (holding *Goldman*'s mismatch theory applies only to "'generic'" statements).

Instead, Defendants baselessly conclude that "in many instances, the alleged corrective disclosures

---

[7] Unlike *Apache*, the alleged disclosures at issue here continually revealed new information, which Defendants do not dispute. 2024 WL 532315, at *9-*10 (finding later disclosures "did not shed any new light" on the alleged fraud or "repeat[ed] old news"). Moreover, Defendants do not provide an alternative explanation for the stock price declines on any of the challenged dates, further distancing these disclosures from those in *Apache*. *Id.* at *10-*11.

fail to address those specific alleged misstatements," and then refer to their previously rejected loss causation argument that their statements were true, thereby leaving nothing to correct. *See* Obj. at 18; Reply at 24. That is not a proper objection. But, even if it was, *Goldman* does **not** require corrective disclosures to "'mirror'" the misstatements and omissions (*Cabot Oil*, 2023 WL 6300569, at *7; *see* Reply at 25) and "loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions [to the class] that need not be adjudicated before a class is certified." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 475 (2013); *see* Reply at 24-25. Thus, the R&R properly held that this is an "'ultimate question[] for the trier of fact on the merits,'" not class certification. R&R at 31.

## V.    PLAINTIFFS' DAMAGES METHODOLOGY IS CONSISTENT WITH THEIR THEORY OF LIABILITY AND SUFFICIENTLY DETAILED

"The *Comcast* requirement is easily satisfied in securities fraud cases," like this one, "invoking the *Basic* presumption and seeking out-of-pocket damages" (*Rougier*, 2019 WL 6111303, at *15) because "courts recognize out-of-pocket damages models as an accepted way to calculate damages on a classwide basis in securities fraud class actions." R&R at 33. Thus, the Court correctly found that Plaintiffs' proffered damages model is "consistent with their theory of liability and capable of calculating damages on a classwide basis." *Id.* at 34; *see* Reply at 27-30.

Indeed, *Comcast* requires only that "the method for calculating class damages be consistent with the theory of liability asserted in the case" (*Rougier*, 2019 WL 6111303, at *15), and, here, Defendants do **not** claim that Plaintiffs' out-of-pocket damages methodology is **in**consistent with their theory of liability[8] or that it is incapable of measuring damages on a classwide basis. *See* Reply at 28; Feinstein Reply, ¶274 (Dr. Stulz "does not dispute that the out-of-pocket damage methodology is appropriate in the instant case"); Stulz Tr. 311:3-9 ("Q. So are you saying an event study is incapable of measuring damages in this case? Is

---

[8] Like at class certification, Defendants rely on *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013). But in that case, unlike here, plaintiffs alleged **multiple** theories of liability. *See id.*, at *16.

that your position?  [Objection.]  A.  *I am – didn't say that*.").  Nor do Defendants dispute that Dr. Feinstein's methodology has satisfied *Comcast* in dozens of cases.  Reply at 27.

Defendants instead repeat their (already rejected) class certification opposition argument that Dr. Feinstein has not sufficiently detailed how he would account for a "***potential[]***" issue – disaggregating the effects of "meme stock" related "volatility" at a later stage of the litigation.  Obj. at 19; *see* Reply at 27; Stulz Tr. 309:9-12, 311:16-23.  This argument fails for multiple independent reasons.

First, as stated in the R&R, "[t]his level of specificity is not required at the class certification stage." R&R at 34.  Rather, "'[i]t is sufficient for class certification that Professor Feinstein has specified a damages model that can be used to establish damages using a common methodology for all class members, even though certain of the inputs to that model are not yet ascertainable.'"  *Id.*; *see Monroe*, 332 F.R.D. at 399 (finding Dr. Feinstein's proposed methodology complied with *Comcast* even though he "ha[d] not yet specified which valuation tools . . . he [would] ultimately use"); Reply at 28-29.[9]

Second, such "potential" disaggregation issues "go to the accuracy of the damages model and loss causation, but do not prevent class certification because all of these alleged obstacles for accurate calculation of the damages are the same if there is one plaintiff or one million plaintiffs."  *Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, 2020 WL 5757695, at *15 (D. Minn. Sept. 28, 2020); *see* Reply at 28-30.  Thus, Defendants' complaint that Dr. Feinstein has not stated precisely how he will disaggregate "potential[]" non-fraud related factors related to "volatility" (Obj. at 19) "is really a merits inquiry into loss causation" for a different day.  *Dougherty v. Esperion Therapeutics, Inc.*, 2020 WL 6793326, at *7 (E.D. Mich. Nov.

---

[9] Like in their class certification opposition, Defendants again cite *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("*Freddie Mac*"), but courts have declined to follow it.  *See Monroe*, 332 F.R.D. at 399.  Further, *Freddie Mac* "involved testimony from defendants' expert affirmatively supporting that a class-wide damages model could ***not*** be constructed – which is ***not*** at issue in the present case" (*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *10 (N.D. Cal. May 9, 2022)), as well as incongruent theories of liability and damages, which is also not an issue here.  *See Pub. Emps.' Ret. Sys. of Miss. v. TreeHouse Foods, Inc.*, 2020 WL 919249, at *9 n.8 (N.D. Ill. Feb. 26, 2020).

19, 2020); *Plymouth Cnty.*, 2020 WL 5757695, at \*14 (same); *see* Reply at 30.[10]

Third, whether Cassava was subject to "meme stock" volatility is dependent on Cassava being a "meme stock," which, as noted above, Defendants do not attempt to show.  *See* Feinstein Reply, ¶294; §III.B, *supra*.  Additionally, "Stulz admits in his testimony" that Defendants' "meme stock" volatility "concern is only speculative and has no proven basis."  Feinstein Reply, ¶294 (citing Stulz Tr. 314:1-314:12 ("I ***don't have*** an affirmative opinion saying that, yep, [ab]normal return on certain days were affected by the meme phenomenon.")).

Last, Defendants falsely assert that Dr. Feinstein "did not grapple with any of these issues" and that "Plaintiffs have supplied no information whatsoever that could allow the Court to determine that Dr. Feinstein is capable of measuring damages at a later stage."  Obj. at 19.  Dr. Feinstein, however, explained at length how his model could disaggregate non-fraud related information, and address Defendants' other purported issues, if necessary.  Feinstein Reply, ¶¶275-296.  Meanwhile Stulz did not "identify a single factor that cannot be addressed using one or more of the generally accepted valuation tools."  *Id.*, ¶263.  Plaintiffs' proffered out-of-pocket damages model thus satisfied *Comcast*.

## VI. PLAINTIFFS ARE TYPICAL OF THE CLASS

Defendants find no specific error with the R&R's typicality finding.  Instead, they contend the R&R got it wrong based on the same unsuccessful arguments made in their class certification opposition.  *See* Obj. at 20.  But that is not a proper objection, and Defendants' criticisms remain without merit.  Contrary to Defendants' claims (*see* Obj. at 20), Plaintiffs were not "'short-term'" and "'high-risk'" traders

---

[10] Defendants' continued reliance on *Sicav v. Wang*, 2015 WL 268855, at \*6 (S.D.N.Y. Jan. 21, 2015), and *Vale* remains misplaced.  Unlike here, *Sicav* was not a "typical securities fraud class action," and alleged "an unusual theory of classwide injury" based on trading mechanics, not a stock price drop.  2015 WL 268855, at \*2.  In *Vale*, the court upheld Dr. Feinstein's damages model and granted class certification.  *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at \*18-\*19, \*22 (E.D.N.Y. Jan. 11, 2022); *Vale*, 2022 WL 969724, at \*6-\*7.  Moreover, the basis of the court's criticism in *Vale* was Dr. Feinstein's use of a different event study than the typical "'collective event study'" used here, which, unlike here, relied on a "'subjective'" and unspecified event date selection process.  2022 WL 122593, at \*10-\*13.  Defendants do not claim that here.

that supposedly ""raise individualized questions."" R&R at 12-13. Rather, as the R&R correctly noted, the District Court already "rejected Defendants' arguments that Plaintiffs' claims are atypical of the Class because they are 'day traders' and 'in-and-out' traders" (R&R at 13) and binding Fifth Circuit precedent holds that "the presence of an arguably unique defense" does not "necessarily destroy typicality." *Id.* (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137 (5th Cir. 2005)). Defendants' arguments carry no water.

Further, as the R&R found, courts have rejected Defendants' argument that Plaintiffs "must have relied on misrepresentations to show typicality," because "'[e]ven in the absence of direct reliance . . . investors may rely on the fraud-on-the-market theory to establish the reliance element.'" R&R at 14 (quoting *Barbier*, 2013 WL 2443217, at *12). Indeed, the record reflects that Plaintiffs are exactly the type of "value" investors that rely on the integrity of the market and are entitled to the *Basic* presumption according to *Halliburton II*. *See* R&R at 33; Sur-Response at 10. The R&R did not "err."

## VII. THE MAGISTRATE DID NOT MAKE "PROCEDURAL ERRORS"

### A. The Evidence Supporting Class Certification Is Overwhelming

As the R&R pointed out, "'[i]n determining whether a suit may be maintainable as a class action, a district court is not obliged to conduct an evidentiary hearing.'" R&R at 7 (quoting *Bradford v. Sears, Roebuck & Co.*, 673 F.2d 792, 795-96 (5th Cir. 1982)). Indeed, "'[t]he court need not resort to an evidentiary hearing in the certification stage of a class action where the record itself is sufficient to make the determination.'" *Id.* (quoting 32B AM. JUR. 2D FEDERAL COURTS §1478); *see In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 46818, at *8 (W.D. La. Jan. 6, 2014) (denying request for live expert testimony at evidentiary hearing on *Daubert* motion because "[l]ive testimony would not be likely to contribute to any greater understanding of the nature of the dispute than can be and has been found in a careful reading and analysis of the briefs and accompanying evidence and documentation").

Here, "[t]he parties have submitted thousands of pages of briefing and evidence on the issue of

class certification." R&R at 7 (citing ECF 148, 214, 227, 231, 245-246). Accordingly, the R&R properly found that "an evidentiary hearing is unnecessary because the pleadings and evidence submitted show that a class should be certified." R&R at 7 (citing *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 694 n.1 (W.D. Tex. 2009) ("'[T]he Court is of the opinion that the issues determining whether a class can be conditionally certified are clear enough such that an evidentiary hearing is unnecessary.'")).

The extensive evidence provided overwhelmingly supports that the class should be certified, and Defendants' arguments have been previously considered, and rejected, by courts. Defendants' argument is therefore inapt, as there is no real doubt that class certification is appropriate.[11]

### B.    Defendants Received "Adequate Opportunity to Respond" and Their Objection Is Untimely

Defendants claim that "[t]he refusal to consider Dr. Stulz's Surreply Report contradicts recent Fifth Circuit precedent." Obj. at 9 (citing *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770 (5th Cir. 2024)). As an initial matter, this objection is untimely and has been waived. Magistrate Judge Hightower issued the order striking the improper Stulz sur-reply report on October 24, 2024. ECF 238. Defendants did not object to that order until their November 29, 2024 Objections – long after their 14-day objection period had run. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14-days after being served with a copy. A party ***may not assign as error a defect in the order not timely objected to***."). This objection therefore may not be considered.

But even if considered, Defendants cannot demonstrate it was "clearly erroneous or is contrary to law," the standard for review of a magistrate judge's decision on a non-dispositive matter. *Id.* First, unlike in *Anadarko*, Defendants here ***agreed*** that Plaintiffs would be permitted to have the last word in an expert reply report. *Compare* ECF 216 at 2; 96 at 3-4; 146 at 3, *with Ga. Firefighters' Pension Fund v. Anadarko Petroleum, Corp.*, No. 4:20-cv-00576 (S.D. Tex. Apr. 9, 2021), ECF 77 at 7. Second, the *Anadarko*

---

[11] Defendants' cases (*see* Obj. at 10) do not help them. In ***every*** case, the court denied requests for evidentiary hearings or affirmed a district court's decision not to hold one.

opinion makes no mention of requiring an accompanying expert report to be filed with the defendants' sur-reply. The opinion merely directed the district court to grant Anadarko leave to file a sur-reply (*Anadarko*, 99 F.4th at 774), and that is exactly what Magistrate Judge Hightower allowed. *See* ECF 219. Defendants thus had "'adequate opportunity to respond.'" *Anadarko*, 99 F.4th at 774.

*Anadarko*, moreover, is inapplicable. There, plaintiffs submitted no evidence on price impact with their opening motion, but instead, for first time on reply, offered a *new* event study and *new* after-market-trading analysis concerning price impact. *See id.* at 773. Here, Dr. Feinstein did *not* submit new price-impact evidence. Instead, Plaintiffs' expert rebuttal report properly focused on price-impact evidence *already in the record* – specifically, Stulz's own report. *See* ECF 212 at 20 (citing Feinstein Reply, ¶317; Stulz Rpt., Exhibit 17); *see, e.g.*, *Jamison v. Harbor Freight Tools Inc.*, 2024 WL 3217418, at *8 (N.D. Miss. June 27, 2024) (reliance and submission of evidence on reply already in the court's record "neither presents a new legal theory nor new evidence"); *see* ECF 216 at 5-7.

Accordingly, Magistrate Judge Hightower's decision to strike the Stulz sur-reply report was neither clear error nor contrary to law. *See also Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 3147349, at *4 (N.D. Ill. June 19, 2013) (denying request to file expert report to address reply expert report because the reply report was "responsive to" opposition expert report); ECF 216 at 6 (collecting cases).

### C.    Defendants' Late *Daubert* Motion Does Not Impact Class Certification

Defendants claim that "[t]he Court must conduct a full *Daubert* inquiry prior to ruling on class certification." Obj. at 11 (citing *Anadarko*, 99 F.4th at 773-74). But Defendants' *Daubert* motion is untimely and should not be considered as Defendants purposefully delayed filing it until *after* the R&R in order to manufacture an argument that the Court cannot rule on class certification until after it addresses Defendants' *Daubert* motion. *See* ECF 276. This gamesmanship should not be countenanced.

*Anadarko* does not counsel otherwise. In that case, the defendants filed their *Daubert* motion *before* a class certification decision was rendered. *See Anadarko*, 99 F.4th at 773. And, as *Anadarko*

noted, "[c]lass actions may only be certified 'based on adequate admissible evidence to justify class certification.'" *Id.* Here, regardless of the outcome of Defendants' *Daubert* motion, there is still more than sufficient evidence to certify the Class. *Anadarko* is therefore inapplicable, as class certification does not turn on the portions of Dr. Feinstein's opinions that Defendants challenge. *See* ECF 277.

First, though they claim to seek to exclude Dr. Feinstein's opinions "in their entirety" (ECF 268 at 2), Defendants' *Daubert* motion is actually narrow. Defendants do not challenge the results of Dr. Feinstein's *Cammer/Krogman* analysis; nor do they dispute that the price of Cassava's Securities reacted to new, material information during the Class Period. §§III.A, IV.A, *supra*. Therefore, market efficiency is demonstrated and Plaintiffs may rely on the *Basic* presumption of reliance. *See* §III.A, *supra*.

Second, the *Daubert* motion does not seek to exclude any evidence of price impact. Thus, Plaintiffs' evidence of front- and back-end price impact is unchallenged. *See* §IV.A, *supra*. And because it is Defendants' burden to disprove price impact, but they have adduced no such evidence (*see* §IV.B, *supra*), the *Daubert* motion has no bearing on price impact.

Third, *Comcast* requires only that, at the class certification stage, the plaintiffs' "'damages case must be consistent with its liability case.'" *Comcast*, 569 U.S. at 35. But Defendants' *Daubert* motion neither claims that Plaintiffs' out-of-pocket damages model is inconsistent with their theory of liability nor that it is unreliable. Indeed, the methodology is the standard model used in securities fraud cases such as this, and Dr. Feinstein's model has been accepted by dozens of courts as satisfying *Comcast*. *See* §V, *supra*. Defendants' arguments, that Dr. Feinstein has not actually conducted a loss causation analysis and proven damages, are merits issues that courts hold are for another day. *Id.*

## VIII.   CONCLUSION

For the reasons stated in Plaintiffs' Class Certification Motion, Reply, and Sur-Response, as well as those stated herein, the R&R should be adopted in its entirety.

4931-9347-2262.v4

DATED:  December 13, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
    & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)

*/s/ Kevin A. Lavelle*

KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

- 21 -

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 13, 2024, a true and correct copy of the foregoing was served electronically upon each attorney of record.

*/s/ Kevin A. Lavelle*

KEVIN A. LAVELLE

4931-9347-2262.v4