IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES INC. | § | |
| SECURITIES LITIGATION | § | Master File No. 1:21-cv-00751-DAE |
| | § | |
| | § | CLASS ACTION |
| This Document Relates to: | § | |
| | § | |
| ALL ACTIONS | § | |
| | § | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE CLASS
CERTIFICATION TESTIMONY OF DR. STEVEN FEINSTEIN**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 2

    I.    Dr. Feinstein's Theory of Market Efficiency Is Unreliable and Results in
        Every Market Being Deemed Efficient ................................................................ 2

    II.    Dr. Feinstein's Assertions About Price "Reactions" Occurring Long After
        the Publication of News Have No Basis in Financial Economics ......................... 4

    III.    Dr. Feinstein's Theory of Market Efficiency Reflects an Incorrect Legal
        Standard ............................................................................................................. 5

    IV.    Dr. Feinstein Ignores Glaring Indicators of Inefficiency in the Markets for
        Cassava Stock and Options ................................................................................. 6

    V.    Dr. Feinstein's Assertions About "Rational Bounds" Are Unreliable and
        Lead to Absurd Results ....................................................................................... 8

    VI.    Dr. Feinstein's Assertion that the Lack of Statistically Significant Price
        Movements Is Irrelevant to Price Impact Has No Basis in Financial
        Economics ........................................................................................................... 8

    VII.    Dr. Feinstein's Black-Box Damages Opinion is Vague, Unreliable, and
        Disconnected from the Facts ............................................................................... 9

CONCLUSION ................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013)..............................................................................................................5, 7

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)..........................................................................................................2, 5, 7

*Bratya SPRL v. Bed Bath & Beyond Corp.,*
    2024 WL 4332616 (D.D.C. Sept. 27, 2024) .............................................................2, 6, 7, 8, 9

*Brown v. Ill. Cent. R.R. Co.,*
    705 F.3d 531 (5th Cir. 2013) ...............................................................................................10

*Cannon v. BP Prod. N. Am., Inc.,*
    2013 WL 5514284 (S.D. Tex. Sept. 30, 2013) ............................................................6, 8, 10

*Chan v. Coggins,*
    294 F. App'x 934 (5th Cir. 2008) ...........................................................................................9

*Daniels-Feasel Forest Pharms., Inc.,* 2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021) .................6, 8

*Faulkner v. Arista Recs. LLC,*
    46 F. Supp. 3d 365 (S.D.N.Y. 2014)...................................................................................1, 3

*Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.,*
    301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................................................9

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997).............................................................................................................10

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,*
    99 F.4th 770 (5th Cir. 2024) ..................................................................................................1

*Greenberg v. Crossroads Sys., Inc.,*
    364 F.3d 657 (5th Cir. 2004) ..................................................................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014)................................................................................................................5

*IBEW Loc. 90 Pension Fund v. Deutsche Bank AG,*
    2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ....................................................................6, 8

*Krogman v. Sterritt,*
    202 F.R.D. 467 (N.D. Tex. 2001) ...........................................................................................3

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)................................................................................................................9

*Lamar Advert. Co. v. Zurich Am. Ins. Co.*,
    533 F. Supp. 3d 332 (M.D. La. 2021) .......................................................................5

*Martinez v. Porta*,
    601 F. Supp. 2d 865 (N.D. Tex. 2009) ....................................................................5

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
    523 F.3d 1051 (9th Cir. 2008) ..................................................................................5

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ....................................................1, 9

*Prantil v. Arkema Inc.*,
    986 F.3d 570 (5th Cir. 2021) ...................................................................................1

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ................................................................................4, 7

*Werth v. Makita Elec. Works, Ltd.*,
    950 F.2d 643 (10th Cir. 1991) ..................................................................................5

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ................................................................................5

## INTRODUCTION

Plaintiffs do not dispute the substance of the criticisms raised in Defendants' Motion to Exclude. *See* ECF 277 ("Opp."). Instead, Plaintiffs assert Dr. Feinstein's opinions must be deemed reliable because Dr. Feinstein has the requisite education and has published on finance, Opp. at 3, and because the Magistrate Judge credited those opinions in the Report and Recommendation ("R&R"), Opp. at 1-2, 5, 10, 14. But qualifications do not a reliable opinion make, *see, e.g.*, *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) (excluding Dr. Feinstein's testimony), and this Court has an independent obligation to ensure Dr. Feinstein's opinions are reliable at the class certification stage, *see Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (*Daubert* "applies with the same rigor at the class certification stage as at trial"); *Prantil v. Arkema Inc.*, 986 F.3d 570, 575 (5th Cir. 2021) ("[T]he *Daubert* hurdle must be cleared when scientific evidence is relevant to the decision to certify."). As explained in Defendants' Motion, Dr. Feinstein's opinions cannot withstand that scrutiny. *See* ECF 268.

Plaintiffs admit that Dr. Feinstein's theory of efficiency assumes that *every* stock actively traded on Nasdaq should be deemed efficient. Opp. at 5-6. This is so regardless of whether the stock's price swings wildly in the absence of news, and regardless of whether extraneous forces (such as the meme stock phenomenon) bear on the stock. Any methodology like Dr. Feinstein's that assumes the same conclusion regardless of the facts is unreliable and "must be excluded." *E.g.*, *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014).

Plaintiffs likewise do not dispute that Dr. Feinstein dismissed entirely the meme-stock dynamics that plagued Cassava's stock during the class period. Opp. at 10-11. Instead, Plaintiffs point to the R&R's statement that "Defendants identify no Fifth Circuit case law stating that courts should not apply the *Cammer/Krogman* factors in securities fraud cases when the defendant argues

that the stock was a meme stock or that the market was inefficient," R&R at 21, asserting this somehow excuses Dr. Feinstein from having to engage with relevant facts. Opp. at 10-11. But even if this statement were accurate (it is not, *see* ECF 270 at 12-13), it does not remove Dr. Feinstein's obligation to consider all relevant facts in forming his opinions. Indeed, Defendants and Dr. Stulz have identified numerous effects of the meme stock phenomenon on Cassava's stock during the class period, effects which undermined "the integrity of the price set by the market." *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988). As a federal district court recently recognized, "these dynamics" must be considered "in determining whether [the] market was efficient." *Bratya SPRL v. Bed Bath & Beyond Corp.*, 2024 WL 4332616, at *14 (D.D.C. Sept. 27, 2024). Because Dr. Feinstein ignored such dynamics, his opinions are unreliable and cannot support class certification.

Plaintiffs also do not pretend that Dr. Feinstein offers anything more than a vague summary of "valuation tools" that can, depending on the facts, generally be used to calculate "out-of-pocket" damages. Opp. at 16-20. Dr. Feinstein does *nothing* to account for the difficulties posed by the market dynamics impacting Cassava's stock during the class period. On the unusual facts of this case, Dr. Feinstein has not established that residual price declines on alleged corrective disclosure dates can reliably be used to measure damages. *See* Stulz Rpt. ¶¶ 196, 204; *see* ECF 227 at 17-18. His damages opinions thus should be excluded.

Dr. Feinstein's opinions are riddled with flaws and should be excluded in their entirety. Defendants' Motion should be granted.

## **ARGUMENT**

### I.    **Dr. Feinstein's Theory of Market Efficiency Is Unreliable and Results in Every Market Being Deemed Efficient**

Plaintiffs concede a number of astonishing features of Dr. Feinstein's opinions. They admit that Dr. Feinstein's approach assumes that the market for *any* stock actively traded on a major

exchange should automatically be deemed efficient. Opp. at 5-6. Nor do Plaintiffs dispute that Dr. Feinstein concludes that *any* price movement following the publication of *any* information shows efficiency—regardless of the information's content, regardless of the direction or magnitude of the price change, and regardless of how long the price continues to swing following the publication. *Id.*; *see, e.g.*, Feinstein Rebuttal ¶ 16 ("[I]f a market reacts to new information rather than ignores that information, that market is informationally efficient."). Moreover, Plaintiffs do not dispute that Dr. Feinstein concludes massive price swings in the absence of news are consistent with market efficiency. Opp. at 5-6, 8-9; *see, e.g.*, Feinstein Rebuttal ¶¶ 110-29, 181-85.

Recognizing the flaws in Dr. Feinstein's circular logic, Plaintiffs instead attempt to obfuscate the issue, asserting that Defendants "ignore the definition that Feinstein repeatedly and explicitly stated that he used." Opp. at 5-6. But while Dr. Feinstein at times *claimed* to be applying the standard definition of semi-strong efficiency, his actual analysis is entirely different. In a semi-strong efficient market, the stock price rapidly incorporates all new, value-relevant public information. Stulz Rpt. ¶ 31. Accordingly, a pattern of significant price changes disconnected from any new public information is inconsistent with market efficiency. Stulz Rpt. ¶¶ 34-35; *see Krogman v. Sterritt*, 202 F.R.D. 467, 477 (N.D. Tex. 2001). But Dr. Feinstein's capacious approach—where *no* price swing can *ever* be inconsistent with efficiency—directly contradicts this well-established definition. His efficiency opinions should be excluded on that ground alone.

What's more, by beginning with the premise that the market is always "right" and that no price movement can ever be inconsistent with efficiency, Dr. Feinstein assumes the very conclusion he purports to prove. Such a methodology "aimed at achieving one result" is inherently unreliable and "must be excluded." *Faulkner*, 46 F. Supp. 3d at 381; *see also In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 796-800 (3d Cir. 2017); *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018);

*In re Northfield Lab'ys, Inc. Sec. Litig.*, 267 F.R.D. 536, 548 (N.D. Ill. 2010). Plaintiffs can offer no answer to these decisive points.

## II.    Dr. Feinstein's Assertions About Price "Reactions" Occurring Long After the Publication of News Have No Basis in Financial Economics

In financial economics, semi-strong market efficiency requires that a stock price *quickly and fully* incorporate all new, value-relevant public information. *See* Stulz Rpt. ¶¶ 31-35; *see also Unger v. Amedisys Inc.*, 401 F.3d 316, 325 (5th Cir. 2005) ("In an efficient market, …material misstatements alter a stock's price almost immediately."). Dr. Feinstein's opinions can find no refuge in that principle, as they place no temporal limit on when news can impact the stock price.

In straining to argue that Cassava's market was efficient, Dr. Feinstein asserts that price "reactions" occurring days or even weeks after the publication of news are consistent with market efficiency. *See* Feinstein Rebuttal ¶¶ 19, 138-75. Indeed, when asked how to "determine when a news event stopped having impact on the price" under his "framework for studying market efficiency," Dr. Feinstein could provide only the circular response that "one could look at the price," and see "if there's a continued price reaction." *See* Feinstein Sept. Tr. at 126:14-22. According to Dr. Feinstein, if a stock's price keeps moving, the stock is still "processing" or "reacting" to previous news—*regardless* of how long such price swings continue. Plaintiffs do not dispute this. *See* Opp. at 4-13.

Neither Plaintiffs nor Dr. Feinstein cite *any* academic literature that would support this circular interpretation of "informational efficiency." None exists. Indeed, as explained in Defendants' Motion, Dr. Feinstein's own academic writings—and the sources cited therein—contradict the approach he takes here. Mot. at 8-10. Dr. Feinstein's assertions about delayed price "reactions" are unreliable, conclusion-driven, and should be excluded.

### III.    Dr. Feinstein's Theory of Market Efficiency Reflects an Incorrect Legal Standard

The *Basic* presumption's underlying premise is that "[i[f a market is generally efficient in incorporating publicly available information into a security's market price," then "it is reasonable to presume that most investors…will rely on the security's market price as an unbiased assessment of the security's value in light of all public information." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 462 (2013) (citing *Basic*, 485 U.S. at 245-47). "Thus, courts may presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their 'reliance on the integrity of the price set by the market.'" *Id.* (quoting *Basic*, 485 U.S. at 245); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 273 (2014) (same); *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 662 n. 6 (5th Cir. 2004) (same).

Dr. Feinstein, by contrast, contends that price movements in an efficient market need not be consistently correlated with the release of new information. Again, Plaintiffs *do not dispute this*.

Dr. Feinstein's understanding contradicts *Basic*'s rationale. If a stock's price fluctuates wildly in the absence of any new information, investors have no reason to rely "on the integrity of the price set by the market." *Amgen*, 568 at 462. Dr. Feinstein's approach this is divorced from the basis of the *Basic* presumption. His opinions should be excluded on that ground alone. *See, e.g.*, *Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 348 (M.D. La. 2021); *Martinez v. Porta*, 601 F. Supp. 2d 865, 866 (N.D. Tex. 2009); *see also Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003); *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 650 (10th Cir. 1991).

Plaintiffs' only response is to point out that courts have relied on the *Cammer/Krogman* factors and event studies in the past. Opp. at 7-8. This misses the point. Dr. Feinstein's analysis is flawed not because he uses the *Cammer/Krogman* factors or runs an event study, but because he

ignores all evidence inconsistent with his pre-baked conclusion. In so doing, he advances an approach to market efficiency that undermines the very legal presumption on which Plaintiffs rely.

## IV. Dr. Feinstein Ignores Glaring Indicators of Inefficiency in the Markets for Cassava Stock and Options

Because Dr. Feinstein's market efficiency opinions fail to meaningfully address key facts, including the meme-stock dynamics impacting Cassava's stock during the class period, his opinions are unreliable and should be excluded. *See, e.g.*, *Daniels-Feasel Forest Pharms., Inc.*, 2021 WL 4037820, at *5 (S.D.N.Y. Sept. 3, 2021), *aff'd sub nom. Daniels-Feasel v. Forest Pharms., Inc.*, 2023 WL 4837521 (2d Cir. July 28, 2023); *Cannon v. BP Prod. N. Am., Inc.*, 2013 WL 5514284, at *6-17 (S.D. Tex. Sept. 30, 2013); *IBEW Loc. 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 5815472, at *15 (S.D.N.Y. Oct. 29, 2013).

Plaintiffs do not dispute that Dr. Feinstein failed to engage with the meme-stock dynamics that impacted Cassava's stock. Opp. at 10-11. Instead, Plaintiffs point to the R&R's statement that "Defendants identify no Fifth Circuit case law stating that courts should not apply the *Cammer/Krogman* factors in securities fraud cases when the defendant argues that the stock was a meme stock or that the market was inefficient," R&R at 21, asserting this excuses Dr. Feinstein from having to analyze those facts. Opp. at 10-11.

But the R&R's statement is wrong. For one thing, the meme stock phenomenon is relatively new, so it is unsurprising that the Fifth Circuit has not yet addressed it. For another, the R&R ignores that a federal district court recently recognized meme-stock dynamics in denying class certification. *See Bratya*, 2024 WL 4332616, at *12-19.

More fundamentally, Defendants are *not* arguing that the *Cammer/Krogman* factors are irrelevant. *Cf.* R&R at 21. Rather, Defendants argue that, given the unique market forces at play, Dr. Feinstein's cookie-cutter analysis of these factors cannot show that the market was "efficient"

during the class period. As the Fifth Circuit has long recognized, the *Cammer/Krogman* factors are an "analytical tool," not a "checklist." *Unger*, 401 F.3d at 325. "Nor are they a guarantee of market efficiency." *Bratya*, 2024 WL 4332616, at *11, 14. Instead, the factors are helpful to the extent they illuminate the ultimate question—whether it is "reasonable to presume" that class members relied "on the integrity of the price set by the market" during the class period. *Amgen*, 568 U.S. at 462. When *all* relevant evidence is considered, it is clear the answer to that question is no. Because Dr. Feinstein ignores such evidence, his purported market efficiency analysis is unreliable.

Plaintiffs also assert that Dr. Feinstein need not analyze the meme stock phenomenon's impact on Cassava's stock because Dr. Stulz did not opine that Cassava was a meme stock. Opp. at 11. This mischaracterizes Dr. Stulz's opinions. As Dr. Stulz explains, the academic literature surrounding the meme stock phenomenon is developing, and the academy has yet to arrive at a single, consensus definition of "meme stock." Stulz Rpt. ¶¶ 55-68. Numerous academics and market observers, however, have recognized that the meme stock phenomenon raises serious implications for market efficiency, concluding that affected stocks often behave in a manner inconsistent with efficiency. *Id.* ¶¶ 55-59. Dr. Stulz examined whether Cassava's stock demonstrated such behavior during the class period. *Id.* ¶¶ 60-69. He concluded it did. *Id.*

In any event, the operative question is *not* whether Cassava should be defined as a "meme stock." The question is whether the market for Cassava's stock was *efficient* during the class period. And meme-stock dynamics are relevant to that inquiry, regardless of whether Cassava fits some technical "meme stock" definition. Defendants and Dr. Stulz have identified numerous actual consequences of the meme stock phenomenon on Cassava's stock during the class period, consequences which undermined "the integrity of the price set by the market." *Basic*, 485 U.S. at

245; *see also Bratya*, 2024 WL 4332616, at *9-10. "[T]he Court cannot simply ignore these dynamics…in determining whether [the] market was efficient." *Bratya*, 2024 WL 4332616, at *14.

Rather than engage with the meme-stock dynamics central to this case, Dr. Feinstein sidesteps them altogether. His refusal to account for the unusual forces impacting Cassava's stock during the class period renders his efficiency opinions unreliable, unhelpful, and excludable. *E.g.*, *Daniels-Feasel*, 2021 WL 4037820, at *5; *IBEW*, 2013 WL 5815472, at *15; *Cannon*, 2013 WL 5514284, at *6-17.

## V.    Dr. Feinstein's Assertions About "Rational Bounds" Are Unreliable and Lead to Absurd Results

Plaintiffs double down on Dr. Feinstein's assertion that Cassava's stock price remained within "rational bounds" because the stock traded roughly within analysts' price targets, which ranged from $8 to $215. Opp. at 17-18; *see* Feinstein Rebuttal ¶¶ 120-26. According to Plaintiffs and Dr. Feinstein, *any* movement in Cassava's price should be considered "rational," regardless of its relation to new information, so long as the price remained within that vast range. Opp. at 17.

Plaintiffs offer no justification for this incredible notion of "rational" price movements and make no effort to explain its absurd results. Opp at 17-18. Dr. Feinstein's assertions about "rational bounds" are unreliable and must be excluded.

## VI.    Dr. Feinstein's Assertion that the Lack of Statistically Significant Price Movements Is Irrelevant to Price Impact Has No Basis in Financial Economics

Plaintiffs try to defend Dr. Feinstein's statements about statistical significance by citing cases stating that a lack of statistically significant price movement does not, *standing alone*, conclusively establish lack of price impact. Opp. at 13-14. Defendants do not contend otherwise. Even if not dispositive, however, the lack of statistically significant price movements plainly is *relevant* to price impact and must be considered in any price impact analysis. *See Bratya*, 2024

WL 4332616, at *20 (noting the lack of a statistically significant price reaction meant there was "no evidence" that misrepresentation impacted stock price); *In re Apache Corp. Sec. Litig.*, 2024 WL 532315, at *11 (S.D. Tex. Feb. 9, 2024) (noting that lack of statistically significant price declines was a "relevant fact to consider alongside Defendants' other evidence concerning price impact"). Dr. Feinstein's refusal to consider the lack of statistical significance price movements is yet another reason his opinions are unreliable, contrary to basic principles of financial economics, and should be excluded.

## VII.   Dr. Feinstein's Black-Box Damages Opinion is Vague, Unreliable, and Disconnected from the Facts

For his purported damages opinion, Dr. Feinstein offers nothing more than a summary of general "valuation tools" that can, depending on the facts, perhaps be used to calculate "out-of-pocket" damages. Plaintiffs do not pretend otherwise, instead asserting that such a vague description is all that is required at this stage. Opp. at 16-20. Not so.

Courts must exclude any purported classwide damages model that "is vague, indefinite, and unspecific, [and] simply asserts" that "there are unspecified 'tools' available to measure damages" without providing any details about how such "tools" will be applied to the facts. *Ohio Pub. Emps. Ret. Sys.*, 2018 WL 3861840, at *19 (granting motion to exclude Dr. Feinstein's testimony). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Chan v. Coggins*, 294 F. App'x 934, 938-39 (5th Cir. 2008) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999)); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) ("without assurance beyond [plaintiffs' expert]'s say-so, the Court cannot conclude that there is a damages model that will permit the calculation of damages on a classwide basis"); *In re BP p.l.c. Sec. Litig.*, No. 10-md-2185, ECF

857 at 23 (S.D. Tex. May 20, 2014) (same). To the contrary, opinions supported "only by the [expert's] *ipse dixit*" are inherently unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Such is the case here. The *only* thing in Dr. Feinstein's proposed damages model that is specific to this case is the conclusory statement that his methodology is "consistent in this case with these Plaintiffs' theory of liability." Feinstein June Tr. at 237:7-14; 238:16-20. Dr. Feinstein does not attempt to grapple with *any* of the issues presented by the unusual facts of this case. Instead, Plaintiffs assert that in *every case*, regardless of the facts or theory of liability, all the expert need do is vaguely reference general "valuation tools." *See* Opp. at 16-20.

Plaintiffs try to justify their position by contending that the out-of-pocket "model" is standard, and that other proposed classes have been certified based upon it in the past. Opp. at 16-20; *see* Feinstein June Tr. at 239:4-18. But an "expert's assurances that he has utilized generally accepted [principles] is insufficient." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (citation omitted) (affirming exclusion of expert testimony). And assurances that any issues could be addressed at the merits stage are likewise insufficient. *See Cannon*, 2013 WL 5514284, at *12 (so holding). Dr. Feinstein's purported damages opinion thus must be excluded.

## CONCLUSION

For these reasons, the proffered expert class certification testimony of Dr. Steven Feinstein should be excluded under Federal Rule of Evidence 702.

Dated: December 18, 2024                    Respectfully submitted,

                                            /s/ *Gregg Costa*
                                            Gregg Costa (Tx. Bar No. 24028160)
                                            Trey Cox (Tx. Bar No. 24003722)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            811 Main Street, Suite 3000
                                            Houston, TX 77002
                                            Telephone: 346.718.6600
                                            gcosta@gibsondunn.com
                                            tcox@gibsondunn.com

                                            Monica K. Loseman (admitted *pro hac vice*)
                                            Scott Campbell (admitted *pro hac vice*)
                                            John Turquet Bravard (admitted *pro hac vice*)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1801 California Street
                                            Denver, CO 80202-2642
                                            Telephone: 303.298.5700
                                            mloseman@gibsondunn.com
                                            scampbell@gibsondunn.com
                                            jturquetbravard@gibsondunn.com

                                            Mary Beth Maloney (admitted *pro hac vice*)
                                            GIBSON, DUNN & CRUTCHER LLP
                                            200 Park Avenue
                                            New York, NY 10166
                                            Telephone: 212.351.4000
                                            mmaloney@gibsondunn.com

                                            *Counsel for Defendants Cassava Sciences, Inc. and
                                            Eric J. Schoen*

                                            Douglas W. Greene
                                            BAKER & HOSTETLER LLP
                                            45 Rockefeller Plaza
                                            New York, NY 10111
                                            Telephone: 212.847.7090
                                            dgreene@bakerlaw.com

                                            C. Shawn Cleveland
                                            BAKER & HOSTETLER LLP
                                            2850 N. Harwood Street, Suite 1100
                                            Dallas, TX 75201
                                            Telephone: 214.210.1200
                                            scleveland@bakerlaw.com

                                            *Counsel for Defendants Remi Barbier and
                                            Lindsay Burns*

11

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on December 18, 2024, a true and correct copy of the foregoing was

served electronically upon each attorney of record.

<u>/s/ <i>Gregg Costa</i>                              </u>
Gregg Costa
