UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § § § § § § § § § § | Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | | |

**JOINT ADVISORY TO MAGISTRATE JUDGE BEMPORAD IN ADVANCE OF DISCOVERY STATUS CONFERENCE**

On December 20, 2024, the Special Discovery Master, Magistrate Judge Henry J. Bemporad, ordered the Parties[1] to file a Joint Advisory by February 18, 2025. ECF 283 (the "Order"). The Parties respectfully submit the following in compliance with the Order.

## I. DOCUMENTS PROVIDED TO CASSAVA BY THE SEC AND THE SEC DEPOSITION TRANSCRIPTS

On December 24, 2024, the Cassava Defendants produced to Plaintiffs and counsel for defendants Barbier and Burns the 16 documents identified in the October 22, 2024 Joint Advisory (ECF 233) that Cassava received from the U.S. Securities and Exchange Commission ("SEC") during the SEC investigation. On January 7, 2025, the Cassava Defendants produced to Plaintiffs and counsel for defendants Barbier and Burns the deposition transcripts of Benjamin Thornton, Michael Marsman, and Eric Schoen. On February 5, 2025, the Court ordered defendants Barbier and Burns to request and produce the transcripts of their SEC depositions. ECF 293. On February 10, 2025, counsel for defendants Burns and Barbier confirmed that they have requested their transcripts from the SEC. Burns and Barbier's SEC deposition transcripts have not yet been produced to Plaintiffs and the Cassava Defendants.

## II. ADDITIONAL THIRD-PARTY DOCUMENT DISCOVERY BASED ON INFORMATION LEARNED IN THE SEC DEPOSITION TRANSCRIPTS

### A. Plaintiffs' Position

After reviewing the SEC deposition transcripts produced to date, Plaintiffs hereby notify the Court that they intend to serve a document subpoena on the SEC requesting additional deposition transcripts and exhibits that have not been produced to Plaintiffs.

---

[1] The "Parties" are lead plaintiff Mohammad Bozorgi, additional plaintiffs Ken Calderone and Manohar Rao (together, "Plaintiffs"), and Cassava Sciences, Inc. ("Cassava" or the "Company") and Eric J. Schoen (the "Cassava Defendants"), and Remi Barbier and Lindsay Burns (together with the Cassava Defendants, "Defendants").

- 2 -

In the Parties' December 12, 2024 Joint Advisory, Plaintiffs raised the prospect of needing to serve additional third-party discovery based on information learned in the SEC deposition transcripts. *See* ECF 280 at 4. As explained therein, Plaintiffs anticipated learning through the SEC deposition transcripts about the existence of witnesses or other third parties who have relevant documents in their possession, custody, or control. *See id*. Plaintiffs also specifically noted that they may need to serve subpoenas to obtain SEC deposition transcripts from other third parties. *See id*. That is exactly what has now occurred.

Upon Plaintiffs' review of the SEC deposition transcripts of Benjamin Thornton, Michael Marsman, Eric Schoen, and Dr. Hoau-Yan Wang ("Dr. Wang"), it is evident there is additional deposition testimony that Plaintiffs are missing. The SEC deposition transcripts produced to date indicate that the SEC marked over 350 exhibits during their investigation. But the SEC deposition transcripts that Cassava has produced account for just a fraction of the total number of exhibits marked during the SEC's investigation. Therefore, there appears to be numerous other SEC deposition transcripts of testimony taken from unknown witnesses that are not in Plaintiffs' possession. Additionally, the SEC deposition transcripts of Benjamin Thornton, Michael Marsman, Eric Schoen, and Dr. Wang do not include the associated exhibits, and many of the referenced exhibits either have not been produced to Plaintiffs or are unable to be identified from the transcripts.

Accordingly, Plaintiffs intend to subpoena the SEC for any deposition testimony related to their investigations of Cassava and Dr. Wang that Plaintiffs do not already possess along with exhibits to all SEC deposition transcripts.

Defendants state they object to Plaintiffs subpoena to the SEC, but they do not and cannot articulate ***any*** prejudice they would suffer from the subpoena. Defendants, indeed, have no standing to object. *See* ECF 280 at 5-6 (citing *Diamond Consortium Inc. v. Manookian*, 2017 WL 699052, at *1 (E.D. Tex. Feb. 22, 2017) ("A party does not have standing to quash a subpoena served on a third

party unless the party seeks to quash based on a 'personal right or privilege with respect to the materials subpoenaed.'") (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)); *Wilemon Found., Inc. v. Wilemon*, 2021 WL 1649507, at *3 (N.D. Miss. Apr. 27, 2021) (A party "may not challenge a subpoena made to a third-party on the grounds that the information sought is not relevant or imposes an undue burden.").

Defendants' objection is really an attempt to impede and delay Plaintiffs' discovery of materials that are undisputedly relevant. Despite Defendants' stonewalling, Plaintiffs have – for over a year –properly followed the process set out by the SEC and the related case law, which states that "'only the defendants may pursue the transcript request.'" *See* ECF 221 at 1-2 (quoting *Okla. Firefighters Pension & Ret. Sys. v. Musk*, 345 F.R.D. 287, 291 (S.D.N.Y. 2024)). Now, however, it is apparent Plaintiffs are unable to obtain these additional SEC deposition transcripts and the associated exhibits from the Defendants. Accordingly, Plaintiffs intend on seeking these documents from the SEC.

**B.     Defendants' Position**

Consistent with this Court's guidance, the parties have generally agreed to stay new discovery requests until the Court rules on Defendants' pending Motion to Stay Merits Discovery (Dkt. 248).

Nonetheless, on Thursday, February 13, 2025, Plaintiffs informed Defendants that they intend to subpoena the SEC for deposition transcripts and exhibits for unknown witnesses. This came as a surprise to Defendants, given that Plaintiffs repeatedly represented that only Defendants, not Plaintiffs, could request testimony and exhibits from the SEC. Plaintiffs previously insisted that Defendants request their testimony from the SEC (and that the Court Order Defendants to do so), rather than Plaintiffs simply making the request themselves, because Plaintiffs were not authorized to do so.

- 3 -

Accordingly, on Friday, February 14, 2025, Defendants asked Plaintiffs to explain whether Plaintiffs' position that they were not able to obtain transcripts and exhibits directly from the SEC had changed and, if so, based on what information. Defendants also asked Plaintiffs to explain their immediate need (if any) for the depositions transcripts and exhibits for unknown witnesses. As of this filing, Plaintiffs have not yet provided any basis for their change in position or any immediate need for the transcripts or documents. Accordingly, consistent with the general agreed stay of discovery, and absent any exigency, Defendants oppose any immediate subpoena to the SEC pending a ruling on Defendants' Motion to Stay.

## III.     DEFENDANTS' PRIVILEGE LOG

### A.     Plaintiffs' Position

Following Plaintiffs' challenge of hundreds of privilege log entries, including communications disclosed to third parties, Defendants have agreed to produce numerous categories of previously withheld documents. Defendants, however, continue to improperly withhold documents disclosed to certain other third parties as privileged.

On January 17, 2025, the Cassava Defendants agreed to produce documents that included the following third parties: (i) SVB Leerink; (ii) H.C. Wainwright & Co.; (iii) Cantor Fitzgerald & Co.; and (iv) Maxim and provided descriptions for the following third parties on Cassava's privilege log: (i) Dr. Charles Spruck; (ii) Ernst & Young; (iii) USI Insurance Services, LLC; (iv) M2 Compliance; and (v) Dr. Wang. The Cassava Defendants failed to provide descriptions for the following third parties present on Cassava's privilege log: (i) Premier Research; (ii) Gary Lauder; (iii) Computer Share; (iv) Matthew Nachtrab; (v) Coleen Atkins; and (vi) Daniel Achord.

After reviewing the information provided, on January 24, 2025, Plaintiffs informed the Cassava Defendants that Plaintiffs continued to challenge documents that include the following third parties: (i) Dr. Charles Spruck; (ii) Ernst & Young; (iii) M2 Compliance; (iv) Dr. Wang, (v) Premier

- 4 -

Research; (vi) Gary Lauder; (vii) Computer Share; (viii) Matthew Nachtrab; (ix) Coleen Atkins; and (x) Daniel Achord. On January 31, 2025, Defendants provided contractual agreements to describe the scope of the services the following third parties were to provide to Cassava: (i) Dr. Charles Spruck; (ii) Dr. Coleen Atkins; (iii) M2 Compliance; and (iv) Ernst & Young. Defendants also agreed to produce the documents that include: (i) Premier Research; (ii) Gary Lauder; (iii) Computer Share; (iv) Matthew Nachtrab; and (v) Daniel Achord.

After reviewing Cassava's agreements with Ernst & Young, M2 Compliance, Dr. Charles Spruck, and Dr. Coleen Atkins, Plaintiffs maintain their assertion that communications between these third parties and the Defendants are not protected by the attorney-client privilege.

The agreements between Cassava and Ernst & Young and M2 Compliance are both for the provision of accounting and business-related services. These agreements do not indicate that either Ernst & Young or M2 Compliance were retained to provide legal advice or services related to the provision of legal advice. Accordingly, communications between Defendants and these third parties are not protected by the attorney-client privilege. *King v. Univ. Healthcare Sys., L.C.*, 2009 WL 10679780, at *7 (E.D. La. Jan. 15, 2009); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 135 (E.D. Tex. 2003) ("Thus, an attorney claiming the attorney-client privilege for communications between an attorney and an accountant or for documents prepared by an accountant for an attorney must prove that the accounting services enabled the giving of legal advice.").

The agreement between Cassava and Dr. Charles Spruck is a non-disclosure agreement ("NDA") rather than an agreement to provide legal advice or services related to the provision of legal advice. In fact, in the NDA, Cassava's attorneys explicitly disclaim that Cassava is entering into a business relationship with Dr. Spruck. Defendants have provided no documentation indicating that they intended on retaining Dr. Spruck as an expert or that Defendants actually retained Dr. Spruck to provide legal advice or services related to the provision of legal advice. Moreover, the

- 5 -

NDA was not executed until June 14, 2023, and the communications identified on the Cassava's privilege log are all from 2022 – prior to the entry of the NDA.

The purportedly privileged documents that include Dr. Coleen Atkins do not contain an attorney, but rather are all direct communications between Dr. Coleen Atkins and defendant Burns. The documents including Dr. Charles Spruck, Dr. Coleen Atkins, M2 Compliance, and Ernst & Young were provided to the Court on January 31, 2025 for *in camera* review.

On January 31, 2025, the Cassava Defendants provided the Court with communications between Dr. Wang and Dr. Burns without an attorney present for *in camera* review. Plaintiffs continue to assert that these documents are not privileged and cannot be subject to a common interest exception to waiver of the attorney-client privilege where no attorney is present on the communication.

Other than Defendants producing certain withheld communications including M2 Compliance and Ernst & Young on February 14, 2025, Plaintiffs have not been informed of the results of the Court's *in camera* review, referred to by Defendants below.

Additional disputes remain regarding Cassava's privilege log. Defendants updated their privilege log to identify the lawyer triggering the attorney-client privilege on the documents where no attorney was included. However, there are approximately 98 entries where Defendants simply list the law firm, such as "Orrick" or "Morrison Foerster" rather than identifying a specific lawyer that triggers the privilege. For example, Cassava has maintained the attorney-client protects communications between Eric Schoen and Remi Barbier regarding a draft Form 10-Q and Form 10-K simply because "Orrick" or "Morrison Foerster" are purportedly involved in the communications, without specifying how or naming the specific attorney(s) involved.

As outlined in the December 12, 2024 Joint Advisory, the Cassava Defendants claimed that many of the email attachments that Plaintiffs assert are not privileged had already been produced to

Plaintiffs. ECF 280 at 11. Cassava has now identified the attachments that were already produced to Plaintiffs. However, Plaintiffs believe there are still approximately 226 non-privileged attachments that continue to be improperly withheld. For example, Cassava maintains that documents described as a "spreadsheet containing employee information," a "twitter post," or a "Bloomberg law document" are privileged simply because they are attached to privileged communications.

Additionally, there are at least 126 entries on the privilege log where Cassava has redacted the email subject line or the file name. Plaintiffs maintain that Defendants have not provided sufficient information to demonstrate that any information on the privilege log itself is privileged in nature.

Finally, counsel for the Cassava Defendants stated in an email that Pat Gussin, the spouse of one of Cassava's board members, did not review any of the emails sent to the email address she shared with her spouse. However, Plaintiffs maintain that Defendants have not provided evidence sufficient to meet their burden of establishing that Pat Gussin did not review these emails. *See Westmoreland v. Wells Fargo Bank Nw., N.A.*, 2016 WL 6471433, at *5 (D. Idaho Oct. 31, 2016) (relying on a spouse's sworn affidavit "that it is his practice to inform his wife when he sees an e-mail in the Saxman inbox that is from his wife's counsel and addressed to her, and to not otherwise read the contents" to determine that the attorney-client privilege was not waived). Plaintiffs believe that a sworn affidavit from Pat Gussin confirming that she did not review the emails sent to the shared email address may resolve the issue.

Defendants suggest that these additional disputes are new issues. Not so. Plaintiffs previously requested information from Defendants on each of these topics, which remain ongoing disputes. *See* ECF 280 at 9-10; 280-2 at 2-3, 7; 233 at 3. For example, Plaintiffs have long asserted that Defendants have failed to identify specific attorneys purportedly triggering the attorney-client privilege on Cassava's privilege log. *See* ECF 280 at 9 (Defendants have not provided a "privilege

- 7 -

log that identifies the lawyer triggering the attorney-client privilege."). Similarly, Plaintiffs have stated that they are "unable to assess certain privilege claims because factual information for a subset of log entries has itself been redacted." ECF 233 at 3. Accordingly, Plaintiffs look forward to further discussing these additional issues with the Court, as well.

### B. Defendants' Position

Defendants produced all documents identified by Plaintiffs above as involving the third parties, except (i) documents where Plaintiffs withdrew their challenge after reviewing supplemental information from Defendants; and (ii) a small number of documents including Dr. Atkins, Dr. Spruck, M2 Compliance, Ernst & Young, and Dr. Wang. Pursuant to the Court's direction and the parties' January 3, 2025 Stipulation (Dkt. 287), the Cassava Defendants provided all of the relevant documents involving Dr. Atkins, Dr. Spruck, M2 Compliance, and Ernst & Young to the Court for *in camera* review. The Cassava Defendants also provided the Court with documents evidencing the common interest agreement between Defendants and Dr. Wang, and communications between Defendant Dr. Lindsay Burns and Dr. Wang subject to common interest privilege, for *in camera* review.

Based on the results of the Court's *in-camera* review, on February 14, 2025, the Cassava Defendants produced to Plaintiffs the documents including M2 Compliance and Ernst & Young. Similarly, consistent with the results of the Court's *in-camera* review, Cassava maintains attorney-client privilege over the communications with Dr. Spruck and Dr. Atkins, and common interest privilege over the communications with Dr. Wang.

As the documents Defendants provided to the Court show, Cassava's counsel at Orrick anticipated retaining Dr. Spruck as an expert in connection with advising Cassava on legal matters, and specifically agreed (prospectively and retrospectively) with Dr. Spruck that all communications with Dr. Spruck connected to that potential retention would remain strictly confidential. The

purpose of the relevant communications with Dr. Spruck was to assist Orrick in providing legal advice to Defendants. Similarly, Defendants' counsel at Morgan Lewis retained Dr. Atkins as an expert to assist Morgan Lewis in providing legal advice to Defendants in connection with an SEC investigation and related litigation, and Morgan Lewis's agreement with Dr. Atkins agreed that all such communications would remain strictly confidential. The purpose of the relevant communications with Dr. Atkins was to assist Morgan Lewis in providing legal advice to Defendants. The relevant communications with Dr. Spruck and Dr. Atkins are therefore privileged.

Finally, Defendants provided the Court with evidence demonstrating the existence of an ongoing common interest agreement between Defendants and Dr. Wang dating to 2021. The relevant communications between Dr. Wang and Defendants and their respective counsel relating to their common legal interest are therefore privileged.

Any remaining privilege disputes are not ripe for adjudication. Plaintiffs have made no requests for further information or otherwise communicated with Defendants regarding these issues since the parties' last discovery conference. For example, prior to this submission, Plaintiffs have never asked Defendants for detail regarding the specific counsel providing advice in the 98 emails labeled as "Orrick" or "Morrison Foerster," or for additional information on why certain subjects are redacted from the privilege log, or for a "sworn affidavit" from Pat Gussin indicating that it was not her practice to read privileged communications directed to her husband.

## IV. OTHER DISCOVERY DISPUTES THAT REMAIN OUTSTANDING FROM THE JOINT ADVISORY FILED ON OCTOBER 22, 2024

### A. Plaintiffs' Position

The following issues remain outstanding from the Joint Advisory filed on October 22, 2024: (i) Plaintiffs' July 19, 2024 second set of document requests to Defendants; and (ii) Plaintiffs' July 19, 2024 document subpoenas to the Cassava directors. These issues were outlined in the Parties'

October 22, 2024 Joint Advisory and in the Parties' December 12, 2024 Joint Advisory.  *See* ECF 233, §§F.2, F.4; ECF 280, §V.

As explained in the September 2024 Status Update and both Joint Advisories to the Court, Defendants and the Cassava Directors refuse to produce documents concerning Dr. Wang's indictment for data manipulation, defendants Barbier's and Burns's resignations from Cassava, and Defendants' public SEC Form 8-K filing that are relevant to the information Plaintiffs allege was omitted from Defendants' Class Period misstatements in the operative complaint.  *See* ECF 221 at 6-7 (previously undisclosed conflicts of interests, data manipulation, and Dr. Wang's unblinding, as well as the resulting government investigations, are all relevant to existing claims and defenses); ECF 233 at 7-9, 10-11; ECF 280 at 13-14.  The fact that these events occurred outside the Class Period does not render these requests irrelevant.  *See In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021) ("There is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate.").  *See id.* at *6 (permitting discovery of events that occurred eight months after the class period); *Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (seven months after class period).

      **B.**      **Defendants' Position**

As previously noted, Plaintiffs' Second Set of Document Requests plainly relate to allegations in Plaintiffs' proposed Second Supplemental Complaint, not Plaintiffs' initial Complaint or First Supplemental Complaint.  Because further amending the Complaint at this stage may have significant implications for Class Certification, Defendants have opposed Plaintiffs' Motion to Supplement.  That Motion remains pending.  If the Court grants Plaintiffs leave to amend their Complaint again, the Cassava Defendants will revisit their objections.

DATED:  February 18, 2025                ROBBINS GELLER RUDMAN
                 & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
MEGAN A. ROSSI (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)

       s/ Kevin A. Lavelle
        KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
mrossi@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

- 11 -

4910-1604-9434.v1

Counsel for Additional Plaintiff Manohar K. Rao

DATED:  February 18, 2025

GIBSON, DUNN & CRUTCHER LLP
GREGG COSTA (TX. Bar No. 24028160)
TREY COX (TX. Bar No. 24003722)

  s/ Gregg Costa (with permission)
GREGG COSTA

811 Main Street Suite 3000
Houston, TX 77002
Telephone: 346/718.6600
346/718.6979 (fax)
gcosta@gibsondunn.com
tcox@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
MONICA K. LOSEMAN (admitted *pro hac vice*)
SCOTT CAMPBELL (admitted *pro hac vice*)
JOHN TURQUET BRAVARD (admitted *pro hac vice*)
1801 California Street
Denver, CO 80202-2642
Telephone: 303/298.5700
303/298.5907 (fax)
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
MARY BETH MALONEY (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: 212/351.4000
212/351.6315 (fax)
mmaloney@gibsondunn.com

Counsel for Defendants Cassava Sciences, Inc. and Eric Schoen

- 13 -

DATED: February 18, 2025					BAKER & HOSTETLER LLP
								DOUGLAS W. GREENE


							      s/ Douglas W. Greene (with permission)
							    ─────────────────────────────────
								DOUGLAS W. GREENE

								45 Rockefeller Plaza
								New York, NY  10111
								Telephone: 212/847-7090
								dgreene@bakerlaw.com

								BAKER & HOSTETLER LLP
								C. SHAWN CLEVELAND
								2850 N. Harwood Street, Suite 1100
								Dallas, TX  75201
								Telephone: 214/210-1200
								scleveland@bakerlaw.com

								Counsel for Defendants Remi Barbier and Lindsay Burns