UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § § | Master File No. 1:21-cv-00751-DAE |
| | | CLASS ACTION |
| This Document Relates To: | § § | |
| ALL ACTIONS | § § § § | |

**JOINT ADVISORY TO MAGISTRATE JUDGE BEMPORAD IN ADVANCE OF DISCOVERY STATUS CONFERENCE**

On May 9, 2025, the Special Discovery Master, Magistrate Judge Henry J. Bemporad, ordered the Parties[1] to file a Joint Advisory by June 2, 2025.  ECF 315 (the "Order").  The Parties respectfully submit the following in compliance with the Order.[2]

## I.    RECENT RULINGS

On May 9, 2025, Judge Ezra denied the Cassava Defendants' Motion to Stay Merits Discovery.  ECF 314.

On May 21, 2025, Judge Ezra granted Plaintiffs' Motion to Supplement the Complaint. ECF 317.  In that same order, Judge Ezra granted Plaintiffs' Motion to Strike, which struck Defendants' Motion to Exclude Dr. Feinstein.  *Id.*  Per Judge Ezra's order, Plaintiffs are instructed to refile their motion for class certification by June 20, 2025, and "[n]o new arguments, evidence, or non-existing briefing shall be filed by any parties" in with respect to the motion.  *Id.* at 13.

## II.   PLAINTIFFS' OUTSTANDING DOCUMENT REQUESTS AND DOCUMENT SUBPOENAS

### A.    Plaintiffs' Position

On July 19, 2024, Plaintiffs served a second set of document requests on Defendants.  That same day, Plaintiffs also served document subpoenas on the Cassava directors.  The document requests concern: (i) Dr. Hoau-Yan Wang's ("Dr. Wang") indictment for data manipulation; (ii) defendants Remi Barbier's and Lindsay Burns' resignations from Cassava; and (iii) Defendants' disclosures in a SEC Form 8-K filing regarding information Plaintiffs allege was omitted from Defendants' Class Period misstatements.

---

[1]    The "Parties" are lead plaintiff Mohammad Bozorgi, additional plaintiffs Ken Calderone and Manohar Rao (together, "Plaintiffs"), and Cassava Sciences, Inc. ("Cassava" or the "Company") and Eric J. Schoen (the "Cassava Defendants"), and Remi Barbier and Lindsay Burns (together with the Cassava Defendants, "Defendants").

[2]    Unless otherwise noted, emphasis is added and internal citations are omitted.

4921-3733-5113.v2

As outlined in the Parties' October 22, 2024, December 12, 2024, and February 18, 2025 Joint Advisories, Defendants and the Cassava directors refused to produce documents responsive to the requests, stating that they were relevant only to allegations contained in Plaintiffs' then-pending proposed Second Supplemented Complaint, which the Court had not yet granted Plaintiffs leave to file. *See* ECF 233, §§F.2, F.4; ECF 280, §V; ECF 300, §IV.  Now, however, the Court has granted Plaintiffs' Motion to Supplement the Complaint and also denied Defendants' Motion to Stay Merits Discovery.  Accordingly, the bases for Defendants' and the Cassava directors' objections are moot, and Defendants and the Cassava directors should be directed to produce documents responsive to Plaintiffs' requests without further delay.

    **B.**    **Defendants' Position**

The Defendants and Cassava directors will withdraw relevance-based objections related to the newly-filed supplement, and respond appropriately to Plaintiffs' second set of document requests.

**III.**    **DEFENDANTS' PRIVILEGE LOG**

    **A.**    **Communications Between Lindsay Burns and Dr. Wang Without an Attorney**

During the March 28, 2025 status conference, the Parties discussed whether communications between Lindsay Burns and third-party Dr. Wang where counsel was not included waived any privilege that applied.  Magistrate Judge Bemporad then ordered the Parties to provide briefing "setting out legal authority" concerning the common interest doctrine and whether "the privilege was waived for these communications."  ECF 307 at 1.  Plaintiffs submitted their letter brief on April 11, 2025.  ECF 311.  Cassava submitted its opposition on April 25, 2025.  ECF 312. On May 2, 2025, Plaintiffs filed a Motion for Leave to File Reply in support of their letter brief. ECF 313.  Magistrate Judge Bemporad granted the Motion for Leave on May 13, 2025 in a text

order.[3]  Plaintiffs' reply was filed on May 13, 2025.  ECF 316.  The Parties await Magistrate Judge Bemporad's guidance on this dispute.

### B.    Non-Privileged Attachments

#### 1.    Plaintiffs' Position

Defendants continue to improperly withhold 226 otherwise non-privileged documents solely because they were attached to an email that involved counsel.  These 226 non-privileged attachments, which have not otherwise been provided to Plaintiffs, fall into the following general categories: (i) letters to entities such as the journals and the FDA; (ii) articles; (iii) LinkedIn messages; (iv) data and figures; (v) twitter and other online forum posts; (vi) grant applications and information regarding the grants; (vii) organizational charts and employee information; (viii) screenshots of emails and websites; (ix) board documents; (x) information regarding Cassava's stock; and (xi) curriculum vitaes.  Defendants have not disputed that these materials are responsive to Plaintiffs' documents requests.  Nor do they contend that these documents, standing alone, are privileged.  Rather, they assert that the act of attaching them to purportedly privileged communications somehow renders them protected from production.

The attorney-client privilege is designed to protect confidential communications between attorneys and their clients for the purpose of obtaining or rendering legal advice; it is not a mechanism for shielding underlying facts or pre-existing documents from discovery.  The Supreme Court in *Upjohn Co. v. United States* made this distinction clear: "'The client cannot be compelled to answer the question "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'"  449 U.S. 383, 395-96 (1981).  This foundational

---

[3]    Plaintiffs' Motion for Leave was referred to Magistrate Judge Bemporad in a text order on May 7, 2025.

principle directly refutes Defendants' notion that a pre-existing document, containing facts, becomes undiscoverable simply because it was conveyed to legal counsel.

The Fifth Circuit has unequivocally endorsed this view.  In *Adams v. Mem'l Hermann*, the court stated, "[A] fact is not privileged 'merely because [a client] incorporated a statement of such fact into communication to his attorney.'"  973 F.3d 343, 349 (5th Cir. 2020) (second alteration in original).  This binding authority is dispositive of Defendants' argument.  Further supporting this, *Petteway v. Galveston Cnty.*, reiterated that "'pre-existing documents'" constitute "'underlying facts that are not protected by the attorney-client privilege.'"  2023 WL 3452065, at *3 (S.D. Tex. May 15, 2023).  The *Petteway* court explained that documents containing "only 'specific factual information'" are "underlying facts that are classically outside the privilege's protection."  *Id.* at *4.  The 226 attachments at issue – which include items such as letters to entities such as the journals and the FDA, articles, data and figures, grant applications and information regarding the grants, and organizational charts and employee information are quintessential examples of pre-existing documents and factual compilations that do not gain privilege protection through mere transmission to an attorney.

The argument that attaching a non-privileged document to a privileged communication somehow imbues the attachment itself with privilege is a misapplication of law.  "[A] document that was not privileged in [Cassava's] hands cannot magically become privileged merely by sending it to an attorney in search of legal advice."  *Doe v. Intermountain Health Care, Inc.*, 2021 WL 425117, at *2, *7-*8 (D. Utah Feb. 8, 2021) (ordering production of non-privileged attachments to emails sent to counsel).  "'Were the rule otherwise,'" as Defendants contend here, "'a party could shield quantities of highly relevant and fully discoverable documentary evidence

through the simple expedient of conveying copies to [its] attorney.'" *Id.* at \*2 (alteration in original). This illustrates precisely the abuse that Defendants' position would facilitate.[4]

Similarly, the court in *Elm 3D Innovations, LLC v. Samsung Elecs. Co.*, 2021 WL 4819904, at \*5 (D. Del. Oct. 15, 2021), observed that "[t]he emails themselves demonstrate that the client sender (or client recipient) had the non-privileged article in their possession because at one point they sent (or received) it." 2021 WL 4819904, \*5 (D. Del. Oct. 15, 2021). Accordingly, Cassava "cannot immunize discovery of those articles merely because they were sent to (or received from) their lawyer." *Id.* Defendants, therefore, "must either (1) produce the non-privileged attachments or (2) if [Defendants] contend[] that the act of sending a particular attachment is privileged, confirm that the attachment has already been produced in discovery under circumstances that demonstrate which custodians had possession of it." *Id.*

Defendants' stance attempts to fundamentally alter the nature of attorney-client privilege. The privilege is intended to be a shield for confidential ***communications*** made for the purpose of seeking or rendering legal advice. It is not a sword to conceal discoverable ***facts*** or pre-existing business records. The purpose is to foster candid attorney-client dialogue, not to permit parties to immunize ordinary business documents from the discovery process simply by forwarding them to counsel. If Defendants' argument were accepted, any corporation could effectively nullify discovery of its records by the simple act of transmitting them to its legal department, thereby undermining the entire framework of civil discovery. Thus, Defendants' position is not a mere technical misinterpretation but an attempt to subvert the foundational balance of discovery.

---

[4]    Moreover, any argument "to withhold the pre-existing, non-privileged attachments does not fare any better under the work product doctrine" because "'if the same or essentially similar documents would have been created whether or not litigation was foreseen, it [cannot] fairly be said that they were created because of actual or impending litigation.'" *Id.* at \*8 (alteration in original).

Defendants claim they have produced attachments "any time one of the attachments at issue was properly subject to discovery in a non-privileged context" and that the documents Plaintiffs now seek "simply were not identified in a non-privileged context through the extensive negotiated parameters." This argument itself concedes that the ***documents are not inherently privileged***. If a document is discoverable and responsive, Defendants cannot shield it from production merely because ***their chosen method of internal handling*** involved attaching it to an email to counsel. And whether a document hits on a negotiated and imperfect set of search terms simply does not determine whether a document is relevant. This is especially true here, where many of the attachments at issues are tweets or other images that could not have been identified by search terms, and, indeed, Defendants do not dispute these documents' relevance.

Defendants reliance on a handful of district court cases to support their broad claim of "attachment privilege" is misplaced. In fact, Defendants' own cases expressly support Plaintiffs' position that these non-privileged documents must be produced, regardless of whether they were later attached to purportedly privileged emails. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007) ("A party can therefore legitimately withhold an entire e-mail forwarding prior materials to counsel, while also disclosing those prior materials themselves."), *aff'd*, 580 F.3d 485 (7th Cir. 2009); *Hilton-Rorar v. State & Fed. Commc'ns Inc.*, 2010 WL 1486916, at *7 (N.D. Ohio Apr. 13, 2010) ("[T]ransfer by a client to an attorney of an independent or pre-existing document (such as business records, letters, memos, e-mails, or other items from the client's business or business files) that was not created for or because of (or that do not arise out of) the attorney-client relationship or consultation, does not bring the document within the attorney-client privilege. Such a document is regarded as existing independently of the relationship and not as communications made pursuant to it."); *Barton v. Zimmer Inc.*, 2008 WL 80647, at *5 (N.D. Ind. Jan. 7, 2008) (noting "that underlying information remains unprotected") (citing *Muro*, 250 F.R.D. 350); *Wolff*

- 6 -

*v. Biosense Webster, Inc.*, 2018 WL 3795302, at *4 (W.D. Tex. Aug. 8, 2018) (does not concern pre-existing, non-privileged attachments).

### 2.    Defendants' Position

Plaintiffs' demand discovery of what specific information Defendants conveyed to their counsel while seeking legal advice.  But the communication of facts to counsel for purposes of seeking legal advice is privileged – plain and simple.  Whether the facts are communicated orally, in the body of a written email, or attached to a written email is irrelevant – the substance of the communication with counsel is privileged.  *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 n. 21 (N.D. Ill. Nov. 2, 2007) ("[C]ommunications of facts are privileged even if the original facts are not.  Thus, when letters to counsel included certain attachments, the fact that those documents were attached may be privileged, even if the originals are not."); *Hitlon-Rorar v. State and Federal Commmunications, Inc.*, 2010 WL 1486916 *7 (N.D. Ohio Apr. 13, 2010) ("Confidential e-mails from a client to his attorney attaching a pre-existing unprivileged e-mail may, nevertheless, be protected."); *Barton v. Zimmer*, *Inc.*, 2008 WL 80647 *5 (N.D. Ind. Jan. 7, 2008) ("[T]he very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected .... [E]ven though one e-mail is not privileged, a second e-mail forwarding [it] to counsel might be privileged in its entirety."); *Wolff v. Biosense Webster, Inc.*, 2018 WL 3795302, at *3 (W.D. Tex. Aug. 8, 2018) ("Collecting information for transmission to counsel is privileged if integral to the legal advice.").

Plaintiffs seek to avoid this plain application of privilege by pretending that Defendants' claim is that any fact conveyed to counsel thereby becomes immunized from discovery.  That is not Defendants' position and never has been.  Indeed, Plaintiffs' hyperbolic claims that Defendants are seeking to shield facts from discovery by attaching them to privileged communications are directly belied by this case.  As Plaintiffs well know, any time one of the attachments at issue was

- 7 -

properly subject to discovery in a non-privileged context or communication (as is the case for the vast majority of such attachments included on Defendants' privilege log), Defendants produced the document in the non-privileged context.  This is precisely what is called for by the cases Plaintiffs cite. These specific documents Plaintiffs now seek simply were not identified in a non-privileged context through the extensive negotiated parameters agreed to by the parties to govern fact discovery in this case.

But Plaintiffs are not seeking to discover facts.  They are seeking to discover the contents of attorney-client communications, including what facts Defendants communicated to counsel and when.  As Plaintiffs admit, the Supreme Court has directly addressed this issue and held that, although communicating a fact to counsel does not render that fact privileged from discovery in another context, the question of *what* facts a client communicates to their attorney is privileged. *See generally Upjohn v. United States*, 449 U.S. 383 (1981) ("The client cannot be compelled to answer the question 'What did you say or write to the attorney?'").  "What did you send to your attorney?" is exactly the question Plaintiffs ask to discover here. The answer is unequivocally privileged.

### C.    Lindsay Burns' Journals

During the March 28, 2025 status conference, the Parties discussed redactions to Lindsay Burns' journal entries, including redactions for privilege and redactions of sensitive personal information  Magistrate Judge Bemporad ordered counsel for Lindsay Burns to "either: (a) produce the material to Plaintiffs' counsel subject to an 'attorney-eyes-only' designation or similar confidentiality agreement; or (b) submit the material to the undersigned for *in camera* review." ECF 307 at 1.  On April 18, 2025, counsel for Lindsay Burns provided the redacted versions of Lindsay Burns' journal for *in camera* review "with regard to any material that was redacted due

to its sensitive or personal nature." *Id.* The Parties await guidance from the Court regarding the relevance redactions.[5]

### D. Improper Redactions to Email Subject Lines and Attachment File Names on Defendants' Privilege Log

#### 1. Plaintiffs' Position

Defendants have improperly redacted information from email subject lines and attachment file names on 88 privilege log entries, including concealing witness names and, in some instances, information pertinent to Cassava's payment of Dr. Wang's legal fees. These redactions are unjustified and violate Defendants' obligations under Federal Rule of Civil Procedure 26(b)(5)(A). Defendants argue that if "privileged information" is included "in the subject line or name of an attachment," then redacting that information is proper. This misses the fundamental point: email subject lines and attachment file names are functional, factual descriptors intended to inform recipients of a document's general topic or content; they are not, in themselves, typically conduits for conveying confidential legal advice. As established in *Petteway*, "'specific factual information'" constitutes "underlying facts that are classically outside the privilege's protection." 2023 WL 3452065, at *3-*4. And here, the redacted information at issue appears to be factual, not legal advice.

Federal Rule of Civil Procedure 26(b)(5)(A) mandates that a party withholding information under a claim of privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Redacting fundamental identifying information such as subject lines and file names directly contravenes this rule by rendering it difficult, if not

---

[5] Plaintiffs are conferring with Defendants regarding their redactions for privilege in these documents, which appear overbroad and do not allow Plaintiffs to assess whether the redacted portions contain privileged information.

impossible, for Plaintiffs to assess the privilege claim. Defendants' reference to benign examples like "Hill of Beans" or "Privileged & Confidential" – cherry-picked from thousands of documents withheld – only underscores the overbreadth of their redactions and cannot justify concealing *other* subject lines that clearly identify relevant topics or individuals. Defendants' assertion below that "[t]he fact that a communication to an attorney includes privileged information in the subject line or name of an attachment has no bearing on whether that information is privileged" misses the crucial point: the inquiry is whether the subject line or file name itself contains privileged communication. The practice of redacting such basic identifying information is a form of "hiding the ball" that runs contrary to the transparency principles underpinning modern discovery.

Defendants' redactions also conceal the names of witnesses and, in certain instances, information pertaining to Cassava's payment of legal fees for Dr. Wang, a key figure in the allegations of data manipulation. Defendants further compound this by improperly withholding related attorney invoices. Yet, "[t]he Fifth Circuit has 'long recognized the general rule that matters involving the payment of [attorney's] fees . . . are not generally privileged.'" *Holloway v. Wells Fargo Bank, N.A.*, 2013 WL 6912690, at *2 (N.D. Tex. Dec. 30, 2013) (second and third alteration in original) (quoting *In re Grand Jury Subpoena*, 913 F.2d 1118, 1123 (5th Cir. 1990)). And "[s]uch [non-privileged] 'matters' naturally include attorney's fees invoices." *Holloway*, 2013 WL 6912690 at *2. Moreover, to the extent the redacted witness name is Dr. Wang, that information is not even confidential, as Plaintiffs are already aware Cassava is paying his legal bills. Therefore, the disclosure of this information, or details related to it, does not reveal some new, confidential communication about the substance of legal advice sought or given; rather, it confirms and elaborates upon a known financial relationship. The Court should therefore direct Defendants to re-produce their privilege log without redactions and produce any documents on the log related to Cassava's payment of Dr. Wang's legal fees.

- 10 -

Defendants' argument below that "whether the attachment is independently privileged is not relevant; an attorney-client communication relating to and attaching a non-privileged document remains privileged" is the same flawed reasoning applied to the 226 non-privileged attachments discussed earlier. An attorney's invoice, detailing hours, rates, and amounts for services rendered, is fundamentally a factual, pre-existing business record. Likewise, Defendants' blanket assertion that Plaintiffs have no authority for their position is demonstrably false in light of *Holloway* and *In re Grand Jury Subpoena*. And the withheld information is plainly relevant: the payment of a witness's attorney's fees by a party is relevant to demonstrating potential bias. Such financial arrangements may influence a witness's testimony or create an appearance of partiality, which is pertinent to assessing credibility. *See generally United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

More fundamentally, this case explicitly includes claims regarding undisclosed financial conflicts of interests between Dr. Wang and Cassava and an after-the-fact attempt by Defendants to cover-up the alleged data manipulation. Evidence of further undisclosed financial entanglement between Dr. Wang and Cassava relating to Cassava's payment of Dr. Wang's legal bills to defend against those same data manipulation allegations is therefore also directly relevant to Plaintiffs' claims.

## 2. Defendants' Position

The fact that a communication to an attorney includes privileged information in the subject line or name of an attachment has no bearing on whether that information is privileged. Plaintiffs do not and cannot cite any authority to the contrary. Indeed, Plaintiffs instead now concede that "whether the subject line or file name itself contains privileged communication" is the "crucial

- 11 -

point." If the information is privileged, as is the case here, redacting the privileged information is proper.

Nor does redacting privileged information make it impossible to assess a privilege claim. As Plaintiffs admit, subject lines are often not relevant to privilege claim at all, or contain no information about the actual substance of the privileged communication. Example subject lines in Cassava's log include, for example, "Hill of Beans" and "Privileged & Confidential." Plaintiffs can fairly assess the privilege claim in the absence of a subject line by reviewing the additional detailed information in Cassava's log, including the senders and recipients, as well as the privilege description.

Indeed, after acknowledging that redacted subject lines can be proper if privileged, Plaintiffs effectively concede that they can in fact assess the privilege claim at issue here, claiming that the emails in question are not privileged because the redacted documents attach attorney fee invoices, and attorney-fee invoices are not privileged. Plaintiffs know the nature of the communication and the basis for the privilege claim because the privilege log discloses that the communication relates to and attaches an invoice, and the privilege description explains that the communication reflects legal advice regarding indemnification obligations for legal fees. And as explained in section III.B.2 above, whether the attachment is independently privileged is not relevant; an attorney-client communication relating to and attaching a non-privileged document remains privileged where the information is conveyed to inform the legal advice.[6]

---

[6] Although whether the documents at issue here are relevant to the case is not germane to the immediate question of whether redacting privileged information from a subject line is appropriate, Defendants disagree that invoices reflecting the details of a potential witness's legal fees in a separate case (including Dr. Wang or others) would be relevant to Plaintiffs' allegations that Cassava committed securities fraud in this case.

4921-3733-5113.v2

### E.    Other Privilege Disputes

####     1.    Plaintiffs' Position

On April 24, 2025, counsel for the Cassava Defendants agreed to directly ask Pat Gussin whether or not she reviewed the emails sent to the shared email address that Defendants included on the privilege log.  To date, Defendants have not confirmed that they spoke directly with Pat Gussin regarding this issue.

The Parties are also conferring regarding additional potential disputes regarding Defendants' privilege log in an attempt to narrow or resolve them without Court intervention. Plaintiffs will raise such disputes with the Special Discovery Master should the need arise.

####     1.    Defendants' Position

Defendants will confirm directly with Ms. Gussin that she did not review the relevant emails.

DATED:  June 2, 2025

ROBBINS GELLER RUDMAN
   & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
HEATHER GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)


                    */s/ Kevin A. Lavelle*
                    KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone

- 13 -

4921-3733-5113.v2

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional
Plaintiff Ken Calderone


GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com


Counsel for Additional Plaintiff Manohar K. Rao

DATED: June 2, 2025

GIBSON, DUNN & CRUTCHER LLP
GREGG COSTA (TX. Bar No. 24028160)
TREY COX (TX. Bar No. 24003722)


*/s/ Gregg Costa* (with permission)
GREGG COSTA

811 Main Street Suite 3000
Houston, TX 77002
Telephone: 346/718.6600
346/718.6979 (fax)
gcosta@gibsondunn.com
tcox@gibsondunn.com

- 14 -

GIBSON, DUNN & CRUTCHER LLP
MONICA K. LOSEMAN (admitted *pro hac vice*)
SCOTT CAMPBELL (admitted *pro hac vice*)
JOHN TURQUET BRAVARD (admitted *pro hac vice*)
1801 California Street
Denver, CO 80202-2642
Telephone: 303/298.5700
303/298.5907 (fax)
mloseman@gibsondunn.com
scampbell@gibsondunn.com
jturquetbravard@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
MARY BETH MALONEY (admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: 212/351.4000
212/351.6315 (fax)
mmaloney@gibsondunn.com

Counsel for Defendants Cassava Sciences, Inc. and Eric Schoen

DATED:  June 2, 2025                  BAKER & HOSTETLER LLP
                                      DOUGLAS W. GREENE


                          */s/ Douglas W. Greene* (with permission)
                              DOUGLAS W. GREENE

                          45 Rockefeller Plaza
                          New York, NY  10111
                          Telephone: 212/847-7090
                          dgreene@bakerlaw.com

                          BAKER & HOSTETLER LLP
                          C. SHAWN CLEVELAND
                          2850 N. Harwood Street, Suite 1100
                          Dallas, TX  75201
                          Telephone: 214/210-1200
                          scleveland@bakerlaw.com

                          Counsel for Defendants Remi Barbier and Lindsay Burns

4921-3733-5113.v2