UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § § § § § § § § § | Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>    ALL ACTIONS | | |

**PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY
APPROVING SETTLEMENT AND PROVIDING FOR NOTICE**

4924-7938-2962.v8

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS .............................................................1

II. STATEMENT OF ISSUES TO BE RULED UPON.........................................................2

III. SUMMARY OF THE ARGUMENT .................................................................................2

IV. FACTUAL BACKGROUND...........................................................................................5

    A.    OVERVIEW OF THE LITIGATION ...................................................................5

    B.    THE SETTLING PARTIES' SETTLEMENT NEGOTIATIONS AND TERMS OF THE PROPOSED SETTLEMENT ....................................................8

V. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.......................................11

    A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS..............................................................................................11

    B.    THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2) .......................................13

        1.    Plaintiffs and Lead Counsel Have Zealously Represented the Class ........13

        2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ...............................14

        3.    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation....................................15

        4.    The Settlement Does Not Unjustly Favor Any Class Member.................16

        5.    The Anticipated Request for Attorneys' Fees Is Reasonable ...................18

        6.    Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ...........................................................................18

VI. The Class Satisfies the Standards for Class Certification...................................................19

VII. NOTICE OF THE SETTLEMENT SHOULD BE APPROVED.......................................19

VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ............................21

IX. CONCLUSION...............................................................................................................23

4924-7938-2962.v8

**TABLE OF AUTHORITIES**

**Page**

### CASES

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ........................................................12, 17

*Buettgen v. Harless*,
   2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ..................................................15

*Celeste v. Intrusion Inc.*,
   2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ...................................................20

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965693 (W.D. La. Mar. 3, 2015) .....................................................14, 16

*Claudet v. Cytec Ret. Plan*,
   2020 WL 3128611 (E.D. La. June 12, 2020) ......................................................11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..........................................................................14

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) . Had the Action ................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ..........................................14, 17, 20

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .............................................................................15

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ...........................................................................10

*In re EZCORP, Inc. Sec. Litig.*,
   2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) ....................................................20

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ...........................................................................14

*Marcus v. J.C. Penney Co.*,
   2017 WL 6590976 (E.D. Tex. Dec. 18, 2017),
   *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ....................................11

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ...........................................................................11

**Page**

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................................19

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ...........................................................18

*Parmelee v. Santander Consumer USA Holdings*,
    2019 WL 2352837 (N.D. Tex. June 3, 2019) ..........................................................20

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ...................................................................................12

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)..............................................13, 17, 20

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78j(b)......................................................................................................................1, 5
    §78t(a) ......................................................................................................................1, 5
    §78u-4(a)(4) .............................................................................................................2, 17
    §78u-4(a)(7) ................................................................................................................19

28 U.S.C.
    §1715(b).........................................................................................................................4

4924-7938-2962.v8

**Page**

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................... *passim*
    Rule 23(a)...................................................................................................18
    Rule 23(b)(3)..............................................................................................18
    Rule 23(c)(2)(B)....................................................................................18, 19
    Rule 23(c)(3)(B)..........................................................................................19
    Rule 23(e)...................................................................................................11
    Rule 23(e)(1) ................................................................................................1
    Rule 23(e)(1)(B).............................................................................11, 18, 19
    Rule 23(e)(1)(B)(ii)....................................................................................18
    Rule 23(e)(2) ...............................................................................2, 4, 11, 12
    Rule 23(e)(2)(A) .........................................................................................12
    Rule 23(e)(2)(B)..........................................................................................13
    Rule 23(e)(2)(C)..........................................................................................14
    Rule 23(e)(2)(C)(ii) .....................................................................................14
    Rule 23(e)(2)(c)(iv).....................................................................................18
    Rule 23(e)(2)(D) .........................................................................................16
    Rule 23(e)(3) ..............................................................................................12
    Rule 23(f) ......................................................................................................8

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation (Fourth)* §13.14 (2020) ................................................................11

4924-7938-2962.v8

Plaintiffs and Court-appointed class representatives Mohammad Bozorgi, Kenneth W. Calderone, and Manohar Rao (together, "Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully move, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure ("Rule(s)"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith. The Preliminary Approval Order will, among other things, grant preliminary approval of the proposed $31.25 million settlement ("Settlement") reached in this action ("Litigation" or "Action"). Plaintiffs' counsel conferred with counsel for all Defendants, who do not oppose the relief sought.[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This Litigation is a securities class action asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against defendants Cassava Sciences, Inc. ("Cassava" or the "Company") and Eric Schoen (the "Settling Defendants") on behalf of a Court-certified Class of investors who purchased or acquired Cassava common stock or call options on Cassava common stock or sold put options on Cassava common stock between September 14, 2020, and October 12, 2023, inclusive.[2] After more than four years of litigation, Plaintiffs and Settling Defendants have agreed to resolve the Litigation for $31.25 million in cash. At this time, Plaintiffs seek the Court's preliminary approval of the Settling Parties' proposed Settlement under

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement dated June 16, 2026 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the accompanying Declaration of Kevin A. Lavelle. Internal citations have been omitted and emphasis has been added unless otherwise indicated.

[2]    Defendants Remi Barbier and Lindsay Burns are not parties to the Stipulation. Plaintiffs' claims and the claims of other Releasing Plaintiff Parties against both Barbier and Burns will be released, as Settling Defendants' Related Parties, upon the Court's final approval of the Settlement.

4924-7938-2962.v8

Rule 23 so that notice of the Settlement can be provided to the Class and the final Settlement Hearing can be scheduled.

## II.    STATEMENT OF ISSUES TO BE RULED UPON

1.      Whether the Court will likely be able to approve the proposed $31.25 million Settlement of this Litigation under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class;

2.      Whether the proposed form and content of the notices and Proof of Claim and the manner for disseminating them to the Class (including the retention of Verita Global ("Verita") as the Claims Administrator) should be approved; and

3.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's forthcoming motion for attorneys' fees and expenses, including awards to Plaintiffs pursuant to 15 U.S.C §78u-4(a)(4).

## III.    SUMMARY OF THE ARGUMENT

Following more than four years of highly contested litigation, Plaintiffs have agreed to resolve the Class's claims against Settling Defendants for a $31.25 million cash payment pursuant to the terms of the Stipulation.  In agreeing to settle, Plaintiffs and Lead Counsel made a fully-informed evaluation of the risks of continuing to litigate this complex case – including risks related to the completion of discovery and depositions, anticipated summary judgment motions, trial, and other potential appeals – against the benefits of a sizable and certain recovery at this time.

Plaintiffs and Lead Counsel believe that the Settlement – reached following well-informed, arm's-length negotiations facilitated by an experienced mediator – provides a very good result for the Class given the significant risks, costs, and delays attendant to continued litigation.  While Plaintiffs and Lead Counsel believe strongly in the merits of their case, they recognize that Settling Defendants do as well.  Indeed, in the absence of settlement, Settling Defendants would continue

- 2 -

to vigorously assert numerous defenses to Plaintiffs' claims, and Plaintiffs faced the risk that the Fifth Circuit would reverse the class certification decision, that the Court would rule in Settling Defendants' favor at the summary judgment stage, or that a trial of the Litigation and the likely appeals that would follow could have precluded *any* recovery for the Class, let alone a recovery greater than the Settlement Amount.

There also remains a risk regarding Cassava's status as a going concern. The Company currently has no approved products or product revenues, and the U.S. Food and Drug Administration ("FDA") has placed the clinical trials planned to support commercialization efforts for Cassava's sole product candidate on full clinical hold. The Company has stated that it is subject to significant development risks and that it may never achieve regulatory approval or bring a product to market, which could cause Cassava to cease operations, as the Company would be unable to generate product revenue. The $31.25 million Settlement, moreover, represents a substantial portion of Cassava's cash and cash equivalents on hand. In its recent May 7, 2026 Form 10-Q filed with the SEC, the Company reported it had approximately $86 million in cash and cash equivalents, and that Cassava had recorded the $31.25 million cash payment to settle this Litigation as an accrued expense.

When the Settlement was reached, the Litigation was at an advanced stage, and Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Class's claims and Settling Defendants' defenses. In addition to the Court's ruling on Defendants' motion to dismiss and Plaintiffs' motion for class certification, Plaintiffs and Lead Counsel had developed a robust factual record through their extensive investigation into the claims at issue. Plaintiffs and Lead Counsel also, among other things: (i) prepared a detailed amended complaint and a motion to supplement the complaint to add events that occurred following the filing of the Complaint; (ii) briefed Defendants' motion to dismiss; (iii) successfully moved for class

- 3 -

certification and briefed motions to strike with respect to the Parties' experts; (iv) engaged in comprehensive fact and expert discovery, including reviewing more than two million pages of documents produced by Settling Defendants and nonparties, taking/defending seven fact depositions, and exchanging opening and rebuttal expert reports and conducting and defending expert depositions; and (v) litigating a number of discovery disputes. Further, the Settling Parties engaged in arm's-length negotiations facilitated by a highly experienced and well-respected mediator, David M. Murphy, Esq. of Phillips ADR Enterprises, P.C., including two formal mediation sessions (nearly 18 months apart) and the preparation of detailed mediation statements. Both sides ultimately accepted Mr. Murphy's proposal to resolve the Action for $31.25 million.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval Order will begin this process by, among other things: (i) preliminarily approving the Settlement; (ii) approving the form and content of the notices and Proof of Claim; (iii) approving the plan for disseminating notice of the Settlement to the Class; (iv) approving Verita as the Claims Administrator for the Settlement; and (v) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses.[3]

For the reasons stated herein, Plaintiffs respectfully submit that the Settlement warrants the Court's preliminary approval and respectfully request entry of the Preliminary Approval Order.

---

[3]   As set forth in §VIII below, Plaintiffs request that the Settlement Hearing be scheduled for at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow sufficient time for providing notice to the Class and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b), *et seq.*

- 4 -

## IV.    FACTUAL BACKGROUND

### A.    OVERVIEW OF THE LITIGATION

The initial complaint in the Litigation was filed on August 27, 2021.  On June 30, 2022, the Court appointed Mohammad Bozorgi as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On August 18, 2022, Plaintiffs filed the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint") alleging violations of §§10(b) and 20(a) of the Exchange Act.  On October 24, 2022, Settling Defendants and defendants Remi Barbier, Lindsay Burns, and Nadav Friedmann moved to dismiss the Complaint.  Plaintiffs filed their opposition to the motion on December 23, 2022, and Settling Defendants and Barbier, Burns, and Friedmann filed their reply on January 24, 2023.  The Court held a hearing on the motion to dismiss on April 26, 2023, and granted in part and denied in part the motion to dismiss.[4]  Settling Defendants, Barbier, and Burns answered the Complaint on July 3, 2023.

On November 7, 2023, Plaintiffs and Defendants attended a mediation with David M. Murphy (of Phillips ADR), an experienced mediator.  In advance of the mediation, both Plaintiffs and Defendants submitted and exchanged opening and reply mediation statements.  The negotiations took place in good faith, but the parties did not reach an agreement and litigation continued.

Thereafter, the parties continued to vigorously litigate this Action.  The parties engaged in extensive discovery of class certification issues, including (i) document productions by Plaintiffs; (ii) responses to written discovery by Plaintiffs and Defendants; (iii) depositions of Plaintiffs; and (iv) expert discovery, during which Plaintiffs and Defendants submitted a total of five expert

---

[4]    On January 27, 2023, counsel for Defendants informed the Court that Friedmann had died. ECF 91.  The Court thereafter dismissed Friedmann as a defendant in the Litigation.

4924-7938-2962.v8

reports from two experts, both of the parties' experts were deposed, with Plaintiffs' expert being deposed twice.

Defendants produced documents and responded to written discovery on merits issues.  In response to discovery requests, the Defendants produced over 335,000 documents (totaling nearly 1.8 million pages), and numerous third parties collectively produced over 57,000 documents (totaling more than 340,000 pages).  The parties also deposed four fact witnesses, including two overseas witnesses pursuant to the Hague Convention, with over a dozen more depositions planned.

During the course of discovery, numerous disputes arose, resulting in motion practice and the appointment of a special master.  On April 12, 2024, Plaintiffs filed a motion to compel Defendants to produce documents disclosed to the U.S. Securities and Exchange Commission ("SEC") and U.S. Department of Justice ("DOJ").  On February 12, 2025, the parties jointly moved to withdraw the motion to compel following Defendants' agreement to voluntarily produce the materials at issue.

On November 15, 2024, Plaintiffs filed a motion to compel Cassava's primary scientific collaborator, non-party Dr. Hoau-Yan Wang, to produce deposition testimony provided to the SEC.  On February 21, 2025, Plaintiffs and Dr. Wang jointly moved to withdraw the motion following the production of the materials at issue.

Defendants filed a motion to stay merits discovery on May 10, 2024, which Plaintiffs opposed.  The Court temporarily stayed merits discovery on August 5, 2024, and appointed Magistrate Judge Henry J. Bemporad as Special Discovery Master to oversee pending and future discovery disputes.  The parties thereafter filed joint advisories setting out their disputes and attended numerous discovery conferences with Judge Bemporad.  Defendants later filed a renewed

4924-7938-2962.v8

motion to stay merits discovery on November 12, 2024.  Plaintiffs opposed the motion, and the Court denied it on May 9, 2025.

On February 22, 2024, Plaintiffs filed a motion to supplement the Complaint with events that occurred subsequent to the Complaint's filing.  The Court granted Plaintiffs' motion, over Defendants' opposition, on June 12, 2024.  Plaintiffs thereafter moved on November 13, 2024 to supplement the Complaint a second time with additional events.  The Court granted Plaintiffs' motion, again over Defendants' opposition, on May 21, 2025.

On March 13, 2024, Plaintiffs filed their motion for class certification.  Defendants filed a 40-page opposition on June 28, 2024, supported by their expert's report.  Plaintiffs thereafter filed a 35-page reply brief on August 23, 2024, together with their expert's reply report.  With the Court's permission, Defendants then filed a sur-reply on October 4, 2024, to which Plaintiffs responded on October 15, 2024.  On October 16, 2024, Plaintiffs moved to strike the expert report Defendants filed with their sur-reply as violating the Court's prior order disallowing further class certification-related evidence, or in the alternative, for permission to file a responsive report by Plaintiffs' expert.  The Court granted Plaintiffs' motion and struck Defendants' expert's sur-reply report on October 24, 2024.

On November 15, 2024, Magistrate Judge Susan Hightower issued a Report and Recommendation granting Plaintiffs' class certification motion.  Defendants filed objections to the report on November 29, 2024, and Plaintiffs filed a response to the objections on December 13, 2024.  On November 27, 2024, Defendants also filed a motion to exclude Plaintiffs' expert, which Plaintiffs opposed and separately moved on December 11, 2024 to strike as untimely.  On February 25, 2025, the Court denied without prejudice Plaintiffs' class certification motion until the disposition of issues surrounding Plaintiffs' then pending motion to file a second supplemented Complaint were resolved.  Following the Court's order granting Plaintiffs leave to file their second

4924-7938-2962.v8

supplemented Complaint on May 21, 2025, the Court further directed the parties to re-file their class certification briefing. In the same May 21, 2025 order, the Court also granted Plaintiffs' motion to strike Defendants' motion to exclude Plaintiffs' expert. On August 12, 2025, the Court granted Plaintiffs' class certification motion. On August 26, 2025, Defendants filed a petition with the Fifth Circuit Court of Appeals under Rule 23(f) for permission to appeal the Court's class certification ruling, which Plaintiffs opposed. The Fifth Circuit granted permission to appeal the class certification ruling on October 21, 2025. Defendants filed their opening brief on January 15, 2026. Plaintiffs filed their answering brief on March 20, 2026. Defendants filed their reply brief on April 20, 2026.

Plaintiffs and Defendants participated in a second confidential mediation session with Mr. Murphy on May 29, 2025. Prior to the mediation, the parties again submitted and exchanged mediation statements. The parties engaged in good-faith negotiations, but did not reach a settlement at the mediation session. Following additional settlement discussions with Mr. Murphy, Plaintiffs and Settling Defendants accepted a mediator's proposal on August 5, 2025 to settle the Litigation in return for a cash payment of $31.25 million to be paid by Settling Defendants and/or their insurers on behalf of the Settling Defendants for the benefit of the Class, subject to the negotiation and execution of the terms of a stipulation of settlement and approval by the Court. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement among the Settling Parties.

     B.     **THE SETTLING PARTIES' SETTLEMENT NEGOTIATIONS AND TERMS OF THE PROPOSED SETTLEMENT**

In 2023, the Settling Parties began discussing the possibility of resolving the Action through settlement, and engaged David M. Murphy (of Phillips ADR) to assist in those efforts. In advance of the mediation session on November 7, 2023, the Settling Parties prepared and exchanged detailed mediation statements and exhibits. At the mediation, the Settling Parties

- 8 -

shared further information addressing their views on liability and damages and engaged in good-faith negotiations; however they were unable to reach an agreement to resolve the Litigation at that time.

Eighteen months later, the Settling Parties participated in a second mediation session with Mr. Murphy on May 29, 2025. This second mediation session was preceded by the preparation and exchange of supplemental mediation briefs and exhibits. Although the Settling Parties were unable to reach an agreement at the second mediation, they continued to engage in settlement discussions with Mr. Murphy's assistance. Following these additional discussions, Mr. Murphy issued a mediator's proposal to settle the Litigation for $31.25 million, which the Settling Parties accepted on August 5, 2025, subject to the negotiation of a Term Sheet and the Stipulation and approval by the Court.

Thereafter, the Settling Parties executed a binding Term Sheet, engaged in further negotiations over the specific terms of their agreement, and executed the Stipulation on June 16, 2026. The Stipulation provides that Settling Defendants and/or their insurance carriers on behalf of Settling Defendants will pay or cause to be paid the Settlement Amount into an interest-bearing escrow account maintained on behalf of the Class. The Settlement is not claims-made and is non-reversionary. Accordingly, if approved, the Class will receive the full benefit of the $31.25 million Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses, and costs ("Net Settlement Fund"), without regard to the number of Claims submitted. After the Settlement becomes Final, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. *See* Stip., ¶5.10. Pursuant to its Class Certification Order dated August 12, 2025, the Court certified the Class – *i.e.*, all Persons who purchased or acquired Cassava common stock or call options on Cassava common stock or sold put options on Cassava common stock between September 14,

2020, and October 12, 2023, inclusive – whose members will be eligible to submit Claims.[5] *See* Stip., ¶1.5.

If the Court grants final approval to the Settlement, upon the Effective Date, Class Members will release the "Released Plaintiffs' Claims" in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. Stip., ¶1.25. The scope of the Released Plaintiffs' Claims is limited to claims related to Class Period transactions in Cassava common stock and the allegations at issue in the Litigation.[6]

---

[5] Excluded from the Class are: (i) Defendants and members of the Defendants' immediate families; (ii) the officers and directors of Cassava and members of their immediate families; (iii) the legal representatives, heirs, successors, or assigns of any of the foregoing; and (iv) any entity in which any Defendant has or had a controlling interest. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion.

[6] The Stipulation (¶1.25) defines "Released Plaintiffs' Claims" as follows:

"all claims and causes of action of every nature and description, whether known or unknown, including Unknown Claims (as defined below), whether arising under federal, state, local, common, statutory, administrative or foreign law, or any other law, rule or regulation, at law or inequity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Plaintiffs or any other Class Members have or could have asserted against the Released Settling Defendant Parties in any court or forum, based on, arising out of, or in connection with: (i) any purchase of Cassava Securities during the period between September 14, 2020, and October 12, 2023, inclusive; and (ii) the acts, facts, statements, or omissions that were or could have been alleged by Plaintiffs in the Litigation. Released Plaintiffs' Claims do not include: (i) any claims related to the enforcement of the Settlement; (ii) any derivative claims; (iii) any claims arising out of ERISA; or (iv) any claims of any Person who or which submits a request for exclusion from the Class that is accepted by the Court.

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (second alteration in original) (noting the "'overriding public interest in favor of settlement' that [the Fifth Circuit has] recognized '[p]articularly in class action suits'"); *Marcus v. J.C. Penney Co.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *R&R adopted*, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018).  Further, the Fifth Circuit has consistently held that, as a result of their highly favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"  *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).

Rule 23(e) requires judicial approval of class action settlements.  Such approval is a two-step process.  First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *3 (E.D. La. June 12, 2020) (describing two-step process as required under Rule 23 and applied in the Fifth Circuit); *Manual for Complex Litigation (Fourth)* §13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "***will likely be able***" to: (i) finally approve the settlement under Rule 23(e)(2), and (ii) certify the class for purposes of the

- 11 -

4924-7938-2962.v8

settlement. Fed. R. Civ. P. 23(e)(1)(B).[7] In considering whether final approval is likely, Rule

23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[8] All of these factors support approval of the Settlement and, thus,

preliminary approval is appropriate here.

---

[7]    Here, the Court already certified the Class in the course of litigation. ECF 332. There is no difference between the Class previously certified and the Class the proposed Settlement will bind.

[8]    Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the following Fifth Circuit approval factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Rule 23(e)(2) factors are not intended to "displace any factor" traditionally used by courts to assess settlement approval, but rather to focus on core concerns to guide the approval decision. Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment; *see also, e.g.*, *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's '*Reed* factors'").

- 12 -

**B.    THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2)**

**1.    Plaintiffs and Lead Counsel Have Zealously Represented the Class**

In determining whether to approve a class action settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, Plaintiffs have been active and informed participants in the Litigation. Plaintiffs consulted with Lead Counsel on litigation strategy and case developments, oversaw the drafting of the complaints and reviewed briefing on Settling Defendants' motion to dismiss and their Class Certification Motion, and actively participated in discovery, producing documents to Settling Defendants and sitting for depositions. Plaintiffs also conferred with Lead Counsel during the Settling Parties' settlement negotiations, were aware of both sides' principal arguments, and reviewed and approved the terms of the Settlement. Additionally, by appointing Plaintiffs as Class Representatives in connection with class certification, the Court has already found Plaintiffs to have claims typical of those of other Class Members. Moreover, like the rest of the Class, Plaintiffs have an interest in obtaining the largest possible recovery from Settling Defendants.

Likewise, Lead Counsel, which is experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the case and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) ("where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case'"). Prior to reaching the Settlement, Lead Counsel developed a deep understanding of the case by: (i) conducting a comprehensive investigation into the claims

asserted; (ii) opposing Defendants' motion to dismiss; (iii) engaging in extensive fact discovery, including taking/defending 10 fact and expert depositions, and reviewing more than two million pages of documents produced by Settling Defendants and relevant nonparties; (iv) consulting with multiple experts; (v) briefing Plaintiffs' Class Certification Motion; and (vi) preparing and exchanging expert reports and preparing for the depositions of those experts. Further, through the mediation process, Lead Counsel comprehensively vetted the factual record, analyzed Settling Defendants' arguments and contrary facts, thoroughly considered their loss causation and damages arguments (and their potential impact on recoverable damages) and the costs and risks of ongoing litigation, and negotiated vigorously with Settling Defendants to secure the $31.25 million recovery.

### 2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize "[t]he involvement of 'an experienced and well-known' mediator '[to be] a strong indicator of procedural fairness.'" *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving securities class action settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests that the settlement was not the result of improper dealings").

Here, the Settling Parties' negotiations were at arm's length and Mr. Murphy's close involvement in the settlement process (including through two formal mediation sessions and additional settlement discussions) – as well as the issuance of a mediator's proposal to resolve the Litigation following these negotiations – further supports that the Settlement is fair and that the Settling Parties achieved it free of collusion.

- 14 -

4924-7938-2962.v8

### 3.    The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Fed. R. Civ. P. 23(e)(2)(C).[9]  Here, the Settlement provides for a substantial and certain, near-term cash recovery of $31.25 million to be allocated among Class Members following deduction of Court-approved fees and costs.

In comparison, if the Action had continued, Plaintiffs would face numerous factual and legal risks that could have substantially decreased the Class's potential recovery, or eliminated it altogether.  To this day, Settling Defendants adamantly deny any wrongdoing.  As they did at the motion to dismiss stage and during mediation, Settling Defendants undoubtedly would have argued at summary judgment and trial that neither the SEC nor the DOJ filed any fraud-based claims against the Company, and no claims against the Company were filed by the DOJ at all; that Cassava made no knowingly false or misleading statements about simufilam during the Class Period; and that the Class Period was overbroad.  Moreover, Settling Defendants' appeal of the Court's class certification decision is under review by the Fifth Circuit.

As noted, Plaintiffs faced challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'").  Had the Action continued, Settling Defendants would likely assert that Plaintiffs would be unable to demonstrate that many (or all) of Settling Defendants' alleged misrepresentations directly or

---

[9]    "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  Further, courts repeatedly recognize federal securities litigation to be an "extremely complex" and "highly technical and specialized area of the law." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015).

- 15 -

4924-7938-2962.v8

proximately caused the economic losses incurred.  Ultimately, resolution of these issues would come down to a "battle of experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury.  *See Buettgen v. Harless*, 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013) ("One cannot predict which expert's testimony or methodology a jury would find reliable."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

As further noted, there also remains risk regarding Cassava's ability to continue operations as a going concern.  The Company currently has no approved products or product revenues, and the FDA has placed the clinical trials planned to support commercialization efforts for Cassava's sole product candidate on full clinical hold, which Cassava may not be able to successfully resolve. The Company has stated that it is subject to significant development risks and that it may never achieve regulatory approval or bring a product to market, which could cause Cassava to cease operations, as the Company would be unable to generate product revenue.  The $31.25 million Settlement, moreover, represents a substantial portion of Cassava's cash and cash equivalents on hand, which the Company continues to spend to fund its present and future operations.  In its recent May 7, 2026 Form 10-Q filed with the SEC, the Company reported it had approximately $86 million in cash and cash equivalents, and that Cassava had recorded the $31.25 million cash payment to settle this Action as an accrued expense.

Thus, the Settlement provides a significant recovery for Class Members without the risks of proceeding.

### 4.      The Settlement Does Not Unjustly Favor Any Class Member

The Court must also assess the Settlement's effectiveness in equitably distributing relief to the Class.  Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D).  The proposed Plan of Allocation ("Plan"),

set forth in the long-form Notice and developed in consultation with Plaintiffs' damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Class Members equitably relative to each other.

Specifically, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Cassava common stock or options during the Class Period.[10]  The Plan is based on the estimated amount of artificial inflation in the prices of Cassava common stock and options during the Class Period that was allegedly caused by Settling Defendants' alleged misconduct.  In order to have a loss under the Plan, a Class Member must have held Cassava common stock or call options or put options on Cassava common stock or call options or put options on Cassava common stock purchased or acquired during the Class Period through one of the alleged corrective disclosures. The Plan allots at least 96% of the Net Settlement Fund to purchasers of Cassava common stock during the Class Period, and no more than 4% of the Net Settlement Fund to transactions in Cassava options during the Class Period.  The Plan treats all Class Members equitably depending upon the type of Cassava security transacted in during the Class Period and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses.[11]  Here, too, the Court can readily find the Settlement will likely earn approval.

---

[10]   The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved to serve as Claims Administrator, Verita will employ a standard and well-tested protocol for processing claims in securities class actions.  Namely, Class Members will submit Claims, either by mail or electronically and, based on the information submitted, Verita will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip., ¶ 5.6.  Claimants will be notified of (and given the chance to remedy) any defects in their Claims, and will also have the opportunity to contest a rejection. *Id*., ¶5.8.  Any Claim disputes that cannot be resolved will be presented to the Court. *Id*.

[11]   As set forth in the notices, Lead Counsel may request reimbursement of Plaintiffs' reasonable costs and expenses incurred in representing the Class, as permitted by the Private Securities

- 17 -

4924-7938-2962.v8

**5.      The Anticipated Request for Attorneys' Fees Is Reasonable**

The proposed notices to the Class advise that Lead Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus payment of expenses.  In light of Plaintiffs' Counsel's efforts over the past 4+ years without any payment whatsoever, a fee of up to 30% is reasonable and falls within the range of attorneys' fees regularly awarded in this Circuit.  *See*, *e.g.*, *Al's Pals Pet Care*, 2019 WL 387409, at *4 (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at *12 (granting one-third fee); *Schwartz*, 2005 WL 3148350, at *27 (courts "regularly" award fees of "30% or more of the total recovery").[12]  Class Members will have an opportunity to address the fee request before the Settlement Hearing, and after Lead Counsel have made submissions in support of their request.

**6.      Plaintiffs Have Identified All Agreements Made in Connection with the Settlement**

Rule 23(e)(2)(c)(iv) requires that the parties identify any agreements between them. Plaintiffs and Settling Defendants have negotiated a standard supplemental agreement providing

---

Litigation Act of 1995.  15 U.S.C. §78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

[12]  Additionally, the proposal that Lead Counsel receive their fee award immediately after the Court executes the Judgment and an order awarding such fees and expenses is appropriate and consistent with common practice in cases of this nature as the Stipulation provides (at ¶6.2) that if the Settlement is ultimately terminated, or the fee award is later reversed or modified, Lead Counsel will refund or repay the subject amount to the Settlement Fund.  *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("[T]he fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest.").

- 18 -

4924-7938-2962.v8

that, if opt outs from the Class equal or exceed a certain threshold, then Settling Defendants shall have the option to terminate the Settlement.  Stipulation, ¶7.3.

## VI.     The Class Satisfies the Standards for Class Certification

The second part of the settlement approval process is to determine whether the Litigation may be maintained as a class action for settlement purposes under Rule 23.  *See* Rule 23(e)(1)(B)(ii).  Here, the Court already certified a class on August 12, 2025, finding that the Class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements as well as Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  ECF 332.  Therefore, the Court "will likely be able to" certify the Class for settlement purposes under Rule 23.  *See* Rule 23(e)(1)(B).

## VII.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will collectively apprise recipients of (among other disclosures): (i) the nature of the Litigation; (ii) the definition of the Court-certified Class; (iii) the claims and issues involved; (iv) that a Class Member may enter an appearance through an attorney if desired; (v) that the Court will exclude

- 19 -

from the Class any Class Member who requests exclusion (and the procedures and deadlines for doing so); and (vi) the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B).  The long-form Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement Amount in the aggregate and on an average per security basis; (ii) that the Parties do not agree on the amount of damages per security that would be recoverable at trial; (iii) that Lead Counsel intends to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per security basis); (iv) Lead Counsel's contact information; and (v) the reasons for the Settlement.  15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator[13] will provide direct notice via mail and/or email (*see* Postcard Notice, Ex. A-4 to the Stipulation) to those Class Members set forth in the records to be provided by Cassava, or who otherwise can be identified with reasonable effort, including through a network of banks, brokerage firms, and other nominees.[14] The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and directs recipients to the Settlement website (*i.e.*, www.CassavaSecuritiesSettlement.com) and detailed long-form Notice for more information

---

[13]   Plaintiffs also request the Court's approval to retain Verita as the Claims Administrator.  Verita is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements throughout the country.  *See* www.veritaglobal.com.

[14]   Verita will utilize its proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice.  Verita will send notice to all Nominees on its list.  Nominees who purchased or otherwise acquired shares of Cassava common stock or call options or sold put options on Cassava common stock during the Class Period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to Verita, which will then promptly send the Postcard Notice by first-class mail or email to such identified beneficial owners.

4924-7938-2962.v8

regarding the Litigation and Settlement.[15]   The Claims Administrator will post downloadable copies of the Notice and Proof of Claim (Exs. A-1 & A-2 to the Stipulation), as well as other important documents, on the Settlement website and will cause the Summary Notice (Ex. A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  *See* Stip., Ex. A ¶6(c).

The proposed plan for providing notice here is the same method used in numerous other securities class actions.  Courts routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered though similar procedures – *i.e.*, mailed notice, publication notice, and website—satisfied the Rule 23 requirements); *Schwartz*, 2005 WL 3148350, at *10-*11 (same).   Accordingly, Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice to Class Members.

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (*i.e.*, the Settlement Hearing, mailing of notice, and deadlines for submitting Claims, requesting exclusion from the Class, and objecting to the Settlement). Plaintiffs respectfully propose the schedule set forth in the chart below, as agreed to by the Settling Parties and set forth in the proposed Preliminary Approval Order.  Additionally, Plaintiffs request

---

[15]   Courts routinely allow notice by postcard as proposed here.  *See, e.g.*, *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *8 (E.D. Tex. Dec. 16, 2022) (approving notice though mailing of postcard, posting of long-form notice on website, and publishing a summary notice); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6681962, at *2 (W.D. Tex. Dec. 6, 2019) (same); *Parmelee v. Santander Consumer USA Holdings*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (same).

4924-7938-2962.v8

that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

The Court need only enter the date of the Settlement Hearing at ¶3 of the Preliminary Approval Order, as all other dates referenced below will be set based on either: (i) the date the Preliminary Approval Order is entered; or (ii) the date selected by the Court for the Settlement Hearing.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing/e-mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") and posting the Notice and Proof of Claim on the Settlement website | Not later than 21 calendar days after entry of Preliminary Approval Order ("PAO") (PAO, ¶6) |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after Notice Date (PAO, ¶6) |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses) | Not later than 35 calendar days prior to Settlement Hearing (PAO, ¶18) |
| Deadline for requests for exclusion to be postmarked or received | Not later than 21 calendar days prior to Settlement Hearing (PAO, ¶12) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to Settlement Hearing (PAO, ¶14) |
| Deadline for filing reply papers | Not later than 7 calendar days prior to Settlement Hearing (PAO, ¶18) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO, ¶3) |
| Deadline for Proofs of Claim to be postmarked/submitted electronically | No later than 90 calendar days from the Notice Date (PAO, ¶10) |

- 22 -

4924-7938-2962.v8

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of providing notice to Class Members; (iii) approve the retention of Verita as the Claims Administrator for the Settlement; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  June 18, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
HEATHER G. GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)


*s/ Kevin A. Lavelle*
KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
elleng@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

- 23 -

4924-7938-2962.v8

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional Plaintiff
Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao

- 24 -

4924-7938-2962.v8