**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARLOS PÉREZ-COTAPOS UGARTE, MARIA ISABEL URETA BAZÁN, CARLOS PÉREZ-COTAPOS SUBERCASEAUX, INVERSIONES ANE MIREN LIMITADA, SHERYL GROVE, and HOORIEH ALAGHEMAND, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER, RICHARD JON BARRY, LINDSAY BURNS, JAMES W. KUPIEC, and ERIC SCHOEN,<br><br>        Defendants. | Case No. 1:24-cv-01525-DAE |
| *In re Cassava Sciences Inc. Securities Litigation* | Case No. 1:21-cv-00751-DAE |

**UGARTE PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTION TO THE MAGISTRATE JUDGE'S ORDER DENYING CONSOLIDATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

    A.    The Consolidated Action And Its Core Facts ........................................................ 2

    B.    The *Ugarte* Action And Its Core Facts ................................................................ 4

    C.    Nine Months After *Ugarte* Is Filed, The Defendants Seek Consolidation ............. 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

I.    THE DEFENDANTS' ATTEMPT AT "CONSOLIDATION" IS A BARELY VEILED
ATTEMPT TO DISMISS *UGARTE* ................................................................................... 8

    A.    The Settlement In The Consolidated Action Excludes The *Ugarte* Claims ........... 8

    B.    Consolidation Would Place The *Ugarte* Plaintiffs Into A Class That Expressly
Excludes Them, That Does Not Provide Them With Notice, And That
Nevertheless Purports To Extinguish Their Claims ............................................... 9

II.    THE ORDER IS CORRECT ........................................................................................... 11

    A.    The Magistrate Judge Correctly Determined That The Different Procedural
Postures Of The Two Cases Precludes Consolidation ........................................ 12

    B.    The Magistrate Judge Correctly Determined That Consolidation Would Prejudice
The Plaintiffs' Rights ....................................................................................... 14

        1.    The Defendants, Who Never Argued That They Would Be Prejudiced
Absent Consolidation, Cannot Now Claim That The Magistrate Judge
Erred By Failing To Consider An Argument They Never Made .............. 15

    C.    The Prior Order Does Not Demand Consolidation ............................................. 16

        1.    The Consolidated Action And *Ugarte* Do Not "Arise Out Of The Same
Facts And Claims" ................................................................................ 17

    D.    The Equities Demand Letting the *Ugarte* Plaintiffs Pursue Their Claims ........... 19

III.    THE ORDER IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW ............ 20

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benchmark Towing Sys. v. Chacon Bus. Grp.*,
2024 WL 4428983 (W.D. Tex. Oct. 4, 2024) ........................................................11, 12, 13, 15

*Brown v. Fort Hood Fam. Hous. LP*,
2020 WL 10758046 (W.D. Tex. Sept. 25, 2020) (Ezra, J.) ...............................................12, 14

*Bryson v. Plaza Oaks BPRE Invs.*,
2016 WL 8856641 (W.D. Tex. Sept. 8, 2016) (Ezra, J.) .............................................11–12, 14

*Championx Corp. v. AIG Ins. Co. of Can.*,
2026 WL 1552721 (5th Cir. June 2, 2026) .................................................................16, 18, 19

*Frazier v. Garrison I.S.D.*,
980 F.2d 1514 (5th Cir. 1993) ...............................................................................................11

*Gonzales v. Cassidy*,
474 F.2d 67 (5th Cir. 1973) ...................................................................................................10

*Hill v. Hunt*,
2013 WL 12226762 (N.D. Tex. July 30, 2013) ...................................................................7, 15

*In re Enron Corp. Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ...........................................................................................19

*James v. Cleveland Sch. Dist.*,
2020 WL 4370608 (N.D. Miss. July 30, 2020) ........................................................................7

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) .........................................................................................10, 11

*Kin-Yip Chun v. Fluor Corp.*,
2020 WL 2745527 (N.D. Tex. May 26, 2020) .......................................................................18

*Ont. Tchr.s' Pension Plan Bd. v. Teva Pharm Indus.*,
2020 WL 1181366 (D. Conn. Mar. 10, 2020) ........................................................................19

*Ortiz v. Am. Airlines*, *Inc.*,
5 F.4th 622 (5th Cir. 2021) ....................................................................................................16

*Pedigo v. Austin Rumba, Inc.*,
2010 WL 2730463 (W.D. Tex. June 24, 2010) .........................................................12, 13, 14

*Robison v. Digital Turbine, Inc.*,
  2022 WL 17881476 (W.D. Tex. Dec. 19, 2022) (Ezra, J.)................................................18, 19

*Weah v. Texas*,
  2024 WL 3678385 (W.D. Tex. June 4, 2024) ........................................................................7

## Statutes

28 U.S.C.A. § 636(b)(1)(A) .........................................................................................................7, 20

## Rules

Fed. R. Civ. P. 23 ....................................................................................................................10, 13

Carlos Pérez-Cotapos Ugarte, Maria Isabel Ureta Bazán, Carlos Pérez-Cotapos Subercaseaux, Inversiones Ane Miren Limitada, Sheryl Grove, and Hoorieh Alaghemand (collectively, the "*Ugarte* plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Objection to the Magistrate Judge's Order Denying Consolidation.[1]

## PRELIMINARY STATEMENT

The Defendants, it must be said, do not want for moxie.  During oral argument on their motion to consolidate, they finally admitted what consolidation would mean:  That a year and a half of their investors would be folded into a class period that expressly excludes them, and that expressly disclaims their right to recover damages.  The Defendants' solution—give those plaintiffs an opportunity to object to the settlement in the Consolidated Action—conveniently overlooked the fact that, because those investors would not be *members* of the consolidated class, they would not get *notice* of their need to object, if they had standing to object at all.  Consolidation, to the Defendants, thus means no class membership, no recovery, no notice, and no rights.

For good reason, then, the Magistrate Judge denied the Defendants' motion to consolidate. Under the broad discretion governing consolidation, the Order correctly held that the differing legal postures of the cases—the Consolidated Action at settlement, *Ugarte* still in the pleadings stage—precludes consolidation.  It also correctly held that consolidation would risk prejudice. After all, consolidation would jeopardize the settlement in the Consolidation Action, and (if the Defendants had their way) extinguish the claims in *Ugarte*.  The Order was thus correct—and, most certainly, it was not clearly erroneous or contrary to law.

In objecting to the Order, the Defendants raise arguments that are just as audacious as their

---

[1]    The "Order" and the "Objection" (cited as "Obj.").  The Order and Objection are docketed as ECF Nos. 92 and 94 in *Ugarte*, and ECF Nos. 384 and 388 in the Consolidated Action, respectively.  The "Consolidated Action" ("CA" in citations) refers to *In re Cassava Sciences Inc., Securities Litigation*, No. 1:21-cv-00751-DAE (W. D. Tex.).

original request.  The centerpiece of their Objection is that the Magistrate Judge erred because she applied the factors governing consolidation in the Fifth Circuit, rather than applying a four-year-old order that included a sentence on consolidation.  In other words, the Defendants are—quite literally—taking the position that the Order is contrary to law, not because it *failed* to apply the governing legal framework, but because it *did* apply the governing legal framework.

The Defendants also claim that the Magistrate Judge's Order "nowhere accounts for the prejudice to Defendants" that they say would be caused absent consolidation.  There is a second place, however, that "nowhere accounts for the prejudice to Defendants" that they say would be caused absent consolidation:  their own motion.  Nowhere in the briefing on their motion did they ever suggest that denial would cause them prejudice, and yet they now claim that the Magistrate Judge clearly erred by failing to consider an argument that they never made.

Moxie, yes.  But the Court should still deny the Objection.

## **BACKGROUND**

The two cases impacted by the Defendants' Objection concern a five-year period during which the Defendants repeatedly misrepresented the efficacy of a drug, Simufilam, as a potential blockbuster treatment for Alzheimer's.  They concern a period of nearly equal length during which investors, repeatedly burned by the Defendants' misrepresentations, filed lawsuits even as the Defendants continued to issue new misstatements.  And they concern a period of equal time during which the Defendants have aggressively sought at every juncture to avoid accountability for the massive losses that they caused their investors.

### A.    The Consolidated Action And Its Core Facts

The Consolidated Action concerns misstatements that the Defendants made about the Phase 2b trial of their drug Simufilam, and that affected investors who purchased Cassava stock between September 14, 2020, and October 12, 2023.

In September 2019, Cassava undertook a Phase 2b study of Simufilam—its first placebo-controlled, blinded trial of the drug.  CA ECF No. 319 (operative complaint; "CA Compl.") at ¶ 89. The test was a failure:  In May 2020, the Defendants announced that "[t]his study did not meet its primary endpoint."  *Id.* ¶ 90.  Months later, however, on September 14, 2020, the Defendants had new results to share.  *Id.* ¶ 93.  Having purportedly sent the test results to "outside labs" for retesting, they now miraculously showed significant reductions in biomarkers for Alzheimer's.  *Id.* Cassava's stock price doubled, and continued to rise.  *Id.* ¶ 97.  Over the following year, the Defendants continued to tout the drug.  *Id.* ¶¶ 268–315.

In August 2021, however, two scientists filed a citizen petition with the FDA; reports began to emerge publicly on August 24.  *Id.* ¶¶ 12, 105.  The data underlying the Phase 2b trial, they said, was "strongly suggestive of data manipulation and misrepresentation."  *Id.* ¶ 107.  And analyzing *fifteen years*' worth of studies by the individual defendants, the petition revealed "a long-standing pattern of seemingly intentional data manipulation and misrepresentation in scientific papers and corporate disclosures."  *Id.* ¶ 109.  Within days, Cassava's stock price nearly halved.  *Id.* ¶ 497.

The citizen petition triggered an investigation by the SEC and a series of lawsuits.  By stipulation of the parties, the securities lawsuits were soon consolidated into the Consolidated Action; the proposed order, signed by the Court, stated that "[a]ny other actions now pending or hereafter filed in this District that arise out of the same facts and claims as alleged in the above-listed related actions shall be consolidated into the Consolidated Action."  CA ECF Nos. 12, 58.  At the time, the operative complaint sought relief on behalf of those investors who purchased stock between September 14, 2020, and July 26, 2022.  CA ECF No. 68 at ¶ 46.

On October 12, 2023, the journal *Science* published an article revealing that investigators at CUNY, where Cassava's principal scientific advisor worked, had found scientific misconduct

3

involving twenty research papers about Simufilam.  CA Compl. Supp. ¶ 1.  In papers dating back more than a decade, CUNY stated that it "found numerous signs that images were improperly manipulated."  *Id.*  It also concluded that Defendant "Lindsay Burns, Cassava's senior vice president for neuroscience and a co-author on several of the papers, bears primary or partial responsibility for some of the possible misconduct or scientific errors."  *Id.* Supp. ¶ 2.

The *Science* article triggered a new round of lawsuits.  Notably, in *Baker v. Cassava Sciences, Inc.*, 1:24-cv-00977 (N.D. Ill. Feb. 2, 2024), investors raised claims concerning the Defendants' misstatements made *after* the Consolidated Action:  from August 18, 2022, to October 12, 2023.  *Baker* ECF No. 1 at ¶ 1.  It is true, as the Defendants say, that *Baker* was consolidated into the Consolidated Action.  What the Defendants do *not* say, however, is that the Consolidated Action was simultaneously expanded to include their statements through October 12, 2023—an expansion that the Defendants contested.  CA ECF Nos. 129, 143.  The Consolidated Action thus subsumed *Baker*, in substance and in timeline, before consolidating it.  *Id.* at 2.

## B.    The *Ugarte* Action And Its Core Facts

*Ugarte* concerns purchases of Cassava stock from October 13, 2023, to March 25, 2025. While it includes some spillover misstatements that the Defendants made about the Phase 2b trial, it primarily concerns misstatements about the subsequent Phase 2 trial.

When the *Science* article disclosed CUNY's report, the Defendants reverted to the playbook employed with the citizen petition, and disputed the findings.  *Ugarte* ECF No. 49 ("*Ugarte* Compl.") at ¶ 123.  They also repeatedly stated that there was no evidence of research misconduct.  While making such claims, they hid misconduct of which they were aware, such as that they had unblinded themselves from the Phase 2b results before analysis, permitting them to influence the results.  *Id.* ¶¶ 125–48.

But the Defendants, it seems, also knew that the tide was becoming impossible to hold

4

back.  They therefore began a new tactic:  downplay the Phase 2b results, and focus, instead, on the Phase 2 trial then underway.  On February 7, 2024, they announced the topline results from this study, with a press release entitled "No Decline in Cognition Scores in Patients with Mild Alzheimer's Disease Who Received Simufilam Continuously For 24 Months."  *Id.* ¶ 159.

As such, the study's results promised to be revolutionary.  In a letter released by the Defendants in July, they claimed that "[t]hose results were unlike any Alzheimer's trial ever, reporting stable cognition for two full years in Alzheimer's disease patients with mild dementia." *Id.* ¶ 168.  Continuing to tout the results in August, they called the results "unheard of," showing "virtually no cognition decline."  *Id.* ¶ 174.

Once again, these statements were a charade.  As it turned out, the Phase 2 results were based on a cherry-picked selection of only 116 of the intended 219 patients—contravening FDA policy, and the Defendants' previous claims.  *Id.* ¶¶ 102–04.  And when the final, Phase 3, results were released, the Defendants could hide the truth no longer.  The Phase 2 results had not been "unheard of," or "unlike any Alzheimer's trial ever," as the Defendants had once claimed.  When correctly analyzed, they had been no different than the placebo.  *Id.* ¶¶ 118–21.

In response to the latest revelations, the plaintiffs in the Consolidated Action did not seek to expand their class period.  Rather, they emphatically stated that they would "***not*** extend the Class Period, or amend the proposed Class Definition in any way."  CA ECF No. 252 at 3. Although they did move to supplement their complaint, they added only "new corrective disclosures and supporting allegations."  *Id.* at 1.  (Once again, the Defendants hotly contested the motion, and have claimed the Fifth Circuit should reverse on this basis.  CA ECF No. 269; *see* Obj. 2–3.)  Thus, unlike with *Baker*, the consolidated plaintiffs chose not to represent the additional year and a half of investors impacted by the Defendants' fraud.  *Ugarte* was therefore filed a month

5

after the consolidated plaintiffs declined to extend their class period, and in order to protect those investors that the consolidated plaintiffs declined to represent: those who purchased Cassava stock between October 13, 2023, and March 25, 2025.

In their Objection, as throughout their briefing on their motion, the Defendants attempt to analogize *Ugarte* to *Baker*. But they ignore the fact that, before *Baker* was consolidated, the consolidated plaintiffs supplemented their complaint to subsume both *Baker*'s allegations and its class period. Thus, the misstatements that form the core of *Ugarte*—the Defendants' claims about the Phase 2 trial of Simufilam—are entirely absent from the Consolidated Action (and from the Defendants' Objection, which never mentions them). Meanwhile, the pages that the Defendants spend comparing the supplemented allegations in the Consolidated Action with those in *Ugarte* (Obj. at 5–7) avoid the fundamental point: Every post-October 12, 2023, event pleaded in the Consolidated Action protects only those investors who purchased Cassava stock by that date. As pleaded in *Ugarte*, those statements protect only those investors who purchased *after* that date.[2]

The Defendants also repeatedly claim that *Ugarte* is an attempt to "circumvent the PSLRA's Lead Plaintiff process." Obj. at 1; *see also id.* at 2, 4, 9, 11, 12, 20. In making this claim, the Defendants ignore that, just like the consolidated plaintiffs, the *Ugarte* plaintiffs were appointed pursuant to the PSLRA. *Ugarte* ECF No. 42. And in any event, the decision of the consolidated plaintiffs to end their class period on a certain date does not preclude potential plaintiffs who fall on the other side of that date from pursuing their claims.

C.      **Nine Months After *Ugarte* Is Filed, The Defendants Seek Consolidation**

Nine and a half months after *Ugarte* was filed, the Defendants sought consolidation.

---

[2]      The Defendants claim, too, that certain statements are pleaded as misstatements in both actions. Obj. at 6. This is deeply misleading, at best. Post-October 12, 2023, statements pleaded in the Consolidated Action are not *actionable* misstatements, because they fall outside the class period. *Ugarte* is the only action in which such misstatements are actionable.

6

*Ugarte* ECF No. 53; CA ECF No. 338.  Consistent with their strategy in the Consolidated Action, the Defendants did not ask that that action be expanded to accommodate the new claims, or that the class period be expanded by a year and a half.  Instead, they argued that the *Ugarte* plaintiffs should be folded into the Consolidated Action without becoming class members or otherwise part of that action.  On June 29, the Magistrate Judge denied the motion.  *Ugarte* ECF No. 92; CA ECF No. 384.  On July 13, the Defendants filed their objection.  *Ugarte* ECF No. 94; CA ECF No. 388.

## LEGAL STANDARD

The Court "may reconsider [an order of a magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C.A. § 636(b)(1)(A); Local Rule App'x C, R. 4(a) ("A judge of the court shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."). "The burden to show a magistrate judge's order is clearly erroneous or contrary to law falls on the party filing the objections."  *Hill v. Hunt*, 2013 WL 12226762, at *2 (N.D. Tex. July 30, 2013).

The Defendants note that "the district judge 'may also reconsider *sua sponte* any matter' determined by the magistrate judge."  Obj. at 8 (quoting Local Rule App'x C, R. 4(a)).  They therefore imply that the Court may reconsider the Order *de novo*.  *Id.* at 20 ("The Court should . . . set aside the Magistrate Judge's June 29 Order . . . as contrary to law and clearly erroneous . . . . In the alternative, the Court may reconsider the matter *sua sponte*.").

This observation conflates the *mechanism* of review with the *standard* of review.  No matter how the matter lands before the Court, "under either circumstance, the district judge may not modify a magistrate judge's order unless the district judge determines that . . . the magistrate judge's ruling is clearly erroneous or contrary to law."  *James v. Cleveland Sch. Dist.*, 2020 WL 4370608, at *2 (N.D. Miss. July 30, 2020) (quotation marks omitted) (citing 28 U.S.C. § 636(b)(1)(A)); *see also Weah v. Texas*, 2024 WL 3678385, at *1 (W.D. Tex. June 4, 2024), *R. &*

7

*R. adopted sub nom. Weah v. Estancia Villas LLC*, 2024 WL 3274780 (W.D. Tex. July 2, 2024) ("[W]hen nondispositive pretrial orders are issued by the Magistrate Judge (like the consolidation order in this case), a District Court Judge may reconsider it '*where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law*.'" (emphasis added) (quoting 28 U.S.C. § 636(b)(1)(A))).

Put simply, the Defendants' invocation of *sua sponte* review is both misleading and irrelevant:  By the very nature of their Objection, the Court's review is not *sua sponte*.

## ARGUMENT

### I.  THE DEFENDANTS' ATTEMPT AT "CONSOLIDATION" IS A BARELY VEILED ATTEMPT TO DISMISS *UGARTE*

As a threshold matter, the Defendants' strenuous efforts to consolidate *Ugarte* must be taken for what they are:  an attempt to fold a year and a half of investors' claims against the Defendants into a class action in which those investors are not class members, and with a stipulation of settlement that expressly precludes their claims.  The Consolidated Action presently provides no potential mechanism for the *Ugarte* plaintiffs to pursue their claims, and no potential mechanism for the *Ugarte* plaintiffs to recover damages.  The reason Defendants have so adamantly pursued consolidation, therefore, is because they see it as a mechanism to wipe out liability for their fraudulent conduct, without paying a single dollar to any of the *Ugarte* plaintiffs or its putative class.

#### A.  The Settlement In The Consolidated Action Excludes The *Ugarte* Claims

The Consolidated Action concerns a class comprising those who purchased Cassava stock between September 14, 2020, and October 12, 2023.  CA ECF No. 332 at 1 (order granting class certification).  It excludes those who purchased Cassava stock *after* this period, including during the *Ugarte* class period, which runs from October 13, 2023, to March 25, 2025.  *See Ugarte* ECF

8

No. 49 at ¶ 1 (operative complaint). Consolidation thus threatens to leave the *Ugarte* plaintiffs with no way to pursue their claims, and no way to recover damages.

First, consolidation threatens to leave no mechanism for the *Ugarte* plaintiffs to investigate their claims: The Consolidated Action is in its final act, with no discovery left to complete. The Defendants admit that "[w]hen it settled, the Consolidated Action was still in the early stages of discovery. Disputes over the proper scope of discovery were pending and unresolved, and no current or former Cassava employee, officer, or director, or individual Defendant, had been deposed." Obj. at 8. Even if shared with the *Ugarte* plaintiffs, therefore, the minimal discovery conducted in the Consolidated Action would provide little insight into the extent of the *Ugarte* plaintiffs' claims—even leaving aside the fact that this discovery pertained to a class period that ended a year and a half earlier, and likely excluded the Phase 2 study at the core of *Ugarte*.

Second, the settlement in the Consolidated Action expressly excludes recovery for purchases outside of the consolidated class period. The stipulation of settlement leaves nothing to doubt: "Purchases or acquisitions [after October 12, 2023] are not eligible for a recovery because they were made outside the Class Period." CA ECF No. 381-1 at 92 n.2. All purchases made during the *Ugarte* class period are therefore barred from recovery.

This, of course, is why the Defendants so ardently seek consolidation. Consolidation, to them, means dismissal. It means disposing of potentially hundreds of millions of liability, without having to win a motion to dismiss, and without having to pay a cent in damages.

**B.    Consolidation Would Place The *Ugarte* Plaintiffs Into A Class That Expressly Excludes Them, That Does Not Provide Them With Notice, And That Nevertheless Purports To Extinguish Their Claims**

At oral argument, the Defendants were finally forced to address an issue they avoided in their briefing: what, in their view, would be the proper way to handle the *Ugarte* claims following consolidation. They did not suggest enlarging the class period to encompass these claims, nor did

9

they suggest reopening discovery to investigate them.  To be sure, they certainly did not suggest

bringing the *Ugarte* plaintiffs into the settlement, and paying them damages.  Instead, the

Defendants stated that the sole right of the *Ugarte* plaintiffs would be to *object*:

> Counsel for the *Ugarte* Plaintiffs would have an opportunity to object.  There will
> be deadlines set once the preliminary approval is entered by the Court, and they
> then have an opportunity to brief their concerns.  They can object and raise
> whatever concerns they have, the idea of a subclass, why a subclass may be
> warranted in their view, and that objection can play out in the course of considering
> the fairness of the overall settlement. . . .  So the answer is that the consolidation
> order preserves an orderly process for the parties and for this Court.  Objections
> notice is provided.  Objections can be heard.

June 24, 2026, Tr. (CA ECF No. 389-5) 22:1–20.  The Defendants now reiterate this proposal in

their Objection, writing that "the *Ugarte* plaintiffs' objections, if any, would be heard at the

fairness hearing."  Obj. at 19.

As the Defendants see it, therefore, the *Ugarte* plaintiffs would become part of a class

action in which they are not even class members.  Their assertion that the *Ugarte* plaintiffs "can

object and raise whatever concerns they have" after "[o]bjections notice is provided" is risible:

Because the *Ugarte* plaintiffs would not be part of the consolidated class, they would never even

get notice of the settlement or their need to object—even assuming they would have standing to

do so.  *See* Fed. R. Civ. P. 23(e)(5)(A) ("Any *class member* may object" (emphasis added)).

It is difficult to overstate the extent of the due-process violations that the Defendants invite.

The Defendants are attempting to use a settlement to extinguish the rights of non-class members,

who did not even receive notice of the settlement.  In return, the Defendants would pay nothing.

So too would it be difficult to overstate the extent of the procedural minefield that would

be laid.  "The exception to this general rule [that a judgment in a class action binds the absent

members of the class] is grounded in due process."  *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir.

1973).  This means that, amongst other things, "[a]bsent class members can collaterally challenge

10

the res judicata effect of a prior class judgment either because they were not adequately represented, or because there was not adequate notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1313 (11th Cir. 2012) (citations omitted); *see also id.* ("In addition, absent class members have successfully attacked a class action court's ability to bind them by arguing that they were denied the ability to opt out or exclude themselves from the class."). The due-process concerns are even greater here, where—rather than purporting to bind *absent* class members—the Defendants seek to bind *non* class members.

> Thus, far from promoting efficiency, consolidation would simply lead to more litigation:

> The traditional collateral attack involves a class member commencing a separate suit on a similar subject matter as a prior class settlement, the defendant's assertion that the prior class settlement has preclusive effect and bars the new suit, and the class member's contention that giving res judicata effect to the prior settlement would violate her rights to due process. At the same time, a related, collateral method for attacking judgment finality after expiration of the appeals period is available under federal Rule 60(b) . . . on the grounds that the judgment is void.

*Id.* (alteration incorporated) (citation omitted) (quotation marks omitted). In other words, should the Defendants prevail on consolidation, the primary ways for the *Ugarte* plaintiffs to protect their rights would be to attack the settlement in the Consolidated Action, or to file another action. The Defendants should not be permitted to cause this chaos.

## II.    THE ORDER IS CORRECT

Against this backdrop, it is no wonder that the Magistrate Judge denied the Defendants' motion. "Federal district courts have very broad discretion in deciding whether or not to consolidate." *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993). "The party seeking consolidation has the burden to demonstrate that consolidation is proper." *Benchmark Towing Sys. v. Chacon Bus. Grp.*, 2024 WL 4428983, at *2 (W.D. Tex. Oct. 4, 2024). The decision to consolidate involves a large but non-exclusive array of factors:

> In determining whether to consolidate cases, a district court must consider whether:

11

(1) the actions are pending before the same court; (2) there are common parties; (3) there are common questions of law or fact; (4) there is risk of prejudice or confusion if the cases are consolidated, and if so, the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are handled separately; and (5) consolidation will conserve judicial resources and reduce the time and cost of handling the cases separately.

*Bryson v. Plaza Oaks BPRE Invs.*, 2016 WL 8856641, at *2 (W.D. Tex. Sept. 8, 2016) (Ezra, J.).

In addition, certain circumstances may preclude consolidation. "Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial." *Id.* (quoting *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989)). Similarly, "consolidation is improper if it would prejudice the rights of the parties." *Id.* (alteration incorporated) (quoting *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983)). Likewise, "the mere fact that a common question is present does not mean that the trial court judge must order consolidation." *Brown v. Fort Hood Fam. Hous. LP*, 2020 WL 10758046, at *2 (W.D. Tex. Sept. 25, 2020) (Ezra, J.) (ellipsis incorporated) (quoting Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2383).

### A. The Magistrate Judge Correctly Determined That The Different Procedural Postures Of The Two Cases Precludes Consolidation

As the Magistrate Judge correctly recognized, "[c]ourts routinely deny motions to consolidate when cases are at significantly different procedural stages, especially if one of the cases has settled." Order at 8 (citing cases). This is true even when "the two cases at issue involve almost identical questions of law and fact." *Pedigo v. Austin Rumba, Inc.*, 2010 WL 2730463, at *1 (W.D. Tex. June 24, 2010) ("[T]he above-entitled case is rapidly nearing final judgment, whereas litigation in *Grande* is only just beginning. Therefore, consolidation is not appropriate at this time."); *see also Benchmark Towing*, 2024 WL 4428983, at *2 ("[T]he Court denies consolidation at this point because the third case is at a very different stage than the two earlier cases. . . . Unlike these two earlier cases that have progressed well into discovery and have

12

approaching dispositive motion deadlines, the third case has . . . multiple motions to dismiss.").

Here, the two cases are nearly as far apart as two cases can be. *Ugarte* is at the pleadings stage, with motions to dismiss yet to be decided.[3] The Consolidated Action, by contrast, is at the end of the line: The parties have filed a stipulation of settlement. CA ECF No. 380-1. This factor alone is dispositive of the Defendants' motion, for the Consolidated Action is an unsuitable vehicle with which the *Ugarte* plaintiffs may pursue their claims or seek recovery. On this basis alone, therefore, the Magistrate Judge properly denied the Defendants' motion. *See, e.g.*, *Pedigo*, 2010 WL 2730463, at *1; *Benchmark Towing*, 2024 WL 4428983, at *2.

In briefing on their motion, the Defendants attempted to claim that, like *Ugarte*, "[t]he Consolidated Action [ ] remains at an early procedural stage." *Ugarte* ECF No. 55 at 4. This assertion was never serious: Two months before they made this claim, the Defendants signed a binding settlement term sheet. *Ugarte* ECF No. 53 at 10. The stipulation of settlement that the parties to the Consolidated Action subsequently filed confirms as much. CA ECF No. 381-1. Whatever *procedural* steps remain in the Consolidated Action, the *substantive* steps—those that would afford the *Ugarte* plaintiffs the ability to pursue their claims and damages—are over.

Presumably recognizing the tenuousness of their prior position, the Defendants now pivot to claiming that procedural posture is merely "a proxy for efficiency." Obj. at 14. They then claim that efficiency favors consolidation, because otherwise, "this Court must conduct two proceedings about one alleged fraud: a Rule 23(e) approval process in the Consolidated Action and, running beside it, a from-scratch class action litigating the same misstatements and the same corrective disclosures." *Id.* at 14–15. The Defendants' argument fails for three reasons.

---

[3]    At the time of the Magistrate Judge's Order, motions to dismiss were pending in *Ugarte*. *Ugarte* ECF Nos. 69–70. They have subsequently been denied without prejudice to refile. *Ugarte* ECF No. 99 at 2–3. This further confirms the exceptionally early procedural posture of the case.

13

First, the factors of procedural posture and efficiency are not coextensive. *See Bryson*, 2016 WL 8856641, at \*2 ("a district court must consider whether . . . consolidation will conserve judicial resources and reduce the time and cost of handling the cases separately. The Court *also* considers whether the cases are at different stages of preparation." (emphasis added) (citation omitted)). The Defendants cannot eliminate a dispositive factor simply because it disposes of their argument.

Second, in conflating these two factors, the Defendants merely rehash their argument that *Ugarte* and the Consolidated Action involve common questions of fact and law—that consolidation supposedly prevents the inefficiency of "a from-scratch class action litigating the same misstatements and the same corrective disclosures." Obj. 14–15. In doing so, they attempt to eliminate the rule that differing procedural postures is a reason to deny consolidation, *even when* "a common question is present." *Brown*, 2020 WL 10758046, at \*2; *see also Pedigo*, 2010 WL 2730463, at \*1 (despite finding that "the two cases at issue involve almost identical questions of law and fact," ruling that "the above-entitled case is rapidly nearing final judgment, whereas litigation in *Grande* is only just beginning. Therefore, consolidation is not appropriate.").

The third and final reason why the Defendants are wrong, of course, is that consolidation would be anything *but* efficient. As discussed above (at § I), consolidation would invite a host of due-process and procedural concerns, potentially putting (as the Magistrate Judge observed) the settlement in the Consolidated Action in jeopardy. Rather than closing the door on one action while another moves on, *both* would be thrown into disarray.

### B.     The Magistrate Judge Correctly Determined That Consolidation Would Prejudice The Plaintiffs' Rights

A second dispositive factor is prejudice: As a rule, "consolidation is improper if it would prejudice the rights of the parties." *Bryson*, 2016 WL 8856641, at \*2 (alteration

14

incorporated) (quoting *St. Bernard Gen. Hosp., Inc.*, 712 F.2d at 989 (5th Cir. 1983)).  Here, the Magistrate Judge correctly determined that the parties would be prejudiced by consolidation. Order at 8.  Indeed, as described above (at § I), consolidation would prejudice the *Ugarte* putative class by threatening to extinguish its claims without a cent in compensation, and damage the consolidated plaintiffs by potentially throwing their settlement into jeopardy.

Tellingly, the Defendants never once address the prejudice that consolidation would cause the *Ugarte* plaintiffs; they state only that "[c]onsolidation causes no cognizable prejudice to *the Consolidated Action plaintiffs*."  Obj. at 18 (bold omitted) (emphasis added).  There is a reason for this omission:  Using a consolidation motion to attempt to eliminate a putative class of investors in Cassava for a period of a year and a half without a cent paid is the *epitome* of prejudice.

Nor is the Defendants' newfound assertion that the *Ugarte* plaintiffs could object to the settlement a cure for this prejudice.  At a bare minimum, this improperly shifts the burden of consolidation on to the plaintiffs.  It was the Defendants' burden to show that consolidation was proper, *Benchmark Towing*, 2024 WL 4428983, at *2, and it is their burden to show that the Order is clearly erroneous or contrary to law, *Hill*, 2013 WL 12226762, at *2.  They cannot lade the *Ugarte* plaintiffs with their burden by punting the Court's consideration of prejudice to a settlement-fairness hearing.  They also cannot transform the right of the *Ugarte* plaintiffs to litigate their claims into a right to object at a hearing in a case that excludes them.

      **1.**      **The Defendants, Who Never Argued That They Would Be Prejudiced Absent Consolidation, Cannot Now Claim That The Magistrate Judge Erred By Failing To Consider An Argument They Never Made**

After ignoring the prejudice that consolidation would cause the *Ugarte* plaintiffs, the Defendants seek to tar the Order for the same reason:  "the Magistrate Judge [did not] weigh the other side of the ledger," they write, because "[t]he prejudice analysis considers a single interest: that of the settling class."  Obj. at 19.  Claiming that they "pressed the countervailing harms at

15

length," the Defendants state that because "the June 29 Order engages none of them, the one-sided analysis independently requires setting the June 29 Order aside."

But if the Defendants "pressed the countervailing harms at length," where did they do it? Their motion used the word "prejudice" a single time:  In their recitation of the legal standard. *Ugarte* ECF No. 53 at 6; CA ECF No. 338 at 6.  Their reply addressed the factor in a single paragraph—a section titled "Plaintiffs Will Not Be Prejudiced by Consolidation," and that alleged no prejudice of their own.  *Ugarte* ECF No. 55 at 5.  The only citation the Defendants provide with their Objection is to the transcript of the oral argument—yet "[a]n argument raised for the first time at oral argument is forfeited."  *Championx Corp. v. AIG Ins. Co. of Can.*, 2026 WL 1552721, at *2 n.3 (5th Cir. June 2, 2026) (quoting *Ortiz v. Am. Airlines*, *Inc.*, 5 F.4th 622, 630 n.11 (5th Cir. 2021)).

All this is to say, the Defendants did not "press[] the countervailing harms at length"— they did not press them *at all*.  The Defendants cannot possibly claim that the Magistrate Judge erred by failing to consider an argument that they never made.[4]

## C.    The Prior Order Does Not Demand Consolidation

The Defendants' primary objection rests in the Court's order from the very beginning of the Consolidated Action, when it stated that "[a]ny other actions now pending or hereafter filed in this District that arise out of the same facts and claims as alleged in the above-listed related actions shall be consolidated into the Consolidated Action."   ECF Nos. 12, 58.  Indeed, across 20 pages,

---

[4]    The *Ugarte* plaintiffs are unable to account for the possibility that the Defendants raised this argument in the voluminous sealed briefing that remains inaccessible to the *Ugarte* plaintiffs, and that is the subject of a pending motion to view sealed documents.  CA ECF No. 389.  This is yet another reason to grant that motion.  Moreover, even if the Defendants *did* argue prejudice in the sealed briefing, their refusal to provide this briefing to the *Ugarte* plaintiffs is reason enough to disregard the argument; the *Ugarte* plaintiffs cannot be expected to respond to arguments that they cannot see.

they refer to this order no fewer than 25 times. To the Defendants, the order is dispositive: "The only question the Consolidation Order leaves open is whether the later action arises out of the same facts and claims." Obj. at 10. As described below (at § 2(C)(1)), the two actions do not "arise out of the same facts and claims." But even were this so, the order cannot possibly bear the massive weight the Defendants seek to lay across its shoulders.

As a threshold matter, the Defendants cannot use a standing order as a substitute for the standard governing consolidation in the Fifth Circuit, nor can they use it to dispose of their burden to meet that standard. The relevant question before the Magistrate Judge was whether consolidation is appropriate under Fifth Circuit law; it was not whether a prior order commanded consolidation. As the Defendants say, "[a] decision is 'contrary to law' when it . . . fails to apply the governing legal framework." Obj. at 8. Yet their argument here is that the Order was contrary to law precisely *because* it applied the governing legal framework.

Nor should it be lost that the line which forms the core of the Defendants' argument was originally written *by them*. At the outset of the Consolidated Action, the parties filed an Agreed Motion Regarding Acceptance of Service, Consolidation of Related Actions, and Defendants' Time to Respond to Complaint. CA ECF No. 12. The proposed order attached thereto, which the Court signed, contained the relevant sentence (amongst many others). CA ECF No. 58. The Defendants cannot use a line they drafted nearly five years ago to eliminate the governing standard.

### 1. The Consolidated Action And *Ugarte* Do Not "Arise Out Of The Same Facts And Claims"

In any event, *Ugarte* does not "arise out of the same facts and claims" as the Consolidated Action. In their Objection, the Defendants point to where the cases overlap: "the same simufilam research-integrity allegations, the same alleged misconduct by Dr. Wang, the same alleged problems with the Phase 2b study, and many of the same corrective disclosures, on the same dates,

17

in the same language, against the same Defendants." Obj. 5. But they are entirely silent as to the crucial differences that separate the cases. The Consolidated Action concerns the misstatements that the Defendants made about the Phase 2b trial, and that caused losses for investors who purchased Cassava stock between September 14, 2020, and October 12, 2023. *Ugarte* concerns the misstatements that the Defendants made *after* this date, primarily about the separate Phase 2 trial, and that caused losses for investors who purchased Cassava stock between October 13, 2023, and March 25, 2025. These are the differences that matter.

In each of the cases that the Defendants cite in their Objection, the court found actions to share the same facts and claims, and thus to warrant consolidation, only when the differences could be ironed out through amendment. In fact, a case on which the Defendants relied in their underlying motion makes this point so perfectly that they now treat it as one of the *Ugarte* plaintiffs' cases, and strive to distinguish it. Obj. at 14. In *Kin-Yip Chun v. Fluor Corp.*, the lead plaintiff filed an amended complaint which "effectively subsume[d]" a later-filed action, including by expanding the class period. 2020 WL 2745527, at *4 (N.D. Tex. May 26, 2020). The court went on: "As both parties acknowledge, the scope of the lead plaintiffs' amended consolidated complaint incorporates the class period, claims, and issues in Union's complaint. ***Because the amended consolidated complaint incorporates Union's complaint***, the Court finds Union's claims share with this case common questions of law and fact." *Id.* at *3 (emphasis added). Thus, the court found that the subsumption of the later complaint into the earlier, through amendment, was what created commonality. Here, by contrast, the Defendants do not ask for consolidation to subsume the *Ugarte* claims; the Defendants ask for consolidation to eliminate them.

The remaining three opinions that the Defendants cite make the same point. In *Robison v. Digital Turbine, Inc.*, the Defendants quote the line stating that "the related actions' overlapping,

18

but slightly different, class periods do not prevent consolidation." 2022 WL 17881476, at *2 (W.D. Tex. Dec. 19, 2022) (Ezra, J.). They ignore the line that came after: "As the Court-appointed lead plaintiff, Burch is ordered to resolve the differences in the proposed class period in his filing of a consolidated Amended Complaint." *Robison*, 2022 WL 17881476, at *2. Similarly, in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries*, the Defendants point to the line that "differences in . . . the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." 2020 WL 1181366, at *4 (D. Conn. Mar. 10, 2020). But this order also granted the plaintiffs leave to file an amended complaint which "expands the class period and adds claims and parties to erase differences between this case and the other three Putative Class Actions." *Id.* at *3. And in *In re Enron Corp. Securities Litigation*, the court stated that "different actions have stated different class periods, though all overlap. *Once Lead Plaintiff(s) and Lead Counsel are appointed and file a consolidated complaint, the class period will be clearly defined*." 206 F.R.D. 427, 448 n.3 (S.D. Tex. 2002) (emphasis added).

The Defendants' authorities stand for the consistent proposition that cases can and should be consolidated where the original complaint does, or at least could, incorporate fully all the claims of the later-filed action. This is not the case here; to the contrary, the Defendants seek consolidation precisely in order to *not* incorporate the *Ugarte* claims.

D.    **The Equities Demand Letting the *Ugarte* Plaintiffs Pursue Their Claims**

Although not strictly one of the factors governing consolidation, a word on the equities is in order. Throughout their briefing, the Defendants have cast *Ugarte* as "a parasitic complaint by [an] opportunistic plaintiffs' firm[]." Obj. 2. The Defendants take the unusual step of referring to their opposing law firm, Pomerantz, by name—not once, but sixteen times. They accuse it of "gamesmanship" and of "Pomerantz's attempt to circumvent the PSLRA." *Id.* at 2, 4. And they

19

argue that they "negotiated and paid a high price for global peace," but that absent consolidation, they "will instead receive little to no benefit from [their] bargain." *Id.* at 1–2.

But what is the Defendants' complaint? For half a decade, they falsely touted their drug as revolutionary; when their rampant research misconduct and manipulated data was uncovered, they repeatedly attempted to conceal their fraud, doubling down on their false statements, and pivoting to new (and equally false) claims. During this time, they offered false hope to the millions affected by Alzheimer's, and caused investors to lose millions of dollars. Put simply, the situation in which the Defendants now find themselves is the direct consequence of their own decisions.

The Defendants are also responsible for any inability to achieve "global peace." By refusing to meaningfully engage with the *Ugarte* plaintiffs in mediation, they left open the *Ugarte* claims; they could have engaged with the plaintiffs in both actions, but chose not to. *Cf.* June 24, 2026, Tr. 41:7–15 (counsel for the consolidated plaintiffs noting that Defendants Barbier and Burns "didn't sign the term sheet" in the Consolidated Action because they did not want to settle without also settling *Ugarte*). Instead, they signed a settlement with one class of plaintiffs, and now seem to be taking the position that it somehow also extinguishes the claims of an entirely separate class. *See* Obj. at 11–12. The only "gamesmanship" is the Defendants refusing to engage with the *Ugarte* plaintiffs—and then asking the Court to dispose of the *Ugarte* plaintiffs' claims, while paying nothing, through a request that they disguise as a motion for "consolidation."

## III.    THE ORDER IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW

The Magistrate Judge's Order was correct. But, at an absolute *bare minimum*, it was not "clearly erroneous or contrary to law"—the governing standard. 28 U.S.C.A. § 636(b)(1)(A).

## CONCLUSION

The Court should deny the Objection.

20

Dated:  August 3, 2026

Respectfully submitted,

/s/ Luc W. M. Mitchell
Luc W. M. Mitchell (*pro hac vice*)
(State of New York Juris No. 5671037)
**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
(State of New York Juris No. 4161352)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: lmitchell@pomlaw.com
jalieberman@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein (*pro hac vice*)
(State of New York Juris No. 2155067)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

Michael J. Boyle (*pro hac vice*)
(State of Ohio Juris No. 0091162)
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 578-5582
Email:  mboyle@bgandg.com

*Counsel for Plaintiffs and
Co-Lead Counsel for the Class*

**THE BRISCOE LAW FIRM, PLLC**
Willie C. Briscoe (Tx. Bar Number
24001788)
12700 Park Central Drive, Suite 520
Dallas, Texas 75251
Telephone: (972) 521-6868
Facsimile: (281) 254-7789
Email: wbriscoe@thebriscoelawfirm.com

*Counsel for Plaintiffs and
Liaison Counsel for the Class*

21

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim (*pro hac vice* application
forthcoming)
(State of New York Juris No. 4145397)
275 Madison Avenue, 40th Floor
New York, NY 10116
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Additional Counsel for Plaintiffs*

22

**CERTIFICATE OF SERVICE**

I, Luc W. M. Mitchell, hereby certify that on August 3, 2026, the foregoing was served upon each attorney of record through the Court's CM/ECF system.

/s/ Luc W. M. Mitchell
Luc W. M. Mitchell (*pro hac vice*)

23