UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re CASSAVA SCIENCES, INC. SECURITIES LITIGATION | § § § | Master File No. 1:21-cv-00751-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS | § § § § § § | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S NOVEMBER 12, 2026 ORDER**

Pursuant to the Court's November 12, 2026 Order (ECF 406), lead plaintiff Mohammad Bozorgi and additional plaintiffs Ken Calderone and Manohar Rao ("Plaintiffs") submit this supplemental brief addressing the effect of the Fifth Circuit's October 16, 2026 Opinion (ECF 404) ("Fifth Circuit Opinion" or "Fifth Cir. Op.") on: (i) Plaintiffs' Unopposed Motion for an Order Preliminarily Approving Settlement and Providing for Notice (ECF 380); and (ii) Defendants' Objection to the Magistrate Judge's Order Denying Consolidation (ECF 388).

## I. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The recent Fifth Circuit Opinion does not prevent preliminary approval of the Settlement. As outlined in Plaintiffs' Unopposed Preliminary Approval Motion, because the Court already certified the Class in this action once before, it "'will likely be able to'" certify the Class for settlement purposes under Rule 23. ECF 380 at 19. The Fifth Circuit Opinion does not change that outcome. Rather, it simply requires the Court to more expressly "address" Defendants' market efficiency-related arguments.

In its Opinion, the Fifth Circuit vacated the Court's class certification decision based on a ***single*** ground and remanded it back to the Court to undertake a limited task: "address[] and weigh[] 'factors both for and against market efficiency.'" Fifth Cir. Op. at 9. Indeed, in its Opinion, the Fifth Circuit was clear that it made "***no*** judgment about whether Cassava, based on that evidence, traded in an efficient or inefficient market." *Id.* at 10-11.

As reflected in its Class Certification Opinion (ECF 332) ("Class Cert. Op."), the Court already "weighed" the evidence. After full briefing by the parties, the Court considered – and rejected – Defendants' arguments, finding that the market for Cassava Securities was efficient during the Class Period. The Fifth Circuit Opinion asks only that the Court make its consideration of Defendants' arguments more explicit in its written analysis.

Plaintiffs respectfully submit that the Court may do so in one of two ways, either of which can be accomplished on the current record: (i) in a revised class certification opinion; or (ii) in the context of an order preliminarily approving the Settlement, which must address, under the Federal Rules of Civil Procedure, whether the Court "'will ***likely*** be able'" to certify the Class for purposes of the settlement. *See* ECF 380 at 11 (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Both options allow the Court to address the Fifth Circuit Opinion and move this settled action toward preliminary approval and final resolution. *See* ECF 380 at 1 n.2. Neither approach is contrary to the Fifth Circuit's guidance, which expressed no view on how the case should proceed in light of the Settlement. *See* Fifth Cir. Op. at 4 ("We will not opine on the settlement's effect on the remaining district court proceedings.").[1]

### A. The Court Can "Likely" Certify the Class for Settlement Purposes, as It Already "Weighed" the Evidence and Found the Market Efficient

As Plaintiffs previously demonstrated in their class-certification-related submissions: (i) the evidence of market efficiency is both overwhelming and not in dispute; and (ii) Defendants' contrary arguments are factually and legally deficient and do not outweigh Plaintiffs' showing of market efficiency.

#### 1. The Court Credited Plaintiffs' Evidence of Market Efficiency

As the Court already found, "***all*** the *Cammer/Krogman* factors favor a finding that Cassava Securities were traded in an efficient market during the Class Period." Class Cert. Op. at 42.[2] This includes *Cammer* factor five, which demonstrates "a causal relationship between the release of Cassava news and movement in its stock price." *Id.* at 40. In fact, Defendants didn't really dispute Plaintiffs' *Cammer/Krogman* showing in the first place. *See id.* at 29-30 ("Defendants fail to address

1 The Fifth Circuit "decline[d] to resolve" the other issues raised by the parties. *Id.* at 11.

2 Internal citations are omitted and emphasis is added unless otherwise indicated.

most of the *Cammer/Krogman* factors . . . ."); ECF 231 ("Sur-Response") at 1; ECF 281 ("Reply") at 3-5, 8. And at his deposition, Defendants' expert, Dr. Stulz, admitted he did ***not*** find any of the *Cammer/Krogman* factors unmet (Reply at 4), and conceded that the "market ***reacted***" to Cassava-specific news during the Class Period. *See id*. at 5-6 (cleaned up).

Thus, "*Basic*'s key premise that the stock was incorporating information efficiently" (Fifth Cir. Op. at 9) is fulfilled. *See* Sur-Response at 3-4 (alteration in original) (quoting *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 370 (S.D.N.Y. 2016), *aff'd & vacated in part on other grounds*, 862 F.3d 250 (2d Cir. 2017)) ("'What is essential' – and not disputed here – 'is evidence that, when the market received new information, it "generally affect[ed]" the price.'"); Reply at 8, 10-11. *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (quoting *Basic v. Levinson*, 485 U.S. 224, 246 n.24 (1988)) (The *Basic* presumption is based "on the fairly ***modest premise*** that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'").

Defendants' own previously cited "meme stock" authority expressly supports this conclusion. As the court in *Shupe v. Rocket Cos.*, held, even if "meme-stock status ***suggested*** market inefficiency, it would not ***outweigh*** the eleven other factors which Plaintiffs have shown suggest the contrary." 752 F. Supp. 3d 735, 778 (E.D. Mich. 2024) (emphasis in original); *see* Sur-Response at 2. And here, as in *Rocket*, ***all 11*** factors support market efficiency: the (8) *Cammer/Krogman* factors; (9) trading on a national exchange; (10) significant options trading; and (11) institutional investors. Sur-Response at 2. Defendants, by contrast, cite ***no authority*** finding that a plaintiff has not sufficiently demonstrated market efficiency where ***every*** *Cammer/Krogman* factor has been found in its favor.

Another of Defendants' cases, which is also cited in the Fifth Circuit Opinion, underscores why Defendants' arguments fail. In *Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34

(D.D.C. 2024), market efficiency was found lacking for two reasons, neither of which is present here. First, the plaintiffs failed to submit a class period event study, thus failing *Cammer* factor 5 (*id.* at 64), unlike here, where Plaintiffs' event study is unchallenged and proved that new, material Company-specific information promptly affected Cassava's stock price during the Class Period. *See* Class Cert. Op. at 36-40; Reply at 8. Thus, the *Bed Bath* court would have found market efficiency satisfied here. *See Bed Bath*, 752 F. Supp. 3d at 54 (plaintiff "must show that the market ***reacted***") (emphasis in original); *see* Sur-Response at 3; Reply at 8.

Second, the company in *Bed Bath* was subjected to a short squeeze throughout the entire class period. *See Bed Bath*, 752 F. Supp. 3d at 58, 62-63. Here, by contrast, Defendants do not argue (and there is no evidence of) a short squeeze at any time. *See* Sur-Response at 3, 5 n.5; Reply at 6-7.

### 2. The Court Found Defendants' Contrary Arguments Unpersuasive

It is equally plain that the Court already considered Defendants' meme stock "evidence" and found it lacking, while crediting the evidence submitted by Plaintiffs' expert, Dr. Feinstein. In finding Cassava Securities traded in an efficient market, the Court specifically noted that Dr. Feinstein "addresses the meme stock argument but concludes that Cassava was traded in an efficient market." Class Cert. Op. at 32.

The Court also pointed out that Defendants' expert: (i) "testified that he was '***not*** offering an affirmative opinion that the market for Cassava stock was inefficient during the class period'"; and (ii) admitted that he does ***not*** "'have a report saying that Cassava is a meme stock.'" *Id.* at 31-32; *see* Reply at 3, 7, 11-14; Sur-Response at 2. And Dr. Stulz further agreed that "meme" stock status does not mean the market was inefficient. Sur-Response at 2. Nor could he. As Defendants' own *Rocket* case explained: "meme-stocks, generally, do ***not*** negate the notion that the stock price

nevertheless responds to and includes public information." *Rocket*, 752 F. Supp. 3d at 776; *see* Sur-Response at 2; *accord* Reply at 8-9.

That the Fifth Circuit highlighted stock price movements purportedly "in the absence of news" on dates with high social media activity and supposed "short selling constraints" as two issues to be "weighed" (Fifth Cir. Op. at 9) is no impediment because, again, the Court already considered (and rejected) those arguments. Defendants claimed that Dr. Feinstein "did not consider other factors affecting stock price, such as high social media activity and the effect of high borrowing costs on the ability to short Cassava's stock," but the Court recognized that "Feinstein ***did*** address such issues in his reports but did not find that they undermined his event studies," thereby crediting Plaintiffs' evidence over that of Defendants. *See* Class Cert. Op. at 39.

**a. Defendants' Stock Price Movement Argument Still Fails**

As explained in Plaintiffs' Class Certification briefing, though Defendants assert Cassava's stock price moved in the absence of new information or, once, in an unexpected direction, they pointed to just eight days as evidence, and Plaintiffs' expert demonstrated that there either was identifiable Cassava-related information that the market was reacting to on those days, or the movements were otherwise explainable, rebutting the very premise of Defendants' argument. *See* Reply at 12-14; Sur-Response at 4-5. As for the single day Cassava's stock price declined on supposedly "positive" information, commentators called that same information "'overblown, inappropriate, [and] uninterpretable'" – hardly the "good" news Defendants claim. *See* Reply at 12 (alteration in original); Sur-Response at 4-5.

Moreover, as also previously explained, the law is clear that Defendants' arguments do not rebut efficiency. First, stock-price movements attributable to "meme stock status" "do[] ***not*** render the market inefficient" for an entire class period. *Rocket*, 752 F. Supp. 3d at 776; *see* Reply at 8-10, 14; Sur-Response at 3. Indeed, "a consensus of other – pre 'meme' era – decisions suggest that

'bubbles' of frenzied trading do not undermine market efficiency." *Rocket*, 752 F. Supp. 3d at 777; *see* Reply at 8-10; Sur-Response at 3; *see also KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *9, *13 (W.D. Tex. June 4, 2013) (crediting evidence that "there are many days on which even large stocks traded on efficient markets experience significant changes in price despite an absence of major news events").

Second, Defendants' claim that, on just one day of a two-plus-year Class Period, Cassava's stock price went down when Defendants say it should have gone up, does not rebut efficiency, either. Courts have rejected that exact argument. *See Petrobras*, 312 F.R.D. at 370 ("Whether the market, upon receiving new information, moved in the precise way analysts or experts would expect it to move is ***not*** the key to unlocking *Basic's* presumption of reliance."); Reply at 10.

But even assuming *arguendo* that Cassava's stock-price behavior calls efficiency into question on the eight days Defendants highlight (and it does not), that does not negate the overwhelming evidence of market efficiency for the entire Class Period, especially because *Basic* does not require "perfect[]" efficiency. *In re Groupon, Inc. Sec. Litig.*, 2015 WL 1043321, at *11 (N.D. Ill. Mar. 5, 2015) (citing *Halliburton*, 573 U.S. at 272), *overruling objections*, 2015 WL 13628131 (N.D. Ill. May 12, 2015); *see* §I.A.1, *supra*; Reply at 14.

**b. Defendants' Short Selling Argument Still Fails**

Defendants' speculation that short-selling "constraints" "may" have undermined market efficiency is not persuasive, as Defendants failed to analyze the impact of those supposed constraints on Cassava Securities during the Class Period. *See* Reply at 15; Sur-Response at 5; *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 94 n. 168 (S.D.N.Y. 2015) (rejecting argument that a short sale ban is indicative of inefficiency where defendants' expert "did not analyze the impact of the short selling ban on [the company's security] during the [c]lass [p]eriod").

The evidence, moreover, showed that short selling was not, in fact, constrained: (i) short selling was profitable; and (ii) short interest ***grew significantly*** throughout the Class Period (climbing from 3 million to 14 million shares). Reply at 15; Sur-Response at 5. Courts therefore reject Defendants' "concern about the high cost of short selling," where, as here, short interest grew during the Class Period, and traders could still bet against Cassava using options. *See Groupon*, 2015 WL 1043321, at *9; Reply at 15-16; Sur-Response at 5.

Yet, even if short selling were constrained (it was not), that does not defeat efficiency, where, as here, the *Cammer/Krogman* factors are met, and Defendants do not claim the market was inefficient. In fact, courts have rejected this argument in far more extreme situations where short selling was not just "constrained," but outright banned. *See* Reply at 14-15; *Barclays*, 310 F.R.D. at 94 ("Plaintiffs' evidence is sufficient to prove market efficiency . . . notwithstanding defendants' evidence that the market may have been inefficient" due to a short selling ban.); *see also* §I.A.1, *supra*. Defendants cite no authority holding otherwise. Sur-Response at 5.

### B. Further Class Certification Proceedings Are Unnecessary and Stayed Between the Settling Parties Under the Settlement Agreement

As reflected above, the issue of market efficiency has been addressed at length in the parties' submissions, including in supplementary sur-reply and sur-response briefing, voluminous exhibits, and extensive expert testimony, all of which the Court already considered in rendering its prior class certification decision. The Fifth Circuit simply asks the Court to more fully explain its reasoning in finding Plaintiffs demonstrated the market for Cassava Securities was efficient during the Class Period. Additional class certification proceedings are therefore unnecessary.

As Magistrate Judge Hightower similarly noted, "an evidentiary hearing is unnecessary because the pleadings and evidence submitted show that a class should be certified." ECF 254 at 7. Nothing in the Fifth Circuit Opinion changes that fact, and further submissions will only delay

settlement proceedings. The parties agreed to resolve this case in August 2025 – over a year ago. The case should thus move into the preliminary settlement approval stage.

Moreover, now that the Rule 23(f) appeal before the Fifth Circuit has been resolved, "all non-settlement related proceedings" with respect to the Settling Parties "shall be stayed" pursuant to the Stipulation of Settlement, except as to the ongoing consolidation-related proceedings. *See* ECF 381-1, ¶9.16. The Fifth Circuit Opinion does not change this, as it declined to "opine on the settlement's effect on the remaining district court proceedings." Fifth Cir. Op. at 4.

The Court should thus issue: (i) a revised class certification opinion; or (ii) an order preliminarily approving the Settlement addressing whether the Court "will likely be able" to certify the Class for purposes of the Settlement. *See* ECF 380 at 11 (quoting Fed. R. Civ. P. 23(e)(1)(B)). Either option allows the Court to further explain its reasoning as to why Plaintiffs' evidence of efficiency outweighs Defendants' arguments, in accordance with the Fifth Circuit Opinion and for the resolution of this case to proceed.

## II. CONSOLIDATION REMAINS INAPPROPRIATE AND PREJUDICIAL TO PLAINTIFFS

The Fifth Circuit Opinion changes nothing with respect to Defendants' request for consolidation, as the reasons stated in Magistrate Judge Hightower's order denying consolidation are entirely unaffected by the Fifth Circuit's ruling. Accordingly, the Court should adopt Magistrate Judge Hightower's Order Denying Consolidation (ECF 384) and reject Defendants' Objection (ECF 388), including for the reasons stated in Plaintiffs' Opposition to Defendants' Objection (ECF 397).

First, as Magistrate Judge Hightower noted in her Order Denying Consolidation, "the class periods in the two actions are ***distinct***." ECF 384 at 7. That remains the case; the proposed class period in this "Consolidated Action is September 14, 2020 to October 12, 2023, while the proposed

class period for *Ugarte* [*v. Cassava Scis., Inc.*, No. 1:24-cv-01525-DAE (W.D. Tex.) ("*Ugarte*")] is October 13, 2023 to March 25, 2025." *See id*. There is no temporal overlap.[3]

Second, "[t]he cases also are at different procedural stages" and consolidation "may properly be denied when cases are at different stages of preparedness for trial." *Id*. at 7. That also remains true. "*Ugarte* is at the pleading stage," with motions to dismiss currently being postponed until ***after*** consolidation is decided, while "the parties in the Consolidated Action have agreed to a settlement." *Id*. at 7-8; *see* ECF 406 at 4. As Magistrate Judge Hightower correctly noted, "at the hearing [on Defendants' consolidation motion], counsel stated that there now is no dispute the parties have agreed to a settlement" (ECF 384 at 4), and "[c]ourts routinely deny motions to consolidate when cases are at significantly different procedural stages, especially if one of the cases has settled." *Id*. at 8 (citing cases). It therefore remains that "[b]ecause these cases are at different procedural stages," consolidating them "would ***not*** promote judicial efficiency." *Id*.[4]

Third, "consolidation would prejudice Plaintiffs in the Consolidated Action by jeopardizing the settlement and delaying resolution of the case." *Id*. That, too, remains the same. Defendants are seeking consolidation in an improper attempt to fold the separate *Ugarte* class into the Consolidated Action's Settlement, so that they may resolve *Ugarte* without paying ***any*** additional consideration. But because there is ***no*** overlap between the classes in *Ugarte* and Consolidated Action, the inclusion of the *Ugarte* class in the Consolidated Action's Settlement would necessarily dilute the

---

[3] The "Consolidated Action" refers to this above-captioned action: *In re Cassava Scis., Inc. Sec. Litig.*, No. 1:21-cv-00751-DAE (W.D. Tex.).

[4] Unlike in *Ugarte*, Plaintiffs in the Consolidated Action have already: (i) successfully opposed a motion to dismiss; (ii) engaged in extensive fact discovery, including taking/defending ten fact and expert depositions, and reviewing more than two million pages of documents produced by the Settling Defendants (Cassava and Eric Shoen) and relevant nonparties; (iii) fully briefed class certification; and (iv) reached a binding settlement agreement that fully resolves the case. *See* ECF 380-1.

Consolidated Action's hard-fought $31.25 million Settlement fund, prejudicing ever member of the Consolidated Action's Class. *See* ECF 397 at 14.

And even if Defendants agreed to add money to obtain the "global peace" they seek, those settlement negotiations should occur separately between the Defendants and the *Ugarte* plaintiffs. Their inclusion in the Consolidated Action via consolidation would only trigger fresh settlement negotiations and a new approval process, which makes no sense given that there is already a fully negotiated and binding Settlement Agreement, pending preliminary approval, in the Consolidated Action, which does not include any part of the *Ugarte* class. *See* ECF 380, 397 at 15. Thus, consolidation would only serve to prejudice Plaintiffs and the Consolidated Action Class, injecting further delay and jeopardizing the Settlement.[5]

## III. CONCLUSION

For the reasons stated herein, the Court should preliminarily approve the settlement and address the Fifth Circuit Opinion either in a revised class certification opinion or in the context of the preliminary approval order.

Additionally, because the Fifth Circuit Opinion does not impact the Magistrate Judge's Order Denying Consolidation, the Court should adopt it and deny Defendants' consolidation motion.

DATED: November 20, 2026

ROBBINS GELLER RUDMAN
& DOWD LLP
DANIEL S. DROSMAN (admitted *pro hac vice*)
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
JESSICA T. SHINNEFIELD (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
HEATHER G. GEIGER (admitted *pro hac vice*)
JEREMY W. DANIELS (admitted *pro hac vice*)

---

[5] A Rule 42(a) consolidation order also cannot be used to expand the Settlement class or enlarge the agreed-upon Settlement release, as Defendants seek. *See Hall v. Hall*, 584 U.S. 59, 77 (2018); ECF 397 at 1, 3, 14-15. And the separate class of investors in *Ugarte* would suffer their own harms from consolidation, too. ECF 397 at 15.

s/ Kevin A. Lavelle
KEVIN A. LAVELLE

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
elleng@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Lead Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff and Additional Plaintiff Ken Calderone

GLANCY PRONGAY & MURRAY LLP
CHARLES H. LINEHAN (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
310/201-9160 (fax)
clinehan@glancylaw.com

Counsel for Additional Plaintiff Manohar K. Rao